JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

Hologic, Inc.
Cytyc Corporation
Hologic LP

## DEFENDANTS

SenoRx, Inc.

**(b)** County of Residence of First Listed Plaintiff Middlesex County, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant Orange County, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Howrey LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004
202-783-0800

Attorneys (If Known)

C08  00133  MEJ

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☒ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus – | | to Justice |
| | ☐ 446 Amer. w/Disabilities – | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. 271, et seq.
Brief description of cause:
Patent Infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION     DEMAND $0.00
UNDER F.R.C.P. 23

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):     JUDGE Whyte

DOCKET NUMBER U.S.D.C. - Northern Dist. Cal.
San Jose Div. - CV 05-05312 RMW (RS)

DATE
January 8, 2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com

# United States District Court

## NORTHERN DISTRICT OF CALIFORNIA

Hologic, Inc., Cytyc Corporation, and Hologic LP

E-FILING

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

**v.**

SenoRx, Inc.

ADR  C08  00133  MEJ

TO: (Name and address of defendant)

SenoRx, Inc.
11 Columbia, Suite A
Aliso Viejo, CA 92656

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Henry C. Su
Howrey LLP
1950 University Avenue, 4th Floor
East Palo Alto, California 94303

an answer to the complaint which is herewith served upon you, within **20** days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

Richard W. Wieking
CLERK

JAN 0 8 2008
DATE_____

(BY) DEPUTY CLERK

Tiffany Salinas-Harwell

1   Henry C. Su (CSB No. 211202)
    suh@howrey.com
2   HOWREY LLP
    1950 University Avenue, 4th Floor
3   East Palo Alto, California  94303-2281
    Telephone:  (650) 798-3500
4   Facsimile:   (650) 798-3600

5   Robert Ruyak
    Matthew Wolf
6   Marc Cohn
    HOWREY LLP
7   1229 Pennsylvania Avenue, NW
    Washington, DC 20004
8   Telephone:  (202) 783-0800
    Facsimile:   (202) 383-6610

9

10  Attorneys for Plaintiffs HOLOGIC, INC., CYTYC
    CORPORATION and HOLOGIC L.P.

11

12                  UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                       SAN JOSE DIVISION

15
    HOLOGIC, INC.                          )   Case No.  C08  00133  MEJ
16  CYTYC CORPORATION, and                 )
    HOLOGIC L.P.,                          )
17                                         )   COMPLAINT FOR PATENT
              Plaintiffs,                  )   INFRINGEMENT SEEKING DAMAGES
18                                         )   AND INJUNCTIVE RELIEF
         vs.                               )
19                                         )   DEMAND FOR JURY TRIAL
    SENORX, INC.,                          )
20                                         )
              Defendant.                   )
21                                         )
                                           )
22  _____ )

23

24

25

26

27

28

HOWREY LLP

COMPLAINT FOR PATENT INFRINGEMENT

1   Henry C. Su (CSB No. 211202)
    suh@howrey.com
2   HOWREY LLP
    1950 University Avenue, 4th Floor
3   East Palo Alto, California  94303-2281
    Telephone:  (650) 798-3500
4   Facsimile:   (650) 798-3600

5   Robert Ruyak
    Matthew Wolf
6   Marc Cohn
    HOWREY LLP
7   1229 Pennsylvania Avenue, NW
    Washington, DC 20004
8   Telephone:  (202) 783-0800
    Facsimile:   (202) 383-6610

9
    Attorneys for Plaintiffs HOLOGIC, INC., CYTYC
10  CORPORATION and HOLOGIC L.P.

11

12                      UNITED STATES DISTRICT COURT

13                     NORTHERN DISTRICT OF CALIFORNIA

                            SAN JOSE DIVISION
14

15
    HOLOGIC, INC.                          )   Case No.
16  CYTYC CORPORATION, and                 )
    HOLOGIC L.P.,                          )
17                                         )   **COMPLAINT FOR PATENT**
              Plaintiffs,                  )   **INFRINGEMENT SEEKING DAMAGES**
18                                         )   **AND INJUNCTIVE RELIEF**
         vs.                               )
19                                         )   **DEMAND FOR JURY TRIAL**
    SENORX, INC.,                          )
20                                         )
              Defendant.                   )
21                                         )
                                           )
22  _____)

23

24

25

26

27

28

HOWREY LLP

COMPLAINT FOR PATENT INFRINGEMENT

1    Plaintiffs Hologic, Inc., Cytyc Corporation, and Hologic L.P. (together, "Hologic"), by their

2 attorneys, complain against SenoRx, Inc. ("SenoRx"), and allege as follows:

3                                    **NATURE OF THE ACTION**

4    1.    Hologic brings this action to seek damages and injunctive relief arising out of the

5 infringement by SenoRx of U.S. Patent Nos. 5,913,813, 6,413,204, and 6,482,142 (together, the

6 "Patents-In-Suit," attached hereto at Exhibits A, B, and C, respectively).

7    2.    Plaintiff Hologic, Inc. is a Delaware corporation with a place of business at 35 Crosby

8 Drive, Bedford, Massachusetts 01730.

9    3.    Plaintiff Cytyc Corporation is a Delaware corporation with a place of business at 250

10 Campus Drive, Marlborough, Massachusetts 01752.

11    4.    Plaintiff Hologic L.P. is a limited partnership with a place of business at 250 Campus

12 Drive, Marlborough, Massachusetts 01752.

13    5.    Defendant SenoRx is a Delaware corporation with a principal place of business at 11

14 Columbia, Aliso Viejo, California 92656.

15                                  **JURISDICTION AND VENUE**

16    6.    This Court has subject matter jurisdiction over Hologic's claims of patent infringement

17 pursuant to 28 U.S.C. § 1338(a) because the claims arise under the Patent Act, 35 U.S.C. § 281.

18    7.    This Court has personal jurisdiction over SenoRx because, on information and belief,

19 SenoRx regularly and systematically transacts business in this District.

20    8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b)

21 because on information and belief, SenoRx has committed, and intends to commit, acts of infringement

22 in this District.

23                                  **INTRADISTRICT ASSIGNMENT**

24    9.    This is an Intellectual Property Action within the meaning of the Court's Assignment

25 Plan, and therefore is subject to assignment on a district-wide basis pursuant to Civil Local Rule 3-

26 2(b).

27

28

HOWREY LLP

COMPLAINT FOR PATENT INFRINGEMENT

1                                         **BACKGROUND**

2          10.     Hologic is a leading developer, manufacturer and supplier of premium diagnostic,

3    therapeutic and medical imaging systems dedicated to serving the healthcare needs of women, and a

4    leading developer of state-of-the-art digital imaging technology for general radiography and

5    mammography applications.  Hologic's business units are focused on mammography and breast

6    biopsy, direct-to-digital x-ray for general radiography applications, treatment of breast cancer, cervical

7    cancer screening gynecological surgery, osteoporosis assessment, and mini C-arm imaging for

8    orthopedic applications.  Each year, more than one million women are diagnosed with breast cancer,

9    while hundreds of thousands of them fall victim to this dreaded disease.  Hologic has achieved a

10   leading market position in breast cancer detection in the United States.

11         11.     Through its recently-acquired Cytyc subsidiary, Hologic has, *inter alia*, developed and

12   marketed innovative radiation delivery systems for the treatment of cancer since 1995.  One such

13   system is the MammoSite® Radiation Therapy System, which delivers targeted, therapeutically

14   effective doses of radiation directly to the breast tissue where cancer is most likely to recur.  To affect

15   this delivery of radiation, the MammoSite® System provides for the placement of a radiation source

16   inside the human body, specifically within a cavity created in the breast tissue after the cancerous

17   tumor has been removed.

18         12.     The MammoSite® Radiation Therapy System has been widely used by radiation

19   oncologists and breast surgeons to treat breast cancer patients who are undergoing breast conservation

20   therapy.  Breast conservation therapy involves excising only the cancerous tumor in a surgical

21   procedure known as a lumpectomy and preserving the healthy breast tissue, including the nipple, the

22   skin, the fatty tissue underneath and the pectoral muscle.  Because this operation does not remove the

23   entire breast (as is the case with a total mastectomy), there is a chance that some pre-cancerous and/or

24   cancerous cells remain at the margins of excision and therefore the cancer may return.  Accordingly, it

25   is recommended that patients undergo certain post-operative treatments such as chemotherapy and

26   radiation therapy to eliminate or minimize the likelihood that the cancer will recur.

27         13.     The term brachytherapy refers to radiation therapy in which the radiation source is

28   placed in proximity to the tissue being treated and contrasts with the use of an external radiation

1  source, which irradiates a wider area of the body that includes the tissue to be treated. Because it

2  places the radiation source within the cavity created by the lumpectomy, in proximity to the tissue that

3  surrounded the cancerous tumor, the MammoSite® Radiation Therapy System provides a treatment

4  method referred to as breast brachytherapy. The placement of the radiation source at the lumpectomy

5  site is achieved through the use of a balloon catheter applicator.

6       14.    In May 2002, Proxima Therapeutics, Inc. ("Proxima Therapeutics") obtained clearance

7  from the U.S. Food and Drug Administration ("FDA") to market the MammoSite® Radiation Therapy

8  System as a new medical device. Proxima Therapeutics was a pioneer in breast radiation therapy and

9  made significant investments in the research, development and testing of therapeutically effective

10  devices and methods for implementing breast brachytherapy, including the Mammosite® system.

11       15.    To protect those investments, Proxima Therapeutics applied for and obtained a number

12  of patents, including U.S. Patent Nos. 5,913,813, 6,413,204, and 6,482,142, which are the subject of

13  this Complaint.

14       16.    In 2005, Proxima Therapeutics was acquired by Cytyc Corporation, and, in 2007,

15  Hologic, Inc. combined with Cytyc Corporation. Cytyc Corporation is the assignee and owner of U.S.

16  Patent Nos. 5,913,813, 6,413,204, and 6,482,142, which are the subject of this Complaint.

17       17.    On information and belief, SenoRx submitted a premarket notification under Section

18  510(k) of the Food, Drug and Cosmetic Act to the FDA for its device for implementing breast

19  brachytherapy, to be marketed under the name SenoRad Multi-Lumen Balloon Source Applicator For

20  Brachytherapy (the "SENORAD MULTI-LUMEN BALLOON"). As required by Section 510(k),

21  SenoRx had to persuade the FDA that its device is a substantial equivalent to an already approved and

22  classified medical device.

23       18.    The FDA approved SenoRx's premarket notification on or about May 18, 2007, as

24  evidenced by the Section 510(k) summary (No. K071229), a true and correct copy of which is attached

25  as Exhibit D. The FDA determined that there is substantial equivalence between SenoRx's

26  SENORAD MULTI-LUMEN BALLOON and Hologic's patented MammoSite® Radiation Therapy

27  System. The notification states: "The SenoRad applicator has the following similarities to the

28  previously cleared predicate devices: same indications for use; same intended use; same intended

HOWREY LLP

COMPLAINT FOR PATENT INFRINGEMENT

3

1   treatment site; *same operating principle; same technological characteristics; equivalent dosimetric*

2   *characteristics*; and same sterilization method.  The materials of construction vary in a manner that has

3   no impact on device safety.  In summary, the SenoRad Multi-Lumen Balloon Source Applicator as

4   described in this submission is substantially equivalent to the predicate devices." (*See* Exhibit D

5   (emphasis added).)

6        19.    On information and belief, SenoRx has given the SenoRad device the commercial

7   moniker the "Contura™ Multi-Lumen Balloon."

8              **COUNT ONE – INFRINGEMENT OF U.S. PATENT NO. 5,913,813**

9        20.    Hologic incorporates by reference its allegations in Paragraphs 1-19 above.

10       21.    On information and belief, and based on likely evidentiary support after a reasonable

11  opportunity for further investigation or discovery, SenoRx is presently making, using, offering for sale,

12  and/or selling a device for implementing brachytherapy (including, without limitation, the Contura™

13  Multi-Lumen Balloon) that infringes one or more claims of U.S. Patent No. 5,913,813 (the "'813

14  patent"), literally or under the doctrine of equivalents.  A true and correct copy of the '813 patent is

15  attached as Exhibit A.

16       22.    On information and belief, and based on likely evidentiary support after a reasonable

17  opportunity for further investigation or discovery, SenoRx is presently inducing or contributing to the

18  infringement of one or more claims of the '813 patent.

19       23.    Such activities by SenoRx as described in Paragraphs 18 and 19 above, if proven,

20  violate one or more subsections of 35 U.S.C. § 271.

21       24.    On information and belief, SenoRx's infringement of the '813 patent has been willful

22  and wanton because SenoRx has had notice of the '813 patent.

23       25.    If SenoRx's infringing activities are not preliminarily and permanently enjoined,

24  Hologic will suffer irreparable harm that cannot be adequately compensated by a monetary award.

25       26.    Hologic has suffered economic harm as a result of SenoRx's infringing activities in an

26  amount to be proven at trial.

27             **COUNT TWO – INFRINGEMENT OF U.S. PATENT NO. 6,413,204**

28       27.    Hologic incorporates by reference its allegations in Paragraphs 1-26 above.

HOWREY LLP

COMPLAINT FOR PATENT INFRINGEMENT

4

28.     On information and belief, and based on likely evidentiary support after a reasonable opportunity for further investigation or discovery, SenoRx is presently making, using, offering for sale, selling a device for implementing brachytherapy (including, without limitation, the Contura™ Multi-Lumen Balloon) that infringes one or more claims of U.S. Patent No. 6,413,204 (the "'204 patent"), literally or under the doctrine of equivalents. A true and correct copy of the '204 patent is attached as Exhibit B.

29.     On information and belief, and based on likely evidentiary support after a reasonable opportunity for further investigation or discovery, SenoRx is presently inducing or contributing to the infringement of one or more claims of the '204 patent.

30.     Such activities by SenoRx as described in Paragraphs 25 and 26 above, if proven, violate one or more subsections of 35 U.S.C. § 271.

31.     On information and belief, SenoRx's infringement of the '204 patent has been willful and wanton because SenoRx has had notice of the '204 patent.

32.     If SenoRx's infringing activities are not preliminarily and permanently enjoined, Hologic will suffer irreparable harm that cannot be adequately compensated by a monetary award.

33.     Hologic has suffered economic harm as a result of SenoRx's infringing activities in an amount to be proven at trial.

### COUNT THREE – INFRINGEMENT OF U.S. PATENT NO. 6,482,142

34.     Hologic incorporates by reference its allegations in Paragraphs 1-33 above.

35.     On information and belief, and based on likely evidentiary support after a reasonable opportunity for further investigation or discovery, SenoRx is presently making, using, offering for sale, selling a device for implementing brachytherapy (including, without limitation, the Contura™ Multi-Lumen Balloon) that infringes one or more claims of U.S. Patent No. 6,482,142 (the "'142 patent"), literally or under the doctrine of equivalents. A true and correct copy of the '142 patent is attached as Exhibit C.

36.     On information and belief, and based on likely evidentiary support after a reasonable opportunity for further investigation or discovery, SenoRx is presently inducing or contributing to the infringement of one or more claims of the '142 patent.

1    37.    Such activities by SenoRx as described in Paragraphs 32 and 33 above, if proven,

2  violate one or more subsections of 35 U.S.C. § 271.

3    38.    On information and belief, SenoRx's infringement of the '142 patent has been willful

4  and wanton because SenoRx has had notice of the '142 patent.

5    39.    If SenoRx's infringing activities are not preliminarily and permanently enjoined,

6  Hologic will suffer irreparable harm that cannot be adequately compensated by a monetary award.

7    40.    Hologic has suffered economic harm as a result of SenoRx's infringing activities in an

8  amount to be proven at trial.

9    **DEMAND FOR JURY TRIAL**

10    41.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Civil Local Rule 3-

11  6(a), Hologic hereby demands a trial by jury on all issues so triable.

12    **PRAYER FOR RELIEF**

13    WHEREFORE, Hologic prays that this Court grant it the following relief:

14    (a) enter judgment against SenoRx adjudging the '204, '142, and '813 patents to be valid,

15  enforceable and infringed;

16    (b) issue a preliminary and permanent injunction against SenoRx for infringement of the '204,

17  '813, and '142 patents pursuant to 35 U.S.C. § 283;

18    (c) award Hologic an amount adequate to compensate for SenoRx's infringement of the

19  Patents-In-Suit, as provided under 35 U.S.C. § 284;

20    (d) an adjudication that SenoRx has willfully infringed the Patents-In-Suit and increasing the

21  award of damage to Hologic up to three times in view of SenoRx's willful infringement;

22    (e) a declaration that this is an exceptional case under 35 U.S.C. § 285 and that Hologic be

23  awarded its attorneys' fees and costs incurred in prosecuting their claims as provided under 35 U.S.C.

24  § 285; and

25    (f) such other relief as this Court deems proper.

26

27

28

HOWREY LLP

COMPLAINT FOR PATENT INFRINGEMENT

1  Dated: January 8, 2008                    HOWREY LLP

2

3

4  -                                         By: _____
                                                  Henry C. Su
5
                                             Attorneys for Plaintiffs
6                                            Hologic, Inc.,
                                             Cytyc Corporation and
7                                            Hologic L.P.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

# United States Patent [19]

## Williams et al.

[11] **Patent Number:** **5,913,813**

[45] **Date of Patent:** **Jun. 22, 1999**

[54] **DOUBLE-WALL BALLOON CATHETER FOR TREATMENT OF PROLIFERATIVE TISSUE**

[75] Inventors: **Jeffery A. Williams**, Baltimore, Md.; **Christopher H. Porter**, Woodinville, Wash.; **Jeffrey F. Williamson**; **James F. Dempsey**, both of St. Louis, Mo.; **Timothy J. Patrick**; **James B. Stubbs**, both of Alpharetta, Ga.

[73] Assignee: **Proxima Therapeutics, Inc.**, Alpharetta, Ga.

[21] Appl. No.: **08/900,021**

[22] Filed: **Jul. 24, 1997**

[51] **Int. Cl.**[6] ...................................................... **A61N 5/00**

[52] **U.S. Cl.** ........................................................ **600/3**

[58] **Field of Search** ............................................. 600/1–8

[56] **References Cited**

### U.S. PATENT DOCUMENTS

3,324,847   6/1967   Zoumboulis .

5,106,360   4/1992   Ishiwara et al. .
5,429,582   7/1995   Williams .
5,611,767   3/1997   Williams .
5,662,580   9/1997   Bradshaw et al. ........................... 600/3
5,782,742   7/1998   Crocker et al. .
5,785,688   7/1998   Joshi et al. .

*Primary Examiner*—John P. Lacyk
*Attorney, Agent, or Firm*—Nikolai, Mersereau & Dietz, P.A.

[57] **ABSTRACT**

An instrument for use in brachytherapy comprises a concentric arrangement of inner and outer distensible, spherical chambers disposed near the proximal end of a catheter body where one of the chambers is made to contain a radioactive material with the other chamber containing a radiation absorptive material, the apparatus functioning to provide a more uniform absorbed dose profile in tissue surrounding a cavity created by the removal of a tumor. An alternative embodiment includes non-spherical inner and outer chambers whose respective walls are spaced equidistant over the entire surfaces thereof.

**13 Claims, 2 Drawing Sheets**





FIG. 1



FIG. 2



FIG. 3



FIG. 4



FIG. 5

1

# DOUBLE-WALL BALLOON CATHETER FOR TREATMENT OF PROLIFERATIVE TISSUE

## BACKGROUND OF THE INVENTION

### I. Field of the Invention

This invention relates generally to apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus for the treatment of such disorders in the body by the application of radioactive material and/or radiation emissions.

### II. Discussion of the Prior Art

In the Williams U.S. Pat. No. 5,429,582 entitled "Tumor Treatment", there is described a method and apparatus for treating tissue surrounding a surgically excised tumor with radioactive emissions to kill any cancer cells that may be present in the margins surrounding the excised tumor. In accordance with that patent, there is provided a catheter having an inflatable balloon at a distal end thereof to define a distensible reservoir. Following surgical removal of a tumor, say in the brain or breast, the deflated balloon may be introduced into the surgically-created pocket left following removal of a tumor and then the balloon is inflated by injecting a fluid having radionuclide(s) therein into the distensible reservoir, via a lumen in the catheter.

When it is considered that the absorbed dose rate at a point exterior to the radioactive source is inversely proportional to the square of the distance between the radiation source and the target point, tissue directly adjacent the wall of the distensible reservoir may be overly "hot" to the point where healthy tissue necrosis may result. In general, the amount of radiation desired by the physician is a certain minimum amount that is delivered to a site 0–3 cms away from the wall of the excised tumor. It is desirable to keep the radiation in the space between that site and the wall of the distensible reservoir as uniform as possible to prevent over-exposure to tissue at or near the reservoir wall. In treating other cancers, such as bladder cancer, where the neoplastic tissue is generally located on the bladder surface, deep penetration is unnecessary and to be avoided.

A need exists for an instrument which may be used to deliver radiation from a radioactive source to target tissue within the human body of a desired intensity and at a predetermined distance from the radiation source without over-exposure of body tissues disposed between the radiation source and the target.

## SUMMARY OF THE INVENTION

We have found that it is possible to deliver a desired radiation dose at a predetermined radial distance from a source of radioactivity by providing a first spacial volume at the distal end of a catheter and a second spacial volume defined by a surrounding of the first spatial volume by a polymeric film wall where the distance from the spatial volume and the wall is maintained substantially constant over their entire surfaces. One of the inner and outer volumes is filled with either a fluid or a solid containing a radionuclide(s) while the other of the two volumes is made to contain either a low radiation absorbing material, e.g., air or even a more absorptive material, such as an x-ray contrast fluid. Where the radioactive material comprises the core, the surrounding radiation absorbing material serves to control the radial profile of the radioactive emissions from the particular one of the inner and outer volumes containing the radionuclide(s) so as to provide a more radially uniform radiation dosage in a predetermined volume surrounding the

2

outer chamber. Where the core contains the absorbent material, the radial depth of penetration of the radiation can be tailored by controlling the core size.

## DESCRIPTION OF THE DRAWINGS

The foregoing features, objects and advantages of the invention will become apparent to those skilled in the art from the following detailed description of a preferred embodiment, especially when considered in conjunction with the accompanying drawings in which:

FIG. 1 is a side view of an apparatus for delivering radioactive emissions to body tissue;

FIG. 2 is a cross-sectional view taken along the line 2—2 in FIG. 1;

FIG. 3 is a fragmentary side view of an apparatus for administering radiation therapy in accordance with a second embodiment;

FIG. 4 is a graph helpful in understanding the operation of the apparatus of the present invention; and

FIG. 5 depicts a further embodiment of the invention.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring first to FIG. 1, there is indicated generally by numeral 10 a surgical instrument for providing radiation treatment to proliferative tissue in a living patient. It is seen to comprise a tubular body member 12 having first and second lumens 14 and 16 (FIG. 2) extending from proximal ports 18 and 20 in a molded plastic hub 22 to inflation ports 24 and 26 formed through the side wall of the tube 12 and intersecting with the lumens 14 and 16, respectively.

Affixed to the tubular body 12 proximate the distal end 28 thereof is an inner spatial volume 30 which may be defined by a generally spherical polymeric film wall 32. The interior of the chamber 30 is in fluid communication with the inflation port 26. Surrounding the spatial volume 30 is an outer chamber 34 defined by an outer polymeric film wall 36 that is appropriately spaced from the wall 32 of the inner chamber 30 when the two chambers are inflated or otherwise filled and supported. Chamber 34 encompasses the inflation port 24.

The embodiment of FIG. 1 can be particularly described as comprising two spherical chambers 30 and 34, one inside the other. In accordance with a first embodiment of the invention, the outer chamber 34, being the volume defined by the space between the inner spherical wall 32 and the outer spherical wall 36, may be filled with air or, alternatively, a radiation absorbing fluid, such as a contrast media used in angiography. The inner chamber 30 is then filled with a material containing a predetermined radionuclide, for example, I-125, I-131, Yb-169 or other source of radiation, such as radionuclides that emit photons, beta particles or other therapeutic rays.

Those skilled in the art will appreciate that instead of having the inner spatial volume 30 defined by a generally spherical polymeric film wall as at 32, the catheter body member 12 may have a solid spherical radiation emitting material in which event that solid sphere would be surrounded with the outer spherical wall 36 with the spatial volume therebetween occupied by a radioactive ray absorbent material, such as air, water or a contrast material.

It is further contemplated that instead of having the inner spatial volume comprising a single solid sphere, it may instead comprise a plurality of radioactive particles strategically placed within the inner spatial volume so as to radiate

5,913,813

3

in all directions with a substantially equal intensity. FIG. 5 illustrates a catheter having the inner spatial volume occupied by a plurality of radioactive beads that are mounted on the distal ends of a plurality of wires that are routed through the catheter body and exit a plurality of ports formed through the wall of the catheter body and reaching the lumen. This arrangement allows the exact positioning of the individual radiation sources to be positioned so as to generate a desired resultant profile.

It is not essential to the invention that the chambers 30 and 34 have spherical walls, so long as the spacing between the wall of the inner chamber and the wall of the outer chamber remain generally constant, such as is illustrated in FIG. 3.

Referring to FIG. 4, there is shown the two concentric spherical chambers of FIG. 1 defined by inner spherical wall 32 and outer spherical wall 36 disposed within the margin 38 of a surgically excised tumor. It is desired that the radiation emitted from the core 32 be capable of delivering a certain minimum dose absorbed at a location approximately 0–3 cms from the margin 38. Curve 40 is a plot of absorbed dose vs. radial distance that would be obtained if the inner chamber defined by spherical wall 32 was not present and the entire volume of the spherical chamber defined by wall 36 were filled with the radioactive fluid. Plot 42 reflects the absorbed dose distribution as a function of radial distance when the radioactive fluid is contained within the inner chamber and is surrounded by either a gas or a more radiation absorbing material. Comparing the plots 40 and 42, by providing the concentric arrangement depicted, the absorbed dose profile in the space between the 2 cm site and the wall of the outer balloon is maintained much more uniform, thus preventing over-treatment of body tissue at or close to the outer wall 36 of the instrument. That is to say, to obtain the same end point absorbed dose at 2 cm, it would be necessary to increase the source activity relative to that used for a completely filled (to surface 36) configuration, assuming the same radionuclide is used in both configurations.

With no limitation intended, the distensible polymeric chambers may comprise a biocompatible, radiation resistant polymer, such as Silastic rubbers, polyurethanes, polyethylene, polypropylene, polyester, PVC, C-Flex. The radioactive fluid contained within the inner chamber 32 can be made from any solution of radionuclide(s), e.g., a solution of I-125 or I-131. A radioactive fluid can also be produced using a slurry of a suitable fluid containing small particles of solid radionuclides, such as Au-198, Y-90. Moreover, the radionuclide(s) can be embodied in a gel.

In the embodiments heretofore described, the material containing the radionuclide(s) is located in the inner chamber. The invention also contemplates that the outer chamber 34 may contain the material having the radionuclide therein while the inner chamber 30 contains the radiation absorptive material. This configuration is advantageous where a profile exhibiting higher intensity at a tissue surface with lesser penetration is desired. By using this approach, less volume of radioactive material is required than if the entire volume of the device were filled with radioactive material. Moreover, the outer chamber wall need not be spherical, yet a uniform profile is obtainable. Experiments have shown that a steeper radial absorbed source gradient can be obtained using a radiation attenuation fluid in the inner chamber 30 than otherwise obtains when only a single distensible chamber is used, as in the aforereferenced Williams U.S. Pat. No. 5,429,582. The invention also contemplates that the radioactive material in the inner core can be replaced by a core containing solid radionuclide-containing

4

particles. For example, radioactive micro spheres of the type available from the 3M Company of St. Paul, Minn., may be used in place of the fluid. This radioactive source can either be preloaded into the catheter at the time of manufacture or loaded into the device after it has been implanted into the space formerly occupied by the excised tumor. Such a solid radioactive core configuration offers the advantage in that it allows a wider range of radionuclides than if one is limited to liquids. Solid radionuclides that could be used with the delivery device of the present invention are currently generally available as brachytherapy radiation sources.

In either the concentric spherical embodiment of FIG. 1 or the non-spherical configuration of FIG. 3, the spacing between the inner and outer chambers needs to be held somewhat constant to avoid "hot spots". This result can be achieved by careful placement of precision blown polymer parisons or by using compressible foams or mechanical spacers in the form of webs joining the inner wall 32 to the outer wall 36.

This invention has been described herein in considerable detail in order to comply with the patent statutes and to provide those skilled in the art with the information needed to apply the novel principles and to construct and use such specialized components as are required. However, it is to be understood that the invention can be carried out by specifically different equipment and devices, and that various modifications, both as to the equipment and operating procedures, can be accomplished without departing from the scope of the invention itself.

What is claimed is:

1. Apparatus for delivering radioactive emissions to a body location with a uniform radiation profile, comprising:

(a) a catheter body member having a proximal end and distal end;

(b) an inner spatial volume disposed proximate the distal end of the catheter body member;

(c) an outer, closed, inflatable, chamber defined by a radiation transparent wall affixed to the body member proximate the distal end thereof in surrounding relation to the inner spatial volume with a predetermined constant spacing between said inner spatial volume and the radiation transparent wall;

(d) a material containing a radionuclide(s) disposed in one of the inner spatial volume and outer chamber; and

(e) means disposed in the other of the inner spatial volume and outer chamber for rendering uniform the radial absorbed dose profile of the emissions from the one of the inner spatial volume and outer chamber containing the radionuclides.

2. The apparatus of claim 1 wherein said inner spatial volume is an inner closed, chamber defined by a further radiation transparent wall.

3. The apparatus of claim 1 wherein the means for rendering uniform the absorbed dose profile is a radiation attenuating material.

4. The apparatus of claim 3 wherein the radiation attenuating material is selected from a group consisting of barium sulphate, water, and X-ray contrast media.

5. The apparatus as in claim 2 wherein the radionuclide is in a fluid form.

6. The apparatus as in claim 5 wherein the fluid comprises an isotope of iodine.

7. The apparatus as in claim 1 wherein the radionuclide is a slurry of a fluid containing particles of a solid isotope.

5,913,813

**5**

**8**. The apparatus as in claim **2** wherein the inner chamber contains the radioactive material.

**9**. The apparatus as in claim **1** wherein the outer chamber contains the radioactive material.

**10**. The apparatus as in claim **8** wherein the radioactive material is a fluid.

**11**. The apparatus as in claim **8** wherein the radioactive material is a solid.

**6**

**12**. The apparatus as in claim **1** wherein the material containing a radionuclide comprises a plurality of radioactive solid particles placed at predetermined locations within the inner spatial volume to provide a desired composite radiation profile.

**13**. The apparatus as in claim **2** wherein the inner and outer chambers are spherical in shape and are concentric.

\* \* \* \* \*

# EXHIBIT B

(12) **United States Patent**
Winkler et al.

(10) Patent No.: **US 6,413,204 B1**
(45) Date of Patent: *Jul. 2, 2002

(54) **INTERSTITIAL BRACHYTHERAPY APPARATUS AND METHOD FOR TREATMENT OF PROLIFERATIVE TISSUE DISEASES**

(75) Inventors: **Rance A. Winkler**, Atlanta; **Timothy J. Patrick**; **James Stubbs**, both of Alpharetta, all of GA (US)

(73) Assignee: **Proxima Therapeutics, Inc.**, Alpharetta, GA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/293,524**

(22) Filed: **Apr. 15, 1999**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 08/900,021, filed on Jul. 4, 1997, now Pat. No. 5,913,813.

(51) Int. Cl.[7] ................................................. **A61N 5/00**
(52) U.S. Cl. ......................................................... **600/3**
(58) Field of Search ........................................ 600/1–8

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,324,847 | A | 6/1967 | Zoumboulis | 128/1.2 |
| 3,872,856 | A | 3/1975 | Clayton | 128/1.2 |
| 4,417,576 | A | 11/1983 | Baran | 128/207.15 |
| 4,706,652 | A | 11/1987 | Horowitz | 128/1.2 |
| 4,754,745 | A | 7/1988 | Horowitz | 128/1.2 |
| 4,763,642 | A | 8/1988 | Horowitz | 128/1.2 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| EP | 0340881 | 11/1989 | ........... | A61N/5/10 |

| | | | | |
|---|---|---|---|---|
| EP | 0867200 | 9/1998 | | |
| GB | 2105201 | 3/1983 | ........... | A61N/1/06 |
| WO | 9210932 | 7/1992 | ........... | A61N/5/02 |
| WO | 9309724 | 5/1993 | ........... | A61B/17/36 |
| WO | 9719723 | 6/1997 | ........... | A61N/5/00 |
| WO | 9812979 | 4/1998 | ........... | A61B/19/00 |
| WO | 9911325 | 3/1999 | | |
| WO | 9933515 | 7/1999 | | |
| WO | 9942163 | 9/1999 | | |

OTHER PUBLICATIONS

A. Bex et al., *A System for Focal Intracavitary Irradiation of Bladder Cancer with Remote Iridium–192 Afterloading*, 21 Eur Urol 1992, 245–249 (1992).

Ashpole, R.D. et al., "A New Technique of Brachtherapy for Malignant Gliomas with Caesium–137: A New Method Utilizing a Remote Afterloading System," Clinical Oncology, vol. 2, 333–7 (1990).

Chun, M. et al., "Interstitial Iridium–192 Implantation for Malignant Brain Tumours. Part II: Clinical Experience," *The British Journal of Radiology*, vol. 62, 158–62 (1989).

Garfield, J. et al., "Postoperative Intracavitary Chemotherapy of Malignant Gliomas," *J. Neurosurg.*, vol. 39, 315–22 (Sep. 1973).

(List continued on next page.)

*Primary Examiner*—John P. Lacyk
(74) *Attorney, Agent, or Firm*—Thomas J. Engellenner; Ronald E. Cahill; Nutter, McClennen & Fish, LLP

(57) **ABSTRACT**

An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location includes a catheter body member having a proximal end and distal end, an inner spatial volume disposed proximate to the distal end of the catheter body member, an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume, and a radiation source disposed in the inner spatial volume.

**36 Claims, 3 Drawing Sheets**



## U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,821,725 | A | | 4/1989 | Azam et al. ............. | 128/420 A |
| 4,867,741 | A | | 9/1989 | Portnoy ...................... | 604/10 |
| 5,084,001 | A | | 1/1992 | Van't Hooft et al. .......... | 600/3 |
| 5,084,015 | A | | 1/1992 | Moriuchi .................... | 604/96 |
| 5,106,360 | A | | 4/1992 | Ishiwara et al. .............. | 600/2 |
| 5,112,303 | A | | 5/1992 | Pudenz et al. ............... | 604/49 |
| 5,152,747 | A | | 10/1992 | Olivier ...................... | 604/93 |
| 5,236,410 | A | | 8/1993 | Granov et al. ............... | 600/12 |
| 5,429,582 | A | | 7/1995 | Williams .................... | 600/2 |
| 5,484,384 | A | | 1/1996 | Fearnot ..................... | 600/3 |
| 5,503,613 | A | | 4/1996 | Weinberger ................. | 600/3 |
| 5,566,221 | A | | 10/1996 | Smith et al. ............... | 378/145 |
| 5,611,767 | A | | 3/1997 | Williams .................... | 600/2 |
| 5,662,580 | A | | 9/1997 | Bradshaw et al. ............. | 600/3 |
| 5,707,332 | A | | 1/1998 | Weinberger ................. | 600/3 |
| 5,713,828 | A | | 2/1998 | Coniglione ................. | 600/7 |
| 5,720,717 | A | | 2/1998 | D'Andrea ................... | 604/21 |
| 5,764,723 | A | | 6/1998 | Weinberger et al. ........ | 378/65 |
| 5,782,742 | A | | 7/1998 | Crocker et al. .............. | 600/3 |
| 5,785,688 | A | | 7/1998 | Joshi et al. ................. | 604/141 |
| 5,913,813 | A | * | 6/1999 | Williams et al. ............. | 600/3 |
| 5,924,973 | A | * | 7/1999 | Wenberger ................. | 600/3 |
| 6,036,631 | A | | 3/2000 | McGrath et al. .............. | 600/3 |
| 6,059,812 | A | * | 5/2000 | Clerc et al. .................... | 600/3 |

## OTHER PUBLICATIONS

Gutin, P. et al., "Brachytherapy of Recurrent Malignant Brain Tumors With Removable High–Activity Iodine–125 Sources," *J. Neurosurg.*, vol. 60, 61–8 (1984).

Johannesen, T.B. et al., "Intracavity Fractionated Balloon Brachytherapy in Gilioblastoma," *Acta Neurochir* (*Wien*), vol. 141, 127–33 (1999).

Leibel, S. et al., "The Integration of Interstitial Implantation Into the Preliminary Mangement of Patients With Malignant Gliomas: Results of a Phase II Northern California Oncology Group Trial," *Am. J. Clin. Oncol.* (*CCT*), vol. 10, No. 2, p. 106 (1987).*

Roberts, D. et al., "Interstitial Hyperthermia and Iridium Brachytherapy in Treamtnet of Malignant Glioma," *J. Neurosurg.*, vol. 64, 581–7 (1986).*

Wu, A. et al., "Interstitial Iridium–192 Implantation for Malignant Brain Tumours, Part 1: Techniques of Dosimetry Planning," *The British Journal of Radiology*, vol. 62, 154–7 (1989).*

* cited by examiner



*FIG. 1*



*FIG. 2*



*FIG. 3*



# FIG. 4



# FIG. 5



# FIG. 6



# FIG. 7A



# FIG. 7B



# FIG. 7C



DISTANCE FROM SURFACE OF
OUTER VOLUME

# FIG. 7D

1

# INTERSTITIAL BRACHYTHERAPY APPARATUS AND METHOD FOR TREATMENT OF PROLIFERATIVE TISSUE DISEASES

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of U.S. patent application Ser. No. 08/900,021, filed Jul. 24, 1997, now U.S. Pat. No. 5,913,813 the contents of which are specifically incorporated herein by reference.

## BACKGROUND OF THE INVENTION

The invention relates generally to apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus for the treatment of such disorders in the body by the application of radiation.

Malignant tumors are often treated by surgical resection of the tumor to remove as much of the tumor as possible. Infiltration of the tumor cells into normal tissue surrounding the tumor, however, can limit the therapeutic value of surgical resection because the infiltration can be difficult or impossible to treat surgically. Radiation therapy can be used to supplement surgical resection by targeting the residual tumor margin after resection, with the goal of reducing its size or stabilizing it. Radiation therapy can be administered through one of several methods, or a combination of methods, including external-beam radiation, stereotactic radiosurgery, and permanent or temporary interstitial brachytherapy. The term "brachytherapy," as used herein, refers to radiation therapy delivered by a spatially confined radioactive material inserted into the body at or near a tumor or other proliferative tissue disease site. Owing to the proximity of the radiation source, brachytherapy offers the advantage of delivering a more localized dose to the target tissue region.

For example, brachytherapy is performed by implanting radiation sources directly into the tissue to be treated. Brachytherapy is most appropriate where 1) malignant tumor regrowth occurs locally, within 2 or 3 cm of the original boundary of the primary tumor site; 2) radiation therapy is a proven treatment for controlling the growth of the malignant tumor; and 3) there is a radiation dose-response relationship for the malignant tumor, but the dose that can be given safely with conventional external beam radiotherapy is limited by the tolerance of normal tissue. In brachytherapy, radiation doses are highest in close proximity to the radiotherapeutic source, providing a high tumor dose while sparing surrounding normal tissue. Interstitial brachytherapy is useful for treating malignant brain and breast tumors, among others.

Interstitial brachytherapy is traditionally carried out using radioactive seeds such as $^{125}$I seeds. These seeds, however, produce inhomogeneous dose distributions. In order to achieve a minimum prescribed dosage throughout a target region of tissue, high activity seeds must be used, resulting in very high doses being delivered in some regions in proximity to the seed or seeds which can cause radionecrosis in healthy tissue.

Williams U.S. Pat. No. 5,429,582, entitled "Tumor Treatment," describes a method and apparatus for treating tissue surrounding a surgically excised tumor with radioactive emissions to kill any cancer cells that may be present in the tissue surrounding the excised tumor. In order to implement the radioactive emissions, Williams provides a catheter having an inflatable balloon at its distal end that defines a

2

distensible reservoir. Following surgical removal of a tumor, the surgeon introduces the balloon catheter into the surgically created pocket left following removal of the tumor. The balloon is then inflated by injecting a fluid having one or more radionuclides into the distensible reservoir via a lumen in the catheter.

The apparatus described in Williams solves some of the problems found when using radioactive seeds for interstitial brachytherapy, but leaves some problems unresolved. The absorbed dose rate at a target point exterior to a radioactive source is inversely proportional to the square of the distance between the radiation source and the target point. As a result, where the radioactive source has sufficient activity to deliver a prescribed dose, say 2 centimeters into the target tissue, the tissue directly adjacent the wall of the distensible reservoir, where the distance to the radioactive source is very small, may still be more than "hot" to the point where healthy tissue necrosis may result. In general, the amount of radiation desired by the physician is a certain minimum amount that is delivered to a region up to about two centimeters away from the wall of the excised tumor. It is desirable to keep the radiation that is delivered to the tissue in the target treatment region within a narrow absorbed dose range to prevent over-exposure to tissue at or near the reservoir wall, while still delivering the minimum prescribed dose at the maximum prescribed distance from the reservoir wall.

There is still a need for an instrument which can be used to deliver radiation from a radioactive source to target tissue within the human body with a desired intensity and at a predetermined distance from the radiation source without over-exposure of body tissues disposed between the radiation source and the target.

## SUMMARY OF THE INVENTION

The present invention solves the problems described above by providing an interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location. The apparatus includes a catheter body member having a proximal end and distal end, an inner spatial volume disposed proximate to the distal end of the catheter body member, an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume, and a radiation source disposed in the inner spatial volume. The inner and outer spatial volumes are configured to provide an absorbed dose within a predetermined range throughout a target tissue. The target tissue is located between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface. The predetermined dose range is defined as being between a minimum prescribed absorbed dose for delivering therapeutic effects to tissue that may include cancer cells, and a maximum prescribed absorbed dose above which healthy tissue necrosis may result.

In different embodiments, the inner spatial volume can be defined by a distensible polymeric wall containing radioactive source material which can be a fluid material, by a solid radioactive source, or by a region containing a plurality of solid radioactive sources. The outer spatial volume is defined by an expandable surface element that may be, for example, an inflatable polymeric wall or an expandable cage. The expandable surface element can cause tissue to conform to its intended shape, and preferably, the apparatus creates absorbed isodose profiles in the target tissue that are substantially similar in shape to the expandable surface element in substantially three dimensions.

US 6,413,204 B1

3

The invention also provides a method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location. The method includes surgically creating access to the proliferating tissue within a patient and surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue. An interstitial brachytherapy apparatus for delivering radioactive emissions as described above is then provided and intra-operatively placed into the resection cavity. After a prescribed absorbed dose has been delivered to tissue surrounding the apparatus, the apparatus is removed. The radioactive source material may be placed into the interstitial brachytherapy apparatus after the apparatus is placed in the resection cavity, and may be removed before the apparatus is removed. The method has particular applications to brain and breast cancers.

DESCRIPTION OF THE DRAWINGS

The foregoing features, objects and advantages of the invention will become apparent to those skilled in the art from the following detailed description of a preferred embodiment, especially when considered in conjunction with the accompanying drawings in which:

FIG. 1 is a side view of an interstitial brachytherapy apparatus of the invention for delivering radioactive emissions to body tissue;

FIG. 2 is a cross-sectional view taken along the line 2—2 in FIG. 1;

FIG. 3 is an additional embodiment of an interstitial brachytherapy apparatus of the invention having a solid radiation source;

FIG. 4 is an additional embodiment of an interstitial brachytherapy apparatus of the invention having a radiation source comprising a plurality of solid radiation particles;

FIG. 5 depicts a further embodiment of the invention wherein the inner and outer spatial volumes of the interstitial brachytherapy apparatus are non-spherical;

FIG. 6 illustrates an interstitial brachytherapy apparatus of the invention having an expandable outer spatial volume surface; and

FIGS. 7A–D illustrate the absorbed dose versus distance into target tissue for several interstitial brachytherapy apparatus configurations.

DESCRIPTION OF THE PREFERRED EMBODIMENT

A surgical instrument 10 for providing radiation treatment to proliferative tissue in a living patient is illustrated in FIG. 1. Surgical instrument 10 includes a tubular body member 12 having first and second lumens 14 and 16 (FIG. 2) extending from proximal ports 18 and 20 in a molded plastic hub 22 to inflation ports 24 and 26 formed through the side wall of the tube 12 and intersecting with the lumens 14 and 16, respectively.

Affixed to the tubular body 12 proximate the distal end 28 thereof is an inner spatial volume 30 which may be defined by a generally spherical polymeric film wall 32. The interior of the inner volume 30 is in fluid communication with the inflation port 26. Surrounding inner spatial volume 30 is an outer spatial volume 34 defined by an outer polymeric film wall 36 that is appropriately spaced from the wall 32 of the inner spatial volume 30 when the two volumes are inflated or otherwise supported. Outer volume 34 encompasses inflation port 24. With no limitation intended, the distensible polymeric film walls may comprise a biocompatible, radia-

4

tion resistant polymer, such as silastic rubbers, polyurethanes, polyethylene, polypropylene, polyester, or PVC.

The embodiment of FIG. 1 includes inner and outer spatial volumes 30 and 34, one inside the other. The outer spatial volume 34, being the volume defined by the space between the inner spherical wall 32 and the outer spherical wall 36, may be filled with air or, alternatively, a radiation absorbing fluid, such as a contrast media used in angiography. The inner volume 30 is then filled with a material containing a predetermined radionuclide, for example, I-125, I-131, Yb-169 or other source of radiation, such as radionuclides that emit photons, beta particles, gamma radiation, or other therapeutic rays. The radioactive material contained within the inner chamber 32 can be a fluid made from any solution of radionuclide(s), e.g., a solution of I-125 or I-131. A radioactive fluid can also be produced using a slurry of a suitable fluid containing small particles of solid radionuclides, such as Au-198, Y-90. Moreover, the radionuclide(s) can be embodied in a gel. One radioactive material useful in the invention is Iotrex™, a sterile single use, non-pyrogenic solution containing sodium 3-($^{125}$I)iodo-4-hydroxybenzenesulfonate ($^{125}$I-HBS), available from Proxima Therapuetics, Inc. of Alpharetta, Ga.

As an alternative method of providing radioactive source material, such material may be coated on, chemically bonded to, or copolymerized with the material forming inner spherical wall 32.

Where the radioactive source material is provided as a fluid or gel within inner spherical wall 32, it may be desirable to provide a solid outer spherical wall 36. Should inner spherical wall 32 rupture, the radioactive source material will be retained within outer spherical wall 36 and will not leak into the patient. For further safety, the burst strength of inner spherical wall 32 may be designed so as to be lower than that of outer spherical wall 36. In this way, inner spherical wall 32 will rupture under stress first, releasing its contents into the larger combined space of the inner and outer volumes 30, 34 and releasing any pressure built up within the inner spherical wall 32 and reducing the risk that radioactive material will spill into the patient. In the event of such a rupture, radioactive fluid could be drained from the apparatus through port 24 by way of lumen 14, and also from port 26 by way of lumen 16.

In a further embodiment, illustrated in FIG. 3, instead of having the inner spatial volume 30 defined by a generally spherical polymeric film wall as at 32, the catheter body member 12 may have a solid spherical radiation emitting material 44 as the inner spatial volume 30. For example, radioactive micro spheres of the type available from the 3M Company of St. Paul, Minn., may be used. This radioactive source can either be preloaded into the catheter at the time of manufacture or loaded into the device after it has been implanted into the space formerly occupied by the excised tumor. The solid radiation emitting material 44 can be inserted through catheter 12 on a wire 46, for example, using an afterloader (not shown). Such a solid radioactive core configuration offers an advantage in that it allows a wider range of radionuclides than if one is limited to liquids. Solid radionuclides that could be used with the delivery device of the present invention are currently generally available as brachytherapy radiation sources. In this embodiment solid spherical inner spatial volume 30 is surrounded by outer spherical wall 36, defining outer spatial volume 34 between the outer spherical wall 36 and the inner spatial volume 30 with the outer spatial volume 34 occupied by a radioactive ray absorbent material, such as air, water or a contrast material.

5

In a further embodiment, illustrated in FIG. 4, inner spatial volume 30, instead of comprising a single solid sphere, may comprise a plurality of radiation emitting particles 44 strategically placed within the inner spatial volume 30 so as to radiate in all directions with a substantially equal intensity. This plurality of radiation emitting particles 44 can be mounted on the distal ends of a plurality of wires 46 that are routed through the catheter body 12 and exit a plurality of ports formed through the wall of the catheter body and reaching the lumen. This arrangement allows the exact positioning of the individual radiation sources 44 to be positioned so as to generate a desired resultant profile.

As illustrated in FIG. 5, it is not essential to the invention that the volumes 30 and 34 have spherical walls, so long as the resultant dosing profile is consistent with the shape of the outer volume 34. That is, the absorbed dose within the target tissue at points equidistant from the surface 36 of the outer spatial volume 34 should be substantially uniform in substantially every direction. Put another way, the three dimensional isodose profiles generated by the radiation source should be substantially similar in shape to the outer spatial volume 34. Where the inner and outer spatial volumes are created by inflatable membranes and one of the volumes contains a fluid radiation source, this can be achieved by ensuring that the spacing between the wall of the inner volume and the wall of the outer volume remain generally constant. In either the concentric spherical embodiment of FIG. 1 or the non-spherical configuration of FIG. 5, this result can be achieved by careful placement of precision blown or molded polymer partitions or by using compressible foams or mechanical spacers in the form of webs joining the inner wall 32 to the outer wall 36. The desired isodose profiles conforming to the shape of the outer spatial volume 34 can also be obtained, for example, by strategic placement of a plurality of radioactive particle sources within the inner spatial volume 30. Where the apparatus of the invention is deployed in soft tissue, it may also be important for the surface 36 of the outer spatial volume 34 to be sufficiently firm so as to force the target tissue to take on the shape of the surface 36 so that the desired relationship between the isodose profiles and the target tissue is achieved.

When used in an interstitial application, the surface of the outer spatial volume 34 must establish a relationship between the inner spatial volume 30 and the target tissue so as to achieve the aforementioned isodose profile, however, the surface of the outer volume need not be a solid material. For example, as illustrated in FIG. 6, the surface of the outer volume 34 could be an expandable cage 48 formed from a shape memory metal, such as nitinol, or a suitable plastic, such as an expandable polyethylene cage. Such a cage can be formed in the desired shape to conform to a particular isodose profile, then be contracted for delivery to the target site in vivo, then expanded to cause the tissue surrounding the surgically resected region to take the appropriate shape. The size of the outer spatial volume 34 generally will correspond approximately to the amount of tissue resected, or be slightly larger, allowing the expandable surface of the outer spatial volume to urge tissue on the surface of the resected region into the appropriate shape to promote an even dose distribution around the outer spatial volume in the target tissue. In typical applications, the outer spatial volume has a diameter of approximately 2 to 4 centimeters. In these same applications, where the radiation source is provided as a fluid within an inner balloon, the inner balloon generally has a diameter of approximately 0.5 to 3 centimeters.

FIGS. 7A–D illustrate the ability of an interstitial brachytherapy apparatus of the invention to deliver a minimum

6

prescribed dose within target tissue while avoiding necrosis inducing radiation "hot spots" in tissue proximate to the apparatus. FIG. 7A illustrates an interstitial brachytherapy apparatus (device A) such as those employed in U.S. Pat. No. 5,429,582, having a single spatial volume 50 filled with a radioactive material in solution. FIG. 7B illustrates an interstitial brachytherapy apparatus (device B) of the invention having a first, inner spatial volume 30 filled with a radioactive material in solution and defined by membrane 32, and a second, outer spatial volume 34 defined by membrane 36 that is substantially evenly spaced apart from membrane 32 in substantially three dimensions. FIG. 7C illustrates an additional interstitial brachytherapy apparatus (device C) of the invention having a solid, spherical radiation source 44 as the inner spatial volume and a spherical outer spatial volume 34 defined by membrane 36.

Each of the devices illustrated in FIGS. 7A–C can be configured to deliver a substantially uniform dose at a given distance into the target tissue from the surface of the outer spatial volume 34 (or from single spatial volume 50 for device A) and to deliver a minimum prescribed dose within a given prescribed depth range into the tissue from the surface of the outer spatial volume 34. However, the different devices provide very different dose profiles as a function of distance from the surface of the outer volume as illustrated in FIG. 7D. FIG. 7D plots the absorbed dose at a given distance into the target tissue from the surface of the outer spatial volume 34 for each of the devices A, B, and C.

Each device can deliver a minimum prescribed dose 52 at a given distance from the surface of the outer spatial volume. For example, device A can readily be configured to provide a dose in a therapeutic range, say between 40 to 60 Gray, at a distance between 0.5 and 1.0 cm from the outer spatial volume for an outer spatial volume having a diameter of 4.0 cm and being in contact with the resection cavity wall. In a typical embodiment, the radioactive source material ranges from approximately 150 to 450 mCi in activity and encompasses most of the target treatment area with a 0.4 to 0.6 Gray/hour isodose contour. At this treatment rate, treatment may be completed in approximately 3 to 7 days, or more commonly, in approximately 3 to 5 days.

In order to reach the minimum prescribed dosage at this distance, however, device A must provide a dose proximate to the surface of the outer spatial volume that is substantially larger than the minimum prescribed dose. For the 4.0 cm diameter outer spatial volume example, the absorbed dosage would be approximately 131 Gray at the outer spatial volume surface. Ideally, radiation therapy should make use the inherent difference in radiosensitivity between the tumor and the adjacent normal tissues to destroy cancerous tissue while causing minimal disruption to surrounding normal tissues. At high doses of radiation, however, the percentage of exposed cells that survive treatment decreases with first-order kinetics in proportion to increasing radiation dose. With increasing cell death comes increasing risk of necrosis or tissue death in healthy tissue that is treated with a high dose of radiation. Accordingly, it is desirable to keep the maximum radiation dose delivered by the brachytherapy apparatus as low as possible while still delivering the desired therapeutic dose to the desired range of tissue.

Comparing the plots A, B, and C, the absorbed dose profile in the space between the 2 cm site and the surface of the outer spatial volume for the devices of the invention is maintained in a much narrower range, preventing over-treatment of body tissue at or close to the surface of the outer volume of the device. Because devices B and C provide an outer spatial volume 34 between the radioactive source and

7

the target tissue, these devices can use hotter radiation sources to reach the minimum prescribed dosage, but take advantage of the distance between the radioactive source and the target tissue provided by the outer spatial volume **34** to reduce or eliminate hot spots in the target tissue.

Returning to the 4.0 cm diameter outer spatial volume example, if the radiation source is contained within an inner spatial volume, say a solid radioactive sphere such as sphere C, the absorbed dose profile becomes much different. If the radiation source is configured to provide the same 60 Gray dose at 0.5 cm into the target tissue, the absorbed dose at the outer spatial volume surface is only 94 Gray—a significant decrease from the 131 Gray dose for a type A device. In addition, the treatment range for the type C device will be extended under this circumstance as compared to the type A device, delivering a 40 Gray dose beyond 1.0 cm into the target tissue and delivering approximately double the dose at 3.0 cm into the target tissue. In one embodiment, the inner and outer spatial volumes are configured to control the absorbed dose at the outer spatial volume surface so that the absorbed dose is no greater than about 100 Gray while providing a therapeutic absorbed dose into the target tissue at the desired range. The capability of the apparatus of the invention to deliver absorbed doses deeper into the target tissue than prior interstitial brachytherapy devices while controlling the dose in proximity to the apparatus to reduce or eliminate the risk of healthy tissue necrosis allows for the use of brachytherapy in a greater number of cases.

The interstitial brachytherapy apparatus of the invention can be used in the treatment of a variety of malignant tumors, and is especially useful for in the treatment of brain and breast tumors.

Many breast cancer patients are candidates for breast conservation surgery, also known as lumpectomy, a procedure that is generally performed on early stage, smaller tumors. Breast conservation surgery is typically followed by postoperative radiation therapy. Studies report that 80% of breast cancer recurrences after conservation surgery occur near the original tumor site, strongly suggesting that a tumor bed "boost" of local radiation to administer a strong direct dose may be effective in killing any remaining cancer and preventing recurrence at the original site. Numerous studies and clinical trials have established equivalence of survival for appropriate patients treated with conservation surgery plus radiation therapy compared to mastectomy.

Surgery and radiation therapy are the standard treatments for malignant solid brain tumors. The goal of surgery is to remove as much of the tumor as possible without damaging vital brain tissue. The ability to remove the entire malignant tumor is limited by its tendency to infiltrate adjacent normal tissue. Partial removal reduces the amount of tumor to be treated by radiation therapy and, under some circumstances, helps to relieve symptoms by reducing pressure on the brain.

A method according to the invention for treating these and other malignancies begins by surgical resection of a tumor site to remove at least a portion of the cancerous tumor and create a resection cavity. Following tumor resection, but prior to closing the surgical site, the surgeon intraoperatively places an interstitial brachytherapy catheter apparatus, having an inner spatial volume and an outer spatial volume as described above but without having the radioactive source material loaded, into the tumor resection cavity. Once the patient has sufficiently recovered from the surgery, the interstitial brachytherapy catheter is loaded with a radiation source. The radioactive source dwells in the catheter until the prescribed dose of radiotherapy is

8

delivered, typically for approximately a week or less. The radiation source is then retrieved and the catheter is removed. The radiation treatment may end upon removal of the brachytherapy apparatus, or the brachytherapy may be supplemented by further doses of radiation supplied externally.

It will be understood that the foregoing is only illustrative of the principles of the invention, and that various modifications can be made by those skilled in the art without departing from the scope and spirit of the invention. All references cited herein are expressly incorporated by reference in their entirety.

What is claimed is:

1. An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location comprising:

  (a) a catheter body member having a proximal end and distal end;

  (b) an inner spatial volume disposed proximate to the distal end of the catheter body member;

  (c) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and

  (d) a radiation source disposed in the inner spatial volume and generating a three-dimensional isodose profile that is substantially similar in shape to the expandable surface element.

2. The apparatus of claim 1, wherein the inner and outer spatial volumes are configured to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.

3. The apparatus of claim 2, wherein a predetermined spacing is provided between said inner spatial volume and the expandable surface element.

4. The apparatus of claim 3, wherein the expandable surface element is adapted to contact tissue surrounding a resected cavity and adapted to conform the tissue to the desired shape of the expandable surface element.

5. The apparatus of claim 2, wherein the minimum prescribed absorbed dose is 40 Gray at a distance of at least one centimeter from the expandable surface element.

6. The apparatus of claim 5, wherein the dose rate in at least a portion of the target tissue is between about 0.4 and 0.6 Gray/hour.

7. The apparatus of claim 5, wherein the maximum absorbed dose delivered to the target tissue is less than 100 Gray.

8. The apparatus of claim 2, wherein the outer spatial volume has a diameter between about two and four centimeters.

9. The apparatus of claim 2, wherein the inner spatial volume is an inner closed, distensible chamber defined by a further radiation transparent wall.

10. The apparatus of claim 9, wherein the radioactive source is in a fluid form.

11. The apparatus of claim 10, wherein the expandable surface element is a solid distensible surface and the outer spatial volume is a closed, distensible chamber and the expandable surface element is a radiation transparent wall.

9

**12.** The apparatus of claim **11**, wherein a burst strength of the distensible chamber defining the outer spatial volume is greater than a burst strength of the chamber defining the inner spatial volume.

**13.** The apparatus of claim **1**, wherein the expandable surface element is an expandable cage.

**14.** The apparatus of claim **13**, wherein the expandable cage comprises a shape memory material.

**15.** The apparatus of claim **14**, wherein the expandable cage comprises nitinol.

**16.** The apparatus of claim **1**, wherein the radiation source is a solid radiation source.

**17.** The apparatus of claim **1**, wherein the radiation source is a plurality of solid radiation sources arranged to provide an isodose profile having a shape substantially similar to the shape of the outer spatial volume.

**18.** The apparatus of claim **2**, wherein the prescribed absorbed dose is delivered to the target tissue in substantially three dimensions.

**19.** A method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location comprising:

(a) surgically creating access to the proliferating tissue in a patient;

(b) surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue;

(c) providing an interstitial brachytherapy apparatus for delivering radioactive emissions comprising:

(i) a catheter body member having a proximal end and distal end;

(ii) an inner spatial volume disposed proximate to the distal end of the catheter body member;

(iii) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and

(iv) a radiation source disposed in the inner spatial volume and generating a three-dimensional isodose profile that is substantially similar in shape to the expandable surface element;

(d) intraoperatively placing the interstitial brachytherapy apparatus into the resection cavity until a prescribed absorbed dose has been delivered to tissue surrounding the apparatus; and

(e) removing the interstitial brachytherapy apparatus.

**20.** The method of claim **19**, further including placing the radioactive source into the interstitial brachytherapy apparatus after the step of placing the apparatus into the tumor resection cavity.

**21.** The method of claim **19**, further including removing the radioactive source from the interstitial brachytherapy apparatus before the step of removing the apparatus.

**22.** The method of claim **19**, wherein the proliferating tissue is a patient's brain.

**23.** The method of claim **19**, wherein the proliferating tissue is a patient's breast.

**24.** The method of claim **19**, further including configuring the inner and outer spatial volumes to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.

10

**25.** The method of claim **24**, further including providing a predetermined spacing between said inner spatial volume and the expandable surface element.

**26.** The method of claim **25**, wherein the expandable surface element is adapted to contact tissue surrounding a resected cavity and adapted to conform the tissue to the desired shape of the expandable surface element.

**27.** The method of claim **24**, wherein the minimum prescribed absorbed dose is 40 Gray at a distance of at least one centimeter from the expandable surface element.

**28.** The method of claim **27**, wherein the dose rate in at least a portion of the target tissue is between about 0.4 and 0.6 Gray/hour.

**29.** The method of claim **27**, wherein the maximum absorbed dose delivered to the target tissue is less than 100 Gray.

**30.** The method of claim **24**, wherein the outer spatial volume has a diameter between about two and four centimeters.

**31.** The method of claim **24**, wherein the step of configuring the inner and outer spatial volumes includes expanding the inner and outer spatial volumes.

**32.** A method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location comprising:

(a) surgically creating access to the proliferating tissue in a patient;

(b) surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue;

(c) providing an interstitial brachytherapy apparatus for delivering radioactive emissions comprising:

(i) a catheter body member having a proximal end and distal end;

(ii) an inner spatial volume disposed proximate to the distal end of the catheter body member;

(iii) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and

(iv) a radiation source disposed in the inner spatial volume;

(d) intraoperatively placing the interstitial brachytherapy apparatus into the resection cavity;

(e) configuring the inner and outer spatial volumes to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface; and

(f) removing the interstitial brachytherapy apparatus.

**33.** The method of claim **32**, wherein the step of configuring the inner and outer spatial volumes includes expanding the inner and outer spatial volumes.

**34.** A method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location comprising:

(a) surgically creating access to the proliferating tissue in a patient;

(b) surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue;

11

(c) providing an interstitial brachytherapy apparatus for delivering radioactive emissions comprising:

  (i) a catheter body member having a proximal end and distal end;

  (ii) an inner spatial volume disposed proximate to the distal end of the catheter body member;

  (iii) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and

  (iv) a radiation source disposed in the inner spatial volume;

(d) intraoperatively placing the interstitial brachytherapy apparatus into the resection cavity;

(e) adapting the expandable surface element to contact tissue surrounding the resection cavity to conform the tissue to the desired shape of the expandable surface element;

(f) delivering a prescribed absorbed dose to tissue surrounding the apparatus; and

(g) removing the interstitial brachytherapy apparatus.

**35**. The method of claim **34**, wherein the step of adapting the expandable surface element includes expanding the outer surface volume.

12

**36**. An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location comprising:

  (a) a catheter body member having a proximal end and distal end;

  (b) an inner spatial volume disposed proximate to the distal end of the catheter body member;

  (c) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and

  (d) a radiation source disposed in the inner spatial volume;

wherein the inner and outer spatial volumes are configured to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.

\* \* \* \* \*

# EXHIBIT C

(12) **United States Patent**
Winkler et al.

(10) Patent No.: **US 6,482,142 B1**
(45) Date of Patent: **Nov. 19, 2002**

(54) **ASYMMETRIC RADIATION DOSING APPARATUS AND METHOD**

(75) Inventors: **Rance A. Winkler**, Atlanta; **Timothy J. Patrick**, Alpharetta, both of GA (US)

(73) Assignee: **Proxima Therapeutics, Inc.**, Alpharetta, GA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/464,727**

(22) Filed: **Dec. 16, 1999**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/293,524, filed on Apr. 15, 1999, which is a continuation-in-part of application No. 08/900,021, filed on Jul. 24, 1997, now Pat. No. 5,913,813.

(51) Int. Cl.$^7$ ................................................. **A61N 5/00**
(52) U.S. Cl. ................................................. **600/3**
(58) Field of Search ........................................ 600/1–8

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,706,652 A | 11/1987 | Horowitz | 128/1.2 |
| 4,754,745 A | 7/1988 | Horowitz | 128/1.2 |
| 5,422,926 A | 6/1995 | Smith et al. | 378/121 |
| 5,562,594 A | 10/1996 | Weeks | 600/3 |
| 5,724,400 A | 3/1998 | Swerdloff et al. | 378/65 |
| 5,800,333 A | 9/1998 | Liprie | 600/3 |
| 5,803,895 A | 9/1998 | Kronholz et al. | 600/3 |
| 5,851,182 A | 12/1998 | Sahadevan | 600/407 |
| 5,863,284 A | 1/1999 | Klein | 600/3 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| WO | WO 97/19723 | 6/1997 | A61N/5/00 |

OTHER PUBLICATIONS

Ravinder, Nath, Ph.D. et al., Development of an $^{241}$ Am Applicator For Intracavitary Irradiation of Gynecologic Cancers, I.J. Radiation Oncology, Biology, Physics, May 1988, vol. 14, No. 5, pp. 969–978.

*Primary Examiner*—John P. Lacyk
(74) *Attorney, Agent, or Firm*—Thomas J. Engellenner; Ronald E. Cahill; Nutter McClennen & Fish LLP

(57) **ABSTRACT**

An interstitial brachytherapy apparatus of the invention delivers radioactive emissions in an asymmetric fashion to target tissue surrounding a surgical extraction site. The apparatus includes an expandable outer surface element defining an apparatus spatial volume, a radiation source disposed within the apparatus volume, and a means for providing predetermined asymmetric isodose curves within the target tissue. In one configuration, asymmetric isodose curves are created in the target tissue by shaping or locating the radiation source so as to be asymmetrically placed with respect to a longitudinal axis of the apparatus. In other configurations, asymmetric radiopaque shielding is provided between the radiation source and the target tissue. A surgical procedure using the apparatus is also described.

**14 Claims, 4 Drawing Sheets**





FIG. 1

FIG. 2



FIG. 3



FIG. 3A



FIG. 4



FIG. 5



FIG. 6



FIG. 7



FIG. 8



FIG. 9

1

## ASYMMETRIC RADIATION DOSING APPARATUS AND METHOD

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of co-pending U.S. patent application Ser. No. 09/293,524, filed Apr. 15, 1999, pending which is a continuation-in-part U.S. patent application Ser. No. 08/900,021, filed Jul. 24, 1997 (now issued as U.S. Pat. No. 5,913,813 to Williams et al.); the contents of these applications are specifically incorporated herein by reference.

### BACKGROUND OF THE INVENTION

The, invention relates generally to an apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus for the treatment of such disorders in the body by the application of radiation.

Malignant tumors are often treated by surgical resection of the tumor to remove as much of the tumor as possible. Infiltration of the tumor cells into normal tissue surrounding the tumor, however, can limit the therapeutic value of surgical resection because the, infiltration can be difficult or impossible to treat surgically. Radiation therapy can be used to supplement surgical resection by targeting the residual tumor margin after resection, with the goal of reducing its size or stabilizing it. Radiation therapy can be administered through one of several methods, or a combination of methods, including external-beam radiation, stereotactic radiosurgery, and permanent or temporary interstitial brachytherapy. The term "brachytherapy," as used herein, refers to radiation therapy delivered by a spatially confined radioactive material inserted into the body at or near a tumor or other proliferative tissue disease site. Owing to the proximity of the radiation source, brachytherapy offers the advantage of delivering a more localized dose to the target tissue region.

For example, brachytherapy is performed by implanting radiation sources directly into the tissue to be treated. Brachytherapy is most appropriate where 1) malignant tumor regrowth occurs locally, within 2 or 3 cm of the original boundary of the primary tumor site; 2) radiation therapy is a proven method for controlling the growth of the malignant tumor; and 3) there is a radiation dose-response relationship for the malignant tumor, but the dose that can be given safely with conventional external beam radiotherapy is limited by the tolerance or normal tissue. In brachytherapy, radiation doses are highest in close proximity to the radiotherapeutic source, providing a high tumor dose while sparing surrounding normal tissue. Interstitial brachytherapy is useful for treating malignant brain and breast tumors, among others.

Interstitial brachytherapy is traditionally carried out using radioactive seeds such as $^{125}I$ seeds. These seeds, however, produce inhomogeneous dose distributions. In order to achieve a minimum prescribed dosage throughout a target region of tissue, high activity seeds must be used, resulting in very high doses being delivered in some regions in proximity to the seed or seeds which can cause radionecrosis in healthy tissue. One attempt to address this problem, at least with respect to limiting dosages to critical organs near the radioactive seed site, has been to provide a shield directly on a portion of the seed or on an applicator that holds the seed to shield the particularly sensitive tissue. (E.g., Nath et al., Development of an $^{241}Am$ Applicator for Intracavitary Irradiation of Gynecologic Cancers, *Intl. J.*

2

*Radiation Oncology Biol. Phys.*, Vol., 14, pp. 969–978.) While this approach may be appropriate for some applications, it may still be overly "hot" for treating proximate tissue on the unshielded side of the seed, while not providing an effective dose on the shielded side of the seed.

Williams U.S. Pat. No. 5,429,582, entitled "Tumor Treatment," describes a method and apparatus for treating tissue surrounding a surgically excised tumor with radioactive emissions to kill any cancer cells that may be present in the tissue surrounding the excised tumor. In order to implement the radioactive emissions, Williams provides a catheter having an inflatable balloon at its distal end that defines a distensible reservoir. Following surgical removal of a tumor, the surgeon introduces the balloon catheter into the surgically created pocket left following removal of the tumor. The balloon is then inflated by injecting a fluid having one or more radionuclides into the distensible reservoir via a lumen in the catheter.

The apparatus described in Williams solves some of the problems found when using radioactive seeds for interstitial brachytherapy, but leaves some problems unresolved. The absorbed dose rate at a target point exterior to a radioactive source is inversely proportional to the square of the distance between the radiation source and the target point. s a result, where the radioactive source has sufficient activity to deliver a prescribed dose, say 2 centimeters into the target tissue, the tissue directly adjacent the wall of the distensible reservoir, where the distance to the radioactive source is very small, may still be overly "hot" to the point where healthy tissue necrosis may result. In general, the amount of radiation desired by the physician is a certain minimum amount that is delivered to a region up to about two centimeters away from the wall of the excised tumor. It is desirable to keep the radiation that is delivered to the tissue in the target treatment region within a narrow absorbed dose range to prevent over-exposure to tissue at or near the reservoir wall, while still delivering the minimum prescribed dose at the maximum prescribed distance from the reservoir wall. It is also desirable, at least in some applications, to provide these advantages while tailoring the radiation dosage to avoid fully dosing sensitive tissue or to reduce the amount of radiation that escapes the patient's body.

There its still a need for an instrument which can be used to deliver radiation from a radioactive source to target tissue within the human body with a desired intensity and at a predetermined distance from the radiation source without over-exposure of body tissues disposed between the radiation source and the target, and with the ability to shape the radiation dose to protect sensitive tissue or to protect against radiation exposure outside of the patient's body which may affect healthcare providers or others who might come close to the patient.

### SUMMARY OF THE INVENTION

The present invention solves the problems described above by providing an interstitial brachytherapy apparatus for delivering radioactive emissions in an asymmetric fashion to target tissue surrounding a surgical extraction site. The apparatus includes an expandable outer surface element defining an apparatus spatial volume, a radiation source disposed within the apparatus volume, and a means for providing predetermined asymmetric isodose profile within the target tissue.

In one configuration, asymmetric isodose curves are created in the target tissue by shaping or locating the radiation source so as to be asymmetrically placed with respect to a

3

longitudinal axis of the apparatus. In one example of an apparatus having this configuration, an inner volume containing a liquid radioisotope is asymmetrically placed within the apparatus volume so as to result in an isodose profile in the target tissue that is asymmetric about the longitudinal axis of the apparatus.

In another example, the radiation source comprises a plurality of spaced apart solid radioactive particles disposed within the apparatus volume and arranged to provide a predetermined asymmetric isodose curve within the target tissue. In one particular example, the plurality of spaced apart radioactive particles are provided on a single elongate member that is shaped so that some of the radioactive particles are farther from the longitudinal axis of the apparatus than others. In other particular examples, a plurality of members carrying radioactive particles are provided with at least one of the members being shaped so as to place at least one radioactive particle asymmetrically with respect to the longitudinal axis of the apparatus.

An interstitial brachytherapy apparatus of the invention may also be implemented in a device having an expandable outer surface defining an apparatus volume, a radiation source disposed within and spaced apart from the expandable outer surface, and at least one asymmetric radiation shield spaced apart from the radiation source, the asymmetric radiation shielding resulting in predetermined asymmetric isodose curves within the target tissue. In one embodiment, radiopaque shielding is provided on a portion of the expandable outer surface. In another embodiment, the radiation source is encompassed within a second, inner surface within the apparatus volume, with radiopaque shielding provided on at least a portion of the inner surface. In still further embodiments, one or more radiation shields are spaced apart from the radiation source and within the apparatus volume to achieve the desired asymmetric isodose distribution within the target tissue.

The invention also provides a method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location. The method includes surgically creating access to the proliferating tissue within a patient and surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue. An interstitial brachytherapy apparatus for delivering radioactive emissions as described above is then provided and intra-operatively placed into the resection cavity. After a prescribed absorbed dose has been delivered to tissue surrounding the apparatus, the apparatus is removed. The radioactive source material may be placed into the interstitial brachytherapy apparatus after the apparatus is placed in the resection cavity, and may be removed before the apparatus is removed. The method has particular applications to brain and breast cancers.

## DESCRIPTION OF THE DRAWINGS

The foregoing features, objects and advantages of the invention will become apparent to those skilled in the art from the following detailed description of a preferred embodiment, especially when considered in conjunction with the accompanying drawings in which:

FIG. 1 is a side view of an interstitial brachytherapy apparatus of the invention for delivering asymmetric radioactive doses to body tissue;

FIG. 2 is a cross-sectional view taken along the line 2—2 in FIG. 1;

FIG. 3 is a side view of an additional embodiment of an interstitial brachytherapy apparatus of the invention;

4

FIG. 3A is an end view of the interstitial brachytherapy apparatus of FIG. 3;

FIG. 4 is a side view of an additional embodiment of an interstitial brachytherapy apparatus of the invention;

FIG. 5 is a side view of an interstitial brachytherapy apparatus of the invention configured for use with a liquid radiation source.

FIG. 6 is a side view of an interstitial brachytherapy device of the invention employing radiopaque coatings;

FIG. 7 is a side view of an interstitial brachytherapy device of the invention employing radiopaque coating and a liquid radiation source; and

FIGS. 8 and 9 are end views of interstitial brachytherapy devices of the invention employing radiopaque shields.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

A surgical instrument 10 for providing radiation treatment to proliferative tissue in a living patient is illustrated in FIG. 1. Surgical instrument 10 includes a tubular body member 12 having first and second lumens 14 and 16 (FIG. 2) extending from proximal ports 18 and 20 in a molded hub 22. The first lumen 14 carries a radioactive source 24 and second lumen 16 communicates with inflation port 26 formed through the side wall of the tube 12.

Affixed to the tubular body 12 proximate the distal end 28 thereof is an outer spatial volume 30 defined by an outer polymeric film barrier 32 that is appropriately spaced from the radioactive source 24. Outer volume 30 encompasses inflation port 26. With no limitation intended, the distensible polymeric film walls may comprise a biocompatible, radiation resistant polymer, such as silastic rubbers, polyurethanes, polyethylene, polypropylene, polyester, or PVC. The outer spatial volume 30 may be filled with air, saline or, alternatively, a radiation absorbing fluid, such as a contrast media used in angiography. Alternatively, the surface of outer volume 30 need not be a solid material. For example the surface of the outer volume 30 could be an expandable cage formed from a shape memory metal, such as nitinol, or a suitable plastic, such as an expandable polyethylene cage. Such a cage can be formed in the desired shape to conform to a particular isodose profile, contracted for delivery to the target site in vivo, then expanded to cause the tissue surrounding the surgically resected region to take the appropriate shape. The size of the outer spatial volume 30 generally will correspond approximately to the amount of tissue resected. For some applications, the size of the outer spatial volume 30 may be slightly smaller than the resected volume while for other applications, the outer spatial volume will be slightly larger than the resected volume, allowing the expandable surface of the outer spatial volume to urge tissue on the surface of the resected region into the appropriate shape to promote an even dose distribution around the outer spatial volume in the target tissue. In typical applications, the outer spatial volume has a diameter of approximately 2 to 6 centimeters.

Radiation source 24 comprises a wire 34 having one or more solid radioactive particles 36 located on the wire 34. For example, radioactive micro spheres of the type available from the 3M Company of St. Paul, Minn., may be used as the solid radioactive particles. Such a solid radioactive particle configuration offers an advantage in that it allows a wider range of radionuclides than if one is limited to liquids. Solid radionuclides that could be used with the delivery device of the present invention are currently generally available as brachytherapy radiation sources. Examples of

5

radioactive materials which can be selected by a person of ordinary skills in the art for use with the present invention may be found in Tables 1 to 4 of PCT Publication WO 97/19723, which is hereby incorporated by reference.

The, radioactive source **24** can either be preloaded into the catheter at the time of manufacture, or loaded into the device after it has been implanted into the space formerly occupied by the excised tumor. If loaded after implantation, the solid radiation emitting material **36** can be inserted through lumen **14** on a wire **34**, for example using an afterloader (not shown).

Radiation source **24** has an asymmetric configuration with respect to a longitudinal axis **38** of the instrument **10**. That is, radiation source **24** is shaped so as to result in an isodose profile **40** that varies radially about the longitudinal axis **38**. More simply, the isodose profile **40** of FIG. 1 has a shorter radius from the longitudinal axis **38** on the top side of the instrument **10** as shown in FIG. 1 than on the bottom side. The asymmetrically shaped isodose curve **40** may be created by providing a plurality of solid radioactive particles **36** on a curved wire **34** in a spaced apart relationship. This configuration will result in certain of the solid radioactive particles **36** being farther from the longitudinal axis **38** of the instrument **10** than others, and will result in the illustrated asymmetric isodose profile **40**. One way to provide the illustrated radioactive source **24** configuration is to form wire **34** from a solid or tubular shape memory alloy such as nickel-titanium alloys known in the art to have such properties. Wire **34** can then be preformed to the desired shape, can be compressed into a substantially straight configuration to pass through lumen **14**, and will resume its desired shape once inside volume **30** where wire **34** will be free from steric constraints imposed inside the lumen **14**. The resulting asymmetric isodose curve **40** can be further tailored by using solid radioactive particles **36** having differing specific activities to achieve the desired dosing.

In, one embodiment, volume **30** and barrier **32** act to separate target tissue from the radiation source **24**. Ideally, radiation therapy should make use the inherent difference in radiosensitivity between the tumor and the adjacent normal tissues to destroy cancerous tissue while causing minimal disruption to surrounding normal tissues. At high doses of radiation, however, the percentage of exposed cells that survive treatment decreases with first-order kinetics in proportion to increasing radiation dose. With increasing cell death comes increasing risk of necrosis or tissue death in healthy tissue that is treated with a high dose of radiation. Accordingly, it is desirable to keep the maximum radiation dose delivered by the brachytherapy apparatus as low as possible while still delivering the desired therapeutic dose to the desired range of tissue. One method for achieving this result is to provide a "hotter" radiation source in a spaced apart relationship to the target tissue. In this way, because the intensity of the radiation emitted by a source drops with the square of the distance from the source, the effective dosage may be maintained below necrosis levels in target tissue closest to the interstitial brachytherapy apparatus while providing the required dosage to a greater depth into the target tissue. (See, e.g., U.S. Pat. No. 5,913,813 which is hereby incorporated by reference in its entirety.) The capability of the apparatus of the invention to deliver absorbed doses deeper into the target tissue than prior interstitial brachytherapy devices while controlling the dose in proximity to the apparatus to reduce or eliminate the risk of healthy tissue necrosis allows for the use of brachytherapy in a greater number of cases.

For example, it is desirable to provide an interstitial brachytherapy device configured to provide a dose in a

6

therapeutic range, say between 40 to 60 Gray, at a distance between 0.5 and 1.0 cm from the outer spatial volume for an outer spatial volume having a diameter of 4.0 cm and being in contact with the resection cavity wall. In a typical embodiment, the radioactive source material ranges from approximately 150 to 450 mCi in activity and encompasses most of the target treatment area with a 0.4 to 0.6 Gray/hour isodose contour. At this treatment rate, treatment may be completed in approximately 3 to 7 days, or more commonly, in approximately 3 to 5 days.

In some applications, the desired dosing profile is consistent with the shape of the outer volume **30**. That is, the absorbed dose within the target tissue at points equidistant from the surface **32** of the outer spatial volume **30** should be substantially uniform in substantially every direction. Put another way, the three dimensional isodose profiles generated by the radiation source should be substantially similar in shape to the outer spatial volume **30**. Where the apparatus of the invention is deployed in soft tissue, it may also be important for the surface **32** of the outer spatial volume **30** to be sufficiently firm so as to force the target tissue to take on the shape of the surface **30** so that the desired relationship between the isodose profiles and the target tissue is achieved.

While the interstitial brachytherapy device **10** of FIG. 1 may employ these techniques to positive effect, this device specifically alters the isodose profile for applications where particularly sensitive tissue or other concerns result in a desire to limit the dosage on one or more sides of the device as illustrated by isodose curve **40**.

In a further embodiment of the brachytherapy device **50** of the invention, illustrated in FIG. 3, three solid radiation particles **52** are provided in a linear portion **54** of radiation source **56**, while two additional radiation particles **52** are provided on co-planar extending portions **58**, **60** of radiation source **56**. An end view of the device **50** of FIG. 3 is shown in FIG. 3A with extending portions **58**, **60** provided in a single plane **62**, and resulting in isodose profile **64**. A second inner, expandable surface **66** can also be provided within outer surface **68**; the inner surface **66** enclosing the entirety of radiation source **56**.

By providing extending portions **58**, **60** having radioactive particles in the indicated co-planar relationship, areas of reduced dosage can be created on opposed sides of the device while maintaining symmetric dosing in all other directions. Of course, the number of sources and their configuration can be changed to create a desired asymmetric dosage. For example, an additional source could be added, for example above plane **62**, to result in a symmetric isodose profile in all directions except the direction below the plane **62** which would have a lower dosage.

An additional device **80** of the invention, shown in FIG. 4, includes a radiation source **82** that is made up of three wires **84**, **86**, **88**, each having a plurality of solid radiation particles. Wire **86** is a straight wire extending along the longitudinal axis **90** of the device, while wires **84**, **88** each curve as wire **34** described above with respect to FIG. 1. Wires **84**, **88** are coplanar, resulting in an isodose profile **92** that is similar to isodose profile **64** of FIG. 3A. That is, the isodose profile will be symmetric in the plane in which the wires **84**, **88** are disposed, but will have areas of reduced dosage in directions transverse to that plane (i.e., in FIG. 4, in the directions into and out of the page). As with the device **50** of FIGS. 3 and 3A, device **80** can be configured with more or fewer wires **84**, **86**, **88**, and can be provided in configurations other than the depicted co-planar configuration in order to achieve desired asymmetric isodose profiles.

7

The asymmetric dosing effect achieved by the devices described above can also be achieved using a liquid radiation source. For example, device **100**, illustrated in FIG. **5**, has an outer surface **102** defining an outer volume **104** and an inner surface **106** defining an inner volume **108**. The inner surface **106** is asymmetrically shaped or located with respect to the longitudinal axis **110** of the device **100** so as to result in the desired asymmetric dosing when the inner volume **108** is filled with a radioactive fluid. The inner volume **108** is spaced apart from the outer surface **102** and can be filled with a material containing a predetermined radionuclide, for example, I-125, I-131, Yb-169 or other source of radiation, such as radionuclides that emit photons, beta particles, gamma radiation, or other therapeutic rays. The radioactive material contained within the inner volume **108** can be a fluid made from any solution of radionuclide(s), e.g., a solution of Ir-192, I-125 or I-131. A radioactive fluid can also be produced using a slurry of a suitable fluid containing small particles of solid radionuclides, such as Au-198, Y-90. Moreover, the radionuclide(s) can be embodied in a gel. One radioactive material useful in the invention is lotrex™, a sterile single use, non-pyrogenic solution containing sodium 3-($^{125}$I)iodo-4-hydroxybenzenesulfonate ($^{125}$I-HIBS), available from Proxima Therapeutics, Inc. of Alpharetta, Ga. The inner volume **108** may be filled with radioactive fluid through port **112**. Similarly, outer volume **104** can be filled on inflated using port **114**.

A desired asymmetric dosing profile having the dosing characteristics described above may also be created by using asymmetric shielding between the radiation source and the target tissue as illustrated in FIGS. **6** through **9**. In the device **120** of FIG. **6**, a balloon **122** is located on the distal end of catheter **124**. Radioactive particles **126** are disposed along the longitudinal axis **128** of the device. A portion of the surface, either inner or outer, of balloon **122** is coated with a radiopaque material **130** to result in asymmetric isodose curve **132**. Radiopaque materials suitable for coating onto a polymeric surface of balloon **122** include, for example, barium, tungsten, bismuth, tantalum and tin.

A further device **140** having radiopaque shielding **142** is illustrated in FIG. **7**. Device **140** includes an outer volume surface **144** and an inner volume surface **146**. Inner surface **146** may contain a liquid radiation source, or may enclose one or more solid particles as used in device **120** (FIG. **6**). In device **140**, the radiopaque material **142** is coated onto a portion of either the inner or outer side of the inner volume surface **146**, resulting in a desired asymmetric isodose profile **148**.

Additional devices **160**, **180** of the invention having radiation shielding **162** are illustrated in FIGS. **8** and **9**, respectively. In these devices **160**, **180**, one or more radiation shields **162** are provided between and spaced apart from a radiation source (not shown) located along a longitudinal axis **164** of the device and the target tissue, which will be located outside of expandable surface **166**. The radiation source can include a liquid or a solid radiation source as described above. Shields **162** can be formed from radiopaque materials including those described above with respect to the radiopaque coating and can extend longitudinally from a base on the device located within the expandable surface **166**.

As shown in FIG. **8**, device **160** has two radiation shields **162** on opposed sides of catheter **168**. This configuration results in lower radiation dosing on the two sides of the device **160** on which the shields **162** are located as shown by isodose curve **170**. Device **180** (FIG. **9**) has a single radiation shield **162** resulting in an asymmetric isodose curve **182**

8

as shown. A person or ordinary skill in the art will recognize that other configurations may be employed to achieve desired isodose curves.

The interstitial brachytherapy apparatus of the invention can be used in the treatment of a variety of malignant tumors, and is especially useful for in the treatment of brain and breast tumors.

Many breast cancer patients are candidates for breast conservation surgery, also known as lumpectomy, a procedure that is generally performed on early stage, smaller tumors. Breast conservation surgery is typically followed by postoperative radiation therapy Studies report that 80% of breast cancer recurrences after conservation surgery occur near the original tumor site, strongly suggesting that a tumor bed "boost" of local radiation to administer a strong direct dose may be effective in killing any remaining cancer and preventing recurrence at the original site. The apparatus described herein can be used for either the primary or boost therapy. Numerous studies and clinical trials have established equivalence of survival for appropriate patients treated with conservation surgery plus radiation therapy compared to mastectomy.

Surgery and radiation therapy are also the standard treatments for malignant solid brain tumors. The goal of surgery is to remove as much of the tumor as possible without damaging vital brain tissue. The ability to remove the entire malignant tumor is limited by its tendency to infiltrate adjacent normal tissue. Partial removal reduces the amount of tumor to be treated by radiation therapy and, under some circumstances, helps to relieve symptoms by reducing pressure on the brain.

A method according to the invention for treating these and other malignancies begins by surgical resection of a tumor site to remove at least a portion of the cancerous tumor and create a resection cavity. Following tumor resection, but prior to closing the surgical site, the surgeon intraoperatively places an interstitial brachytherapy catheter apparatus, having an inner spatial volume and an outer spatial volume as described above but without having the radioactive source material loaded, into the tumor resection cavity. Once the patient has sufficiently recovered from the surgery, the interstitial brachytherapy catheter is loaded with a radiation source. The radioactive source dwells in the catheter until the prescribed dose of radiotherapy is delivered, typically for approximately a week or less. The radiation source is then retrieved and the catheter is removed. The radiation treatment may end upon removal of the brachytherapy apparatus, or the brachytherapy may be supplemented by further doses of radiation supplied externally.

It will be understood that the foregoing is only illustrative of the principles of the invention, and that various modifications can be made by those skilled in the art without departing from the scope and spirit of the invention, including, but not limited to, combinations of elements from different embodiments found herein. All references cited herein are expressly incorporated by reference in their entirety.

What is claimed is:

1. An interstitial brachytherapy apparatus for treating target tissue surrounding a surgical extraction comprising:

an expandable outer surface defining a three-dimensional apparatus volume configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated;

9

10

a radiation source disposed completely within the expandable outer surface and located so as to be spaced apart from the apparatus volume, the radiation source further being asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume.

**2**. A surgical apparatus for providing radiation treatment to target tissue comprising:

an expandable outer surface defining an apparatus volume;

a radiation source replaceably disposable within the expandable outer surface, the radiation source comprising a plurality of solid radiation sources arranged to provide predetermined asymmetric isodose curves within the target tissue, the plurality of solid radiation sources being provided in a spaced apart relationship on a single elongate member, the single elongate member being shaped to provide asymmetric placement of the spaced apart solid radiation sources with respect to a longitudinal axis through the apparatus volume.

**3**. The apparatus of claim **2**, further comprising a catheter in communication with the apparatus volume, the elongate member extending through the catheter into the apparatus volume.

**4**. The apparatus of claim **3**, wherein the elongate member is formed of a shape memory alloy, the elongate member being shaped to provide asymmetric placement of the spaced apart solid radiation sources, taking on a substantially straight shape while being inserted through the catheter to the apparatus volume, and resuming an asymmetric shape when extended into the apparatus volume.

**5**. A surgical apparatus for providing radiation treatment to target tissue comprising:

an expandable outer surface defining an apparatus volume;

a radiation source replaceably disposable within the expandable outer surface, the radiation source comprising a plurality of solid radiation sources arranged to provide predetermined asymmetric isodose curves within the target tissue, wherein at least one of the plurality of solid radiation sources has a different specific activity from at least one other solid radiation source.

**6**. A surgical apparatus for providing radiation treatment to target tissue comprising:

an expandable outer surface defining an apparatus volume;

a radiation source replaceably disposable within the expandable outer surface, the radiation source comprising a plurality of solid radiation sources arranged to provide predetermined asymmetric isodose curves within the target tissue, the plurality of radiation sources being provided on at least two elongate members extending into the apparatus volume, at least one of the elongate members being shaped to provide asymmetric placement of a radiation source with respect to a longitudinal axis through the apparatus volume.

**7**. The apparatus of claim **6**, wherein each of the at least two elongate members includes a plurality of solid radiation sources provided in a spaced apart relationship.

**8**. The apparatus of claim **1**, wherein the expandable outer surface is sufficiently rigid to deform the target tissue into the shape of the expandable outer surface, causing the predetermined asymmetric isodose curves to penetrate into the target tissue to a prescribed depth.

**9**. An interstitial brachytherapy apparatus for treating target tissue surrounding a surgical extraction comprising:

an expandable outer surface having a base and defining a three-dimensional apparatus volume configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated;

a radiation source disposed completely within and spaced apart from the expandable outer surface; and

an asymmetric radiation shield spaced apart from the radiation source, the asymmetric radiation shield providing predetermined asymmetric isodose curves with respect to the apparatus volume.

**10**. The apparatus of claim **9**, wherein the asymmetric radiation shield comprises a radio-opaque material disposed on only a portion of the expandable outer surface.

**11**. The apparatus of claim **10**, wherein the expandable outer surface comprises an inflatable balloon.

**12**. The apparatus of claim **11**, wherein the radiation shield comprises a barium material disposed a portion of the inflatable balloon.

**13**. The apparatus of claim **9**, further comprising at least one radiation shield extending from the base of the expandable outer surface toward an opposite end of the expandable surface, the shield being in between and spaced apart from the radiation source and the expandable outer surface, the shield forming a radio-opaque barrier between a portion of the radiation source and the target tissue.

**14**. The apparatus of claim **13**, wherein the radiation shield comprises two shields provided on opposite sides of the radiation source.

* * * * *





MAY 1 8 2007

# 5. 510(K) SUMMARY

| | |
|---|---|
| **Prepared date** | April 20, 2007 |
| **510(k) owner** | **SenoRx, Inc.**<br>11 Columbia<br>Aliso Viejo, CA 92656<br>P. 949.362.4800   F. 949.362.3200 |
| **Contact person** | Eben Gordon |
| **Device name** | SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy |
| **Common name** | Multi-lumen balloon source applicator |
| **Classification name** | Remote controlled radionuclide source applicator |
| **CFR classification** | 21 CFR 892.5700        90 JAQ |
| **Predicate device** | Adjustable Multi-Catheter Source Applicator (K062241)<br>MammoSite Radiation Therapy System (K041929) |
| **Decision date** | 11/9/2006 (K062241)<br>8/26/2004 (K041929) |
| **Device description** | The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire. Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen. The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively. |
| **Indications for use** | The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer. |
| **Summary of substantial equivalence** | Extensive preclinical testing was conducted to evaluate and characterize the performance of the SenoRad Multi-Lumen Balloon Source Applicator. Preclinical studies conducted included in vitro laboratory studies to demonstrate that the SenoRad applicator performed as intended under simulated use conditions. Biocompatibility testing was performed to |

12



demonstrate that the materials meet ISO 10993-1 requirements. The dosimetry of the SenoRad applicator was characterized. Based on these findings, it was concluded that the SenoRad applicator could deliver an equivalent radiation dose as the current brachytherapy applicators.

The SenoRad applicator has the following similarities to the previously cleared predicate devices: same indications for use; same intended use; same intended treatment site; same operating principle; same technological characteristics; equivalent dosimetric characteristics; and same sterilization method. The materials of construction vary in a manner that has no impact on device safety.

In summary, the SenoRad Multi-Lumen Balloon Source Applicator as described in this submission is substantially equivalent to the predicate devices.

13

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
9200 Corporate Blvd.
Rockville MD  20850

SenoRx, Inc.                                    MAY 1 8 2007
% Mr. Mark Job
Responsible Third Party Official
Regulatory Technology Services LLC
1394 25th Street NW
BUFFALO MN  55313

Re:  K071229
     Trade/Device Name:  SecoRad Multi-Lumen Ballon Source Applicator for Brachytherapy
     Regulation Number:  21 CFR §892.5700
     Regulation Name:  Remote controlled radio-nuclide applicator system
     Regulatory Class:  II
     Product Code:  JAQ
     Dated:  May 2, 2007
     Received:  May 3, 2007

Dear Mr. Job:

We have reviewed your Section 510(k) premarket notification of intent to market the device
referenced above and have determined the device is substantially equivalent (for the indications for
use stated in the enclosure) to legally marketed predicate devices marketed in interstate commerce
prior to May 28, 1976, the enactment date of the Medical Device Amendments, or to devices that
have been reclassified in accordance with the provisions of the Federal Food, Drug, and Cosmetic
Act (Act) that do not require approval of a premarket approval application (PMA).  You may,
therefore, market the device, subject to the general controls provisions of the Act.  The general
controls provisions of the Act include requirements for annual registration, listing of devices, good
manufacturing practice, labeling, and prohibitions against misbranding and adulteration.

If your device is classified (see above) into either class II (Special Controls) or class III (Premarket
Approval), it may be subject to such additional controls.  Existing major regulations affecting your
device can be found in the Code of Federal Regulations, Title 21, Parts 800 to 898.  In addition, FDA
may publish further announcements concerning your device in the Federal Register.



*Protecting and Promoting Public Health*

Page 2 --

Please be advised that FDA's issuance of a substantial equivalence determination does not mean that FDA has made a determination that your device complies with other requirements of the Act or any Federal statutes and regulations administered by other Federal agencies. You must comply with all the Act's requirements, including, but not limited to: registration and listing (21 CFR Part 807); labeling (21 CFR Part 801); good manufacturing practice requirements as set forth in the quality systems (QS) regulation (21 CFR Part 820); and if applicable, the electronic product radiation control provisions (Sections 531-542 of the Act); 21 CFR 1000-1050.

This letter will allow you to begin marketing your device as described in your Section 510(k) premarket notification. The FDA finding of substantial equivalence of your device to a legally marketed predicate device results in a classification for your device and thus, permits your device to proceed to the market.

If you desire specific advice for your device on our labeling regulation (21 CFR Part 801), please contact the Office of Compliance at one of the following numbers, based on the regulation number at the top of this letter:

| 21 CFR 876.xxx | (Gastroenterology/Renal/Urology | 240-276-0115 |
| 21 CFR 884.xxx | (Obstetrics/Gynecology) | 240-276-0115 |
| 21 CFR 894.xxx | (Radiology) | 240-276-0120 |
| Other | | 240-276-0100 |

Also, please note the regulation entitled, "Misbranding by reference to premarket notification" (21CFR Part 807.97). You may obtain other general information on your responsibilities under the Act from the Division of Small Manufacturers, International and Consumer Assistance at its toll-free number (800) 638-2041 or (240) 276-3150
or at its Internet address http://www.fda.gov/cdrh/industry/support/index.html.

Sincerely yours,

*Nancy C Brogdon*

Nancy C. Brogdon
Director, Division of Reproductive,
  Abdominal, and Radiological Devices
Office of Device Evaluation
Center for Devices and Radiological Health

Enclosure

SenoRx Inc.
SenoRad Multi-Lumen Balloon Source Applicator 510(k) Submission

## 4.    INDICATIONS FOR USE

510(k) Number (if known): _K071229_

Device Name: _____ SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy _____

Indications for Use:

The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer.

Prescription Use ___X____            AND/OR            Over the Counter Use _____
(Part 21 CFR 801 Subpart D)                                    (21 CFR 801 Subpart C)

(PLEASE DO NOT WRITE BELOW THIS LINE-CONTINUE ON ANOTHER PAGE OF NEEDED)
-------------------------------------------------------------------------------------------------------------

Concurrence of CDRH, Office of Device Evaluation (ODE)

_Nancy C Brogdon_
(Division Sign-Off)
Division of Reproductive, Abdominal, and
Radiological Devices
510(k) Number _K071229_                              Page __ of ___

11