1  F.T. Alexandra Mahaney (CA Bar No. 125984; amahaney@wsgr.com)
   WILSON SONSINI GOODRICH & ROSATI
2  12235 El Camino Real, Suite 200
3  San Diego, CA 92130
   (858) 350-2300
4

5  Bruce R. Genderson (*pro hac vice application pending*)
   Aaron P. Maurer (*pro hac vice application pending*)
6  Rachel Shanahan Rodman (*pro hac vice application pending*)
7  Adam D. Harber (*pro hac vice application pending*)
   WILLIAMS & CONNOLLY LLP
8  725 Twelfth St. NW
9  Washington, DC 20005
   (202) 434-5000
10

11 Attorneys for Defendant
   SENORX, INC.
12

13               UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

17 HOLOGIC INC.,                     )  Case No. C08-00133-MEJ
   CYTYC CORP., and                  )
18 HOLOGIC L.P.,                     )  **DEFENDANT SENORX, INC.'S**
                                     )  **NOTICE OF MOTION AND**
19                                   )  **MOTION FOR A CONTINUANCE**
                 Plaintiffs,         )  **OF THE HEARING ON**
20                                   )  **PLAINTIFFS' PRELIMINARY**
         v.                          )  **INJUNCTION MOTION IN**
21                                   )  **ORDER TO PERMIT EXPEDITED**
   SENORX, INC.,                     )  **DISCOVERY**
22                                   )
                                     )
23               Defendant.          )
                                     )
24

25

26

27

28

1    Pursuant to Civil Local Rules 6-1(b), 6-3, and 7-11, Defendant SenoRx Inc. ("SenoRx")

2   hereby moves this Court for an order continuing the hearing on Hologic Inc., Cytyc Corp., and

3   Hologic L.P.'s ("Hologic" or "Plaintiffs") Motion for Preliminary Injunction until at least May

4   12, 2008, with a corresponding briefing schedule to allow for the parties to take expedited

5   discovery pursuant to Fed. R. Civ. P. 26(d) . A Proposed Order is attached. This Motion is

6   based on the following Memorandum of Points and Authorities, the declaration of Aaron P.

7   Maurer, all matters of which this Court may take judicial notice, and the arguments of SenoRx's

8   counsel.

## MEMORANDUM OF POINTS AND AUTHORITIES

10  **I.    INTRODUCTION**

11    SenoRx markets a device used in the treatment of breast cancer, called the Contura™

12  MLB Applicator ("Contura™"). The U.S. Food and Drug Administration ("FDA") gave

13  SenoRx approval to market the Contura™ device on May 18, 2007, which SenoRx announced

14  in a press release on May 23, 2007. *See* Ex. N to Hologic's Motion for a Preliminary Injunction.

15  The Section 510(k) premarket notification summary for the Contura™ device (attached as Ex. A

16  to Hologic's Motion) was released to the public shortly thereafter[1] and provided a "[d]evice

17  description" of the Contura™ device. Hologic cites that same May 18, 2007 510(k) summary

18  "[d]evice description" eight times in its infringement contentions for the two claims at issue in

19  its Motion for a Preliminary Injunction. In the press release on May 23, 2007, SenoRx

20  announced that the "[f]ull launch of the Radiation Balloon product is expected in early 2008,"

21  and that "[t]he company expects to ship product for post-FDA clearance human clinical trials

22  supporting marketing claims . . . in the second half of 2007." *See* Ex. N to Hologic's Motion for

23  a Preliminary Injunction. The 2007 trials were accomplished with Contura™ devices that were

24  sold commercially on the market, and SenoRx announced those first commercial sales in August

---

26    [1] The FDA website states that "[l]istings are normally available about the 5th of each month for the prior month. Summaries are in pdf format and are available about 3 weeks after

27  the monthly listing is posted." FDA, *Information on Releasable 510(k)s*, http://www.fda.gov/cdrh/510khome.html. It is SenoRx's understanding and belief that, in

28  accordance with the FDA's website, the 510(k) summary for the Contura™ device (then called the "SenoRad applicator") was available by approximately July 2007.

1   2007. *See* Declaration of Aaron P. Maurer in Support of Defendant's Motion for a Continuance

2   of the Hearing on Plaintiffs' Motion for Preliminary Injunction in Order to Permit Expedited

3   Discovery ("Maurer Decl.") Ex. B, Press Release, *SenoRx Reports Second Quarter 2007 Results*

4   (Aug. 14, 2007) ("[M]ajor milestones were achieved during the second quarter with the FDA

5   510(k) clearance of our new Radiation Balloon and our first commercial sales of this product.").

6           Nevertheless, Hologic waited until January 8, 2008 to file its claims of patent

7   infringement against SenoRx. No motion for a preliminary injunction was filed at that time. On

8   or about January 23, 2008, SenoRx's counsel requested a 30-day extension to answer the

9   Complaint, which Hologic granted. *See* Maurer Decl. ¶ 3. In granting this extension Hologic

10  made no mention of its preparation of and plans to file a motion for preliminary injunction,

11  despite counsel for SenoRx specifically citing as one reason for the extension his preparation for

12  an impending trial. *Id.* ¶¶ 4-5.

13          On February 6, 2008, approximately eight months after the 510(k) approval, SenoRx's

14  first commercial sales, and the press release regarding its forthcoming full commercial launch,

15  Hologic filed the instant Motion for a Preliminary Injunction, timed at the height of SenoRx's

16  full commercial launch activities. Under the current schedule, SenoRx's opposition to Hologic's

17  motion is due on February 28, 2008, and a hearing is requested for March 20, 2008. *See* Civil

18  L.R. 7-2 & 7-3.

19          Counsel for SenoRx contacted Plaintiffs' counsel and attempted to agree on an extension

20  of the briefing schedule and an expedited discovery procedure without the Court's involvement.

21  *See* Maurer Decl. ¶ 7. SenoRx proposed an expedited schedule with some limited discovery as

22  to certain key issues, with a hearing sometime during the first or second week of May (if the

23  Court's schedule allowed). *Id.* ¶ 8. Hologic countered with a hearing date of April 17, 2008,

24  and extremely limited discovery, *i.e.*, six interrogatories, ten document requests, and two

25  depositions (one of Hologic's Senior Director of Product Marketing, and one of a corporate

26  designee). *Id.* ¶¶ 9-10. Hologic also placed unreasonable restrictions on who could access its

27  pleadings filed under seal, which has hampered SenoRx's ability to defend against the

28

1   preliminary injunction in a timely manner. *See* Maurer Decl., Ex. A, Email Chain between

2   Aaron P. Maurer and Marc Cohn.

3   　　　Given the nature of the motion and the schedule of SenoRx's lead counsel, who starts a

4   two-week patent trial in Wilmington, Delaware on February 25, 2008, Hologic's

5   counterproposal provides neither sufficient time nor sufficient discovery to examine Hologic's

6   contentions and create a factual record on which the Court can decide Hologic's motion.

7   Because SenoRx would be prejudiced by the current schedule, it had no choice but to file this

8   motion respectfully requesting that this Court continue the hearing on Hologic's preliminary

9   injunction motion until a time it determines to be appropriate, and order a reasonable amount of

10  expedited discovery.

11  **II.    ARGUMENT**

12  　　**A.    Expedited Discovery is Necessary in This Case**

13  　　　Expedited discovery is available under Fed. R. Civ. P. 26(d) upon a showing of good

14  cause. *See Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)

15  (applying the "standard of good cause in evaluating Plaintiff's request for expedited discovery").

16  Such "expedited discovery is particularly appropriate when a plaintiff seeks injunctive relief

17  because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc. v. United*

18  *States*, 917 F. Supp. 841, 844 (D.D.C. 1996). In those cases, the expedited discovery "better

19  enable[s] the court to judge the parties' interest and respective chances for success on the merits

20  at a preliminary injunction hearing." *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202

21  F.R.D. 612, 613 (D. Ariz. 2001) (internal quotation omitted); *see also Verigy US, Inc. v.*

22  *Mayder*, No. C07-04330-RMW, 2007 WL 2429652 (N.D. Cal. Aug 24, 2007) (Whyte, J.)

23  (ordering expedited discovery in advance of a preliminary injunction hearing).

24  　　　Good cause for expedited discovery certainly exists in this case. By filing a preliminary

25  injunction motion and refusing to allow a reasonable extension and discovery, Hologic has

26  hamstrung SenoRx's ability to defend against Hologic's patent claims. As opposed to SenoRx,

27  Hologic has litigated two of the patents-in-suit at length before this Court in *Xoft Microtube Inc.*

28  *v. Cytyc Corp.* (No. 5:05-cv-05312-RMW). Although Hologic has intimate knowledge of that

NOTICE OF MOTION AND MOTION FOR A CONTINUANCE OF THE HEARING ON PLAINTIFFS' PRELIMINARY
INJUNCTION MOTION IN ORDER TO PERMIT EXPEDITED DISCOVERY (CASE NO. 08-CV-0133 MEJ)

-3-

1   case, SenoRx has not yet even been able to access all of the pleadings (a number are filed under

2   seal). *See* Maurer Decl., Ex. A.  Hologic also, of course, has all of the information relating to

3   the patents internally accessible, and had approximately eight months to prepare its case here.

4          SenoRx's preparation of its case, on the other hand, is just beginning, and there are many

5   complex issues that require investigation before SenoRx can prepare its defenses and create an

6   adequate record for the Court to decide Hologic's motion.  For example, on the question of

7   likelihood of success on the merits,  SenoRx must be allowed to develop not just its non-

8   infringement defenses, but also an understanding of the prior art (which was not discussed at all

9   in Hologic's motion) and of the prosecution of the patents.  These questions commonly require

10  expert testimony, which may be appropriate in this case, with the need for some time to retain

11  such experts and obtain their opinions on the key issues.  With respect to the other factors for

12  injunctive relief Hologic discusses in its motion – *e.g.*, irreparable harm, balance of harms,

13  ability to monetarily compensate for any infringement, market determinations – SenoRx needs

14  time and discovery (and again, possibly expert discovery) to formulate a proper response.  For

15  instance, Xoft, a party in the prior Hologic lawsuit on two of the patents at issue here, apparently

16  is selling its balloon catheter on the market, but under what terms and in what relation to the

17  patents-in-suit, SenoRx does not know.  Indeed, Hologic has not yet taken a position as to how

18  its own device falls under the patents' claims, and what are the relevant conception dates of its

19  patent claims.  The limited discovery proposed by Hologic will not allow sufficient development

20  of these and other relevant issues.  A broader scope of discovery is needed in order for SenoRx

21  to respond fully to Hologic's motion for a preliminary injunction.

22          **B.     A Continuance of the Preliminary Injunction Hearing Date is also Necessary**

23          Given the need for discovery in this case prior to a preliminary injunction hearing,

24  SenoRx respectfully requests that this Court continue the hearing on Hologic's motion until at

25  least May 12, 2008, with a corresponding briefing schedule.  As explained above, the extension

26  is necessary to allow for discovery on the merits regarding each of the four factors relevant to

27  injunctive relief.  Additionally, SenoRx's lead counsel has another trial scheduled from late

28

NOTICE OF MOTION AND MOTION FOR A CONTINUANCE OF THE HEARING ON PLAINTIFFS' PRELIMINARY
INJUNCTION MOTION IN ORDER TO PERMIT EXPEDITED DISCOVERY (CASE NO. 08-CV-0133 MEJ)

-4-

1  February through early March 2008. This schedule makes it even more difficult to carry out the

2  extensive and complex investigation required here on the existing timeline.

3      Hologic's argument that it will be prejudiced by such a continuance rings hollow given

4  that approximately eight months elapsed between the first public announcement of the approval

5  and launch of SenoRx's device and the filing of Hologic's motion. When Hologic finally filed

6  its Complaint (timed to coincide with SenoRx's full commercial launch), it then took another

7  month to file its preliminary injunction motion. In light of these facts, SenoRx would be

8  severely prejudiced by a hearing date any sooner than May 12, 2008.

9  **III.    CONCLUSION**

10     For the foregoing reasons, SenoRx respectfully requests that this Court continue the

11  hearing on Hologic's Motion for Preliminary Injunction until at least May 12, 2008, with a

12  corresponding briefing schedule, and order a reasonable amount of expedited discovery in this

13  case. SenoRx also respectfully requests that this Court hold a scheduling conference on these

14  matters as soon as practicable, but in no event later than February 28, 2008, the current deadline

15  by which SenoRx must file its opposition to Hologic's motion.

16

17  Dated: February 15, 2008          By:_____/s/ F.T. Alexandra Mahaney_____

18                                    F.T. Alexandra Mahaney
                                      WILSON SONSINI GOODRICH & ROSATI

19
                                      Bruce R. Genderson (*pro hac vice application pending*)
20                                    Aaron P. Maurer (*pro hac vice application pending*)
                                      Rachel Shanahan Rodman (*pro hac vice application pending*)
21                                    Adam D. Harber (*pro hac vice application pending*)
22                                    WILLIAMS & CONNOLLY LLP

23                                    ATTORNEYS FOR DEFENDANT SENORX, INC.

24

25

26

27

28

NOTICE OF MOTION AND MOTION FOR A CONTINUANCE OF THE HEARING ON PLAINTIFFS' PRELIMINARY
INJUNCTION MOTION IN ORDER TO PERMIT EXPEDITED DISCOVERY (CASE NO. 08-CV-0133 MEJ)

-5-

CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,
*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. 08-CV-0133 MEJ

I, Kirsten Blue, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

On February 15, 2008, I served a copy(ies) of the following document(s):

**DEFENDANT SENORX INC.'S NOTICE OF MOTION AND MOTION FOR A CONTINUANCE OF THE HEARING ON PLAINTIFFS' PRELIMINARY INJUNCTION MOTION IN ORDER TO PERMIT EXPEDITED DISCOVERY**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| Henry C. Su (suh@howrey.com)<br>Katharine L. Altemus (altemusk@howrey.com)<br>HOWREY LLP<br>1950 University Avenue, 4th Floor<br>East Palo Alto, CA 94303<br>Telephone: (650) 798-3500<br>Facsimile: (650) 798-3600 | Attorneys for Plaintiffs<br>HOLOGIC, INC. CYTYC<br>CORPORATION and<br>HOLOGIC LP |
| Robert Ruyak (ruyakr@howrey.com)<br>Matthew Wolf (wolfm@howrey.com)<br>Marc Cohn (cohenm@howrey.com)<br>HOWREY LLP<br>1229 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 783-0800<br>Facsimile: (202) 383-6610 | Attorneys for Plaintiffs<br>HOLOGIC, INC. CYTYC<br>CORPORATION and<br>HOLOGIC LP |

☐ (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☐ (BY OVERNIGHT DELIVERY) I placed the sealed envelope(s) or package(s), to the addressee(s) noted above, designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery the same day as the correspondence is placed for collection.

-1-

3293779_1.DOC

1    ☒    (BY CM/ECF)  I caused such document(s) to be sent via electronic mail through the Case
2         Management/Electronic Case File system with the U.S. District Court for the Northern
         District of California.

3
              I declare under penalty of perjury under the laws of the United States that the above is true
4    and correct, and that this declaration was executed on February 15, 2008.

5                                              _____
6                                                      Kirsten Blue

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                    3293779_1.DOC
CERTIFICATE OF SERVICE                              CASE NO. 08-CV-0133 MEJ

1  F.T. Alexandra Mahaney (CA Bar No. 125984; amahaney@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   12235 El Camino Real, Suite 200
3  San Diego, CA 92130
4  (858) 350-2300

5  Bruce R. Genderson (*pro hac vice application pending*)
6  Aaron P. Maurer (*pro hac vice application pending*)
   Rachel Shanahan Rodman (*pro hac vice application pending*)
7  Adam D. Harber (*pro hac vice application pending*)
   WILLIAMS & CONNOLLY LLP
8  725 Twelfth St. NW
9  Washington, DC 20005
   (202) 434-5000
10
11 Attorneys for Defendant
   SENORX, INC.
12
13              UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF CALIFORNIA
14                 SAN FRANCISCO DIVISION
15
16 HOLOGIC INC.,                    )  Case No. C08-00133-MEJ
   CYTYC CORP., and                 )
17 HOLOGIC L.P.,                     )  **DECLARATION OF AARON P.**
                                     )  **MAURER IN SUPPORT OF**
18                                   )  **DEFENDANT'S MOTION FOR A**
               Plaintiffs,           )  **CONTINUANCE OF THE HEARING**
19        v.                         )  **ON PLAINTIFFS' MOTION FOR**
                                     )  **PRELIMINARY INJUNCTION**
20 SENORX INC.,                      )  **IN ORDER TO PERMIT EXPEDITED**
                                     )  **DISCOVERY**
21             Defendant.            )
22                                   )

23
24 I, Aaron P. Maurer, declare that:
25        1.    I am an attorney at the law firm of Williams & Connolly LLP, attorneys for
26 Defendant SenoRx Inc. ("SenoRx") in the above-captioned action. I submit this declaration in
27 support of SenoRx's Motion for a Continuance of the Hearing on Plaintiffs' Motion for
28 Preliminary Injunction in Order to Permit Expedited Discovery. I am fully familiar with the

1  facts set forth in this declaration, either from personal knowledge or on the basis of documents

2  that have been provided to me, and if called upon to testify, I could and would competently

3  testify to the matters set forth herein.

4          2.     Plaintiffs filed their Complaint in this matter on January 8, 2008.

5          3.     On or about January 23, 2008, SenoRx's counsel requested a 30-day

6  extension to answer the Complaint, which the Plaintiffs granted.

7          4.     Bruce R. Genderson, SenoRx's lead counsel, identified an impending trial

8  in another case as one reason why the extension was necessary.

9          5.     At this time, the Plaintiffs made no mention of their preparation of and

10  plans to file a motion for preliminary injunction.

11          6.     Subsequent to the negotiation of this extension, and almost one month after

12  the Complaint was filed, the Plaintiffs filed a Motion for Preliminary Injunction.

13          7.     In light of Mr. Genderson's schedule and the amount of work that will be

14  required to respond to the Plaintiffs' Motion for Preliminary Injunction, I contacted Plaintiffs'

15  counsel and attempted to negotiate an extension of time and a stipulation regarding expedited

16  discovery. Attached hereto as Exhibit A is a true and correct copy of the email chain between

17  myself and Marc Cohn. *See* Ex. A.

18          8.     During these discussions, I proposed a schedule whereby SenoRx's

19  responsive brief would be due at the end of March 2008, the Plaintiff's reply due in mid- to late-

20  April, and the hearing on the motion would occur in the first or second week of May. *See id.*

21          9.     The Plaintiffs rejected this schedule, insisting that the hearing on the

22  Motion for Preliminary Injunction could take place no later than April 17, 2008, unless SenoRx

23  withdrew its product from the market. *See id.*

24         10.    The Plaintiffs also indicated that they would agree to only a very limited

25  amount of expedited discovery: six interrogatories, ten document requests, and two depositions

26  (one of Glen Magnuson, the Senior Director of Product Marketing for Hologic's Interventional

27  Breast Solutions Unit, and one of a corporate designee). *See id.*

28

1    11.    Based on the circumstances of this case and the complexity of the questions

2  at issue, SenoRx is not in a position to agree to either the schedule or the discovery limitations

3  offered by the Plaintiffs.

4    12.    Attached hereto as Exhibit B is a true and correct copy of a press release,

5  *SenoRx Reports Second Quarter 2007 Results*, dated August 14, 2007.

6

7  I declare under penalty of perjury that the foregoing is true and correct.

8

9  Dated: February 15, 2008

10

11

12                                            Aaron P. Maurer

13                                            Williams & Connolly LLP

                                              Attorney for Defendant SenoRx, Inc.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT

# A

-----Original Message-----
From: Cohn, Marc [mailto:CohnM@howrey.com]
Sent: Friday, February 15, 2008 10:12 AM
To: Maurer, Aaron
Subject: RE: Hologic v SenoRx PI

Aaron,

Hologic does not agree that SenoRx can share confidential information in
the Preliminary Injunction papers with anyone other   than on an outside
counsel eyes only basis and with SenoRx's Chief Technology Officer, as stated in my
previous email.  If you wish to disclose the designated confidential information to your
experts, please disclose the names and curriculum vitae of those experts to us immediately
so that we can determine whether they may review the confidential materials.  We cannot
agree to allow you to show those materials to experts of whose identity we are unaware.

Furthermore, we believe an April 17, 2008 hearing date that we proposed gives SenoRx ample
time for the discovery it needs. A longer schedule is not appropriate given the ongoing
irreparable harm inflicted by SenoRx's infringement on my client.  Regarding the Xoft
case, most of the Xoft pleadings are publicly available.  Hologic will agree to promptly
provide any confidential materials from that case to SenoRx provided that Xoft permits
such disclosure.  Since SenoRx seeks the discovery, it is SenoRx's burden to contact Xoft
and obtain the necessary consent for disclosure of Xoft's confidential materials to
SenoRx.

-Marc


-----Original Message-----
From: Maurer, Aaron [mailto:AMaurer@wc.com]
Sent: Wednesday, February 13, 2008 7:14 PM
To: Cohn, Marc
Subject: RE: Hologic v SenoRx PI

February 13, 2008

Dear Marc,

The schedule and discovery limitations that you propose below will not work.

This is a complicated case.  To name a few issues:  Hologic relies heavily in its motion
for a preliminary injunction on prior rulings in the Xoft case with which Hologic has
intimate knowledge, but for which SenoRx has not even been able to retrieve all of the
pleadings.  Hologic makes numerous allegations allegations regarding supposed statements
and market share that need to be investigated and responded to.  Hologic apparently has
licensed a competitor to sell its balloon cathedar on the market under the patents-at-
issue, but under what terms SenoRx does not know.  And Hologic has not yet taken a
position as to whether its own device falls under the patents, and what the relevant
conception date(s) is.  Clearly, these are all relevant to the question of injunctive
relief, and discovery of these issues (and others) is needed in order for SenoRx to
respond fully to Hologic's motion for a preliminary injunction.  Additionally, there will
be questions for experts to address with respect to validity and infringement, which
requires time.

While Hologic has known about SenoRx's device for quite some time, and apparently has

1

taken its time to prepare its motion for preliminary injunction, Hologic's refusal to grant a reasonable extension with reasonable discovery to SenoRx leaves us no choice but to go to the Court on this issue.

If your client reconsiders and wishes to grant SenoRx the schedule discussed, we are of course open to further discussion.  Please let me know.


On another issue, SenoRx is puzzled by the designation of the information on p.20 of the PI motion as confidential, and the redaction (and request to seal) such information.  Why are the allegations of SenoRx's pricing and what SenoRx's represenatives allegedly are saying
-- which Hologic admittedly learned about from third-parties -- confidential?  Please reconsider its designation.

Furthermore, in order to prepare our case, we must share that information with our client and experts.  Accordingly, unless I hear otherwise from you: 1) we intend to share the information on p.20 and the corresponding paragraphs of the accompanying declarations with our experts, with the understanding that the experts will treat the information as confidential; and 2) we intend to inquire with our client as to the allegations on p.20.

For the time being, in the absence of a protective order more specifically addressing the issue or agreement regarding the information, we will not share the information from p.6 regarding the alleged development and commercialization costs of Hologic's device with our experts.

Best regards,

Aaron

Aaron P. Maurer
Williams & Connolly, LLP
725 12th St. NW
Washington, DC  20005
202-434-5282 (direct)
202-434-5029 (fax)


-----Original Message-----
From: Cohn, Marc [mailto:CohnM@howrey.com]
Sent: Wednesday, February 13, 2008 11:57 AM
To: Maurer, Aaron
Subject: RE: Hologic v SenoRx PI

Aaron:

Per your email below, I write to address the issues we discussed earlier this week.

First, Hologic is willing to allow SenoRx's Chief Technology Officer to view the confidential materials filed in connection with Hologic's Motion for Preliminary Injunction (the "Motion").  No other SenoRx principals may have access to those materials.

Second, we will send you a draft protective order for your review shortly.  It will contain two tiers of confidentiality, as we discussed.

Third, Hologic is willing to reschedule the hearing on the Motion to any date in the future provided that SenoRx stipulates that it will suspend sales of its Contura Multi-Lumen Balloon until the date of the hearing.
Each and every day that the Contura is on the market irreparably harms my client, which is why the Motion was filed.  If SenoRx is unwilling to agree to this, then we propose alternatively that the hearing be rescheduled to April 17, 2008 provided that (A) SenoRx propounds all of its discovery by February 20, 2008; (B) SenoRx limits its discovery to 6 interrogatories, 10 document requests, and 2 depositions (i.e. one of Mr. Magnuson and one of a corporate designee); and (C) SenoRx stipulates that Hologic is entitled to commensurate discovery from SenoRx.

Fourth, as to your questions regarding conception and reduction to practice and whether

the MammoSite practices the asserted patents, Hologic will answer those questions in the course of discovery.

Finally, Hologic agrees that the case should be heard by Judge Whyte.
We will prepare a joint pleading in this regard and send it to you for review shortly.

Please let me know if you want to discuss these matters further.

Thank you,
Marc Cohn
HOWREY LLP

-----Original Message-----
From: Maurer, Aaron [mailto:AMaurer@wc.com]
Sent: Wednesday, February 13, 2008 11:17 AM
To: Cohn, Marc
Subject: Hologic v SenoRx PI

February 13, 2008

Dear Marc,

I write in furtherance of our conversation on Monday, February 11, 2008.
In that conversation, we discussed several issues important to the swift and orderly resolution of the Hologic motion for a preliminary injunction.

First, we discussed SenoRx's willingness to consent to relate this case to the Xoft case and have the matter heard by Judge Whyte, to which end I suggested we file a consent motion and to which course of action you indicated that Hologic likely would agree.

Second, I discussed with you the fact that Hologic filed certain of its PI papers under seal, and that my client -- or certain representatives of my client -- would need to see those papers in order to ensure that SenoRx can adequately mount a defense to all the allegations in the Hologic papers. I suggested that we could either deal with this on a temporary basis with respect to these papers or that we could come to some more permanent agreement and propose a protective order to the Court for purposes of this action. You told me that there might be some issue with respect to SenoRx internal personnel to the extent that they were involved in prosecution activities, but that you were going to discuss with your client and that you had a model order from the Xoft case (two-tier) that you would forward to me. For SenoRx's part, I told you we would need to have access by at least our Chief Technical Officer and our Chief Executive Officer.

Third, we discussed an extension to the briefing and response schedule, and some expedited discovery. As you know from our conversations with you regarding the extension you granted to SenoRx to answer the Hologic complaint, Bruce Genderson, SenoRx's lead on this case, will be out of town for trial starting this week and continuing through the first half of March. The extension also is required so that SenoRx can take discovery on the claims and allegations that Hologic set forth in its motion papers.

With respect to this initial discovery, I told you that we certainly would need the pleadings and filings from the Xoft case that Hologic relies on in its motion, documents relating to the conception and invention of the claims of the patents, and Hologic's contentions as to what conception date the patent claims at issue are due, as well as whether you contend the Mammosite device is covered by the asserted claims (and if so, how). As I mentioned, those categories of information were not exhaustive, as we also will request relevant contentions and documents regarding, e.g., whether or not the Xoft device is covered by the asserted claims, the terms of the Xoft license and settlement, and other documents and information regarding the allegations in Hologic's motion. I proposed that we accomplish this through some limited set of discovery requests (Requests for Production, Interrogatories, depositions).

I also discussed with you a proposed schedule whereby we would (if the Court's schedule allows) propose a hearing in the first or second week of May, and that SenoRx's responsive brief due at the end of March, and Hologic's reply due in mid-to-late April.

You told me that Hologic's lead counsel was in Germany, but that you would circle back

with your team and get back to me on these issues.  I told you that we needed resolution
as soon as possible, as we were going to need to file a motion for an extension and
discovery if the parties could not reach agreement.  I asked you to commit to getting back
to me
-- one way or the other -- by yesterday (Tuesday) and you told me that you would try and
did not think that would be a problem.

As of yet I have not heard back from you.  Can you please let me know where things stand
on the issues we discussed?

Best regards,

Aaron P. Maurer
Williams & Connolly, LLP
725 12th St. NW
Washington, DC  20005
202-434-5282 (direct)
202-434-5029 (fax)


---------------------------------------------------------------------
------
NOTICE:

This message is intended for the use of the individual or entity to which it is addressed
and may contain information that is privileged, confidential and exempt from disclosure
under applicable law. If the reader of this message is not the intended recipient or the
employee or agent responsible for delivering this message to the intended recipient, you
are hereby notified that any dissemination, distribution or copying of this communication
is strictly prohibited. If you have received this communication in error, please notify us
immediately by reply or by telephone (call us collect at (202) 434-5000) and immediately
delete this message and all its attachments.

=====================================================================
======

---------------------------------------------------------------------
------------------------
This email and any attachments contain information from the law firm of Howrey LLP, which
may be confidential and/or privileged.
The information is intended to be for the use of the individual or entity named on this
email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution
or use of the contents of this email is prohibited.
If you receive this email in error, please notify us by reply email immediately so that we
can arrange for the retrieval of the original documents at no cost to you.

We take steps to remove metadata in attachments sent by email.  Any remaining metadata
should be presumed inadvertent and should not be viewed or used without our express
permission.
If you receive an attachment containing metadata, please notify the sender immediately and
a replacement will be provided.
---------------------------------------------------------------------
------------------------


---------------------------------------------------------------------------
-------
This email and any attachments contain information from the law firm of Howrey LLP, which
may be confidential and/or privileged.
The information is intended to be for the use of the individual or entity named on this
email.
If you are not the intended recipient, be aware that any disclosure, copying, distribution
or use of the contents of this email is prohibited.
If you receive this email in error, please notify us by reply email immediately so that we
can arrange for the retrieval of the original documents at no cost to you.

We take steps to remove metadata in attachments sent by email.  Any remaining metadata
should be presumed inadvertent and should not be viewed or used without our express
permission.
If you receive an attachment containing metadata, please notify the sender immediately and
a replacement will be provided.
-------------------------------------------------------------------------------------
-------

# EXHIBIT
# B



**Press Release**

**SenoRx Reports Second Quarter 2007 Results**
Revenue and Gross Margin Post Continued Strong Growth

ALISO VIEJO, Calif., August 14 – SenoRx, Inc. (NASDAQ: SENO) today
reported financial results for its second quarter ended June 30, 2007. Revenue
for the quarter increased 28 percent to $8.1 million, compared with $6.3 million in
the second quarter of 2006. Gross profit increased 41.5 percent to $4.6 million,
or 57.0 percent of revenue, up from $3.3 million, or 51.7 percent of revenue, in
the second quarter of 2006.

SenoRx reported an operating loss for the second quarter of $2.6 million,
compared with $2.5 million in the same period last year. The operating loss for
the quarter included additional administrative expenses of approximately
$161,000 incurred during the period associated with becoming a public company
and stock-based compensation expense of $563,000, compared with $345,000
in the second quarter of 2006.

Net loss for the second quarter of 2007 declined significantly to $2.1 million or 15
cents per share, compared to $6.5 million or $2.87 per share for the second
quarter of 2006. Contributing to the reduction in net loss for the second quarter
was a significant swing to net interest income from net interest expense resulting
from the IPO proceeds and a non-cash positive change in fair value of the liability
associated with a warrant issued in connection with the December 2006
subordinated note. In addition, there was an increase in the weighted average
shares outstanding resulting from the IPO and the conversion of preferred stock
into common stock in connection with the IPO.

"SenoRx reported another solid quarter with continued strong revenue growth,
led by a 53 percent increase in biopsy disposable revenues over the same period
last year," said Lloyd Malchow, SenoRx President and Chief Executive Officer.
"In addition, major milestones were achieved during the second quarter with the
FDA 510(k) clearance of our new Radiation Balloon and our first commercial
sales of this product. Importantly, we also continued to expand our gross margin,
which increased more than 5 percentage points from the second quarter a year
ago. The improvement was driven by increased product sales resulting from
continued growth in the installed base of EnCor systems, combined with
improved efficiencies in the production of our disposable biopsy probe and
allocating manufacturing overhead over an increased revenue base."

2

For the first six months of 2007, SenoRx posted revenues of $15.8 million, an increase of 30 percent compared with $12.2 million for the same period in 2006. Gross profit grew 46 percent to $8.8 million from $6.0 million in the first six months of last year.  Net loss for the first half of 2007 decreased to $4.2 million compared with $8.8 million for the same period a year ago.

2007 Outlook

SenoRx is encouraged by the continued progress and significant achievements in the second quarter of 2007 and remains focused on executing its strategic plan.  With its current product offering and strong product pipeline, we believe SenoRx is well positioned to become a leader in both the diagnostic and therapeutic breast care market. Management continues to expect full-year 2007 revenues to be in a range of $33 to $35 million.

About SenoRx

SenoRx (NASDAQ: SENO), which completed its initial public offering of common stock in April 2007, develops, manufactures and sells minimally invasive medical devices used by breast care specialists for the diagnosis of breast cancer. SenoRx's field sales organization serves over 1,000 breast diagnostic and treatment centers in the United States and Canada.  With 17 products that have already received FDA 510(k) clearance across the continuum of breast care, SenoRx is developing additional minimally invasive products for diagnosis and treatment of breast cancer.  For more information, visit the company's website at www.senorx.com.

Forward-Looking Statements

This press release contains forward-looking statements within the meaning of the U.S. Private Securities Litigation Reform Act of 1995. Specifically, statements concerning SenoRx's ability to successfully expand selling and promotional activities, to fully commercially launch its Radiation Balloon product, to successfully develop and introduce other products, and to become a leader in the diagnostic and therapeutic breast-care market, as well as financial guidance for fiscal year 2007, are forward-looking statements within the meaning of the Safe Harbor. Forward-looking statements are based on management's current, preliminary expectations and are subject to risks and uncertainties, which may cause SenoRx's actual results to differ materially from the statements contained herein. SenoRx's second quarter June 30, 2007 financial results, as discussed in this release, are preliminary and unaudited, and subject to adjustment. Further information on potential risk factors that could affect SenoRx's business and its financial results are detailed in its prospectus dated March 29, 2007 and its most recent quarterly report on Form 10-Q, in each case as filed with the Securities and Exchange Commission. Undue reliance should not be placed on forward-looking statements, especially guidance on future financial performance, which speaks only as of the date they are made. SenoRx undertakes no obligation to update publicly any forward-looking statements to reflect new information, events or circumstances after the date they were made, or to reflect the occurrence of unanticipated events.

3

**SENORX, INC.**
**CONDENSED BALANCE SHEETS**
**(Unaudited)**

|  | June 30, 2007 | December 31, 2006 |
|---|---|---|
| **ASSETS** | | |
| Current Assets: | | |
| Cash and cash equivalents | $ 44,541,309 | $ 7,412,986 |
| Accounts receivable, net of allowance for doubtful accounts of $113,169 and $120,000, respectively | 4,477,568 | 4,241,307 |
| Inventory | 5,419,672 | 4,988,695 |
| Prepaid expenses and deposits | 456,087 | 220,659 |
| Total current assets | 54,894,636 | 16,863,647 |
| Property and equipment, net | 1,136,844 | 1,100,599 |
| Other assets, net of accumulated depreciation of $446,653, and $539,602, respectively | 433,146 | 2,017,079 |
| TOTAL | $ 56,464,626 | $ 19,981,325 |
| | | |
| **LIABILITIES AND STOCKHOLDERS' EQUITY (DEFICIT)** | | |
| Current Liabilities: | | |
| Accounts payable | $ 1,846,838 | $ 4,122,477 |
| Accrued expenses, including accrued employee compensation of $815,711 and $507,829, respectively | 2,297,351 | 2,109,226 |
| Deferred revenue—current | 66,850 | 36,050 |
| Current portion of long-term debt | 4,924,249 | 3,209,621 |
| Total current liabilities | 9,135,288 | 9,477,374 |
| Long-term debt—less current portion | 8,752,676 | 10,596,147 |
| Warrant liability | — | 1,529,250 |
| Total long-term liabilities | 8,752,676 | 12,125,397 |
| Convertible promissory notes (at fair value) | — | 11,960,000 |
| Commitments and Contingencies (Note 12) | | |
| Stockholders' Equity (Deficit): | | |
| Series A convertible preferred stock—$1.00 par value; 3,000,000 shares authorized, issued and outstanding (2007 and 2006) (aggregate liquidation value of $3,000,000) | — | 3,000,000 |
| Series B convertible preferred stock—$2.50 par value; 3,532,040 shares authorized; 3,523,040 issued and outstanding (2006) (aggregate liquidation value of $8,807,600) | — | 8,807,600 |
| Series C convertible preferred stock—$1.96 par value; 19,500,000 shares authorized; 17,861,899 (2006) issued and outstanding (aggregate liquidation value of $35,009,323) | — | 35,009,323 |
| Common stock, $0.001 par value—100,000,000 shares authorized; 17,091,556 (2007) and 2,371,002 (2006) issued and outstanding | 17,091 | 2,371 |
| Additional paid-in capital | 108,375,879 | 5,262,394 |
| Deferred compensation | (35,469) | (126,658) |
| Accumulated deficit | (69,780,839) | (65,536,476) |
| Total stockholders' equity (deficit) | 38,576,662 | (13,581,446) |
| TOTAL | $ 56,464,626 | $ 19,981,325 |

4

**SENORX, INC.**
**CONDENSED STATEMENTS OF OPERATIONS**
**(Unaudited)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Net revenues | $ 8,121,285 | $ 6,324,875 | $ 15,821,361 | $ 12,162,023 |
| Cost of goods sold | 3,490,011 | 3,054,140 | 7,027,355 | 6,140,289 |
| Gross profit | 4,631,274 | 3,273,735 | 8,794,006 | 6,021,734 |
| Operating expenses: | | | | |
|   Selling and marketing | 4,430,998 | 3,947,727 | 8,731,491 | 7,099,560 |
|   Research and development | 1,646,665 | 1,312,682 | 3,114,869 | 2,442,371 |
|   General and administrative | 1,104,652 | 512,629 | 1,887,188 | 1,159,155 |
|     Total operating expenses | 7,182,315 | 5,773,038 | 13,733,548 | 10,701,086 |
| Loss from operations | (2,551,041) | (2,499,303) | (4,939,542) | (4,679,352) |
| Interest expense | 449,865 | 216,127 | 926,735 | 381,239 |
| Change in fair value of convertible promissory notes and warrant valuation | (305,047) | 3,840,000 | (990,875) | 3,840,000 |
| Interest income | (560,980) | (56,515) | (631,039) | (60,708) |
| Loss before provision for income taxes | (2,134,879) | (6,498,915) | (4,244,363) | (8,839,883) |
| Provision for income taxes | — | 3,000 | — | 5,000 |
| Net loss | $ (2,134,879) | $ (6,501,915) | $ (4,244,363) | $(8,844,883) |
| Net loss per share – basic and diluted | $ (0.15) | $ (2.87) | $ (0.45) | $ (4.06) |
| Weighted average shares outstanding - basic and diluted | 13,900,529 | 2,200,205 | 9,388,107 | 2,180,145 |

**REVENUES BY PRODUCT CLASS**
**(Unaudited)**

| | Three Months Ended June 30, | | Six Months Ended June 30, | |
|---|---|---|---|---|
| | 2007 | 2006 | 2007 | 2006 |
| Biopsy disposable products | $ 4,021,597 | $ 2,635,067 | $ 7,541,181 | $ 4,943,678 |
| Biopsy capital equipment products | 620,401 | 409,434 | 1,101,229 | 725,464 |
| Diagnostic adjunct products | 3,454,190 | 3,283,374 | 7,153,854 | 6,492,881 |
| Therapeutic disposables | 25,097 | - | 25,097 | - |
| Total | $ 8,121,285 | $ 6,327,875 | $ 15,821,361 | $ 12,162,023 |

CONTACT:  SenoRx, Inc.
Lila Churney, Director of Investor Relations
949-362-4800 x132

CERTIFICATE OF SERVICE

U.S. District Court, Northern District of California,

*Hologic, Inc. et al. v. SenoRx, Inc.*

Case No. 08-CV-0133 MEJ

I, Kirsten Blue, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

On February 15, 2008, I served a copy(ies) of the following document(s):

**DECLARATION OF AARON P. MAURER IN SUPPORT OF DEFENDANT'S MOTION FOR A CONTINUANCE OF THE HEARING ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION IN ORDER TO PERMIT EXPEDITED DISCOVERY**

on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

| | |
|---|---|
| Henry C. Su (suh@howrey.com) | Attorneys for Plaintiffs |
| Katharine L. Altemus (altemusk@howrey.com) | HOLOGIC, INC. CYTYC |
| HOWREY LLP | CORPORATION and |
| 1950 University Avenue, 4th Floor | HOLOGIC LP |
| East Palo Alto, CA  94303 | |
| Telephone:  (650) 798-3500 | |
| Facsimile:  (650) 798-3600 | |

| | |
|---|---|
| Robert Ruyak (ruyakr@howrey.com) | Attorneys for Plaintiffs |
| Matthew Wolf (wolfm@howrey.com) | HOLOGIC, INC. CYTYC |
| Marc Cohn (cohenm@howrey.com) | CORPORATION and |
| HOWREY LLP | HOLOGIC LP |
| 1229 Pennsylvania Avenue, NW | |
| Washington, DC  20004 | |
| Telephone:  (202) 783-0800 | |
| Facsimile:  (202) 383-6610 | |

☐ (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☐ (BY OVERNIGHT DELIVERY) I placed the sealed envelope(s) or package(s), to the addressee(s) noted above, designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery the same day as the correspondence is placed for collection.

-1-

1 ☒ (BY CM/ECF) I caused such document(s) to be sent via electronic mail through the Case
   Management/Electronic Case File system with the U.S. District Court for the Northern
2  District of California.

3

       I declare under penalty of perjury under the laws of the United States that the above is true
4  and correct, and that this declaration was executed on February 15, 2008.

5                                                    _____
6                                                           Kirsten Blue

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

CERTIFICATE OF SERVICE                                    CASE NO. 08-CV-0133 MEJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| HOLOGIC INC.,<br>CYTYC CORP., and<br>HOLOGIC L.P.,<br><br>            Plaintiffs,<br><br>    v.<br><br>SENORX INC.,<br><br>            Defendant. | Case No. C08-00133-MEJ<br><br>**[PROPOSED] ORDER ON MOTION<br>FOR A CONTINUANCE OF THE<br>HEARING ON PLAINTIFFS'<br>PRELIMINARY INJUNCTION<br>MOTION IN ORDER TO PERMIT<br>EXPEDITED DISCOVERY** |

## [PROPOSED] ORDER

Upon consideration of (1) Defendant's Motion for a Continuance of the Hearing on Plaintiffs'
Preliminary Injunction Motion in Order to Permit Expedited Discovery, (2) the declaration of Aaron P.
Maurer in support of this Motion, and (3) all other relevant pleadings and evidence, as well as oral
argument,

IT IS HEREBY ORDERED THAT the hearing on Plaintiffs' Motion for Preliminary Injunction
be continued until May 12, 2008.

IT IS FURTHER ORDERED THAT SenoRx and Hologic each be allowed expedited discovery
under Fed. R. Civ. P. 26 in the form and with the limitations set forth by this Court.

IT IS **SO ORDERED**.

Dated: _____      _____

                                    U.S. Magistrate Judge Maria-Elena James

1

CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,
*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. 08-CV-0133 MEJ

2

3

4  I, Kirsten Blue, declare:

5      I am and was at the time of the service mentioned in this declaration, employed in the
County of San Diego, California.  I am over the age of 18 years and not a party to the within
6  action.  My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

7      On February 15, 2008, I served a copy(ies) of the following document(s):

8  **[PROPOSED] ORDER ON MOTION FOR CONTINUANCE OF THE HEARING**
   **ON PLAINTIFFS' PRELIMINARY INJUNCTION MOTION IN ORDER**
9  **TO PERMIT EXPEDITED DISCOVERY**

10  on the parties to this action by placing them in a sealed envelope(s) addressed as follows:

11      Henry C. Su (suh@howrey.com)                    Attorneys for Plaintiffs
        Katharine L. Altemus (altemusk@howrey.com)      HOLOGIC, INC. CYTYC
12      HOWREY LLP                                       CORPORATION and
        1950 University Avenue, 4th Floor                HOLOGIC LP
13      East Palo Alto, CA  94303
        Telephone:  (650) 798-3500
14      Facsimile:  (650) 798-3600

15

16      Robert Ruyak (ruyakr@howrey.com)                Attorneys for Plaintiffs
        Matthew Wolf (wolfm@howrey.com)                 HOLOGIC, INC. CYTYC
        Marc Cohn (cohenm@howrey.com)                   CORPORATION and
17      HOWREY LLP                                       HOLOGIC LP
        1229 Pennsylvania Avenue, NW
18      Washington, DC  20004
        Telephone:  (202) 783-0800
19      Facsimile:  (202) 383-6610

20  ☐  (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the
        ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real,
21      Ste. 200, San Diego, CA.  I am readily familiar with WSGR's practice for collecting and
        processing of correspondence for mailing with the United States Postal Service, said
22      practice being that, in the ordinary course of business, correspondence with postage fully
        prepaid is deposited with the United States Postal Service the same day as it is placed for
23      collection.

24  ☐  (BY OVERNIGHT DELIVERY) I placed the sealed envelope(s) or package(s), to the
        addressee(s) noted above, designated by the express service carrier for collection and
25      overnight delivery by following the ordinary business practices of Wilson Sonsini
        Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA.  I am readily
26      familiar with WSGR's practice for collecting and processing of correspondence for
        overnight delivery, said practice being that, in the ordinary course of business,
27      correspondence for overnight delivery is deposited with delivery fees paid or provided for
        at the carrier's express service offices for next-day delivery the same day as the
28      correspondence is placed for collection.

-1-

3293762_1.DOC

CERTIFICATE OF SERVICE                                    CASE NO. 08-CV-0133 MEJ

1    ☒    (BY CM/ECF)  I caused such document(s) to be sent via electronic mail through the Case
2         Management/Electronic Case File system with the U.S. District Court for the Northern
          District of California.

3

4         I declare under penalty of perjury under the laws of the United States that the above is true
     and correct, and that this declaration was executed on February 15, 2008.

5

6         _____
                        Kirsten Blue

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE                          CASE NO. 08-CV-0133 MEJ