1   F.T. Alexandra Mahaney, State Bar No. 125984
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
    12235 El Camino Real, Suite 200
3   San Diego, CA  92130
    Telephone:  (858) 350-2300
4   Facsimile:   (858) 350-2399
    Email:  amahaney@wsgr.com
5
    Bruce R. Genderson (*admitted pro hac vice*)
6   Aaron P. Maurer (*admitted pro hac vice*)
    Rachel Shanahan Rodman (*admitted pro hac vice*)
7   Adam D. Harber (*admitted pro hac vice*)
8   WILLIAMS & CONNOLLY LLP
    725 Twelfth St. NW
9   Washington, DC 20005
    Telephone:  (202) 434-5000
10  Facsimile:  (202) 434-5029

11  Attorneys for Defendant and Counterclaimant
    SENORX, INC.
12
                    IN THE UNITED STATES DISTRICT COURT
13
                    NORTHERN DISTRICT OF CALIFORNIA
14
                          SAN JOSE DIVISION
15

16  HOLOGIC, INC., CYTYC CORP., and        )    CASE NO.:  08-CV-0133 RMW
    HOLOGIC L.P.,                          )
17                                         )    **DEFENDANT SENORX, INC.'S
                                           )    NOTICE OF MOTION AND
18          Plaintiffs,                    )    MOTION FOR PARTIAL
                                           )    SUMMARY JUDGMENT OF NON-
19       v.                                )    INFRINGEMENT ('813 PATENT,
                                           )    CLAIMS 11 & 12; '204 PATENT,
20  SENORX, INC.,                          )    CLAIMS 4 & 17; AND '142 PATENT
                                           )    CLAIM 6)**
21          Defendant.                     )
                                           )
22  _____)
                                           )
23  SENORX, INC.,                          )
                                           )    Date:  June 25, 2008
24          Counterclaimant,               )    Time:  2:00 p.m.
                                           )    Courtroom: 6, 4th Floor
25       v.                                )    Judge:  Hon. Ronald M. Whyte
                                           )
26  HOLOGIC, INC., CYTYC CORP., and        )
    HOLOGIC L.P.,                          )
27                                         )
            Counterdefendants.             )
28  _____

SENORX, INC.'S NOTICE OF MOTION AND                    CASE NO. 08-CV-0133 RMW
MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

1

## TABLE OF CONTENTS

2

Table of Authorities ..................................................................................................................ii

Notice of Motion and Motion..................................................................................................1

Memorandum of Points and Authorities ................................................................................1

Issues To Be Decided ..............................................................................................................2

Legal Standard..........................................................................................................................2

      A.     Summary Judgment..................................................................................................2

      B.     Non-Infringement....................................................................................................2

Statement of Relevant Facts Regarding the Contura Device ................................................3

Argument..................................................................................................................................4

      A.     The Contura Does Not Meet the "Plurality" Claim Limitations. ...........................4

              1.     Plaintiffs' Infringement Contentions..........................................................4

              2.     The Contura Does Not Meet the "Plurality" Limitations...........................5

      B.     The Contura Does Not Meet the Predetermined Spacing Limitations of the '813 and '204 Patents....................................................................................................9

              1.     Plaintiffs' Infringement Contentions........................................................10

              2.     There Is No Infringement of the Predetermined Spacing Limitations Under SenoRx's Proposed Construction.................................................10

                     a.     The Contura's Lumens, Taken Individually, Do Not Meet the Predetermined Spacing Limitations. .......................................11

                     b.     The Contura's Lumens, Taken Together, Do Not Meet the Predetermined Spacing Limitations. .............................................13

                     c.     The Radionuclide Used With the Contura Does Not Meet the Predetermined Spacing Limitations. .............................................14

              3.     There Is No Infringement of the '813 Patent Under Plaintiffs' Proposed Construction. ...........................................................................16

Conclusion...............................................................................................................................17

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Asyst Techs., Inc. v. Emtrak, Inc.,*

4
    402 F.3d 1188 (Fed. Cir. 2005) ......................................................................... 5

5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ......................................................................................... 2

6

7

*Cross Medical Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
    424 F.3d 1293 (Fed. Cir. 2005) ................................................................. 7, 8

8

*Dayco Prods., Inc. v. Total Containment, Inc.,*

9
    258 F.3d 1317 (Fed. Cir. 2001) ......................................................................... 8

10

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
    363 F.3d 1263 (Fed. Cir. 2004) ......................................................................... 8

11

12

*Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.,*
    149 F.3d 1309 (Fed. Cir. 1998) ......................................................................... 2

13

*Freedman Seating Co. v. American Seating Co.,*

14
    420 F.3d 1350 (Fed. Cir. 2005) ......................................................................... 5

15

*Novartis Corp. v. Ben Venue Labs., Inc.,*

16
    271 F.3d 1043 (Fed. Cir. 2001) ......................................................................... 3

17

*PC Connector Solutions LLC v. SmartDisk Corp.,*
    406 F.3d 1359 (Fed. Cir. 2005) ................................................................. 2, 3

18

19

*Playtex Prods., Inc. v. Procter & Gamble Co.,*
    400 F.3d 901 (Fed. Cir. 2005) ......................................................................... 2

20

*Scripps Clinic & Res. Found. v. Genentech, Inc.,*

21
    927 F.2d 1565 (Fed. Cir. 1991) ......................................................................... 2

22

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*

23
    520 U.S. 17 (1997) ......................................................................................... 5

24

*Wolverine World Wide Inc. v. Nike Inc.,*
    38 F.3d 1192 (Fed. Cir. 1994) ................................................................. 6, 9, 16

25

**OTHER AUTHORITIES**

26

27

Fed. R. Civ. P. 56 ......................................................................................... 2

28

SENORX, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

ii

CASE NO. 08-CV-0133 RMW

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

3

PLEASE TAKE NOTICE that on June 25, 2008 at 2:00 p.m. (in connection with the

4

claim construction hearing scheduled in this matter), or as soon thereafter as may be heard, in the

5

courtroom of the Honorable Ronald M. Whyte, Courtroom 6, 4th Floor, 280 South 1st Street,

6

San Jose, California, Defendant SenoRx, Inc. ("SenoRx") will and hereby does move for partial

7

summary judgment of non-infringement of claims 11 and 12 of U.S. Patent No. 5,913,813 (the

8

"'813 patent); claims 4 and 17 of U.S. Patent No. 6,413,204 (the "'204 patent"); and claim 6 of

9

U.S. Patent No. 6,482,142 (the "'142 patent").

10

SenoRx requests the Court hold claim 12 of the '813 patent, claim 17 of the '204 patent,

11

and claim 6 of the '142 patent not infringed because SenoRx's Contura™ Multi-Lumen Balloon

12

("Contura") does not contain a plurality of solid radiation sources.  SenoRx further requests the

13

Court hold claims 11 and 12 of the '813 patent and claim 4 of the '204 patent not infringed

14

because, applying SenoRx's proposed construction of predetermined spacing, there is not a

15

predetermined constant spacing between the alleged "inner spatial volume" (under any

16

definition) of the Contura and the outer surface of the Contura, *i.e.*, the Contura does not contain

17

an inner spatial volume that is concentric with and the same shape as its outer volume.

18

Alternatively, SenoRx requests that the Court hold claims 11 and 12 of the '813 patent not

19

infringed under Plaintiffs' proposed construction of "predetermined constant spacing" because

20

the spacing between the alleged "inner spatial volume" (under any definition) of the Contura and

21

the outer surface of the Contura is not constant in all directions.

22

This Motion, if granted, would dispose of all asserted claims of the '813 and '204 patents,

23

as well as one of three asserted claims of the '142 patent.  SenoRx brings the present Motion for

24

Partial Summary Judgment of Non-Infringement because by resolving these issues as a matter of

25

law, the case will be greatly simplified and appropriately streamlined for the jury.

26

This Motion is made pursuant to Fed. R. Civ. P. 56, Local Rule 56-1, and Judge Whyte's

27

Standing Orders.  SenoRx bases its Motion upon this Notice of Motion and Motion, the

28

accompanying Memorandum of Points and Authorities in Support thereof, the Declaration of

SENORX, INC.'S NOTICE OF MOTION AND
MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

-1-

CASE NO. 08-CV-0133 RMW

Colin G. Orton, Ph.D. in Support of SenoRx's Opening Claim Construction Brief and Motion for

Partial Summary Judgment of Non-Infringement, the Declaration of Williams F. Gearhart in

Support of SenoRx's Motion for Partial Summary Judgment of Non-Infringement, the

Declaration of Adam Harber in Support of SenoRx's Motion for Partial Summary Judgment of

Non-Infringement, and exhibits thereto.

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant SenoRx respectfully submits that based on the claim construction proposed by

either Plaintiffs or Defendant in the *Markman* briefs filed simultaneously herewith, claim 12 of

the '813 patent, claim 17 of the '204 patent, and claim 6 of the '142 patent are not infringed

because there is no dispute that SenoRx's Contura does not contain a plurality of solid radiation

sources.[1]  In addition, claims 11 and 12 of the '813 patent and claim 4 of the '204 patent are not

infringed under SenoRx's proposed construction of predetermined spacing because there is not a

predetermined constant spacing between the alleged "inner spatial volume" (under any

definition) of the Contura and the outer surface of the Contura, *i.e.*, the Contura does not contain

an inner spatial volume that is concentric with and the same shape as its outer volume.

Alternatively, even under Plaintiffs' proposed construction of predetermined spacing, claims 11

and 12 of the '813 patent are not infringed because the spacing between the alleged "inner spatial

volume" (under any definition) of the Contura and the outer surface of the Contura is not

constant in all directions.  Therefore, this Court is respectfully requested to enter summary

judgment of non-infringement of claims 11 and 12 of the '813 patent, claims 4 and 17 of the

'204 patent, and claim 6 of the '142 patent.

---

[1] All exhibits ("Ex.") referenced herein are exhibits to the Declaration of Adam D. Harber in Support of SenoRx's Motion for Partial Summary Judgment of Non-Infringement, unless otherwise specified.  The '813 patent is Ex. 1, the '204 patent is Ex. 2, and the '142 patent is Ex. 3.

**ISSUES TO BE DECIDED**

Whether claim 12 of the '813 patent, claim 17 of the '204 patent, and claim 6 of the '142 patent are not infringed because the Contura does not meet the claim limitations requiring a "plurality" of solid radiation sources.

Whether claims 11 and 12 of the '813 patent and claim 4 of the '204 patent are not infringed because the Contura does not meet the claim limitations requiring "a predetermined constant spacing" ('813 patent) and "a predetermined spacing" ('204 patent) between the inner and outer spatial volumes.

**LEGAL STANDARD**

**A.      Summary Judgment.**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).  Summary judgment is a useful tool to promote judicial economy and avoid unnecessary trials. *Scripps Clinic & Res. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1570 (Fed. Cir. 1991).

**B.      Non-Infringement.**

Determining whether a claim has been infringed requires a two-step analysis. *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359, 1362 (Fed. Cir. 2005).  First, the court must construe the claim to determine its scope and meaning. *Id.*  Second, the construed claim must be compared to the accused device. *Id.*  "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005).

An "accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the

1    patentee's case." *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

2    Summary judgment of non-infringement is proper when no reasonable jury could find that the

3    accused device contains every limitation recited in the properly construed claim. *PC Connector*,

4    406 F.3d at 1364.

5    **STATEMENT OF RELEVANT FACTS REGARDING THE CONTURA DEVICE**

6    The accused device, the Contura, is pictured below:



12    The Contura is a balloon catheter device for delivering therapeutic radiation to target

13    tissue.  The balloon is labeled "A" in the depiction above and is spherical.  The balloon is

14    attached to the end of a catheter body, labeled "B."  There are a number of lumens that run

15    through the catheter body from one end of the Contura (the proximal end, "C") through to the

16    other end (the distal end, "D").  Five of these lumens (the "treatment lumens") are designed to

17    have a radiation source inserted into them; one is positioned in the center of the catheter body,

18    and the other four are offset from the center lumen and spaced at 90 degree increments (so that

19    one is located above, one below, and one to either side of the central lumen).  *See* Declaration of

20    William F. Gearhart ("Gearhart Decl.") ¶ 6.

21    In use, the device is inserted into a lumpectomy cavity of a woman, where the balloon

22    portion is inflated with a contrast fluid.  Declaration of Colin G. Orton ("Orton Decl.") ¶ 18.  A

23    CT scan of the device *in situ* is then made, and a radiation oncologist and radiation physicist

24    determine how to best deliver radiation to the patient.  *Id.*  After a dose plan is optimized and

25    approved, an afterloader is connected to the catheter by the lumen(s) at the proximal end of the

26    device.  *Id.* ¶ 19.  Afterloaders used with the Contura are machines that are shielded and contain

27    a single radiation source, generally Iridium 192 ("Ir-192").  *Id.*  The radiation source used with

SENORX, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

-3-

CASE NO. 08-CV-0133 RMW

1    the Contura is cylindrically shaped.  *Id.*  During treatment, the radiation source generally is

2    inserted sequentially by the afterloader into multiple lumens of the Contura, although a single

3    lumen has been used on rare occasions.  *Id.*; Gearhart Decl. ¶ 8.  Radiation is delivered at precise

4    locations along the distal end of each lumen by pausing and moving the radiation source

5    according to the dose plan.  *Id.*  The radiation source is withdrawn back into the afterloader after

6    treatment is delivered.  *Id.*  Treatment with the Contura typically takes approximately five days,

7    after which the device is surgically removed from the patient.  *Id.*

8            As used by physicians, the Contura device utilizes only one radioactive solid source.

9    Orton Decl. ¶ 47.  This is because the afterloaders compatible with the Contura hold only one

10   radioactive source at a time, and thus can place only one radiation source at a time into the

11   Contura device.  *Id.* ¶¶ 46-47.  Indeed, none of the commercially available afterloaders in the

12   United States today are capable of placing more than one radiation source at a time.  *Id.* ¶ 46.

13   Each radiation source remains in the afterloader for approximately 90 days before it is replaced,

14   which is far longer than the approximately five-day duration of Contura therapy.  *Id.* ¶¶ 19, 47.

15                                          **ARGUMENT**

16   **A.        The Contura Does Not Meet the "Plurality" Claim Limitations.**

17           Plaintiffs assert that SenoRx's Contura literally infringes claim 12 of the '813 patent,

18   claim 17 of the '204 patent, and claim 6 of the '142 patent.  This assertion fails as a matter of

19   undisputed fact.  The Contura does not contain a plurality of solid radiation sources, a required

20   element for each of these claims.  Summary judgment of non-infringement therefore should be

21   entered.

22                    **1.        Plaintiffs' Infringement Contentions.**

23           Plaintiffs offer two theories of infringement, both asserted to be based on literal

24   infringement.[2]  First, Plaintiffs contend that multiple treatment lumens of the Contura "allow

25

26           [2] Although Plaintiffs in their Infringement Contentions assert infringement based on the
27   doctrine of equivalents for many of the claim elements, they do not assert infringement under the
     doctrine of equivalents for any of the "plurality" claim limitations, and for good reason.  Any
28                                                                              (continued...)

1  multiple solid radiation sources . . . to be arrayed simultaneously within" separate lumens. *See*

2  Ex. 4 (Plaintiffs' Preliminary Infringement Contentions ("Pls' Infr. Cont.")) Appendix A at 15;

3  *id.* Appendix B at 16; *id.* Appendix  C at 13 (emphasis added).  Second, in the alternative,

4  Plaintiffs argue that the Contura literally infringes because "a single solid radionuclide on a

5  source wire can be inserted sequentially into one or more predetermined locations within

6  multiple treatment lumens." *See id.* Appendix A at 15; *id.* Appendix B at 16-17; *id.* Appendix C

7  at 13.  These contentions fail as a matter of law based on the undisputed facts.  Because the

8  Contura does not satisfy the "plurality" claim limitations of the three patents-in-suit, summary

9  judgment of non-infringement should be granted.

10              **2.       The Contura Does Not Meet the "Plurality" Limitations.**

11         Dependent claim 12 of the '813 patent requires that the claimed apparatus contain a

12  "plurality of radioactive solid particles."  Ex. 1 ('813 patent), claim 12.  Similarly, dependent

13  claim 17 of the '204 patent and independent claim 6 of the '142 patent require a "plurality of

14  solid radiation sources."[3]  Ex. 2 ('204 patent), claim 17; Ex. 3 ('142 patent), claim 6.

15

16  _____

17             (...continued from previous page)
    argument that the Contura's <u>single</u> solid radiation source is equivalent to <u>two or more</u> solid
    radiation sources would impermissibly vitiate the "plurality" claim limitation, in direct
18  contravention of the well-established "all limitations" ("all elements") rule.  Under that rule, "an
    element of an accused product or process is not, as a matter of law, equivalent to a limitation of
19  the claimed invention if such a finding would entirely vitiate the limitation." *Freedman Seating
    Co. v. American Seating Co.*, 420 F.3d 1350, 1358 (Fed. Cir. 2005); *see also Warner-Jenkinson*
20  *Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("Each element contained in a patent
    claim is deemed material to defining the scope of the patented invention . . . .  It is important to
21  ensure that the application of the doctrine [of equivalents], even as to an individual element, is
    not allowed such broad play as to effectively eliminate that element in its entirety.").  Moreover,
22  under the principle of specific exclusion, a corollary to the all elements rule, use of the term
    "<u>plurality</u> of solid radiation sources" specifically excludes devices containing only "<u>single</u> solid
23  radiation sources." *See Asyst Techs., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1195 (Fed. Cir. 2005)
    (under the specific exclusion principle, "the term 'mounted' can fairly be said to specifically
24  exclude objects that are 'unmounted'").

25         [3] The phrases "radioactive solid particles" and "solid radiation sources" are synonymous.
    The terms "particles" and "sources" are used interchangeably in all three patents, *Compare* Ex. 3
26  ('142 patent), col. 3:7-8 ("radiation source comprises a plurality of spaced apart solid radioactive
    <u>particles</u>") *with id.*, col. 9:50–10:1 ("radiation source comprising a plurality of solid radiation
27  <u>sources</u>"), and all three patents state that "radioactive micro spheres of the type available from
    3M Company of St. Paul, Minn., may be used" as the "solid radioactive particles" or the
28                                                                                              (continued...)

1   As explained in SenoRx's *Markman* Brief, filed simultaneously herewith, the claim

2   limitation "plurality of solid radiation sources" means "two or more separate radioactive solid

3   sources placed in the inner spatial volume at the same time." *See* Def. *Markman* Br. at 26.

4   SenoRx's Contura, however, does not use two or more radioactive solid particles or sources.

5   Orton Decl. ¶¶ 46-47. In all configurations of the Contura, only a single solid radiation source is

6   inserted into the device. *Id.* In fact, the afterloader devices used to load the radiation source into

7   the Contura are only capable of placing one radiation source into the Contura at any one time.

8   *Id.* Additionally, the claim limitations require that the "plurality of solid radiation sources" be

9   present at the same time. It is undisputed that this does not occur in the use of the Contura, and

10  Plaintiffs do not and cannot demonstrate otherwise. Thus, under SenoRx's proposed claim

11  construction, the claims containing the "plurality" limitation are not infringed as a matter of law

12  because the Contura only uses a single source, not two or more sources, and because more than

13  one source is not placed into the device at the same time. *See Wolverine World Wide Inc. v. Nike*

14  *Inc.*, 38 F.3d 1192, 1199 (Fed. Cir. 1994) (When an "express claim limitation is absent from the

15  accused product, there can be no literal infringement as a matter of law.").

16  Plaintiffs have not offered any construction of the "plurality" limitations. In their

17  Preliminary Claim Construction, Plaintiffs simply state "No construction necessary" for the

18  limitations "plurality of radioactive solid particles" and "plurality of solid radiation sources."

19  Ex. 5 (Pls' Cl. Constr.) Appendix A at 3; *id.* Appendix B at 4; *id.* Appendix C at 4. Presumably,

20  therefore, Plaintiffs agree that the ordinary and customary meaning of "plurality" should be

21  applied. That ordinary meaning is "two or more." *See Dayco Prods., Inc. v. Total Containment,*

22  *Inc.*, 258 F.3d 1317, 1327-28 (Fed. Cir. 2001) ("'plurality,' when used in a claim, refers to two

23  or more items, absent some indication to the contrary"). Accordingly, even if the Court agrees

24  that no construction is necessary, the plurality limitation would still be missing and the claims

25  _____

26  (...continued from previous page)
    "radioactive source." *See* Ex. 3 ('142 patent), col. 4:60-62, Ex. 1 ('813 patent), col. 4:1-3; Ex. 2
27  ('204 patent), col. 4:49-51.

28

1   are not infringed as a matter of law – the Contura device utilizes <u>only a single</u> radioactive solid

2   source.

3       To get around their "plurality" problem, Plaintiffs make two arguments, both of which

4   fail as a matter of law.  <u>First</u>, Plaintiffs contend that multiple treatment lumens of the Contura

5   "<u>allow</u> multiple solid radiation sources . . . to be arrayed simultaneously within" the lumens.  *See*

6   Ex. 4 (Pls' Infr. Cont.) Appendix A at 15; *id.* Appendix B at 16; *id.* Appendix C at 13 (emphasis

7   added).  This argument misses the point.  It is legally irrelevant whether the Contura is capable

8   of being used with multiple radiation sources (even assuming, contrary to the undisputed

9   evidence, that there were compatible afterloaders available in the United States that could load

10  multiple radiation sources), when, as discussed above, the undisputed evidence is that SenoRx's

11  Contura <u>is not used</u> with two or more radioactive solid particles or sources.  *See* Orton Decl. ¶¶

12  46-47.  An apparatus claim is not infringed simply because the accused device is "capable" of

13  being made into an infringing device.  *Cross Medical Prods., Inc. v. Medtronic Sofamor Danek,*

14  *Inc.*, 424 F.3d 1293, 1311-12 (Fed. Cir. 2005).  Rather, "to infringe an apparatus claim, the

15  device must meet <u>all</u> of the [claim's] structural limitations."  *Id.*  (emphasis added).  That is, the

16  device must actually be made and used in such a manner as to satisfy all the claim elements.

17      In *Cross Medical*, the Federal Circuit expressly rejected the argument that an accused

18  device need only be <u>capable</u> of infringing.  The issue in that case was whether the claim

19  limitation "operatively joined" was met by the accused orthopedic surgical implant.  Despite the

20  court's construction that "operatively joined" meant "the interface and the bone segment are

21  connected and in contact," 424 F.3d at 1306, the patentee, like Plaintiffs here, argued that there

22  was infringement so long as the accused device was "capable" of being configured to meet all of

23  the structural limitations of the apparatus claim.  *Id.* at 1310.  The court rejected this argument,

24  finding that "the claim does not require that the interface be merely 'capable' of contacting bone;

25  the claim has a structural limitation that the anchor seat be in contact with bone."  *Id.* at 1311.

26  Accordingly, the court found no direct infringement by the accused infringer because there was

27

28

1   no evidence that the manufacturer itself made "an apparatus with the 'interface' portion in

2   contact with bone."  *Id.*

3         The same is true here.  The claims at issue do not require the apparatus to be "capable" of

4   containing a plurality of solid radiation sources.  Rather, the claims include a structural limitation

5   requiring that the claimed apparatus <u>contain</u> a plurality of solid radiation sources.  SenoRx does

6   not directly infringe because it manufactures the device without any radiation source.  Because

7   physicians using the Contura do not use it with two or more solid radiation sources, *see* Orton

8   Decl. ¶¶ 46-47, the "plurality" claim limitation is never met, and there is no direct infringement

9   by anyone.  And because there is no direct infringement, there can be no inducement of

10  infringement or contributory infringement.  *See Dynacore Holdings Corp. v. U.S. Philips Corp.*,

11  363 F.3d 1263, 1277 (Fed. Cir. 2004) ("absent direct infringement of the claims of a patent, there

12  can be neither contributory infringement nor inducement of infringement") (quoting *Met-Coil*

13  *Sys. Corp. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986)).

14        <u>Second</u>, Plaintiffs contend that the Contura literally infringes because "a single solid

15  radionuclide . . . can be inserted sequentially into . . . multiple treatment lumens."  *See* Ex. 4 (Pls'

16  Infr. Cont.) Appendix A at 15.  Under SenoRx's proposed construction, this contention fails as a

17  matter of undisputed fact, because two or more radionuclides must be present at the same time,

18  and it cannot be disputed that this does not occur with the use of a single radionuclide.

19        But even if SenoRx's construction is not adopted, Plaintiffs' argument still fails as a

20  matter of law.  The act of moving a single radionuclide to multiple locations does not transform

21  the single object into two or more objects; the claim is to plural radiation <u>sources</u>.  The lynchpin

22  of Plaintiffs' argument in this respect is that "two or more" includes "single" or "one."  Merely

23  to state the argument is to refute it.  Indeed, inserting a single radionuclide sequentially

24  necessarily means that only the one radionuclide ever is present.  These are apparatus claims, and

25  if all of the elements do not exist together, the claimed apparatus does not exist.  *See Cross*

26  *Medical*, 424 F.3d at 1311-12.  Because there never are two or more radionuclides, the claimed

27  apparatus never exists, and there is no infringement.

28

SENORX, INC.'S MEMORANDUM OF          -8-          CASE NO. 08-CV-0133 RMW
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

1    To be sure, if the inventors had wanted their patents to encompass sequential insertion of

2  a radionuclide, they easily could have included such language within their claims.  At the time of

3  filing, the inventors certainly were well aware that afterloaders were available that had the ability

4  to insert solid radiation particles into a brachytherapy apparatus.  *See* Ex. 3 ('142 patent), col.

5  5:8-10 ("solid radiation emitting material 36 can be inserted through lumen 14 on a wire 34, for

6  example using an afterloader"); Ex. 2 ('204 patent), col. 4:54-56 (same).  At least since the early

7  1990s,  it was well known that afterloaders had the ability to move radionuclides from one dwell

8  position to another within a radiation therapy apparatus.  Orton Decl. ¶ 45.  The inventors,

9  however, did not claim such a device.  Rather, the claims as written require that two or more

10  radioactive sources be present at the same time.  Because this limitation is not met by the

11  Contura device, the claims are not literally infringed.

12    For all of these reasons, this Court should enter summary judgment of non-infringement

13  of claim 12 of the '813 patent, claim 17 of the '204 patent, and claim 6 of the '142 patent.  *See*

14  *Wolverine World Wide*, 38 F.3d at 1199 ("If an express claim limitation is absent from the

15  accused product, there can be no literal infringement as a matter of law.").

16  **B.    The Contura Does Not Meet the Predetermined Spacing Limitations of the '813 and '204 Patents.**

17

18    Plaintiffs assert that SenoRx's Contura literally infringes the "predetermined constant

19  spacing" limitation of asserted claims 11 and 12 of the '813 patent, and the "predetermined

20  spacing" limitation of asserted claim 4 of the '204 patent.[4]  Because the claims as properly

21  construed require constant spacing between the surfaces of the inner and outer volumes, and the

22  Contura device fails to satisfy such a limitation, summary judgment of non-infringement should

23

24  _____

25    [4] Claims 11 and 12 of the '813 patent depend from claim 1, which requires "a predetermined
constant spacing between said inner spatial volume and the radiation transparent wall."  Ex. 1
26  ('813 patent), claims 1, 11, 12.  Claim 4 of the '204 patent depends from claim 3, which requires
"a predetermined spacing . . . between said inner spatial volume and the expandable surface
27  element."  Ex. 2 ('204 patent), claims 3-4.

28

1    be entered on claims 11 and 12 of the '813 patent and claim 4 of the '204 patent.[5]  Additionally,

2    even under Plaintiffs' construction, there is no infringement of the claims of the '813 patent

3    because the spacing between the inner spatial volume and outer spherical balloon of the Contura

4    is not "constant in all directions."  *See* Def. *Markman* Br. at 4.

### 1.    Plaintiffs' Infringement Contentions.

6        For the '813 patent, Plaintiffs state that the "predetermined constant spacing" element of

7    claim 1(c) (incorporated into claims 11 and 12) is met because "the central treatment lumen is

8    located within the balloon . . . along the longitudinal axis of the applicator. . . .  The Contura™

9    balloon surrounds and contains the inner spatial volume(s) discussed above.  The spacing

10   (predetermined by one of skill in the art) between the inner spatial volume and the wall of the

11   Contura™ balloon is constant.  This claim element is thus <u>literally</u> infringed."  Ex. 4 (Pls' Infr.

12   Cont.) Appendix A at 5 (emphasis in original).

13       For the '204 patent, Plaintiffs similarly state that "The Contura™ balloon surrounds and

14   contains the inner spatial volume(s) (discussed above).  The spacing between the inner spatial

15   volume and the wall of the Contura™ balloon is constant.  This claim element is thus <u>literally</u>

16   infringed."  Ex. 4 (Pls' Infr. Cont.) Appendix B at 12-13 (emphasis in original).

### 2.    There Is No Infringement of the Predetermined Spacing Limitations Under SenoRx's Proposed Construction.

19       The goal of the '813 and '204 patents is to provide a uniform, symmetric radiation dose

20   profile that has the same shape as the outer balloon.  As discussed in SenoRx's *Markman* brief at

21   4-8, the asserted claims achieve this goal and avoid hot spots in the tissue by separating the

22   surface of the inner volume (in which radioactive material is placed) from the surface of the

23   outer balloon by a predetermined fixed distance.  As demonstrated in the declaration of Dr.

24   _____

25       [5] Plaintiffs have not asserted equivalency of these limitations under the doctrine of
     equivalents, and again there is good reason: prosecution history estoppel based on amendment
26   and argument over the prior art precludes Plaintiffs' reliance on the doctrine of equivalents to
     reach a device in which there is not constant spacing between surfaces of the inner and outer
27   volumes.

28

SENORX, INC.'S MEMORANDUM OF          -10-          CASE NO. 08-CV-0133 RMW
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

1    Orton, as a matter of geometry, this means that the inner spatial volume must have the same

2    shape and be concentric with the outer balloon (*i.e.*, the two structures must share the same

3    center and orientation).  *See* Orton Decl. ¶ 27.  Accordingly, SenoRx's proposed construction of

4    the predetermined spacing limitations in the '813 and '204 patents[6] is:

5           Fixed spacing, predetermined by one skilled in the art before
            administering radiation, between the wall or edge of the inner spatial
6           volume and the radiation transparent wall of the outer, closed
            inflatable chamber, when inflated, which for each point on the wall
7           or edge of the inner spatial volume, the distance to the closest point
            on the outer chamber is the same (*i.e.*, the inner spatial volume and
8           outer chamber are concentric and the same shape).

9           To determine if the predetermined spacing limitations of the '813 and '204 patents are

10   infringed, the Court must examine the relationship between the inner and outer volumes of the

11   Contura.  There is no dispute as to the shape and location of the surface of the outer volume once

12   the spherical outer balloon of the Contura is expanded.  The issue therefore turns on what is the

13   "inner spatial volume" of the Contura, and how that inner volume relates to the outer balloon.

14   Plaintiffs have identified three mutually contradictory theories regarding the identity of the inner

15   spatial volume in the Contura.  They claim the inner spatial volume is (1) each treatment lumen

16   taken individually, (2) under the doctrine of equivalents, the treatment lumens taken collectively

17   and the space surrounding them, and (3) the solid radionuclide source.  Regardless what

18   Plaintiffs call the inner spatial volume,[7] the Contura does not meet the requirements of the

19   predetermined spacing limitation.

20           a.    **The Contura's Lumens, Taken Individually, Do Not Meet the
                   Predetermined Spacing Limitations.**

21

22

23   _____

24       [6] The '204 patent – and SenoRx's proposed construction thereof – uses the term "expandable
         surface element" in place of "radiation transparent wall of the outer, closed inflatable chamber."
25       There is no dispute, however, that the two phrases reference the same structure in the claimed
         devices as relates to this claim element.

26       [7] SenoRx disagrees that any of the structures relied on by Plaintiffs constitute "inner spatial
27       volumes" but will accept Plaintiffs definitions for purposes of this motion.

28

1    Plaintiffs contend that each of the five treatment lumens comprise an inner spatial volume

2    (*i.e.*, they argue that the Contura has five separate inner spatial volumes).  *See* Ex. 4 (Pls' Infr.

3    Cont.) Appendix A at 4, 9; *id.* Appendix B at 4.  First, there is not a predetermined constant

4    spacing between any of these lumens and the outer surface.  The four outer lumens in the balloon

5    are arc-shaped, and arranged so as to be 5 mm offset from the central axis of the catheter at their

6    central point.  This clearly means that they are located so that the closest distance to the outer

7    balloon is not the same for each point on any lumen, as depicted below in Figure 1.  *See* Orton

8    Decl. ¶ 34.

9

10

11    

12

13

14

15

16    **Figure 1 (Individual Offset Lumens)**

17    Nor is the central lumen a fixed distance from the surface of the balloon.  As seen in Figure 2,

18    below, the central lumen is much closer to the balloon at its ends than at its central portion, and

19    thus, the distance from each point in the edge of the central lumen to the closest point on the

20    outer balloon is <u>not</u> the same.  *See id.*

21

22

23

24

25

26

27

28



**Figure 2 (Individual Central Lumen)**

Accordingly, the Contura's individual lumens are not separated from the balloon by a predetermined spacing, and do not meet the predetermined spacing claim elements.

Second, the predetermined spacing elements also are not met because none of the individual lumens have the same shape as the outer balloon. Orton Decl. ¶ 34. Finally, the four offset lumens do not share a common center with the outer balloon. *Id.* Accordingly, there is no "predetermined constant spacing" or "predetermined spacing" between any of the four offset lumens and the outer balloon.

        b.      **The Contura's Lumens, Taken Together, Do Not Meet the Predetermined Spacing Limitations.**

Invoking the doctrine of equivalents, Plaintiffs argue the "five treatment lumens and the area within the balloon between and surrounding those lumens" comprise the inner spatial volume. *See* Ex. 4 (Pls' Infr. Cont.) Appendix A at 4, 9; *id.* Appendix B at 4. This irregularly shaped area – allegedly consisting of the "five treatment lumens and the area within the balloon between and surrounding those lumens," *id.* – likewise is not spaced a constant distance from the Contura's balloon, as shown in Figure 3. Therefore, this proposed configuration does not infringe the predetermined spacing claim elements for the same reasons discussed above. Orton Decl. ¶ 35.

SENORX, INC.'S MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY
JUDGMENT OF NON-INFRINGEMENT

-13-

CASE NO. 08-CV-0133 RMW

**Figure 3 (Lumens (collectively))**

In addition, as clearly evidenced in Figure 3, the irregular, unbounded region within the balloon between and surrounding the five "treatment" lumens has a different shape from the outer balloon.  *Id.*  Accordingly, the predetermined spacing claim limitation is not satisfied under Plaintiffs' second proposed interpretation of the inner spatial volume.

> c.    **The Radionuclide Used With the Contura Does Not Meet the Predetermined Spacing Limitations.**

Plaintiffs' final theory is that the solid cylindrical radionuclide source used with the Contura is itself the inner spatial volume.  *See* Ex. 4 (Pls' Infr. Cont.) Appendix A at 4; *id.* Appendix B at 4.  But as explained below, the radionuclide does not satisfy this claim element because (1) there is no fixed spacing between the radionuclide and the balloon, and (2) the radionuclide has a different shape from the outer balloon and therefore there is no constant spacing over its entire surface.  Thus, the Contura does not satisfy this limitation.

The radionuclide is not part of the Contura device.  It is instead part of the afterloader. During treatment of a patient, the radiation source is inserted into the Contura's lumens by the afterloader, and radiation is delivered at precise locations along the distal end of the lumens (called "dwell positions") by pausing and moving the radiation source through the lumens. Orton Decl. ¶ 19.  An exemplary treatment plan using an afterloader in the Contura device is shown in Figure 4 below.  Gearhart Decl. ¶ 10.  Each rectangular box represents a possible dwell position; the green boxes depict the positions where the radionuclide would dwell during this exemplary treatment plan, and the gray boxes are positions that are not used.  *Id.*

SENORX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT

-14-

CASE NO. 08-CV-0133 RMW



**Figure 4**
**(Exemplary Contura Treatment Plan - Multiple Dwell, Multiple Lumen)**

The undisputed evidence is that in every case of patient treatment since the commercial launch of the Contura in January 2008, the dose was delivered with multiple dwell positions. Gearhart Decl. ¶ 8. And, in the vast majority of those cases, the dose also was delivered with multiple lumens. *Id.* This means the radionuclide is moved around during treatment. Accordingly, post-launch use of the Contura does not infringe the asserted claims discussed here because the spacing is not fixed. Orton Decl. ¶ 36. Put another way, there is no constant spacing for a moving radionuclide source (*i.e.*, an inner spatial volume that moves relative to the outer expandable surface cannot have constant spacing).

Furthermore, the Contura does not satisfy this claim limitation (based on SenoRx's proposed construction) for the independent reason that the radionuclide used with the Contura is not the same shape as the outer balloon. The radionuclide is cylindrical, not spherical. Orton Decl. ¶ 36. As a result, regardless of where the radionuclide is located, the spacing between the ends of the radionuclide and the balloon is less than the spacing between the cylindrical surface of the radionuclide and the balloon. *Id.*

\* \* \*

1    In sum, the accused device does not read on the predetermined spacing limitation of

2  claim 1 of the '813 and claim 3 of the '204 patents under any of Plaintiffs' three theories of inner

3  spatial volume.  Accordingly, there is no infringement of asserted claims 11 and 12 of the '813

4  patent, both of which depend from claim 1, and asserted claim 4 of the '204 patent, which

5  depends from claim 3.  *See Wolverine World Wide*, 38 F.3d at 1199 (When an "express claim

6  limitation is absent from the accused product, there can be no literal infringement as a matter of

7  law.").

8           **3.      There Is No Infringement of the '813 Patent Under Plaintiffs'
                       Proposed Construction.**
9

10   Plaintiffs propose that the "predetermined constant spacing" element of claim 1[c] of the

11 '813 patent should be understood as follows:

12          spacing predetermined by one skilled in the art between the wall or
            edge of the inner spatial volume and the radiation transparent wall of
            the outer, closed, inflatable chamber, when inflated, which is
13          constant in all directions if the outer chamber is spherical, or
            constant along a radial plane if the outer chamber is not spherical.
14

15 Def. *Markman* Br. at 4.  There is no factual dispute that the Contura has a spherical outer

16 balloon.  Gearhart Decl. ¶ 6; Ex. 4 (Pls' Infr. Cont.) Appendix B at 5 ("[t]he inflatable spherical

17 balloon is an 'expandable surface element'"); *id.* at 7 ("the wall of the spherical Contura™

18 balloon"); *id.* Appendix C at 3 ("[t]he outer surface of the inflatable spherical Contura™ multi-

19 lumen balloon"); *id.* at 12 ("[t]he outer surface of the inflatable spherical Contura™ multi-lumen

20 balloon"); *see also id.* Appendix B at 3, 6, 8, 15; *id.* Appendix C at 5, 8.  Thus, even under

21 Plaintiffs' construction, the spacing between the surface of the inner spatial volume and the wall

22 of the Contura balloon must be "constant in all directions."  For the same reasons discussed

23 above, and as depicted in Figures 1-4, the spacing between the "inner spatial volume" of the

24 Contura and the balloon is not "constant in all directions," regardless of the definition of inner

25 spatial volume.  Accordingly, even if Plaintiffs' construction is adopted, summary judgment of

26 no infringement is appropriate for claims 11 and 12 of the '813 patent.

27

28

1

**CONCLUSION**

2
        For the foregoing reasons, the Court should grant SenoRx's Motion for Partial Summary

3
Judgment of Non-Infringement.

4

Dated:  May 21, 2008                          Respectfully submitted,

5

6
                                              By:    /s/ F.T.Alexandra Mahaney
7
                                              F.T. Alexandra Mahaney, State Bar No. 125984
8                                             WILSON SONSINI GOODRICH & ROSATI
                                              Professional Corporation
9                                             12235 El Camino Real, Suite 200
                                              San Diego, CA  92130
10                                            Telephone: (858) 350-2300
                                              Facsimile: (858) 350-2399
11                                            Email:  amahaney@wsgr.com

12                                            Bruce R. Genderson (admitted *pro hac vice*)
                                              Aaron P. Maurer (admitted *pro hac vice*)
13                                            Rachel Shanahan Rodman (admitted *pro hac vice*)
                                              Adam D. Harber (admitted *pro hac vice*)
14                                            WILLIAMS & CONNOLLY LLP
                                              725 Twelfth St. NW
15                                            Washington, DC 20005
                                              Telephone: (202) 434-5000
16                                            Facsimile: (202) 434-5029

17
                                              Attorneys for Defendant and Counterclaimant
18                                            SENORX, INC.

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,
*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. C-08-0133 RMW (RS)

I, Kirsten Blue, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

On May 21, 2008, I served a copy(ies) of the following document(s):

**DEFENDANT SENORX, INC.'S NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT ('813 PATENT, CLAIMS 11 & 12; '204 PATENT, CLAIMS 4 & 17; AND '142 PATENT CLAIM 6)**

on the parties to this action by the following means:

Henry C. Su (suh@howrey.com)                    Attorneys for Plaintiffs
Katharine L. Altemus (altemusk@howrey.com)      HOLOGIC, INC. CYTYC
HOWREY LLP                                       CORPORATION and
1950 University Avenue, 4th Floor                HOLOGIC LP
East Palo Alto, CA  94303
Telephone:  (650) 798-3500
Facsimile:  (650) 798-3600

Matthew Wolf (wolfm@howrey.com)                  Attorneys for Plaintiffs
Marc Cohn (cohnm@howrey.com)                     HOLOGIC, INC. CYTYC
HOWREY LLP                                       CORPORATION and
1229 Pennsylvania Avenue, NW                     HOLOGIC LP
Washington, DC  20004
Telephone:  (202) 783-0800
Facsimile:  (202) 383-6610

☒  (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☒  (BY ELECTRONIC MAIL) I caused such document(s) to be sent via electronic mail (email) to the above listed names and email addresses.

☒  (BY CM/ECF) I caused such document(s) to be sent via electronic mail through the Case Management/Electronic Case File system with the U.S. District Court for the Northern District of California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct, and that this declaration was executed on May 21, 2008.

_____
Kirsten Blue

1  F.T. Alexandra Mahaney, State Bar No. 125984
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   12235 El Camino Real, Suite 200
3  San Diego, CA  92130
   Telephone:  (858) 350-2300
4  Facsimile:   (858) 350-2399
   Email:  amahaney@wsgr.com
5
   Bruce R. Genderson (*admitted pro hac vice*)
6  Aaron P. Maurer (*admitted pro hac vice*)
   Rachel Shanahan Rodman (*admitted pro hac vice*)
7  Adam D. Harber (*admitted pro hac vice*)
   WILLIAMS & CONNOLLY LLP
8  725 Twelfth St. NW
   Washington, DC 20005
9  Telephone:  (202) 434-5000
   Facsimile:  (202) 434-5029
10
11 Attorneys for Defendant and Counterclaimant
   SENORX, INC.
12
                    IN THE UNITED STATES DISTRICT COURT
13
                   NORTHERN DISTRICT OF CALIFORNIA
14
                          SAN JOSE DIVISION
15

16 HOLOGIC, INC., CYTYC CORP., and          )    CASE NO.:  08-CV-0133 RMW
   HOLOGIC L.P.,                            )
17                                          )    **DECLARATION OF ADAM D.**
                                            )    **HARBER IN SUPPORT OF**
18              Plaintiffs,                  )    **DEFENDANT SENORX, INC.'S**
                                            )    **MOTION FOR PARTIAL**
19         v.                                )    **SUMMARY JUDGMENT OF NON-**
                                            )    **INFRINGEMENT ('813 PATENT,**
20 SENORX, INC.,                            )    **CLAIMS 11 & 12; '204 PATENT,**
                                            )    **CLAIMS 4 & 17; AND '142 PATENT**
21              Defendant.                   )    **CLAIM 6)**
                                            )
22 _____ )
                                            )
23 SENORX, INC.,                            )
                                            )    Date:  June 25, 2008
24              Counterclaimant,             )    Time:  2:00 p.m.
                                            )    Courtroom:  6, 4th Floor
25         v.                                )    Judge:  Hon. Ronald M. Whyte
                                            )
26 HOLOGIC, INC., CYTYC CORP., and          )
   HOLOGIC L.P.,                            )
27                                          )
                Counterdefendants.           )
28 _____

1        I, Adam D. Harber, declare that I am an associate at the law firm of Williams & Connolly

2    LLP, admitted pro hac vice to practice before this Court in the above-captioned matter.  I serve

3    as outside counsel for Defendant SenoRx, Inc. ("SenoRx").  The following declaration is based

4    on my personal knowledge, and if called upon to testify, I could and would competently testify

5    as to the matters set forth herein.

6        1.    Attached hereto as Exhibit 1 is a true and correct copy of U.S. Patent No.

7    5,913,813.

8        2.    Attached hereto as Exhibit 2 is a true and correct copy of U.S. Patent No.

9    6,413,204.

10       3.    Attached hereto as Exhibit 3 is a true and correct copy of U.S. Patent No.

11   6,482,142.

12       4.    Attached hereto as Exhibit 4 is a true and correct copy of Plaintiffs' Disclosure of

13   Asserted Claims and Preliminary Infringement Contentions Under Patent Local Rule 3-1.

14       5.    Attached hereto as Exhibit 5 is a true and correct copy of Plaintiffs' Preliminary

15   Claim Construction, and Identification of Structure Corresponding to § 112(6) Elements for U.S.

16   Patent Nos. 5,913,813, 6,413,204, and 6,482,142, and Preliminary Identification of Evidence

17   Pursuant to Patent Local Rule 4-2.

18

19       I declare under penalty of perjury that the foregoing is true and correct.

20

21   Dated:  May 21, 2008          By: _____

22                            Adam D. Harber

23

24

25

26

27

28

CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,
*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. C-08-0133 RMW (RS)

I, Kirsten Blue, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

On May 21, 2008, I served a copy(ies) of the following document(s):

**DECLARATION OF ADAM D. HARBER IN SUPPORT OF DEFENDANT SENORX, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT ('813 PATENT, CLAIMS 11 & 12; '204 PATENT, CLAIMS 4 & 17; AND '142 PATENT CLAIM 6)**

on the parties to this action by the following means:

| | |
|---|---|
| Henry C. Su (suh@howrey.com)<br>Katharine L. Altemus (altemusk@howrey.com)<br>HOWREY LLP<br>1950 University Avenue, 4th Floor<br>East Palo Alto, CA 94303<br>Telephone: (650) 798-3500<br>Facsimile: (650) 798-3600 | Attorneys for Plaintiffs<br>HOLOGIC, INC. CYTYC<br>CORPORATION and<br>HOLOGIC LP |
| Matthew Wolf (wolfm@howrey.com)<br>Marc Cohn (cohnm@howrey.com)<br>HOWREY LLP<br>1229 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 783-0800<br>Facsimile: (202) 383-6610 | Attorneys for Plaintiffs<br>HOLOGIC, INC. CYTYC<br>CORPORATION and<br>HOLOGIC LP |

☒ (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☒ (BY ELECTRONIC MAIL) I caused such document(s) to be sent via electronic mail (email) to the above listed names and email addresses.

☒ (BY CM/ECF) I caused such document(s) to be sent via electronic mail through the Case Management/Electronic Case File system with the U.S. District Court for the Northern District of California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct, and that this declaration was executed on May 21, 2008.

_____
Kirsten Blue

# Exhibit 1

US005913813A

# United States Patent [19]

## Williams et al.

[11] **Patent Number:** 5,913,813

[45] **Date of Patent:** Jun. 22, 1999

[54] **DOUBLE-WALL BALLOON CATHETER FOR TREATMENT OF PROLIFERATIVE TISSUE**

[75] Inventors: **Jeffery A. Williams**, Baltimore, Md.; **Christopher H. Porter**, Woodinville, Wash.; **Jeffrey F. Williamson**; **James F. Dempsey**, both of St. Louis, Mo.; **Timothy J. Patrick**; **James B. Stubbs**, both of Alpharetta, Ga.

[73] Assignee: **Proxima Therapeutics, Inc.**, Alpharetta, Ga.

[21] Appl. No.: **08/900,021**

[22] Filed: **Jul. 24, 1997**

[51] **Int. Cl.⁶** ............................................... **A61N 5/00**

[52] **U.S. Cl.** ................................................ **600/3**

[58] **Field of Search** .............................. 600/1–8

[56] **References Cited**

U.S. PATENT DOCUMENTS

3,324,847  6/1967  Zoumboulis .

5,106,360  4/1992  Ishiwara et al. .
5,429,582  7/1995  Williams .
5,611,767  3/1997  Williams .
5,662,580  9/1997  Bradshaw et al. ............................ 600/3
5,782,742  7/1998  Crocker et al. .
5,785,688  7/1998  Joshi et al. .

*Primary Examiner*—John P. Lacyk
*Attorney, Agent, or Firm*—Nikolai, Mersereau & Dietz, P.A.

[57]                **ABSTRACT**

An instrument for use in brachytherapy comprises a concentric arrangement of inner and outer distensible, spherical chambers disposed near the proximal end of a catheter body where one of the chambers is made to contain a radioactive material with the other chamber containing a radiation absorptive material, the apparatus functioning to provide a more uniform absorbed dose profile in tissue surrounding a cavity created by the removal of a tumor. An alternative embodiment includes non-spherical inner and outer chambers whose respective walls are spaced equidistant over the entire surfaces thereof.

**13 Claims, 2 Drawing Sheets**



**U.S. Patent**     Jun. 22, 1999     Sheet 1 of 2     **5,913,813**



FIG. 1



FIG. 2



FIG. 3

SRX-HOL00000002



**FIG. 4**



**FIG. 5**

SRX-HOL00000003

5,913,813

**1**

## DOUBLE-WALL BALLOON CATHETER FOR TREATMENT OF PROLIFERATIVE TISSUE

### BACKGROUND OF THE INVENTION

I. Field of the Invention

This invention relates generally to apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus for the treatment of such disorders in the body by the application of radioactive material and/or radiation emissions.

II. Discussion of the Prior Art

In the Williams U.S. Pat. No. 5,429,582 entitled "Tumor Treatment", there is described a method and apparatus for treating tissue surrounding a surgically excised tumor with radioactive emissions to kill any cancer cells that may be present in the margins surrounding the excised tumor. In accordance with that patent, there is provided a catheter having an inflatable balloon at a distal end thereof to define a distensible reservoir. Following surgical removal of a tumor, say in the brain or breast, the deflated balloon may be introduced into the surgically-created pocket left following removal of a tumor and then the balloon is inflated by injecting a fluid having radionuclide(s) therein into the distensible reservoir, via a lumen in the catheter.

When it is considered that the absorbed dose rate at a point exterior to the radioactive source is inversely proportional to the square of the distance between the radiation source and the target point, tissue directly adjacent the wall of the distensible reservoir may be overly "hot" to the point where healthy tissue necrosis may result. In general, the amount of radiation desired by the physician is a certain minimum amount that is delivered to a site 0–3 cms away from the wall of the excised tumor. It is desirable to keep the radiation in the space between that site and the wall of the distensible reservoir as uniform as possible to prevent overexposure to tissue at or near the reservoir wall. In treating other cancers, such as bladder cancer, where the neoplastic tissue is generally located on the bladder surface, deep penetration is unnecessary and to be avoided.

A need exists for an instrument which may be used to deliver radiation from a radioactive source to target tissue within the human body of a desired intensity and at a predetermined distance from the radiation source without over-exposure of body tissues disposed between the radiation source and the target.

### SUMMARY OF THE INVENTION

We have found that it is possible to deliver a desired radiation dose at a predetermined radial distance from a source of radioactivity by providing a first spacial volume at the distal end of a catheter and a second spacial volume defined by a surrounding of the first spatial volume by a polymeric film wall where the distance from the spatial volume and the wall is maintained substantially constant over their entire surfaces. One of the inner and outer volumes is filled with either a fluid or a solid containing a radionuclide(s) while the other of the two volumes is made to contain either a low radiation absorbing material, e.g., air or even a more absorptive material, such as an x-ray contrast fluid. Where the radioactive material comprises the core, the surrounding radiation absorbing material serves to control the radial profile of the radioactive emissions from the particular one of the inner and outer volumes containing the radionuclide(s) so as to provide a more radially uniform radiation dosage in a predetermined volume surrounding the

**2**

outer chamber. Where the core contains the absorbent material, the radial depth of penetration of the radiation can be tailored by controlling the core size.

### DESCRIPTION OF THE DRAWINGS

The foregoing features, objects and advantages of the invention will become apparent to those skilled in the art from the following detailed description of a preferred embodiment, especially when considered in conjunction with the accompanying drawings in which:

FIG. 1 is a side view of an apparatus for delivering radioactive emissions to body tissue;

FIG. 2 is a cross-sectional view taken along the line 2—2 in FIG. 1;

FIG. 3 is a fragmentary side view of an apparatus for administering radiation therapy in accordance with a second embodiment;

FIG. 4 is a graph helpful in understanding the operation of the apparatus of the present invention; and

FIG. 5 depicts a further embodiment of the invention.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring first to FIG. 1, there is indicated generally by numeral 10 a surgical instrument for providing radiation treatment to proliferative tissue in a living patient. It is seen to comprise a tubular body member 12 having first and second lumens 14 and 16 (FIG. 2) extending from proximal ports 18 and 20 in a molded plastic hub 22 to inflation ports 24 and 26 formed through the side wall of the tube 12 and intersecting with the lumens 14 and 16, respectively.

Affixed to the tubular body 12 proximate the distal end 28 thereof is an inner spatial volume 30 which may be defined by a generally spherical polymeric film wall 32. The interior of the chamber 30 is in fluid communication with the inflation port 26. Surrounding the spatial volume 30 is an outer chamber 34 defined by a outer polymeric film wall 36 that is appropriately spaced from the wall 32 of the inner chamber 30 when the two chambers are inflated or otherwise filled and supported. Chamber 34 encompasses the inflation port 24.

The embodiment of FIG. 1 can be particularly described as comprising two spherical chambers 30 and 34, one inside the other. In accordance with a first embodiment of the invention, the outer chamber 34, being the volume defined by the space between the inner spherical wall 32 and the outer spherical wall 36, may be filled with air or, alternatively, a radiation absorbing fluid, such as a contrast media used in angiography. The inner chamber 30 is then filled with a material containing a predetermined radionuclide, for example, I-125, I-131, Yb-169 or other source of radiation, such as radionuclides that emit photons, beta particles or other therapeutic rays.

Those skilled in the art will appreciate that instead of having the inner spatial volume 30 defined by a generally spherical polymeric film wall as at 32, the catheter body member 12 may have a solid spherical radiation emitting material in which event that solid sphere would be surrounded with the outer spherical wall 36 with the spatial volume therebetween occupied by a radioactive ray absorbent material, such as air, water or a contrast material.

It is further contemplated that instead of having the inner spatial volume comprising a single solid sphere, it may instead comprise a plurality of radioactive particles strategically placed within the inner spatial volume so as to radiate

SRX-HOL00000004

5,913,813

**3**

in all directions with a substantially equal intensity. FIG. 5 illustrates a catheter having the inner spatial volume occupied by a plurality of radioactive beads that are mounted on the distal ends of a plurality of wires that are routed through the catheter body and exit a plurality of ports formed through the wall of the catheter body and reaching the lumen. This arrangement allows the exact positioning of the individual radiation sources to be positioned so as to generate a desired resultant profile.

It is not essential to the invention that the chambers 30 and 34 have spherical walls, so long as the spacing between the wall of the inner chamber and the wall of the outer chamber remain generally constant, such as is illustrated in FIG. 3.

Referring to FIG. 4, there is shown the two concentric spherical chambers of FIG. 1 defined by inner spherical wall 32 and outer spherical wall 36 disposed within the margin 38 of a surgically excised tumor. It is desired that the radiation emitted from the core 32 be capable of delivering a certain minimum dose absorbed at a location approximately 0–3 cms from the margin 38. Curve 40 is a plot of absorbed dose vs. radial distance that would be obtained if the inner chamber defined by spherical wall 32 was not present and the entire volume of the spherical chamber defined by wall 36 were filled with the radioactive fluid. Plot 42 reflects the absorbed dose distribution as a function of radial distance when the radioactive fluid is contained within the inner chamber and is surrounded by either a gas or a more radiation absorbing material. Comparing the plots 40 and 42, by providing the concentric arrangement depicted, the absorbed dose profile in the space between the 2 cm site and the wall of the outer balloon is maintained much more uniform, thus preventing over-treatment of body tissue at or close to the outer wall 36 of the instrument. That is to say, to obtain the same end point absorbed dose at 2 cm, it would be necessary to increase the source activity relative to that used for a completely filled (to surface 36) configuration, assuming the same radionuclide is used in both configurations.

With no limitation intended, the distensible polymeric chambers may comprise a biocompatible, radiation resistant polymer, such as Silastic rubbers, polyurethanes, polyethylene, polypropylene, polyester, PVC, C-Flex. The radioactive fluid contained within the inner chamber 32 can be made from any solution of radionuclide(s), e.g., a solution of I-125 or I-131. A radioactive fluid can also be produced using a slurry of a suitable fluid containing small particles of solid radionuclides, such as Au-198, Y-90. Moreover, the radionuclide(s) can be embodied in a gel.

In the embodiments heretofore described, the material containing the radionuclide(s) is located in the inner chamber. The invention also contemplates that the outer chamber 34 may contain the material having the radionuclide therein while the inner chamber 30 contains the radiation absorptive material. This configuration is advantageous where a profile exhibiting higher intensity at a tissue surface with lesser penetration is desired. By using this approach, less volume of radioactive material is required than if the entire volume of the device were filled with radioactive material. Moreover, the outer chamber wall need not be spherical, yet a uniform profile is obtainable. Experiments have shown that a steeper radial absorbed source gradient can be obtained using a radiation attenuation fluid in the inner chamber 30 than otherwise obtains when only a single distensible chamber is used, as in the aforereferenced Williams U.S. Pat. No. 5,429,582. The invention also contemplates that the radioactive material in the inner core can be replaced by a core containing solid radionuclide-containing

**4**

particles. For example, radioactive micro spheres of the type available from the 3M Company of St. Paul, Minn., may be used in place of the fluid. This radioactive source can either be preloaded into the catheter at the time of manufacture or loaded into the device after it has been implanted into the space formerly occupied by the excised tumor. Such a solid radioactive core configuration offers the advantage in that it allows a wider range of radionuclides than if one is limited to liquids. Solid radionuclides that could be used with the delivery device of the present invention are currently generally available as brachytherapy radiation sources.

In either the concentric spherical embodiment of FIG. 1 or the non-spherical configuration of FIG. 3, the spacing between the inner and outer chambers needs to be held somewhat constant to avoid "hot spots". This result can be achieved by careful placement of precision blown polymer parisons or by using compressible foams or mechanical spacers in the form of webs joining the inner wall 32 to the outer wall 36.

This invention has been described herein in considerable detail in order to comply with the patent statutes and to provide those skilled in the art with the information needed to apply the novel principles and to construct and use such specialized components as are required. However, it is to be understood that the invention can be carried out by specifically different equipment and devices, and that various modifications, both as to the equipment and operating procedures, can be accomplished without departing from the scope of the invention itself.

What is claimed is:

1. Apparatus for delivering radioactive emissions to a body location with a uniform radiation profile, comprising:

(a) a catheter body member having a proximal end and distal end;

(b) an inner spatial volume disposed proximate the distal end of the catheter body member;

(c) an outer, closed, inflatable, chamber defined by a radiation transparent wall affixed to the body member proximate the distal end thereof in surrounding relation to the inner spatial volume with a predetermined constant spacing between said inner spatial volume and the radiation transparent wall;

(d) a material containing a radionuclide(s) disposed in one of the inner spatial volume and outer chamber; and

(e) means disposed in the other of the inner spatial volume and outer chamber for rendering uniform the radial absorbed dose profile of the emissions from the one of the inner spatial volume and outer chamber containing the radionuclides.

2. The apparatus as in claim 1 wherein said inner spatial volume is an inner closed, chamber defined by a further radiation transparent wall.

3. The apparatus of claim 1 wherein the means for rendering uniform the absorbed dose profile is a radiation attenuating material.

4. The apparatus of claim 3 wherein the radiation attenuating material is selected from a group consisting of barium sulphate, water, and X-ray contrast media.

5. The apparatus as in claim 2 wherein the radionuclide is in a fluid form.

6. The apparatus as in claim 5 wherein the fluid comprises an isotope of iodine.

7. The apparatus as in claim 1 wherein the radionuclide is a slurry of a fluid containing particles of a solid isotope.

SRX-HOL00000005

5,913,813

| 5 | 6 |
|---|---|

**8**. The apparatus as in claim **2** wherein the inner chamber contains the radioactive material.

**9**. The apparatus as in claim **1** wherein the outer chamber contains the radioactive material.

**10**. The apparatus as in claim **8** wherein the radioactive material is a fluid.

**11**. The apparatus as in claim **8** wherein the radioactive material is a solid.

**12**. The apparatus as in claim **1** wherein the material containing a radionuclide comprises a plurality of radioactive solid particles placed at predetermined locations within the inner spatial volume to provide a desired composite radiation profile.

**13**. The apparatus as in claim **2** wherein the inner and outer chambers are spherical in shape and are concentric.

\* \* \* \* \*

SRX-HOL00000006

# Exhibit 2

US006413204B1

(12) **United States Patent**
Winkler et al.

(10) Patent No.: **US 6,413,204 B1**
(45) Date of Patent: ***Jul. 2, 2002**

(54) **INTERSTITIAL BRACHYTHERAPY APPARATUS AND METHOD FOR TREATMENT OF PROLIFERATIVE TISSUE DISEASES**

(75) Inventors: **Rance A. Winkler**, Atlanta; **Timothy J. Patrick**; **James Stubbs**, both of Alpharetta, all of GA (US)

(73) Assignee: **Proxima Therapeutics, Inc.**, Alpharetta, GA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **09/293,524**

(22) Filed: **Apr. 15, 1999**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 08/900,021, filed on Jul. 4, 1997, now Pat. No. 5,913,813.

(51) Int. Cl.⁷ ................................................. **A61N 5/00**
(52) U.S. Cl. ........................................................ **600/3**
(58) Field of Search .......................................... 600/1–8

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 3,324,847 A | 6/1967 | Zoumboulis | ................. | 128/1.2 |
| 3,872,856 A | 3/1975 | Clayton | ................. | 128/1.2 |
| 4,417,576 A | 11/1983 | Baran | ................. | 128/207.15 |
| 4,706,652 A | 11/1987 | Horowitz | ................. | 128/1.2 |
| 4,754,745 A | 7/1988 | Horowitz | ................. | 128/1.2 |
| 4,763,642 A | 8/1988 | Horowitz | ................. | 128/1.2 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0340881 | 11/1989 | ............ A61N/5/10 |
| EP | 0867200 | 9/1998 | |
| GB | 2105201 | 3/1983 | ............ A61N/1/06 |
| WO | 9210932 | 7/1992 | ............ A61N/5/02 |
| WO | 9309724 | 5/1993 | ............ A61B/17/36 |
| WO | 9719723 | 6/1997 | ............ A61N/5/00 |
| WO | 9812979 | 4/1998 | ............ A61B/19/00 |
| WO | 9911325 | 3/1999 | |
| WO | 9933515 | 7/1999 | |
| WO | 9942163 | 9/1999 | |

OTHER PUBLICATIONS

A. Bex et al., *A System for Focal Intracavitary Irradiation of Bladder Cancer with Remote Iridium–192 Afterloading*, 21 Eur Urol 1992, 245–249 (1992).

Ashpole, R.D. et al., "A New Technique of Brachtherapy for Malignant Gliomas with Caesium–137: A New Method Utilizing a Remote Afterloading System," Clinical Oncology, vol. 2, 333–7 (1990).

Chun, M. et al., "Interstitial Iridium–192 Implantation for Malignant Brain Tumours. Part II: Clinical Experience," *The British Journal of Radiology*, vol. 62, 158–62 (1989).

Garfield, J. et al., "Postoperative Intracavitary Chemotherapy of Malignant Gliomas," *J. Neurosurg.*, vol. 39, 315–22 (Sep. 1973).

(List continued on next page.)

*Primary Examiner*—John P. Lacyk
(74) *Attorney, Agent, or Firm*—Thomas J. Engellenner; Ronald E. Cahill; Nutter, McClennen & Fish, LLP

(57) **ABSTRACT**

An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location includes a catheter body member having a proximal end and distal end, an inner spatial volume disposed proximate to the distal end of the catheter body member, an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume, and a radiation source disposed in the inner spatial volume.

**36 Claims, 3 Drawing Sheets**



## US 6,413,204 B1
Page 2

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,821,725 A | 4/1989 | Azam et al. | 128/420 A |
| 4,867,741 A | 9/1989 | Portnoy | 604/10 |
| 5,084,001 A | 1/1992 | Van't Hooft et al. | 600/3 |
| 5,084,015 A | 1/1992 | Moriuchi | 604/96 |
| 5,106,360 A | 4/1992 | Ishiwara et al. | 600/2 |
| 5,112,303 A | 5/1992 | Pudenz et al. | 604/49 |
| 5,152,747 A | 10/1992 | Olivier | 604/93 |
| 5,236,410 A | 8/1993 | Granov et al. | 600/12 |
| 5,429,582 A | 7/1995 | Williams | 600/2 |
| 5,484,384 A | 1/1996 | Fearnot | 600/3 |
| 5,503,613 A | 4/1996 | Weinberger | 600/3 |
| 5,566,221 A | 10/1996 | Smith et al. | 378/145 |
| 5,611,767 A | 3/1997 | Williams | 600/2 |
| 5,662,580 A | 9/1997 | Bradshaw et al. | 600/3 |
| 5,707,332 A | 1/1998 | Weinberger | 600/3 |
| 5,713,828 A | 2/1998 | Coniglione | 600/7 |
| 5,720,717 A | 2/1998 | D'Andrea | 604/21 |
| 5,764,723 A | 6/1998 | Weinberger et al. | 378/65 |
| 5,782,742 A | 7/1998 | Crocker et al. | 600/3 |
| 5,785,688 A | 7/1998 | Joshi et al. | 604/141 |
| 5,913,813 A | * 6/1999 | Williams et al. | 600/3 |
| 5,924,973 A | * 7/1999 | Wenberger | 600/3 |
| 6,036,631 A | 3/2000 | McGrath et al. | 600/3 |
| 6,059,812 A | * 5/2000 | Clerc et al. | 600/3 |

### OTHER PUBLICATIONS

Gutin, P. et al., "Brachytherapy of Recurrent Malignant Brain Tumors With Removable High–Activity Iodine–125 Sources," *J. Neurosurg.*, vol. 60, 61–8 (1984).

Johannesen, T.B. et al., "Intracavity Fractionated Balloon Brachytherapy in Gilioblastoma," *Acta Neurochir (Wien)*, vol. 141, 127–33 (1999).

Leibel, S. et al., "The Integration of Interstitial Implantation Into the Preliminary Mangement of Patients With Malignant Gliomas: Results of a Phase II Northern California Oncology Group Trial," *Am. J. Clin. Oncol. (CCT)*, vol. 10, No. 2, p. 106 (1987).*

Roberts, D. et al., "Interstitial Hyperthermia and Iridium Brachytherapy in Treamtnet of Malignant Glioma," *J. Neurosurg.*, vol. 64, 581–7 (1986).*

Wu, A. et al., "Interstitial Iridium–192 Implantation for Malignant Brain Tumours, Part 1: Techniques of Dosimetry Planning," *The British Journal of Radiology*, vol. 62, 154–7 (1989).*

* cited by examiner

**U.S. Patent**    Jul. 2, 2002    Sheet 1 of 3    US 6,413,204 B1



# FIG. 1



# FIG. 2



# FIG. 3

SRX-HOL00000009



## FIG. 4



## FIG. 5



## FIG. 6

SRX-HOL00000010



*FIG. 7A*



*FIG. 7B*



*FIG. 7C*



DISTANCE FROM SURFACE OF OUTER VOLUME

*FIG. 7D*

SRX-HOL00000011

US 6,413,204 B1

1

## INTERSTITIAL BRACHYTHERAPY APPARATUS AND METHOD FOR TREATMENT OF PROLIFERATIVE TISSUE DISEASES

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of U.S. patent application Ser. No. 08/900,021, filed Jul. 24, 1997, now U.S. Pat. No. 5,913,813 the contents of which are specifically incorporated herein by reference.

### BACKGROUND OF THE INVENTION

The invention relates generally to apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus for the treatment of such disorders in the body by the application of radiation.

Malignant tumors are often treated by surgical resection of the tumor to remove as much of the tumor as possible. Infiltration of the tumor cells into normal tissue surrounding the tumor, however, can limit the therapeutic value of surgical resection because the infiltration can be difficult or impossible to treat surgically. Radiation therapy can be used to supplement surgical resection by targeting the residual tumor margin after resection, with the goal of reducing its size or stabilizing it. Radiation therapy can be administered through one of several methods, or a combination of methods, including external-beam radiation, stereotactic radiosurgery, and permanent or temporary interstitial brachytherapy. The term "brachytherapy," as used herein, refers to radiation therapy delivered by a spatially confined radioactive material inserted into the body at or near a tumor or other proliferative tissue disease site. Owing to the proximity of the radiation source, brachytherapy offers the advantage of delivering a more localized dose to the target tissue region.

For example, brachytherapy is performed by implanting radiation sources directly into the tissue to be treated. Brachytherapy is most appropriate where 1) malignant tumor regrowth occurs locally, within 2 or 3 cm of the original boundary of the primary tumor site; 2) radiation therapy is a proven treatment for controlling the growth of the malignant tumor; and 3) there is a radiation dose-response relationship for the malignant tumor, but the dose that can be given safely with conventional external beam radiotherapy is limited by the tolerance or normal tissue. In brachytherapy, radiation doses are highest in close proximity to the radiotherapeutic source, providing a high tumor dose while sparing surrounding normal tissue. Interstitial brachytherapy is useful for treating malignant brain and breast tumors, among others.

Interstitial brachytherapy is traditionally carried out using radioactive seeds such as $^{125}I$ seeds. These seeds, however, produce inhomogeneous dose distributions. In order to achieve a minimum prescribed dosage throughout a target region of tissue, high activity seeds must be used, resulting in very high doses being delivered in some regions in proximity to the seed or seeds which can cause radionecrosis in healthy tissue.

Williams U.S. Pat. No. 5,429,582, entitled "Tumor Treatment," describes a method and apparatus for treating tissue surrounding a surgically excised tumor with radioactive emissions to kill any cancer cells that may be present in the tissue surrounding the excised tumor. In order to implement the radioactive emissions, Williams provides a catheter having an inflatable balloon at its distal end that defines a

2

distensible reservoir. Following surgical removal of a tumor, the surgeon introduces the balloon catheter into the surgically created pocket left following removal of the tumor. The balloon is then inflated by injecting a fluid having one or more radionuclides into the distensible reservoir via a lumen in the catheter.

The apparatus described in Williams solves some of the problems found when using radioactive seeds for interstitial brachytherapy, but leaves some problems unresolved. The absorbed dose rate at a target point exterior to a radioactive source is inversely proportional to the square of the distance between the radiation source and the target point. As a result, where the radioactive source has sufficient activity to deliver a prescribed dose, say 2 centimeters into the target tissue, the tissue directly adjacent the wall of the distensible reservoir, where the distance to the radioactive source is very small, may still be overly "hot" to the point where healthy tissue necrosis may result. In general, the amount of radiation desired by the physician is a certain minimum amount that is delivered to a region up to about two centimeters away from the wall of the excised tumor. It is desirable to keep the radiation that is delivered to the tissue in the target treatment region within a narrow absorbed dose range to prevent over-exposure to tissue at or near the reservoir wall, while still delivering the minimum prescribed dose at the maximum prescribed distance from the reservoir wall.

There is still a need for an instrument which can be used to deliver radiation from a radioactive source to target tissue within the human body with a desired intensity and at a predetermined distance from the radiation source without over-exposure of body tissues disposed between the radiation source and the target.

### SUMMARY OF THE INVENTION

The present invention solves the problems described above by providing an interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location. The apparatus includes a catheter body member having a proximal end and distal end, an inner spatial volume disposed proximate to the distal end of the catheter body member, an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume, and a radiation source disposed in the inner spatial volume. The inner and outer spatial volumes are configured to provide an absorbed dose within a predetermined range throughout a target tissue. The target tissue is located between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface. The predetermined dose range is defined as being between a minimum prescribed absorbed dose for delivering therapeutic effects to tissue that may include cancer cells, and a maximum prescribed absorbed dose above which healthy tissue necrosis may result.

In different embodiments, the inner spatial volume can be defined by a distensible polymeric wall containing radioactive source material which can be a fluid material, by a solid radioactive source, or by a region containing a plurality of solid radioactive sources. The outer spatial volume is defined by an expandable surface element that may be, for example, an inflatable polymeric wall or an expandable cage. The expandable surface element can cause tissue to conform to its intended shape, and preferably, the apparatus creates absorbed isodose profiles in the target tissue that are substantially similar in shape to the expandable surface element in substantially three dimensions.

SRX-HOL00000012

US 6,413,204 B1

3

The invention also provides a method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location. The method includes surgically creating access to the proliferating tissue within a patient and surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue. An interstitial brachytherapy apparatus for delivering radioactive emissions as described above is then provided and intra-operatively placed into the resection cavity. After a prescribed absorbed dose has been delivered to tissue surrounding the apparatus, the apparatus is removed. The radioactive source material may be placed into the interstitial brachytherapy apparatus after the apparatus is placed in the resection cavity, and may be removed before the apparatus is removed. The method has particular applications in brain and breast cancers.

DESCRIPTION OF THE DRAWINGS

The foregoing features, objects and advantages of the invention will become apparent to those skilled in the art from the following detailed description of a preferred embodiment, especially when considered in conjunction with the accompanying drawings in which:

FIG. 1 is a side view of an interstitial brachytherapy apparatus of the invention for delivering radioactive emissions to body tissue;

FIG. 2 is a cross-sectional view taken along the line 2—2 in FIG. 1;

FIG. 3 is an additional embodiment of an interstitial brachytherapy apparatus of the invention having a solid radiation source;

FIG. 4 is an additional embodiment of an interstitial brachytherapy apparatus of the invention having a radiation source comprising a plurality of solid radiation particles;

FIG. 5 depicts a further embodiment of the invention wherein the inner and outer spatial volumes of the interstitial brachytherapy apparatus are non-spherical;

FIG. 6 illustrates an interstitial brachytherapy apparatus of the invention having an expandable outer spatial volume surface; and

FIGS. 7A–D illustrate the absorbed dose versus distance into target tissue for several interstitial brachytherapy apparatus configurations.

DESCRIPTION OF THE PREFERRED EMBODIMENT

A surgical instrument 10 for providing radiation treatment to proliferative tissue in a living patient is illustrated in FIG. 1. Surgical instrument 10 includes a tubular body member 12 having first and second lumens 14 and 16 (FIG. 2) extending from proximal ports 18 and 20 in a molded plastic hub 22 to inflation ports 24 and 26 formed through the side wall of the tube 12 and intersecting with the lumens 14 and 16, respectively.

Affixed to the tubular body 12 proximate the distal end 28 thereof is an inner spatial volume 30 which may be defined by a generally spherical polymeric film wall 32. The interior of the inner volume 30 is in fluid communication with the inflation port 26. Surrounding inner spatial volume 30 is an outer spatial volume 34 defined by an outer polymeric film wall 36 that is appropriately spaced from the wall 32 of the inner spatial volume 30 when the two volumes are inflated or otherwise supported. Outer volume 34 encompasses inflation port 24. With no limitation intended, the distensible polymeric film walls may comprise a biocompatible, radia-

4

tion resistant polymer, such as silastic rubbers, polyurethanes, polyethylene, polypropylene, polyester, or PVC.

The embodiment of FIG. 1 includes inner and outer spatial volumes 30 and 34, one inside the other. The outer spatial volume 34, being the volume defined by the space between the inner spherical wall 32 and the outer spherical wall 36, may be filled with air or, alternatively, a radiation absorbing fluid, such as a contrast media used in angiography. The inner volume 30 is then filled with a material containing a predetermined radionuclide, for example, I-125, I-131, Yb-169 or other source of radiation, such as radionuclides that emit photons, beta particles, gamma radiation, or other therapeutic rays. The radioactive material contained within the inner chamber 32 can be a fluid made from any solution of radionuclide(s), e.g., a solution of I-125 or I-131. A radioactive fluid can also be produced using a slurry of a suitable fluid containing small particles of solid radionuclides, such as Au-198, Y-90. Moreover, the radionuclide(s) can be embodied in a gel. One radioactive material useful in the invention is Iotrex™, a sterile single use, non-pyrogenic solution containing sodium 3-($^{125}$I)iodo-4-hydroxybenzenesulfonate ($^{125}$I-IIBS), available from Proxima Therapuetics, Inc. of Alpharetta, Ga.

As an alternative method of providing radioactive source material, such material may be coated on, chemically bonded to, or copolymerized with the material forming inner spherical wall 32.

Where the radioactive source material is provided as a fluid or gel within inner spherical wall 32, it may be desirable to provide a solid outer spherical wall 36. Should inner spherical wall 32 rupture, the radioactive source material will be retained within outer spherical wall 36 and will not leak into the patient. For further safety, the burst strength of inner spherical wall 32 may be designed so as to be lower than that of outer spherical wall 36. In this way, inner spherical wall 32 will rupture under stress first, releasing its contents into the larger combined space of the inner and outer volumes 30, 34 and releasing any pressure built up within the inner spherical wall 32 and reducing the risk that radioactive material will spill into the patient. In the event of such a rupture, radioactive fluid could be drained from the apparatus through port 24 by way of lumen 14, and also from port 26 by way of lumen 16.

In a further embodiment, illustrated in FIG. 3, instead of having the inner spatial volume 30 defined by a generally spherical polymeric film wall as at 32, the catheter body member 12 may have a solid spherical radiation emitting material 44 as the inner spatial volume 30. For example, radioactive micro spheres of the type available from the 3M Company of St. Paul, Minn., may be used. This radioactive source can either be preloaded into the catheter at the time of manufacture or loaded into the device after it has been implanted into the space formerly occupied by the excised tumor. The solid radiation emitting material 44 can be inserted through catheter 12 on a wire 46, for example, using an afterloader (not shown). Such a solid radioactive core configuration offers an advantage in that it allows a wider range of radionuclides than if one is limited to liquids. Solid radionuclides that could be used with the delivery device of the present invention are currently generally available as brachytherapy radiation sources. In this embodiment solid spherical inner spatial volume 30 is surrounded by outer spherical wall 36, defining outer spatial volume 34 between the outer spherical wall 36 and the inner spatial volume 30 with the outer spatial volume 34 occupied by a radioactive ray absorbent material, such as air, water or a contrast material.

US 6,413,204 B1

5

In a further embodiment, illustrated in FIG. 4, inner spatial volume 30, instead of comprising a single solid sphere, may comprise a plurality of radiation emitting particles 44 strategically placed within the inner spatial volume 30 so as to radiate in all directions with a substantially equal intensity. This plurality of radiation emitting particles 44 can be mounted on the distal ends of a plurality of wires 46 that are routed through the catheter body 12 and exit a plurality of ports formed through the wall of the catheter body and reaching the lumen. This arrangement allows the exact positioning of the individual radiation sources 44 to be positioned so as to generate a desired resultant profile.

As illustrated in FIG. 5, it is not essential to the invention that the volumes 30 and 34 have spherical walls, so long as the resultant dosing profile is consistent with the shape of the outer volume 34. That is, the absorbed dose within the target tissue at points equidistant from the surface 36 of the outer spatial volume 34 should be substantially uniform in substantially every direction. Put another way, the three dimensional isodose profiles generated by the radiation source should be substantially similar in shape to the outer spatial volume 34. Where the inner and outer spatial volumes are created by inflatable membranes and one of the volumes contains a fluid radiation source, this can be achieved by ensuring that the spacing between the wall of the inner volume and the wall of the outer volume remain generally constant. In either the concentric spherical embodiment of FIG. 1 or the non-spherical configuration of FIG. 5, this result can be achieved by careful placement of precision blown or molded polymer partitions or by using compressible foams or mechanical spacers in the form of webs joining the inner wall 32 to the outer wall 36. The desired isodose profiles conforming to the shape of the outer spatial volume 34 can also be obtained, for example, by strategic placement of a plurality of radioactive particle sources within the inner spatial volume 30. Where the apparatus of the invention is deployed in soft tissue, it may also be important for the surface 36 of the outer spatial volume 34 to be sufficiently firm so as to force the target tissue to take on the shape of the surface 36 so that the desired relationship between the isodose profiles and the target tissue is achieved.

When used in an interstitial application, the surface of the outer spatial volume 34 must establish a relationship between the inner spatial volume 30 and the target tissue so as to achieve the aforementioned isodose profile, however, the surface of the outer volume need not be a solid material. For example, as illustrated in FIG. 6, the surface of the outer volume 34 could be an expandable cage 48 formed from a shape memory metal, such as nitinol, or a suitable plastic, such as an expandable polyethylene cage. Such a cage can be formed in the desired shape to conform to a particular isodose profile, then be contracted for delivery to the target site in vivo, then expanded to cause the tissue surrounding the surgically resected region to take the appropriate shape. The size of the outer spatial volume 34 generally will correspond approximately to the amount of tissue resected, or be slightly larger, allowing the expandable surface of the outer spatial volume to urge tissue on the surface of the resected region into the appropriate shape to promote an even dose distribution around the outer spatial volume in the target tissue. In typical applications, the outer spatial volume has a diameter of approximately 2 to 4 centimeters. In these same applications, where the radiation source is provided as a fluid within an inner balloon, the inner balloon generally has a diameter of approximately 0.5 to 3 centimeters.

FIGS. 7A–D illustrate the ability of an interstitial brachytherapy apparatus of the invention to deliver a minimum

6

prescribed dose within target tissue while avoiding necrosis inducing radiation "hot spots" in tissue proximate to the apparatus. FIG. 7A illustrates an interstitial brachytherapy apparatus (device A) such as those employed in U.S. Pat. No. 5,429,582, having a single spatial volume 50 filled with a radioactive material in solution. FIG. 7B illustrates an interstitial brachytherapy apparatus (device B) of the invention having a first, inner spatial volume 30 filled with a radioactive material in solution and defined by membrane 32, and a second, outer spatial volume 34 defined by membrane 36 that is substantially evenly spaced apart from membrane 32 in substantially three dimensions about membrane 36. FIG. 7C illustrates an additional interstitial brachytherapy apparatus (device C) of the invention having a solid, spherical radiation source 44 as the inner spatial volume and a spherical outer spatial volume 34 defined by membrane 36.

Each of the devices illustrated in FIGS. 7A–C can be configured to deliver a substantially uniform dose at a given distance into the target tissue from the surface of the outer spatial volume 34 (or from single spatial volume 50 for device A) and to deliver a minimum prescribed dose within a given prescribed depth range into the tissue from the surface of the outer spatial volume 34. However, the different devices provide very different dose profiles as a function of distance from the surface of the outer volume as illustrated in FIG. 7D. FIG. 7D plots the absorbed dose at a given distance into the target tissue from the surface of the outer spatial volume 34 for each of the devices A, B, and C.

Each device can deliver a minimum prescribed dose 52 at a given distance from the surface of the outer spatial volume. For example, device A can readily be configured to provide a dose in a therapeutic range, say between 40 to 60 Gray, at a distance between 0.5 and 1.0 cm from the outer spatial volume for an outer spatial volume having a diameter of 4.0 cm and being in contact with the resection cavity wall. In a typical embodiment, the radioactive source material ranges from approximately 150 to 450 mCi in activity and encompasses most of the target treatment area with a 0.4 to 0.6 Gray/hour isodose contour. At this treatment rate, treatment may be completed in approximately 3 to 7 days, or more commonly, in approximately 3 to 5 days.

In order to reach the minimum prescribed dosage at this distance, however, device A must provide a dose proximate to the surface of the outer spatial volume that is substantially larger than the minimum prescribed dose. For the 4.0 cm diameter outer spatial volume example, the absorbed dosage would be approximately 131 Gray at the outer spatial volume surface. Ideally, radiation therapy should make use the inherent difference in radiosensitivity between the tumor and the adjacent normal tissues to destroy cancerous tissue while causing minimal disruption to surrounding normal tissues. At high doses of radiation, however, the percentage of exposed cells that survive treatment decreases with first-order kinetics in proportion to increasing radiation dose. With increasing cell death comes increasing risk of necrosis or tissue death in healthy tissue that is treated with a high dose of radiation. Accordingly, it is desirable to keep the maximum radiation dose delivered by the brachytherapy apparatus as low as possible while still delivering the desired therapeutic dose to the desired range of tissue.

Comparing the plots A, B, and C, the absorbed dose profile in the space between the 2 cm site and the surface of the outer spatial volume for the devices of the invention is maintained in a much narrower range, preventing over-treatment of body tissue at or close to the surface of the outer volume of the device. Because devices B and C provide an outer spatial volume 34 between the radioactive source and

SRX-HOL00000014

US 6,413,204 B1

7

the target tissue, these devices can use hotter radiation sources to reach the minimum prescribed dosage, but take advantage of the distance between the radioactive source and the target tissue provided by the outer spatial volume 34 to reduce or eliminate hot spots in the target tissue.

Returning to the 4.0 cm diameter outer spatial volume example, if the radiation source is contained within an inner spatial volume, say a solid radioactive sphere such as device C, the absorbed dose profile becomes much different. If the radiation source is configured to provide the same 60 Gray dose at 0.5 cm into the target tissue, the absorbed dose at the outer spatial volume surface is only 94 Gray—a significant decrease from the 131 Gray dose for a type A device. In addition, the treatment range for the type C device will be extended under these circumstance as compared to the type A device, delivering a 40 Gray dose beyond 1.0 cm into the target tissue and delivering approximately double the dose at 3.0 cm into the target tissue. In one embodiment, the inner and outer spatial volumes are configured to control the absorbed dose at the outer spatial volume surface so that the absorbed dose is no greater than about 100 Gray while providing a therapeutic absorbed dose into the target tissue at the desired range. The capability of the apparatus of the invention to deliver absorbed doses deeper into the target tissue than prior interstitial brachytherapy devices while controlling the dose in proximity to the apparatus to reduce or eliminate the risk of healthy tissue necrosis allows for the use of brachytherapy in a greater number of cases.

The interstitial brachytherapy apparatus of the invention can be used in the treatment of a variety of malignant tumors, and is especially useful for in the treatment of brain and breast tumors.

Many breast cancer patients are candidates for breast conservation surgery, also known as lumpectomy, a procedure that is generally performed on early stage, smaller tumors. Breast conservation surgery is typically followed by postoperative radiation therapy. Studies report that 80% of breast cancer recurrences after conservation surgery occur near the original tumor site, strongly suggesting that a tumor bed "boost" of local radiation to administer a strong direct dose may be effective in killing any remaining cancer and preventing recurrence at the original site. Numerous studies and clinical trials have established equivalence of survival for appropriate patients treated with conservation surgery plus radiation therapy compared to mastectomy.

Surgery and radiation therapy are the standard treatments for malignant solid brain tumors. The goal of surgery is to remove as much of the tumor as possible without damaging vital brain tissue. The ability to remove the entire malignant tumor is limited by its tendency to infiltrate adjacent normal tissue. Partial removal reduces the amount of tumor to be treated by radiation therapy and, under some circumstances, helps to relieve symptoms by reducing pressure on the brain.

A method according to the invention for treating these and other malignancies begins by surgical resection of a tumor site to remove at least a portion of the cancerous tumor and create a resection cavity. Following tumor resection, but prior to closing the surgical site, the surgeon intraoperatively places an interstitial brachytherapy catheter apparatus, having an inner spatial volume and an outer spatial volume as described above but without having the radioactive source material loaded, into the tumor resection cavity. Once the patient has sufficiently recovered from the surgery, the interstitial brachytherapy catheter is loaded with a radiation source. The radioactive source dwells in the catheter until the prescribed dose of radiotherapy is

8

delivered, typically for approximately a week or less. The radiation source is then retrieved and the catheter is removed. The radiation treatment may end upon removal of the brachytherapy apparatus, or the brachytherapy may be supplemented by further doses of radiation supplied externally.

It will be understood that the foregoing is only illustrative of the principles of the invention, and that various modifications can be made by those skilled in the art without departing from the scope and spirit of the invention. All references cited herein are expressly incorporated by reference in their entirety.

What is claimed is:

1. An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location comprising:

    (a) a catheter body member having a proximal end and distal end;

    (b) an inner spatial volume disposed proximate to the distal end of the catheter body member;

    (c) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and

    (d) a radiation source disposed in the inner spatial volume and generating a three-dimensional isodose profile that is substantially similar in shape to the expandable surface element.

2. The apparatus of claim 1, wherein the inner and outer spatial volumes are configured to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.

3. The apparatus of claim 2, wherein a predetermined spacing is provided between said inner spatial volume and the expandable surface element.

4. The apparatus of claim 3, wherein the expandable surface element is adapted to contact tissue surrounding a resected cavity and adapted to conform the tissue to the desired shape of the expandable surface element.

5. The apparatus of claim 2, wherein the minimum prescribed absorbed dose is 40 Gray at a distance of at least one centimeter from the expandable surface element.

6. The apparatus of claim 5, wherein the dose rate in at least a portion of the target tissue is between about 0.4 and 0.6 Gray/hour.

7. The apparatus of claim 5, wherein the maximum absorbed dose delivered to the target tissue is less than 100 Gray.

8. The apparatus of claim 2, wherein the outer spatial volume has a diameter between about two and four centimeters.

9. The apparatus of claim 2, wherein the inner spatial volume is an inner closed, distensible chamber defined by a further radiation transparent wall.

10. The apparatus of claim 9, wherein the radioactive source is in a fluid form.

11. The apparatus of claim 10, wherein the expandable surface element is a solid distensible surface and the outer spatial volume is a closed, distensible chamber and the expandable surface element is a radiation transparent wall.

US 6,413,204 B1

9

12. The apparatus of claim 11, wherein a burst strength of the distensible chamber defining the outer spatial volume is greater than a burst strength of the chamber defining the inner spatial volume.

13. The apparatus of claim 1, wherein the expandable surface element is an expandable cage.

14. The apparatus of claim 13, wherein the expandable cage comprises a shape memory material.

15. The apparatus of claim 14, wherein the expandable cage comprises nitinol.

16. The apparatus of claim 1, wherein the radiation source is a solid radiation source.

17. The apparatus of claim 1, wherein the radiation source is a plurality of solid radiation sources arranged to provide an isodose profile having a shape substantially similar to the shape of the outer spatial volume.

18. The apparatus of claim 2, wherein the prescribed absorbed dose is delivered to the target tissue in substantially three dimensions.

19. A method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location comprising:
(a) surgically creating access to the proliferating tissue in a patient;
(b) surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue;
(c) providing an interstitial brachytherapy apparatus for delivering radioactive emissions comprising:
(i) a catheter body member having a proximal end and distal end;
(ii) an inner spatial volume disposed proximate to the distal end of the catheter body member;
(iii) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and
(iv) a radiation source disposed in the inner spatial volume and generating a three-dimensional isodose profile that is substantially similar in shape to the expandable surface element;
(d) intraoperatively placing the interstitial brachytherapy apparatus into the resection cavity until a prescribed absorbed dose has been delivered to tissue surrounding the apparatus; and
(e) removing the interstitial brachytherapy apparatus.

20. The method of claim 19, further including placing the radioactive source into the interstitial brachytherapy apparatus after the step of placing the apparatus into the tumor resection cavity.

21. The method of claim 19, further including removing the radioactive source from the interstitial brachytherapy apparatus before the step of removing the apparatus.

22. The method of claim 19, wherein the proliferating tissue is a patient's brain.

23. The method of claim 19, wherein the proliferating tissue is a patient's breast.

24. The method of claim 19, further including configuring the inner and outer spatial volumes to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.

10

25. The method of claim 24, further including providing a predetermined spacing between said inner spatial volume and the expandable surface element.

26. The method of claim 25, wherein the expandable surface element is adapted to contact tissue surrounding a resected cavity and adapted to conform the tissue to the desired shape of the expandable surface element.

27. The method of claim 24, wherein the minimum prescribed absorbed dose is 40 Gray at a distance of at least one centimeter from the expandable surface element.

28. The method of claim 27, wherein the dose rate in at least a portion of the target tissue is between about 0.4 and 0.6 Gray/hour.

29. The method of claim 27, wherein the maximum absorbed dose delivered to the target tissue is less than 100 Gray.

30. The method of claim 24, wherein the outer spatial volume has a diameter between about two and four centimeters.

31. The method of claim 24, wherein the step of configuring the inner and outer spatial volumes includes expanding the inner and outer spatial volumes.

32. A method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location comprising:
(a) surgically creating access to the proliferating tissue in a patient;
(b) surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue;
(c) providing an interstitial brachytherapy apparatus for delivering radioactive emissions comprising:
(i) a catheter body member having a proximal end and distal end;
(ii) an inner spatial volume disposed proximate to the distal end of the catheter body member;
(iii) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and
(iv) a radiation source disposed in the inner spatial volume;
(d) intraoperatively placing the interstitial brachytherapy apparatus into the resection cavity;
(e) configuring the inner and outer spatial volumes to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface; and
(f) removing the interstitial brachytherapy apparatus.

33. The method of claim 32, wherein the step of configuring the inner and outer spatial volumes includes expanding the inner and outer spatial volumes.

34. A method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location comprising:
(a) surgically creating access to the proliferating tissue in a patient;
(b) surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue;

US 6,413,204 B1

**11**

(c) providing an interstitial brachytherapy apparatus for delivering radioactive emissions comprising:
    (i) a catheter body member having a proximal end and distal end;
    (ii) an inner spatial volume disposed proximate to the distal end of the catheter body member;
    (iii) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and
    (iv) a radiation source disposed in the inner spatial volume;

(d) intraoperatively placing the interstitial brachytherapy apparatus into the resection cavity;

(e) adapting the expandable surface element to contact tissue surrounding the resection cavity to conform the tissue to the desired shape of the expandable surface element;

(f) delivering a prescribed absorbed dose to tissue surrounding the apparatus; and

(g) removing the interstitial brachytherapy apparatus.

**35.** The method of claim **34,** wherein the step of adapting the expandable surface element includes expanding the outer surface volume.

**12**

**36.** An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location comprising:
    (a) a catheter body member having a proximal end and distal end;
    (b) an inner spatial volume disposed proximate to the distal end of the catheter body member;
    (c) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and
    (d) a radiation source disposed in the inner spatial volume;

wherein the inner and outer spatial volumes are configured to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.

\* \* \* \* \*

# Exhibit 3

US006482142B1

(12) **United States Patent**
Winkler et al.

(10) Patent No.: **US 6,482,142 B1**
(45) Date of Patent: **Nov. 19, 2002**

(54) **ASYMMETRIC RADIATION DOSING APPARATUS AND METHOD**

(75) Inventors: **Rance A. Winkler**, Atlanta; **Timothy J. Patrick**, Alpharetta, both of GA (US)

(73) Assignee: **Proxima Therapeutics, Inc.**, Alpharetta, GA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/464,727**

(22) Filed: **Dec. 16, 1999**

**Related U.S. Application Data**

(63) Continuation-in-part of application No. 09/293,524, filed on Apr. 15, 1999, which is a continuation-in-part of application No. 08/900,021, filed on Jul. 24, 1997, now Pat. No. 5,913,813.

(51) Int. Cl.[7] .................................................. **A61N 5/00**
(52) U.S. Cl. .......................................................... **600/3**
(58) Field of Search ...................................... 600/1–8

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,706,652 A | 11/1987 | Horowitz | 128/1.2 |
| 4,754,745 A | 7/1988 | Horowitz | 128/1.2 |
| 5,422,926 A | 6/1995 | Smith et al. | 378/121 |
| 5,562,594 A | 10/1996 | Weeks | 600/3 |
| 5,724,400 A | 3/1998 | Swerdloff et al. | 378/65 |
| 5,800,333 A | 9/1998 | Liprie | 600/3 |
| 5,803,895 A | 9/1998 | Kronholz et al. | 600/3 |
| 5,851,182 A | 12/1998 | Sahadevan | 600/407 |
| 5,863,284 A | 1/1999 | Klein | 600/3 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| WO | WO 97/19723 | 6/1997 | A61N/5/00 |

OTHER PUBLICATIONS

Ravinder, Nath, Ph.D. et al., Development of an [241] Am Applicator For Intracavitary Irradiation of Gynecologic Cancers, I.J. Radiation Oncology, Biology, Physics, May 1988, vol. 14, No. 5, pp. 969–978.

*Primary Examiner*—John P. Lacyk
(74) *Attorney, Agent, or Firm*—Thomas J. Engellenner; Ronald E. Cahill; Nutter McClennen & Fish LLP

(57) **ABSTRACT**

An interstitial brachytherapy apparatus of the invention delivers radioactive emissions in an asymmetric fashion to target tissue surrounding a surgical extraction site. The apparatus includes an expandable outer surface element defining an apparatus spatial volume, a radiation source disposed within the apparatus volume, and a means for providing predetermined asymmetric isodose curves within the target tissue. In one configuration, asymmetric isodose curves are created in the target tissue by shaping or locating the radiation source so as to be asymmetrically placed with respect to a longitudinal axis of the apparatus. In other configurations, asymmetric radiopaque shielding is provided between the radiation source and the target tissue. A surgical procedure using the apparatus is also described.

**14 Claims, 4 Drawing Sheets**





FIG. 1

FIG. 2



FIG. 3



FIG. 3A



FIG. 4

SRX-HOL00000020



FIG. 5



FIG. 6

SRX-HOL00000021



FIG. 7



FIG. 8



FIG. 9

SRX-HOL00000022

US 6,482,142 B1

1

## ASYMMETRIC RADIATION DOSING APPARATUS AND METHOD

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of co-pending U.S. patent application Ser. No. 09/293,524, filed Apr. 15, 1999, pending which is a continuation-in-part U.S. patent application Ser. No. 08/900,021, filed Jul. 24, 1997 (now issued as U.S. Pat. No. 5,913,813 to Williams et al.); the contents of these applications are specifically incorporated herein by reference.

### BACKGROUND OF THE INVENTION

The, invention relates generally to an apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus for the treatment of such disorders in the body by the application of radiation.

Malignant tumors are often treated by surgical resection of the tumor to remove as much of the tumor as possible. Infiltration of the tumor cells into normal tissue surrounding the tumor, however, can limit the therapeutic value of surgical resection because the, infiltration can be difficult or impossible to treat surgically. Radiation therapy can be used to supplement surgical resection by targeting the residual tumor margin after resection, with the goal of reducing its size or stabilizing it. Radiation therapy can be administered through one of several methods, or a combination of methods, including external-beam radiation, stereotactic radiosurgery, and permanent or temporary interstitial brachytherapy. The term "brachytherapy," as used herein, refers to radiation therapy delivered by a spatially confined radioactive material inserted into the body at or near a tumor or other proliferative tissue disease site. Owing to the proximity of the radiation source, brachytherapy offers the advantage of delivering a more localized dose to the target tissue region.

For example, brachytherapy is performed by implanting radiation sources directly into the tissue to be treated. Brachytherapy is most appropriate when 1) malignant tumor regrowth occurs locally, within 2 or 3 cm of the original boundary of the primary tumor site; 2) radiation therapy is a proven treatment for controlling the growth of the malignant tumor; and 3) there is a radiation dose-response relationship for the malignant tumor, but the dose that can be given safely with conventional external beam radiotherapy is limited by the tolerance of normal tissue. In brachytherapy, radiation doses are highest in close proximity to the radiotherapeutic source, providing a high tumor dose while sparing surrounding normal tissue. Interstitial brachytherapy is useful for treating malignant brain and breast tumors, among others.

Interstitial brachytherapy is traditionally carried out using radioactive seeds such as $^{125}$I seeds. These seeds, however, produce inhomogeneous dose distributions. In order to achieve a minimum prescribed dosage throughout a target region of tissue, high activity seeds must be used, resulting in very high doses being delivered in some regions in proximity to the seed or seeds which can cause radionecrosis in healthy tissue. One attempt to address this problem, at least with respect to limiting dosages to critical organs near the radioactive seed site, has been to provide a shield directly on a portion of the seed or on an applicator that holds the seed to shield the particularly sensitive tissue. (E.g., Nath et al., Development of an $^{241}$Am Applicator for Intracavitary Irradiation of Gynecologic Cancers, *Intl. J.*

2

*Radiation Oncology Biol. Phys.*, Vol., 14, pp. 969–978.) While this approach may be appropriate for some applications, it may still be overly "hot" for treating proximate tissue on the unshielded side of the seed, while not providing an effective dose on the shielded side of the seed.

Williams U.S. Pat. No. 5,429,582, entitled "Tumor Treatment," describes a method and apparatus for treating tissue surrounding a surgically excised tumor with radioactive emissions to kill any cancer cells that may be present in the tissue surrounding the excised tumor. In order to implement the radioactive emissions, Williams provides a catheter having an inflatable balloon at its distal end that defines a distensible reservoir. Following surgical removal of a tumor, the surgeon introduces the balloon catheter into the surgically created pocket left following removal of the tumor. The balloon is then inflated by injecting a fluid having one or more radionuclides into the distensible reservoir via a lumen in the catheter.

The apparatus described in Williams solves some of the problems found when using radioactive seeds for interstitial brachytherapy, but leaves some problems unresolved. The absorbed dose rate at a target point exterior to a radioactive source is inversely proportional to the square of the distance between the radiation source and the target point. s a result, where the radioactive source has sufficient activity to deliver a prescribed dose, say 2 centimeters into the target tissue, the tissue directly adjacent the wall of the distensible reservoir, where the distance to the radioactive source is very small, may still be overly "hot" to the point where healthy tissue necrosis may result. In general, the amount of radiation desired by the physician is a certain minimum amount that is delivered to a region up to about two centimeters away from the wall of the excised tumor. It is desirable to keep the radiation that is delivered to the tissue in the target treatment region within a narrow absorbed dose range to prevent over-exposure to tissue at or near the reservoir wall, while still delivering the minimum prescribed dose at the maximum prescribed distance from the reservoir wall. It is also desirable, at least in some applications, to provide these advantages while tailoring the radiation dosage to avoid fully dosing sensitive tissue or to reduce the amount of radiation that escapes the patient's body.

There its still a need for an instrument which can be used to deliver radiation from a radioactive source to target tissue within the human body with a desired intensity and at a predetermined distance from the radiation source without over-exposure of body tissues disposed between the radiation source and the target, and with the ability to shape the radiation dose to protect sensitive tissue or to protect against radiation exposure outside of the patient's body which may affect healthcare providers or others who might come close to the patient.

### SUMMARY OF THE INVENTION

The present invention solves the problems described above by providing an interstitial brachytherapy apparatus for delivering radioactive emissions in an asymmetric fashion to target tissue surrounding a surgical extraction site. The apparatus includes an expandable outer surface element defining an apparatus spatial volume, a radiation source disposed within the apparatus volume, and a means for providing predetermined asymmetric isodose profile within the target tissue.

In one configuration, asymmetric isodose curves are created in the target tissue by shaping or locating the radiation source so as to be asymmetrically placed with respect to a

SRX-HOL00000023

US 6,482,142 B1

3

longitudinal axis of the apparatus. In one example of an apparatus having this configuration, an inner volume containing a liquid radioisotope is asymmetrically placed within the apparatus volume so as to result in an isodose profile in the target tissue that is asymmetric about the longitudinal axis of the apparatus.

In another example, the radiation source comprises a plurality of spaced apart solid radioactive particles disposed within the apparatus volume and arranged to provide a predetermined asymmetric isodose curve within the target tissue. In one particular example, the plurality of spaced apart radioactive particles are provided on a single elongate member that is shaped so that some of the radioactive particles are farther from the longitudinal axis of the apparatus than others. In other particular examples, a plurality of members carrying radioactive particles are provided with at least one of the members being shaped so as to place at least one radioactive particle asymmetrically with respect to the longitudinal axis of the apparatus.

An interstitial brachytherapy apparatus of the invention may also be implemented in a device having an expandable outer surface defining an apparatus volume, a radiation source disposed within and spaced apart from the expandable outer surface, and at least one asymmetric radiation shield spaced apart from the radiation source, the asymmetric radiation shielding resulting in predetermined asymmetric isodose curves with in the target tissue. In one embodiment, radiopaque shielding is provided on a portion of the expandable outer surface. In another embodiment, the radiation source is encompassed within a second, inner surface within the apparatus volume, with radiopaque shielding provided on at least a portion of the inner surface. In still further embodiments, one or more radiation shields are spaced apart from the radiation source and within the apparatus volume to achieve the desired asymmetric isodose distribution within the target tissue.

The invention also provides a method for treating a proliferating tissue disease using interstitial brachytherapy at an internal body location. The method includes surgically creating access to the proliferating tissue within a patient and surgically resecting at least a portion of the proliferating tissue to create a resection cavity within body tissue. An interstitial brachytherapy apparatus for delivering radioactive emissions as described above is then provided and intra-operatively placed into the resection cavity. After a prescribed absorbed dose has been delivered to tissue surrounding the apparatus, the apparatus is removed. The radioactive source material may be placed into the interstitial brachytherapy apparatus after the apparatus is placed in the resection cavity, and may be removed before the apparatus is removed. The method has particular applications to brain and breast cancers.

DESCRIPTION OF THE DRAWINGS

The foregoing features, objects and advantages of the invention will become apparent to those skilled in the art from the following detailed description of a preferred embodiment, especially when considered in conjunction with the accompanying drawings in which:

FIG. 1 is a side view of an interstitial brachytherapy apparatus of the invention for delivering asymmetric radioactive doses to body tissue;

FIG. 2 is a cross-sectional view taken along the line 2—2 in FIG. 1;

FIG. 3 is a side view of an additional embodiment of interstitial brachytherapy apparatus of the invention;

4

FIG. 3A is an end view of the interstitial brachytherapy apparatus of FIG. 3;

FIG. 4 is a side view of an additional embodiment of an interstitial brachytherapy apparatus of the invention;

FIG. 5 is a side view of an interstitial brachytherapy apparatus of the invention configured for use with a liquid radiation source.

FIG. 6 is a side view of an interstitial brachytherapy device of the invention employing radiopaque coatings;

FIG. 7 is a side view of an interstitial brachytherapy device of the invention employing radiopaque coating and a liquid radiation source; and

FIGS. 8 and 9 are end views of interstitial brachytherapy devices of the invention employing radiopaque shields.

DESCRIPTION OF THE PREFERRED EMBODIMENT

A surgical instrument 10 for providing radiation treatment to proliferative tissue in a living patient is illustrated in FIG. 1. Surgical instrument 10 includes a tubular body member 12 having first and second lumens 14 and 16 (FIG. 2) extending from proximal ports 18 and 20 in a molded hub 22. The first lumen 14 carries a radioactive source 24 and second lumen 16 communicates with inflation port 26 formed through the side wall of the tube 12.

Affixed to the tubular body 12 proximate the distal end 28 thereof is an outer spatial volume 30 defined by an outer polymeric film barrier 32 that is appropriately spaced from the radioactive source 24. Outer volume 30 encompasses inflation port 26. With no limitation intended, the distensible polymeric film walls may comprise a biocompatible, radiation resistant polymer, such as silastic rubbers, polyurethanes, polyethylene, polypropylene, polyester, or PVC. The outer spatial volume 30 may be filled with air, saline or, alternatively, a radiation absorbing fluid, such as a contrast media used in angiography. Alternatively, the surface of outer volume 30 need not be a solid material. For example the surface of the outer volume 30 could be an expandable cage formed from a shape memory metal, such as nitinol, or a suitable plastic, such as an expandable polyethylene cage. Such a cage can be formed in the desired shape to conform to a particular isodose profile, contracted for delivery to the target site in vivo, then expanded to cause the tissue surrounding the surgically resected region to take the appropriate shape. The size of the outer spatial volume 30 generally will correspond approximately to the amount of tissue resected. For some applications, the size of the outer spatial volume 30 may be slightly smaller than the resected volume while for other applications, the outer spatial volume is slightly larger than the resected volume, allowing the expandable surface of the outer spatial volume to urge tissue on the surface of the resected region into the appropriate shape to promote an even dose distribution around the outer spatial volume in the target tissue. In typical applications, the outer spatial volume has a diameter of approximately 2 to 6 centimeters.

Radiation source 24 comprises a wire 34 having one or more solid radioactive particles 36 located on the wire 34. For example, radioactive micro spheres of the type available from the 3M Company of St. Paul, Minn., may be used as the solid radioactive particles. Such a solid radioactive particle configuration offers an advantage in that it allows a wider range of radionuclides than if one is limited to liquids. Solid radionuclides that could be used with the delivery device of the present invention are currently generally available as brachytherapy radiation sources. Examples of

SRX-HOL00000024

US 6,482,142 B1

5

radioactive materials which can be selected by a person of ordinary skills in the art for use with the present invention may be found in Tables 1 to 4 of PCT Publication WO 97/19723, which is hereby incorporated by reference.

The radioactive source 24 can either be preloaded into the catheter at the time of manufacture, or loaded into the device after it has been implanted into the space formerly occupied by the excised tumor. If loaded after implantation, the solid radiation emitting material 36 can be inserted through lumen 14 on a wire 34, for example using an afterloader (not shown).

Radiation source 24 has an asymmetric configuration with respect to a longitudinal axis 38 of the instrument 10. That is, radiation source 24 is shaped so as to result in an isodose profile 40 that varies radially about the longitudinal axis 38. More simply, the isodose profile 40 of FIG. 1 has a shorter radius from the longitudinal axis 38 on the top side of the instrument 10 as shown in FIG. 1 than on the bottom side. The asymmetrically shaped isodose curve 40 may be created by providing a plurality of solid radioactive particles 36 on a curved wire 34 in a spaced apart relationship. This configuration will result in certain of the solid radioactive particles 36 being farther from the longitudinal axis 38 of the instrument 10 than others, and will result in the illustrated asymmetric isodose profile 40. One way to provide the illustrated radioactive source 24 configuration is to form wire 34 from a solid or tubular shape memory alloy such as nickel-titanium alloys known in the art to have such properties. Wire 34 can then be preformed to the desired shape, can be compressed into a substantially straight configuration to pass through lumen 14, and will resume its desired shape once inside volume 30 where wire 34 will be free from steric constraints imposed inside the lumen 14. The resulting asymmetric isodose curve 40 can be further tailored by using solid radioactive particles 36 having differing specific activities to achieve the desired dosing.

In one embodiment, volume 30 and barrier 32 act to separate target tissue from the radiation source 24. Ideally, radiation therapy should make use the inherent difference in radiosensitivity between the tumor and the adjacent normal tissues to destroy cancerous tissue while causing minimal disruption to surrounding normal tissues. At high doses of radiation, however, the percentage of exposed cells that survive treatment decreases with first-order kinetics in proportion to increasing radiation dose. With increasing cell death comes increasing risk of necrosis or tissue death in any healthy tissue that is treated with a high dose of radiation. Accordingly, it is desirable to keep the maximum radiation dose delivered by the brachytherapy apparatus as low as possible while still delivering the desired therapeutic dose to the desired range of tissue. One method for achieving this result is to provide a "hotter" radiation source in a spaced apart relationship to the target tissue. In this way, because the intensity of the radiation emitted by a source drops with the square of the distance from the source, the effective dosage may be maintained below necrosis levels in target tissue closest to the interstitial brachytherapy apparatus while providing the required dosage to a greater depth into the target tissue. (See, e.g., U.S. Pat. No. 5,913,813 which is hereby incorporated by reference in its entirety.) The capability of the apparatus of the invention to deliver absorbed doses deeper into the target tissue than prior interstitial brachytherapy devices while controlling the dose in proximity to the apparatus to reduce or eliminate the risk of healthy tissue necrosis allows for the use of brachytherapy in a greater number of cases.

For example, it is desirable to provide an interstitial brachytherapy device configured to provide a dose in a

6

therapeutic range, say between 40 to 60 Gray, at a distance between 0.5 and 1.0 cm from the outer spatial volume for an outer spatial volume having a diameter of 4.0 cm and being in contact with the resection cavity wall. In a typical embodiment, the radioactive source material ranges from approximately 150 to 450 mCi in activity and encompasses most of the target treatment area with a 0.4 to 0.6 Gray/hour isodose contour. At this treatment rate, treatment may be completed in approximately 3 to 7 days, or more commonly, in approximately 3 to 5 days.

In some applications, the desired dosing profile is consistent with the shape of the outer volume 30. That is, the absorbed dose within the target tissue at points equidistant from the surface 32 of the outer spatial volume 30 should be substantially uniform in substantially every direction. Put another way, the three dimensional isodose profiles generated by the radiation source should be substantially similar in shape to the outer spatial volume 30. Where the apparatus of the invention is deployed in soft tissue, it may also be important for the surface 32 of the outer spatial volume 30 to be sufficiently firm so as to force the target tissue to take on the shape of the surface 30 so that the desired relationship between the isodose profiles and the target tissue is achieved.

While the interstitial brachytherapy device 10 of FIG. 1 may employ these techniques to positive effect, this device specifically alters the isodose profile for applications where particularly sensitive tissue or other concerns result in a desire to limit the dosage on one or more sides of the device as illustrated by isodose curve 40.

In a further embodiment of the brachytherapy device 50 of the invention, illustrated in FIG. 3, three solid radiation particles 52 are provided in a linear portion 54 of radiation source 56, while two additional radiation particles 52 are provided on co-planar extending portions 58, 60 of radiation source 56. An end view of the device 50 of FIG. 3 is shown in FIG. 3A with extending portions 58, 60 provided in a single plane 62, and resulting in isodose profile 64. A second inner, expandable surface 66 can also be provided within outer surface 68; the inner surface 66 enclosing the entirety of radiation source 56.

By providing extending portions 58, 60 having radioactive particles in the indicated co-planar relationship, areas of reduced dosage can be created on opposed sides of the device while maintaining symmetric dosing in all other directions. Of course, the number of sources and their configuration can be changed to create a desired asymmetric dosage. For example, an additional source could be added, for example above plane 62, to result in a symmetric isodose profile in all directions except the direction below the plane 62 which would have a lower dosage.

An additional device 80 of the invention, shown in FIG. 4, includes a radiation source 82 that is made up of three wires 84, 86, 88, each having a plurality of solid radiation particles. Wire 86 is a straight wire extending along the longitudinal axis 90 of the device, while wires 84, 88 each curve as wire 34 described above with respect to FIG. 1. Wires 84, 88 are coplanar, resulting in an isodose profile 92 that is similar to isodose profile 64 of FIG. 3A. That is, the isodose profile will be symmetric in the plane in which the wires 84, 88 are disposed, but will have areas of reduced dosage in directions transverse to that plane (i.e., in FIG. 4, in the directions into and out of the page). As with the device 50 of FIGS. 3 and 3A, a device 80 can be configured with more or fewer wires 84, 86, 88, and can be provided in configurations other than the depicted co-planar configuration in order to achieve desired asymmetric isodose profiles.

US 6,482,142 B1

7

The asymmetric dosing effect achieved by the devices described above can also be achieved using a liquid radiation source. For example, device 100, illustrated in FIG. 5, has an outer surface 102 defining an outer volume 104 and an inner surface 106 defining an inner volume 108. The inner surface 106 is asymmetrically shaped or located with respect to the longitudinal axis 110 of the device 100 so as to result in the desired asymmetric dosing when the inner volume 108 is filled with a radioactive fluid. The inner volume 108 is spaced apart from the outer surface 102 and can be filled with a material containing a predetermined radionuclide, for example, I-125, I-131, Yb-169 or other source of radiation, such as radionuclides that emit photons, beta particles, gamma radiation, or other therapeutic rays. The radioactive material contained within the inner volume 108 can be a fluid made from any solution of radionuclide(s), e.g., a solution of Ir-192, I-125 or I-131. A radioactive fluid can also be produced using a slurry of a suitable fluid containing small particles of solid radionuclides, such as Au-198, Y-90. Moreover, the radionuclide(s) can be embodied in a gel. One radioactive material useful in the invention is Iotrex™, a sterile single use, non-pyrogenic solution containing sodium 3-($^{125}$I)iodo-4-hydroxybenzenesulfonate ($^{125}$I-HIBS), available from Proxima Therapeutics, Inc. of Alpharetta, Ga. The inner volume 108 may be filled with radioactive fluid through port 112. Similarly, outer volume 104 can be filled on inflated using port 114.

A desired asymmetric dosing profile having the dosing characteristics described above may also be created by using asymmetric shielding between the radiation source and the target tissue as illustrated in FIGS. 6 through 9. In the device 120 of FIG. 6, a balloon 122 is located on the distal end of catheter 124. Radioactive particles 126 are disposed along the longitudinal axis 128 of the device. A portion of the surface, either inner or outer, of balloon 122 is coated with a radiopaque material 130 to result in asymmetric isodose curve 132. Radiopaque materials suitable for coating onto a polymeric surface of balloon 122 include, for example, barium, tungsten, bismuth, tantalum and tin.

A further device 140 having radiopaque shielding 142 is illustrated in FIG. 7. Device 140 includes an outer volume surface 144 and an inner volume surface 146. Inner surface 146 may contain a liquid radiation source, or may enclose one or more solid particles as used in device 120 (FIG. 6). In device 140, the radiopaque material 142 is coated onto a portion of either the inner or outer side of the inner volume surface 146, resulting in a desired asymmetric isodose profile 148.

Additional devices 160, 180 of the invention having radiation shielding 162 are illustrated in FIGS. 8 and 9, respectively. In these devices 160, 180, one or more radiation shields 162 are provided between and spaced apart from a radiation source (not shown) located along a longitudinal axis 164 of the device and the target tissue, which will be located outside of expandable surface 166. The radiation source can include a liquid or a solid radiation source as described above. Shields 162 can be formed from radiopaque materials including those described above with respect to the radiopaque coating and can extend longitudinally from a base on the device located within the expandable surface 166.

As shown in FIG. 8, device 160 has two radiation shields 162 on opposed sides of catheter 168. This configuration results in lower radiation dosing on the two sides of the device 160 on which the shields 162 are located as shown by isodose curve 170. Device 180 (FIG. 9) has a single radiation shield 162 resulting in an asymmetric isodose curve 182

8

as shown. A person or ordinary skill in the art will recognize that other configurations may be employed to achieve desired isodose curves.

The interstitial brachytherapy apparatus of the invention can be used in the treatment of a variety of malignant tumors, and is especially useful for in the treatment of brain and breast tumors.

Many breast cancer patients are candidates for breast conservation surgery, also known as lumpectomy, a procedure that is generally performed on early stage, smaller tumors. Breast conservation surgery is typically followed by postoperative radiation therapy Studies report that 80% of breast cancer recurrences after conservation surgery occur near the original tumor site, strongly suggesting that a tumor bed "boost" of local radiation to administer a strong direct dose may be effective in killing any remaining cancer and preventing recurrence at the original site. The apparatus described herein can be used for either the primary or boost therapy. Numerous studies and clinical trials have established equivalence of survival for appropriate patients treated with conservation surgery plus radiation therapy compared to mastectomy.

Surgery and radiation therapy are also the standard treatments for malignant solid brain tumors. The goal of surgery is to remove as much of the tumor as possible without damaging vital brain tissue. The ability to remove the entire malignant tumor is limited by its tendency to infiltrate adjacent normal tissue. Partial removal reduces the amount of tumor to be treated by radiation therapy and, under some circumstances, helps to relieve symptoms by reducing pressure on the brain.

A method according to the invention for treating these and other malignancies begins by surgical resection of a tumor site to remove at least a portion of the cancerous tumor and create a resection cavity. Following tumor resection, but prior to closing the surgical site, the surgeon intra-operatively places an interstitial brachytherapy catheter apparatus, having an inner spatial volume and an outer spatial volume as described above but without having the radioactive source material loaded, into the tumor resection cavity. Once the patient has sufficiently recovered from the surgery, the interstitial brachytherapy catheter is loaded with a radiation source. The radioactive source dwells in the catheter until the prescribed dose of radiotherapy is delivered, typically for approximately a week or less. The radiation source is then retrieved and the catheter is removed. The radiation treatment may end upon removal of the brachytherapy apparatus, or the brachytherapy may be supplemented by further doses of radiation supplied externally.

It will be understood that the foregoing is only illustrative of the principles of the invention, and that various modifications can be made by those skilled in the art without departing from the scope and spirit of the invention, including, but not limited to, combinations of elements from different embodiments found herein. All references cited herein are expressly incorporated by reference in their entirety.

What is claimed is:

1. An interstitial brachytherapy apparatus for treating target tissue surrounding a surgical extraction comprising:
   an expandable outer surface defining a three-dimensional apparatus volume configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated;

SRX-HOL00000026

US 6,482,142 B1

9

a radiation source disposed completely within the expand-
able outer surface and located so as to be spaced apart
from the apparatus volume, the radiation source further
being asymmetrically located and arranged within the
expandable surface to provide predetermined asymmet-
ric isodose curves with respect to the apparatus volume.

2. A surgical apparatus for providing radiation treatment
to target tissue comprising:

an expandable outer surface defining an apparatus vol-
ume;

a radiation source replaceably disposable within the
expandable outer surface, the radiation source compris-
ing a plurality of solid radiation sources arranged to
provide predetermined asymmetric isodose curves
within the target tissue, the plurality of solid radiation
sources being provided in a spaced apart relationship
on a single elongate member, the single elongate mem-
ber being shaped to provide asymmetric placement of
the spaced apart solid radiation sources with respect to
a longitudinal axis through the apparatus volume.

3. The apparatus of claim 2, further comprising a catheter
in communication with the apparatus volume, the elongate
member extending through the catheter into the apparatus
volume.

4. The apparatus of claim 3, wherein the elongate member
is formed of a shape memory alloy, the elongate member
being shaped to provide asymmetric placement of the spaced
apart solid radiation sources, taking on a substantially
straight shape while being inserted through the catheter to
the apparatus volume, and resuming an asymmetric shape
when extended into the apparatus volume.

5. A surgical apparatus for providing radiation treatment
to target tissue comprising:

an expandable outer surface defining an apparatus vol-
ume;

a radiation source replaceably disposable within the
expandable outer surface, the radiation source compris-
ing a plurality of solid radiation sources arranged to
provide predetermined asymmetric isodose curves
within the target tissue, wherein at least one of the
plurality of solid radiation sources has a different
specific activity from at least one other solid radiation
source.

6. A surgical apparatus for providing radiation treatment
to target tissue comprising:

an expandable outer surface defining an apparatus vol-
ume;

a radiation source replaceably disposable within the
expandable outer surface, the radiation source compris-

10

ing a plurality of solid radiation sources arranged to
provide predetermined asymmetric isodose curves
within the target tissue, the plurality of radiation
sources being provided on at least two elongate mem-
bers extending into the apparatus volume, at least one
of the elongate members being shaped to provide
asymmetric placement of a radiation source with
respect to a longitudinal axis through the apparatus
volume.

7. The apparatus of claim 6, wherein each of the at least
two elongate members includes a plurality of solid radiation
sources provided in a spaced apart relationship.

8. The apparatus of claim 1, wherein the expandable outer
surface is sufficiently rigid to deform the target tissue into
the shape of the expandable outer surface, causing the
predetermined asymmetric isodose curves to penetrate into
the target tissue to a prescribed depth.

9. An interstitial brachytherapy apparatus for treating
target tissue surrounding a surgical extraction comprising:

an expandable outer surface having a base and defining a
three-dimensional apparatus volume configured to fill
an interstitial void created by the surgical extraction of
diseased tissue and define an inner boundary of the
target tissue being treated;

a radiation source disposed completely within and spaced
apart from the expandable outer surface; and

an asymmetric radiation shield spaced apart from the
radiation source, the asymmetric radiation shield pro-
viding predetermined asymmetric isodose curves with
respect to the apparatus volume.

10. The apparatus of claim 9, wherein the asymmetric
radiation shield comprises a radio-opaque material disposed
on only a portion of the expandable outer surface.

11. The apparatus of claim 10, wherein the expandable
outer surface comprises an inflatable balloon.

12. The apparatus of claim 11, wherein the radiation
shield comprises a barium material disposed a portion of the
inflatable balloon.

13. The apparatus of claim 9, further comprising at least
one radiation shield extending from the base of the expand-
able outer surface toward an opposite end of the expandable
surface, the shield being in between and spaced apart from
the radiation source and the expandable outer surface, the
shield forming a radio-opaque barrier between a portion of
the radiation source and the target tissue.

14. The apparatus of claim 13, wherein the radiation
shield comprises two shields provided on opposite sides of
the radiation source.

* * * * *

SRX-HOL00000027

# Exhibit 4



1  Henry C. Su (SBN 211202; suh@howrey.com)
   Katharine L. Altemus (SBN 227080; altemusk@howrey.com)
2  HOWREY LLP
   1950 University Avenue, 4th Floor
3  East Palo Alto, California  94303
   Telephone:  (650) 798-3500
4  Facsimile:  (650) 798-3600

5  Robert Ruyak
   Matthew Wolf (Admitted *Pro Hac Vice*)
6  Marc Cohn (Admitted *Pro Hac Vice*)
   HOWREY LLP
7  1299 Pennsylvania Avenue, NW
   Washington, DC 20004
8  Telephone:  (202) 783-0800
   Facsimile:  (202) 383-6610

9
   Attorneys for Plaintiffs
10 HOLOGIC, INC., CYTYC CORPORATION and HOLOGIC L.P.

11             UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                 SAN JOSE DIVISION

14 HOLOGIC, INC., CYTYC CORPORATION,        Case No. C08 00133 RMW (RS)
   and HOLOGIC L.P.,
15                                          **PLAINTIFFS' DISCLOSURE OF ASSERTED**
                  Plaintiffs,               **CLAIMS AND PRELIMINARY**
16                                          **INFRINGEMENT CONTENTIONS UNDER**
          vs.                               **PATENT LOCAL RULE 3-1**
17
   SENORX, INC.,
18
                  Defendant.
19

20 AND RELATED COUNTERCLAIMS.

21

22

23

24

25

26

27

28

HOWREY LLP

Plaintiffs' Disclosure of Asserted Claims and
Preliminary Infringement Contentions
Case No.  C08 00133 RMW (RS)

1    Plaintiffs Hologic, Inc, Cytyc Corporation, and Hologic L.P. (collectively, "Hologic"), by

2    counsel and pursuant to Patent Local Rule 3-1 of this Court, hereby submits its disclosure of asserted

3    claims and preliminary infringement contentions relating to U.S. Patents Nos. 5,913,813 (the "'813

4    patent"), 6,413,204 (the "'204 patent"), and 6,482,142 (the "'142 patent").  Hologic reserves the right

5    to supplement or amend its identification of asserted claims, accused instrumentalities and

6    infringement contentions contained herein (a) based on additional information concerning Defendant

7    SenoRx, Inc.' s ("SenoRx") products and methods obtained through discovery or other means, (b) as

8    appropriate, in response to the Court's determination of legal issues, including without limitation the

9    construction of disputed terms, phrases and clauses identified by either party, or (c) for any other good

10   cause shown.  See Pat. L.R. 3-6 & 3-7.

11   **I.    INFRINGEMENT CHARTS FOR EACH ASSERTED CLAIM (Patent L.R. 3-1(c))**

12        **A.    U.S. Patent No. 5,913,813**

13        Attached as Appendix A is a chart identifying specifically where each element of each

14   asserted claim of the '813 patent (claims 11 and 12) is found within SenoRx's Contura™ Multi-Lumen

15   Balloon Source Applicator for Brachytherapy, models B001-45 and B011-45.

16        **B.    U.S. Patent No. 6,413,204**

17        Attached as Appendix B is a chart identifying specifically where each element of each

18   asserted claim of the '204 patent (claims 4 and 17) is found within SenoRx's Contura™ Multi-Lumen

19   Balloon Source Applicator for Brachytherapy, models B001-45 and B011-45.  Each asserted claim is

20   entitled to a priority date of July 4, 1997.

21        **C.    U.S. Patent No. 6,482,142**

22        Attached as Appendix C is a chart identifying specifically where each element of each

23   asserted claim of the '142 patent (claims 1, 6, and 8) is found within SenoRx's Contura™ Multi-

24   Lumen Balloon Source Applicator for Brachytherapy, models B001-45 and B011-45.  The first two

25   claim elements of claim 1 (as tabled in Appendix C) are entitled to a priority date of July 4, 1997.

26   \\

27

28

1    **D.    Materials Relied Upon**

2        Attached as Appendix D is a list of exemplary materials that provide factual support for

3    Hologic's infringement contentions, as set forth herein and in Appendices A, B, and C.  While

4    sufficient on their own to establish infringement, the materials appearing on this list are not intended to

5    be the complete factual record on which Hologic will rely to prove infringement at trial.

6    **II.    RELIANCE ON OWN PRODUCTS AS PRACTICING THE CLAIMED INVENTION**

7        **(Patent L.R. 3-1(f))**

8        Hologic intends to rely upon its own products, namely, the Mammosite® Radiation Therapy

9    System, as practicing the inventions of each and every asserted claim of the '813 and '204 patents.

10   Dated:  May 6, 2008                         HOWREY LLP

11

12                                              By:    _K̲a̲i̲_̲_̲a̲t̲i̲_̲_̲_̲_̲_̲_̲_

13                                                     Katharine L. Altemus

14

15                                              HOWREY LLP
                                                Attorneys for Plaintiffs
16                                              Hologic, Inc., Cytyc Corporation,
                                                  and Hologic L.P.
17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 1950 University Avenue, 4th Floor, East Palo Alto, California 94303.

On May 6, 2008, I served on the interested parties in said action the within:

**PLAINTIFFS' DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTIONS UNDER PATENT LOCAL RULE 3-1 with APPENDIX A, APPENDIX B, APPENDIX C, and APPENDIX D**

by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at East Palo Alto, California.

| | |
|---|---|
| F.T. Alexandra Mahaney; amahaney@wsgr.com<br>Natalie J. Morgan; nmorgan@wsgr.com<br>Wilson Sonsini Goodrich & Rosati<br>12235 El Camino Real, Suite 200<br>San Diego, California 92130 | Bruce R. Genderson; bgenderson@wc.com<br>Aaron P. Maurer; amaurer@wc.com<br>Rachael Shanahan Rodman; rrodman@wc.com<br>Adam D. Harber; aharber@wc.com<br>Williams & Connolly LLP<br>725 – 12th Street, N.W.<br>Washington, D.C. 20005 |

[X]  (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[X]  (EMAIL/ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the submission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on May 6, 2008, at East Palo Alto, California.

Sonya Schwab
(Type or print name)

_Sonya Schwab_
(Signature)

# Appendix A

## APPENDIX A
## INFRINGED CLAIMS OF U.S. Patent No. 5,913,813

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| *1. Apparatus for delivering radioactive emissions to a body location with a uniform radiation profile, comprising:* | <u>CONTENTION:</u><br><br>The Contura™ Multi-Lumen Balloon Source Applicator ("Contura™") (formerly marketed under the product name SenoRad) is an interstitial brachytherapy apparatus designed to deliver intracavity radiation to the margins of the cavity remaining after surgical resection of breast cancer.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 22; Ref. No. 26; Ref. No. 34** at SRX- |

---

[1] Asserted Claims 11 and 12 depend from unasserted Claims 1, 2, and 8 (for which, therefore, the elements are matched to features of the accused instrumentality).

[2] The "Support" cited herein is exemplary, and although sufficient to support a claim of infringement, is not the complete factual record on which Hologic intends to rely to prove infringement at trial. To the extent that further discovery shows any element of an asserted claim is not present literally, Hologic will rely at least on the identified evidence to show that the element is present under the doctrine of equivalents.

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>U̲N̲D̲E̲R̲L̲I̲N̲E̲ SUPPORT:<br><br> "The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 2 at 2232.**<br><br>"SenoRx, Inc. (NASDAQ:SENO) today announced that it has launched Contura™, its Multi-Lumen Balloon (MLB) Catheter for delivering brachytherapy to the surgical margins following lumpectomy for breast cancer." **Ref. No. 5**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| *(a) a catheter body member having a proximal end and distal end;* | CONTENTION:<br><br>The Contura™ has a catheter with a proximal and distal end, with proximal ports for inflation and vacuum, as well as a distal "vacuum port." "Radiation source lumens" also run from the proximal end of the applicator into the treatment lumens at the distal end of the catheter.   This claim element is thus <u>literally</u> infringed.<br><br>SUPPORT:<br><br> "The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire."  **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (Figure 1)."  **Ref. No. 2 at 2232.**<br><br>Illustrations of the SenoRx Multi-Lumen Balloon Source Applicator show a catheter with a proximal and distal end, with proximal ports for inflation ("inflation luer") and vacuum ("vacuum luer"), as well as a distal "vacuum port". "Radiation source lumens" are also run from the proximal end of the applicator into the treatment lumens at the distal end of the catheter.  **Ref. No. 2** at Figure 1; **Ref. No. 3**.<br><br>"Two proximal ports are also provided with Luer-type connectors for balloon inflation/deflation and for application of intracavitary vacuum."  **Ref. No. 2 at 2232.**<br><br>See generally **Ref. No. 4**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| *(b) an inner spatial volume disposed proximate the distal end of the catheter body member;* | CONTENTION:<br><br>Each of the five treatment lumens inside the Contura™ balloon comprises a region of space surrounded by an outer spatial volume and enclosed by a polymeric film wall and therefore embodies an inner spatial volume proximate to the distal end of the Contura™ catheter.  **Ref. No. 24** at 28.  Alternatively, the radionuclide itself comprises a region of space surrounded by an outer spatial volume and defined by the outside surface of a solid radionuclide sphere and therefore embodies an inner spatial volume. *Id*.  This claim element is thus <u>literally</u> infringed.<br><br>Alternatively, the five treatment lumens and the area within the balloon between and surrounding those lumens are insubstantially different from a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide sphere.  They function in substantially the same way (controlled positioning of a radiation source within the outer spatial volume) to provide substantially the same result (delivery of a prescribed radiation dose to target tissue).  This claim element is thus infringed under the <u>doctrine of equivalents</u>.<br><br>SUPPORT:<br><br>**Ref. No. 24** at 28.<br><br> "Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 1** at Device description.<br><br> "Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 2** at page 2.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens within **Ref. No. 3.** |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
|  | See generally **Ref. No. 4** (showing 4 "offset" lumen).<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| *(c) an outer, closed, inflatable, chamber defined by a radiation transparent wall affixed to the body member proximate the distal end thereof in surrounding relation to the inner spatial volume with a predetermined constant spacing between said inner spatial volume and the radiation transparent wall;* | CONTENTION:<br><br>The central treatment lumen is located within the balloon (i.e., the "outer, closed, inflatable chamber defined by a radiation transparent wall:") along the longitudinal axis of the applicator.<br><br>The Contura™ inflatable balloon is an "outer, closed, inflatable, chamber"), and is affixed proximate to the vacuum port at the distal end of the applicator catheter.  The surface of the expandable balloon ("a radiation transparent wall') defines the outer spatial volume of the balloon applicator.  The Contura™ balloon surrounds and contains the inner spatial volume(s) discussed above.  The spacing (predetermined by one of skill in the art) between the inner spatial volume and the wall of the Contura™ balloon is constant.  This claim element is thus <u>literally</u> infringed.<br><br>SUPPORT:<br><br> "The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire."  **Ref. No. 1** at Device description.<br><br>"Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (Figure 1)."  **Ref. No. 2 at 2232.**<br><br>"Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | the central lumen." **Ref. No. 2** at page 2.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens within **Ref. No. 3.**<br><br>See generally **Ref. No. 4**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| *(d) a material containing a radionuclide(s) disposed in one of the inner spatial volume and outer chamber; and* | C<small>ONTENTION</small>:<br><br>Each radiation source ("radiation source wire") is inserted through a radiation source lumen in the Contura into its respective central or curved treatment lumen.  The five treatment lumens are located within the expandable outer surface of the balloon. Alternatively, each radiation source has a radionuclide surface that defines the inner spatial volume in which it is disposed.  This claim element is thus <u>literally</u> infringed.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use. |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | **SUPPORT:**<br><br>"The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire." **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire. Five radiation source wire lumens are provided, one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen." **Ref. No. 19** at SRX-HOL00005564.<br><br>See generally **Ref. No. 4**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| *(e) means disposed in the other of the inner spatial volume and outer chamber for rendering uniform the radial absorbed dose profile of the emissions from the* | **CONTENTION:**<br><br>The Contura™ balloon is intended to be filled with a radiation absorbing or attenuating |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| *one of the inner spatial volume and outer chamber containing the radionuclides.* | material (e.g., physiological saline or saline/contrast mixture) for making the absorbed dose of radiation more uniform to prevent over-treatment of body tissue at or close to the outer wall of the balloon ("rendering uniform the radial absorbed dose profile of the emissions from the radiation source within the inner spatial volume"). This claim element is thus <u>literally</u> infringed. |

SUPPORT:

"The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injunction of physiological saline to approximately 33 or 58 ml. respectively." **Ref. No. 19** at SRX-HOL00005564.

"The inflated shape allows for placement of a radiation source at the center or close to the center of the balloon to deliver doses of gamma radiation to the margins of the lumpectomy cavity." **Ref. No. 19** at SRX-HOL00005564

"Inflate balloon with saline/contrast mixture" **Ref. No. 17** at SRX-HOL00006650.

"The balloon is then inflated to a 4 to 6 cm spherical shape by a controlled volume injection of physiological saline." **Ref. No. 20** at SRX-HOL00004120.

"Contrast media concentration of less than 10% are recommended to prevent dose attenuation." **Ref. No. 2** at 2232.

"8. Using the syringes provided, inflate the Applicator balloon with the contrast media solution to the desired fill volume. Purge any air from the fill syringes before attaching them to the Applicator."

| Desired balloon diameter | Approximate balloon fill volume |
|---|---|
| 4 cm | 33 ml |
| 5 cm | 58 ml |

**Ref. No. 2** at 2232.

*See also* **Ref. No. 16** at SRX-HOL00006598.

See generally **Ref. No. 4**.

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
|  | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| *2. The apparatus as in claim 1 wherein said inner spatial volume is an inner closed, chamber defined by a further radiation transparent wall.* | <u>CONTENTION:</u><br><br>Each of the five treatment lumens inside the Contura™ balloon comprises a region of space, which is an inner, closed chamber, surrounded by an outer spatial volume and enclosed by a radiation transparent, polymeric film wall. Each of the five treatment lumens thus embodies an inner spatial volume proximate to the distal end of the Contura™ catheter. **Ref. No. 24** at 28. This claim element is thus <u>literally</u> infringed.<br><br>Alternatively, the five treatment lumens and the area within the balloon between and surrounding those lumens are insubstantially different from a region of space that is an inner, closed chamber, surrounded by an outer spatial volume and enclosed by a radiation transparent, polymeric film wall. This claim element is thus infringed under the <u>doctrine of equivalents</u>.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7***;* **Ref. No. 8; Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 2 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7***;* **Ref. No. 8; Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 22; Ref. No. 26; Ref. No. 34** at SRX- |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>**S<small>UPPORT</small>:**<br><br>See **Ref. No. 21**.<br><br>See generally **Ref. No. 4**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>*See also* **Ref. No. 24** at 28. |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| *8. The apparatus as in claim 2 wherein the inner chamber contains the radioactive material.* | <u>CONTENTION:</u><br><br>Each of the five treatment lumens inside the Contura™ balloon provides an inner, closed chamber, which during use, is the structure that contains a radioactive source. **Ref. No. 24** at 28. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 8 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55. The Contura is not a staple article or commodity of commerce |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
|  | suitable for substantial non-infringing use. |
|  | **SUPPORT:** |
|  | "The Contura™ MLB applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire. Five radiation source wire lumens are provided, one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen." **Ref. No. 19** at SRX-HOL00005564. |
|  | See generally **Ref. No. 4**. |
|  | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
|  | *See also* **Ref. No. 7***; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429. |
|  | *See also* **Ref. No. 7***; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | *See also* **Ref. No. 24** at 28. |
| **11. The apparatus as in claim 8 wherein the radioactive material is a solid.** | <u>CONTENTION:</u><br><br>During patient treatment, an afterloader under computer control inserts source wires with attached solid radionuclides through the radiation source wire lumens of the Contura™ device into predetermined source dwell positions within the treatment lumens ("inner chamber") at the distal end of the device.  This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 11 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22; Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>S̲U̲P̲P̲O̲R̲T̲:̲<br><br> "The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 1** at Device description.<br><br>"Lumens are provided for attachment to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire." **Ref. No. 2** at 2232.<br><br>"Afterloader compatibility: Model B001-45-VeriSource 200, VariSource ID and Nucletron HDR afterloaders.  Model B011-45-GammaMedPlus afterloader (Cannot be used with GammaMed 12f)." **Ref. No. 2** at 2232.<br><br>"SenoRx, Inc. (NASDAQ:SENO) today announced that it has launched Contura™, its Multi-Lumen Balloon (MLB) Catheter for delivering brachytherapy to the surgical margins following lumpectomy for breast cancer." **Ref. No. 5**.<br><br>See generally **Ref. No. 4**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| **12. The apparatus as in claim 1 wherein the material containing a radionuclide comprises a plurality of radioactive solid particles placed at predetermined locations within the inner spatial volume to provide a desired composite radiation profile.** | <u>CONTENTION:</u><br><br>During treatment using the Contura, the radiation source wire lumens to which the radionuclide(s) is/are attached are inserted into predetermined locations (dwell positions) within the treatment lumens at the distal end of the device.  The multiple treatment lumens of the Contura™ allow multiple solid radiation sources (e.g., single radionuclide sources on multiple separate source wires) to be arrayed simultaneously within separate lumens to provide a desired composite radiation profile within the targeted tissue.  Alternatively, a single solid radionuclide on a source wire can be inserted sequentially into one or more predetermined locations within multiple treatment lumens to provide a desired composite radiation profile within the targeted tissue.  This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8; Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 12 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8; Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
|  | SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>**SUPPORT:**<br><br> "The radiation balloon uses vacuum to remove excess air and fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens."  **Ref. No. 17** at SRX-HOL00006639.<br><br>"Each lumen can accommodate 8 dwell positions."  **Ref. No. 17** at SRX-HOL00006642.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>*See also* **Ref. No. 21**. |

# Appendix B

APPENDIX B
INFRINGED CLAIMS OF U.S. Patent No. 6,413,204

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| *1. An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location comprising:* | CONTENTION:<br><br>The Contura Multi-Lumen Balloon Source Applicator ("Contura™") is an interstitial brachytherapy apparatus designed to deliver intracavity radiation to the margins of the cavity remaining after surgical resection of breast cancer.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at |

---

[1] Each asserted claim is entitled to a priority date of July 24, 1997.

[2] Asserted Claims 4 and 17 depend from unasserted claims 1, 2, and 3 (for which, therefore, the elements are matched to features of the accused instrumentality).

[3] The "Support" cited herein is exemplary, and although sufficient to support a claim of infringement, is not the complete factual record on which Hologic intends to rely to prove infringement at trial.  To the extent that further discovery shows any element of an asserted claim is not present literally, Hologic will rely on at least the identified evidence to show that the element is present under the doctrine of equivalents.

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br><u>SUPPORT:</u><br><br>"The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 2 at 2232.**<br><br>"SenoRx, Inc. (NASDAQ:SENO) today announced that it has launched Contura™, its Multi-Lumen Balloon (MLB) Catheter for delivering brachytherapy to the surgical margins following lumpectomy for breast cancer." **Ref. No. 5**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| *(a) a catheter body member having a proximal end and distal end;* | <u>CONTENTION:</u><br><br>The Contura™ has a catheter with a proximal and distal end, with proximal ports for inflation and vacuum, as well as a distal "vacuum port." "Radiation source lumens" also run from the proximal end of the applicator into the treatment lumens at the distal end of the catheter.   This claim element is thus <u>literally</u> infringed.<br><br><u>SUPPORT:</u><br><br>"The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire." **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (Figure 1)." **Ref. No. 2 at 2232.**<br><br>Illustrations of the SenoRx Multi-Lumen Balloon Source Applicator show a catheter with a proximal and distal end, with proximal ports for inflation ("inflation luer") and vacuum ("vacuum luer"), as well as a distal "vacuum port". "Radiation source lumens" are also run from the proximal end of the applicator into the treatment lumens at the distal end of the catheter.  **Ref. No. 2** at Figure 1; **Ref. No. 3**.<br><br>"Two proximal ports are also provided with Luer-type connectors for balloon inflation/deflation and for application of intracavitary vacuum." **Ref. No. 2 at 2232.**<br><br>See generally **Ref. No. 4**. |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| *(b) an inner spatial volume disposed proximate to the distal end of the catheter body member;* | CONTENTION:<br><br>Each of the five treatment lumens inside the Contura™ balloon comprises a region of space surrounded by an outer spatial volume and enclosed by a polymeric film wall and therefore embodies an inner spatial volume proximate to the distal end of the Contura™ catheter.  **Ref. No. 24** at 28.  Alternatively, the radionuclide itself comprises a region of space surrounded by an outer spatial volume and defined by the outside surface of a solid radionuclide sphere and therefore embodies an inner spatial volume.  *Id*.  This claim element is thus <u>literally</u> infringed.<br><br>Alternatively, the five treatment lumens and the area within the balloon between and surrounding those lumens are insubstantially different from a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide sphere.  They function in substantially the same way (controlled positioning of a radiation source within the outer spatial volume) to provide substantially the same result (delivery of a prescribed radiation dose to target tissue).  This claim element is thus infringed under the <u>doctrine of equivalents</u>.<br><br>SUPPORT:<br><br>"Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 1** at Device description.<br><br> "Five radiation source wire lumens are provided; one central lumen located along the long axis of the Applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 2** at page 2232.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens within **Ref. No. 3.** |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | See generally **Ref. No. 4** (showing 4 "offset" lumen). |
|  | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
|  | *See also* **Ref. No. 24** at 28. |
| *(c) an outer spatial volume defined by an expandable surface element disposed proximate to the distal end of the body member in a surrounding relation to the inner spatial volume; and* | <u>CONTENTION:</u><br><br>The inflatable spherical balloon is an "expandable surface element", and is located proximate to the vacuum port at the distal end of the applicator catheter. The three-dimensional surface of the expandable balloon defines the outer spatial volume of the balloon applicator. The outer spatial volume surrounds and contains the inner spatial volume(s). Each of the five treatment lumens inside the Contura™ balloon comprises a region of space surrounded by an outer spatial volume and enclosed by a polymeric film wall and therefore embodies an inner spatial volume proximate to the distal end of the Contura™ catheter. **Ref. No. 24** at 28. Alternatively, the radionuclide itself comprises a region of space surrounded by an outer spatial volume and defined by the outside surface of a solid radionuclide sphere and therefore embodies an inner spatial volume. *Id.* This claim element is thus <u>literally</u> infringed.<br><br>Alternatively, the five treatment lumens and the area within the balloon between and surrounding those lumens are insubstantially different from a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide sphere. They function in substantially the same way (controlled positioning of a radiation source within the outer spatial volume) to provide substantially the same result (delivery of a prescribed radiation dose to target tissue). This claim element is thus infringed under the <u>doctrine of equivalents</u>.<br><br><u>SUPPORT:</u><br><br>"The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire. Five radiation source wire lumens are provided; one central lumen |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen.  The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively."  **Ref. No. 1** at Device description.<br><br> "The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (figure 1).  Lumens are provided for attachment to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 2** at page 2232.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens, the outer spatial volume as defined by the expandable polyurethane balloon, and the inner spatial volume. **Ref. No. 3.**<br><br>See generally **Ref. No. 4** (showing expansion of balloon with subsequent increase in size of outer spatial volume)<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 24** at 28. |
| *(d) a radiation source disposed in the inner spatial volume and generating a three-dimensional isodose profile that is substantially similar in shape to the expandable surface element.* | <u>CONTENTION:</u><br><br>Each radiation source ("radiation source wire") is inserted through a radiation source lumen into its respective central or curved treatment lumen (one "central lumen" and four "curved lumens").  Each of the five treatment lumens inside the Contura™ balloon comprises a region of space surrounded by an outer spatial volume and enclosed by a polymeric film wall and therefore embodies an inner spatial volume proximate to the distal end of the Contura™ catheter.  **Ref. No. 24** at 28.  Alternatively, the radionuclide itself comprises a region of space surrounded by an outer spatial volume and defined by the outside surface of a solid radionuclide sphere and therefore embodies an inner spatial volume.  *Id.*  The Contura™ balloon surrounds and contains the inner spatial |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | volume(s). Because the spacing (predetermined by one of skill in the art) between the inner spatial volume and the wall of the spherical Contura™ balloon is constant, the accused device provides a three-dimensional isodose profile generated by the radiation source that is substantially similar in shape to the balloon. This claim element is thus <u>literally</u> infringed.

Alternatively, the five treatment lumens and the area within the balloon between and surrounding those lumens are insubstantially different from a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide sphere. They function in substantially the same way (controlled positioning of a radiation source within the outer spatial volume) to provide substantially the same result (delivery of a prescribed radiation dose to target tissue). This claim element is thus infringed under the <u>doctrine of equivalents</u>.

SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7***; ***Ref. No. 8***; ***Ref. No. 10*** at SRX-HOL00002354; ***Ref. No. 11*** at SRX-HOL00002360-2362; ***Ref. No. 12*** at 1, 2; ***Ref. No. 13*** at 39; ***Ref. No. 14*** at SRX-HOL00002371, 2373; ***Ref. No. 15*** at SRX-HOL00007179-7186; ***Ref. No. 16*** at SRX-HOL00006591-6601; ***Ref. No. 17***; ***Ref. No. 22***; ***Ref. No. 26***; ***Ref. No. 34*** at SRX-HOL00006734, 6780-3784; ***Ref. No. 28*** at SRX-HOL00004163-4195; ***Ref. No. 29*** at SRX-HOL00004197-4215; ***Ref. No. 33*** at SRX-HOL00004457-4459; ***Ref. No. 34*** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; ***Ref. No. 37*** at SRX-HOL00004778; ***Ref. No. 39*** at SRX-HOL00001540; ***Ref. No. 41*** at SRX-HOL00001792-1794; ***Ref. No. 40*** at SRX-HOL00001675-1688, 1692-1702; ***Ref. No. 42*** at SRX-HOL00002016-2019, 2030.

SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55. The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.

<u>SUPPORT:</u>

"The SenoRad applicator consists of a multi-lumen catheter connected to an |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen.  The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively." **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (figure 1).  Lumens are provided for attachment to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen." **Ref. No. 2** at page 2232.<br><br>"In addition, the Contura MLB uses vacuum suction to remove excess seroma and air to enhance conformance of often irregularly shaped lumpectomy cavity walls to the balloon surface in order to deliver precise radiation dosing through multiple radiation source lumens." **Ref. No. 5**.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens, into which the radiation source is inserted, which lumens collectively form the inner spatial volume. **Ref. No. 3.**<br><br>"The Applicator red-capped radiation source wire lumens are numbered '1', '2', '3', '4' and '5' and positioned as shown in Figure 3.  Lumen number '1' corresponds to the offset lumen closest and parallel to the longitudinal radiopaque line (M) along the outside of the catheter.  Lumen number '5' corresponds to the central lumen.  Remove the red caps and use commercially available connectors to attach the source lumens to the afterloader." **Ref. No. 2** at 232.<br><br>See generally **Ref. No. 4** (describing insertion of the radioactive seeds into the treatment lumens).<br><br>See generally **Ref. No. 4** (showing animated depiction of the insertion of radioactive seeds into a treatment lumen). |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 24** at 28.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| *2. The apparatus of claim 1, wherein the inner and outer spatial volumes are configured to provide a minimum prescribed absorbed dose for delivering therapeutic effects to a target tissue, the target tissue being defined between the outer spatial volume expandable surface and a minimum distance outward from the outer spatial volume expandable surface, the apparatus providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface.* | CONTENTION:<br><br>The Contura™ Multi-Lumen Balloon Catheter is a balloon-based device which is inserted into a cavity remaining after the excision of a breast tumor. Once the balloon is in the cavity, the balloon is inflated with a contrast media or saline (injected through the inflation port) to conform the cavity to the shape of the balloon. Parameters of the balloon size and location are adjusted to conform to the surgical margin of the tissue to the shape of the outer volume of the balloon. Insertion of radiation source wires into select treatment lumens for prescribed lengths of time controls the dose of radiation targeting the tissue to be treated, thereby preventing damage to healthy tissue proximate to the surface of the balloon. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX- |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| | SenoRx also induces and contributes to direct infringement by others of claim 2 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| | SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use. |
| | <u>SUPPORT:</u> |
| | "It's a balloon-based device. The balloon is implanted into the breast and it replaces the tissue that was removed by the surgeon.  And the goal of the treatment is to treat the rind of the tissue surrounding the balloon.  This animation provided to us by the makers of the device shows how it works.  After the balloon is inserted into the breast, it is inflated and filled with a saline solution.  Then radioactive seeds are sent through five separate channels inside the balloon.  The dose is actually directed by where the seed sits within the balloon.  So, having one offset from the center of the balloon allows us to pull that dose by leaving the seed in the balloon for a certain period of time – longer than the other side has it for an example.  And that means the dosage of the |

| Asserted Claim[1,2] | Contura™Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | radiation is concentrated on the tumor and doesn't burn the patient's skin.  And if the skin was too close to channel 1, we might put the seed longer in channel 3 and 4 versus channel 1 to cool down that side of the dose." **Ref. 4.**<br><br>"In addition, the Contura MLB uses vacuum suction to remove excess seroma and air to enhance conformance of often irregularly shaped lumpectomy cavity walls to the balloon surface in order to deliver precise radiation dosing through multiple radiation source lumens." **Ref. No. 5**.<br><br>"8. Using the syringes provided, inflate the Applicator balloon with the contrast media solution to the desired fill volume.<br><br>       Desired balloon diameter  Approximate balloon fill volume<br>       4 cm                   33 ml<br>       5 cm                   58 ml<br><br> **Ref. No. 2** at 2232.<br><br>"10. Use ultrasound to confirm appropriate placement, volume and cavity conformance. Fluid and air surrounding the Applicator balloon may be aspirated with a 30 ml Syringe attached to the white Vacuum Port (N).  The volume of the balloon may be adjusted through the blue Inflation Port (M).  Replace Luer Caps when finished." **Ref. No. 2** at 2232.<br><br>"RADIATION DELIVERY - Refer to Figure 3<br><br>1.  CT imaging should he used in conjunction with commercially available treatment planning software to determine the appropriate source lumens, source dwell positions and dwell times for optimized radiation delivery of a prescribed dose to the targeted treatment volume.<br><br>2. Note the orientation of the Contura™ MLB Applicator with respect to the radiopaque line on the catheter shaft.  Verify correct Applicator orientation, balloon position, balloon volume, skin spacing and conformance using imaging prior to delivery of each fraction of radiation.  Adjust if necessary.<br><br>3. The Applicator red-capped, radiation source wire lumens are numbered' 1', '2', '3', '4' and '5' and positioned as shown in Figure 3. Lumen number 'I' corresponds to the |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | offset lumen closest and parallel to the longitudinal radiopaque line (M) along the outside of the catheter. Lumen number '5' corresponds to the central lumen. Remove the red caps and use commercially available connectors to attach the source lumens to the afterloader. After each treatment replace the red caps." **Ref. No. 2** at 2232.<br><br>"Multiple offset lumens provide dose shaping opportunities to minimize skin and rib dose." **Ref. No. 3**.<br><br>"Vacuum ports enable the removal of fluid & air and facilitate tissue conformance to the balloon for more uniform dosing." **Ref. No. 3**.<br><br>See generally **Ref. No. 4** showing animated depiction of the insertion and use of the Contura™ device).<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7***; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| *3. The apparatus of claim 2, wherein a predetermined spacing is provided between said inner spatial volume and the expandable surface element.* | <u>CONTENTION:</u><br><br>The Contura™ balloon is an "expandable surface element", and is affixed proximate to the vacuum port at the distal end of the applicator catheter.  The surface of the expandable balloon defines the outer spatial volume of the balloon applicator.  The |

| Asserted Claim[1,2] | Contura™Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | Contura™ balloon surrounds and contains the inner spatial volume(s) (discussed above). The spacing between the inner spatial volume and the wall of the Contura™ balloon is constant. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 3 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br><u>S</u>upport: |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.. |
| **4. The apparatus of claim 3, wherein the expandable surface element is adapted to contact tissue surrounding a resected cavity and adapted to conform the tissue to the desired shape of the expandable surface element.[4]** | CONTENTION:<br><br>Following implantation, the Contura™ balloon is inflated to contact tissue surrounding a resected cavity and to conform the tissue along the resection bed to the three-dimensional shape of the balloon. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX- |

---

[4] Claim 4 of the '204 patent contains all of the limitations of claim 36 of the '204 patent (presented in the interests of clarity and economy within Plaintiffs' Motion For Preliminary Injunction as an exemplary claim infringed by SenoRx), plus the additional limitation of the expandable surface element …adapted to contact tissue surrounding a resected cavity and conform the tissue to the desired shape of the expandable surface element.

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.

SenoRx also induces and contributes to direct infringement by others of claim 4 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8; Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 22; Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.

SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use..

<u>**SUPPORT:**</u>

"A series of drain holes at the tip of the catheter and at the proximal balloon hub allow for suction to be used to help the lumpectomy cavity conform to the balloon."  **Ref. No. 20** at SRX-HOL00004120.

"The Applicator is not intended for use in cavities that are too small, too large and/or of shapes unable to conform to an approximately spherical, 4 to 5 cm diameter SenoRx balloon."  **Ref. No. 2** at SRX-HOL00002232.

"The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 33 or 58 ml, respectively.  A series of drain holes at the tip of the catheter and at the proximal balloon hub allow for suction to be used to help the lumpectomy cavity conform to the balloon."  **Ref. No. 19** at SRX- |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | HOL00005564.<br><br>"The radiation balloon uses vacuum to remove excess air and fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens."  **Ref. No.17** at SRX-HOL00006639.<br><br>"Use ultrasound to confirm good tissue to balloon conformance and document skin spacing."  **Ref. No. 17** at SRX-HOL00006650.<br><br>"Contour anatomy and target."  **Ref. No. 17** at SRX-HOL00006654.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| **17. The apparatus of claim 1, wherein the radiation source is a plurality of solid radiation sources arranged to provide an isodose profile having a shape substantially similar to the shape of the outer spatial volume.** | <u>CONTENTION:</u><br><br>The multiple treatment lumens of the Contura allow multiple solid radiation sources to be arrayed simultaneously within two or more separate treatment lumens to provide an isodose profile having a shape substantially similar to the shape of the balloon within the targeted tissue.  Alternatively, the multiple treatment lumens of the Contura allow one or more solid radiation sources to be arrayed at different points in time within one or more separate treatment lumens to provide an isodose profile having a shape |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | substantially similar to the shape of the balloon within the targeted tissue. Appropriate pre-treatment dosimetry planning (with multiple dwell locations, multiple dwell times and/or use of multiple lumens) allows the isodose profile to be contoured to be substantially similar to the shape to the outer spatial volume defined by circumference of the expandable balloon. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7***;* **Ref. No. 8***;* **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17***;* **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27***;* **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30***;* **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35***;* **Ref. No. 36***;* **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38***;* **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 17 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7***;* **Ref. No. 8***;* **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17***;* **Ref. No. 22***;* **Ref. No. 26***;* **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55. The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use. |

| Asserted Claim[1,2] | Contura™Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | <u>SUPPORT:</u><br><br>**Ref. No. 9** at SRX-HOL00006494; **Ref. No. 17** at 6655-6656; **Ref. No. 22** at 10, 16.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |

# Appendix C

## APPENDIX C
## INFRINGED CLAIMS OF U.S. Patent No. 6,482,142

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| **1.** An interstitial brachytherapy apparatus for treating target tissue surrounding a surgical extraction comprising: | <u>CONTENTION:</u><br><br>The SenoRad Multi-Lumen Balloon Source Applicator ("Contura™") is an interstitial brachytherapy apparatus designed to deliver localized radiation to the margins of the cavity remaining after surgical resection of breast cancer.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX- |

---

[1] The "Support" cited herein is exemplary, and although sufficient to support a claim of infringement, is not the complete factual record on which Hologic intends to rely to prove infringement at trial. To the extent that further discovery shows any element of an asserted claim is not present literally, Hologic will rely on the identified evidence to show that the element is present under the doctrine of equivalents.

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |

SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.

<u>SUPPORT:</u>

"The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 1** at Device description.

"The Contura™ MLB Applicator is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 2 at 2232.**

"SenoRx, Inc. (NASDAQ:SENO) today announced that it has launched Contura™, its Multi-Lumen Balloon (MLB) Catheter for delivering brachytherapy to the surgical margins following lumpectomy for breast cancer." **Ref. No. 5**.

*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.

*See also* **Ref. No. 7***;* **Ref. No. 8***;* **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref.**

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | No. 38; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| an expandable outer surface defining a three-dimensional apparatus volume configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated; | <u>CONTENTION:</u><br><br>The outer surface of the inflatable spherical Contura™ multi-lumen balloon (an "expandable surface element") defines the three-dimensional apparatus volume that fills the interstitial void of the resection cavity.  The expanded balloon conforms the cavity to the balloon shape and thereby defines the inner boundary of target tissue along the cavity wall that is being treated.  This claim element is thus <u>literally</u> infringed.<br><br><u>SUPPORT:</u><br><br>"The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen.  The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively."  **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (figure 1)."  **Ref. No. 2 at 2232.**<br><br>"The applicator is not intended for use in cavities that are too small, too large and/or of shapes unable to conform to an approximately spherical, 4 to 5 cm diameter SenoRx balloon."  **Ref. No. 2 at 2232.**<br><br>"8. Using the syringes provided, inflate the Applicator balloon with the contrast media solution to the desired fill volume.<br><br>Desired balloon diameter   Approximate balloon fill volume<br>4 cm                                  33 ml<br>5 cm                                  58 ml<br> **Ref. No. 2** at 2232. |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
|  | An illustration of the Contura™ applicator shows the three-dimensional apparatus volume defined by the expandable polyurethane balloon to be inflated in the resection cavity. **Ref. No. 3**.<br><br>"It's a balloon-based device. The balloon is implanted into the breast and it replaces the tissue that was removed by the surgeon.  And the goal of the treatment is to treat the rind of the tissue surrounding the balloon.  This animation provided to us by the makers of the device shows how it works.  After the balloon is inserted into the breast, it is inflated and filled with a saline solution." **Ref. 4**.<br><br>See generally **Ref. No. 4** (showing expansion of balloon with subsequent increase in the three-dimensional apparatus volume).<br><br>"SenoRx has developed Contura™, a multi-lumen radiation balloon applicator for accelerated partial breast irradiation. The radiation balloon uses vacuum to remove excess fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens."  **Ref. No. 6**<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| a radiation source disposed completely within the expandable outer surface and located so as to be spaced apart from the apparatus volume, | <u>CONTENTION</u>:<br><br>Each radiation source ("radiation source wire") is inserted through a radiation source lumen in the Contura into its respective central or curved treatment lumen.  The five treatment lumens are located within the expandable outer surface of the balloon, and do not contact the expandable outer surface of the device, which defines the apparatus volume.   This claim element is thus <u>literally</u> infringed.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX- |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| | SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.  The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use. |
| | <u>SUPPORT:</u> |
| | "The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen.  The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively."  **Ref. No. 1** at Device description. |
| | "The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (figure 1).  Lumens are provided for attachment to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 2** at page 2232. |
| | "It's a balloon-based device. The balloon is implanted into the breast and it replaces the tissue that was removed by the surgeon.  And the goal of the treatment is to treat the rind of the tissue surrounding the balloon.  This animation provided to us by the makers of the device shows how it works.  After the balloon is inserted into the breast, it is inflated and filled with a saline solution.  Then radioactive seeds are sent through five separate channels inside the balloon.  The dose is actually directed by where the |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
| --- | --- |
| | seed sits within the balloon.  So, having one offset from the center of the balloon allows us to pull that dose by leaving the seed in the balloon for a certain period of time – longer than the other side has it for an example.  And that means the dosage of the radiation is concentrated on the tumor and doesn't burn the patient's skin.  And if the skin was too close to channel 1, we might put the seed longer in channel 3 and 4 versus channel 1 to cool down that side of the dose." **Ref. 4**.<br><br>"In addition, the Contura MLB uses vacuum suction to remove excess seroma and air to enhance conformance of often irregularly shaped lumpectomy cavity walls to the balloon surface in order to deliver precise radiation dosing through multiple radiation source lumens." **Ref. No. 5**.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens (into which the radiation sources are inserted) located within the center of the expandable outer surface of the balloon.  Ex. C. **Ref. No. 3**.<br><br>"The Applicator red-capped radiation source wire lumens are numbered '1', '2', '3', '4' and '5' and positioned as shown in Figure 3.  Lumen number '1' corresponds to the offset lumen closest and parallel to the longitudinal radiopaque line (M) along the outside of the catheter.  Lumen number '5' corresponds to the central lumen.  Remove the red caps and use commercially available connectors to attach the source lumens to the afterloader." **Ref. No. 2** at 2232.<br><br>See generally **Ref. No. 4** (showing animated depiction of, and describing insertion of the radioactive seeds into the treatment lumens).<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX- |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
|  | HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| the radiation source further being asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume. | <u>CONTENTION:</u><br><br>Each radiation source ("radiation source wire") is inserted through a radiation source lumen into its respective central or curved treatment lumen.   All of the treatment lumens are spaced apart from the apparatus volume (e.g., not touching the interior surface of the balloon), and are arranged asymmetrically with respect to the longitudinal axis of the catheter by the treating physician so as to irradiate the desired target tissue.  The isodose surfaces or curves that are generated by the accused device will have a predetermined asymmetry with respect to the balloon.  One way in which this asymmetric dosing is achieved is by varying the duration of time radioactive seeds reside within select treatment lumens.  Commercially available treatment planning software is used by the physician to determine the appropriate parameters of the dosing for optimized radiation delivery of a prescribed dose to the targeted treatment volume.  The optimized radiation delivery is reflected in asymmetric isodose curves.  This claim element is thus <u>literally</u> infringed.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22; Ref. No. 26;** **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use.  **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
| --- | --- |
| | HOLOGIC0048754-55.  The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>**SUPPORT:**<br><br>"The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen.  The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively."  **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (figure 1).  Lumens are provided for attachment to commercially available HDR (High Dose Rate) remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen."  **Ref. No. 2** at page 2232.<br><br>"RADIATION DELIVERY - Refer to Figure 3<br><br>1.  CT imaging should he used in conjunction with commercially available treatment planning software to determine the appropriate source lumens, source dwell positions and dwell times for optimized radiation delivery of a prescribed dose to the targeted treatment volume."  **Ref. No. 2** at 2232.<br><br>"In addition, the Contura MLB uses vacuum suction to remove excess seroma and air to enhance conformance of often irregularly shaped lumpectomy cavity walls to the balloon surface in order to deliver precise radiation dosing through multiple radiation source lumens."  **Ref. No. 5**.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens, the outer spatial volume as defined by the expandable polyurethane balloon, and the inner spatial volume. **Ref. No. 3**. |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
|  | "The Applicator red-capped radiation source wire lumens are numbered '1', '2', '3', '4' and '5' and positioned as shown in Figure 3.  Lumen number '1' corresponds to the offset lumen closest and parallel to the longitudinal radiopaque line (M) along the outside of the catheter.  Lumen number '5' corresponds to the central lumen.  Remove the red caps and use commercially available connectors to attach the source lumens to the afterloader."  **Ref. No. 2** at 2232.<br><br>"It's a balloon-based device. The balloon is implanted into the breast and it replaces the tissue that was removed by the surgeon.  And the goal of the treatment is to treat the rind of the tissue surrounding the balloon.  This animation provided to us by the makers of the device shows how it works.  After the balloon is inserted into the breast, it is inflated and filled with a saline solution.  Then radioactive seeds are sent through five separate channels inside the balloon.  The dose is actually directed by where the seed sits within the balloon.  So, having one offset from the center of the balloon allows us to pull that dose by leaving the seed in the balloon for a certain period of time – longer than the other side has it for an example.  And that means the dosage of the radiation is concentrated on the tumor and doesn't burn the patient's skin.  And if the skin was too close to channel 1, we might put the seed longer in channel 3 and 4 versus channel 1 to cool down that side of the dose."  **Ref. 4**.<br><br>See generally **Ref. No. 4** (describing insertion of the radioactive seeds into the treatment lumens, showing animated depiction of the asymmetric treatment achieved by insertion of radioactive seeds into a select treatment lumen, and showing animated depiction of asymmetric isodose curves).<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX- |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| **6. A surgical apparatus for providing radiation treatment to target tissue comprising:** | <u>CONTENTION:</u><br><br>The SenoRad Multi-Lumen Balloon Source Applicator ("Contura™") is an interstitial brachytherapy apparatus designed to deliver localized radiation to the margins of the cavity remaining after surgical resection of breast cancer.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 6 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55. The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>**SUPPORT:**<br><br>"The SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer." **Ref. No. 2 at 2232.**<br><br>"SenoRx, Inc. (NASDAQ:SENO) today announced that it has launched Contura™, its Multi-Lumen Balloon (MLB) Catheter for delivering brachytherapy to the surgical margins following lumpectomy for breast cancer." **Ref. No. 5**.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX- |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | HOL00002016-2019, 2030. |
| **an expandable outer surface defining an apparatus volume;** | <u>CONTENTION:</u><br><br>The outer surface of the inflatable spherical Contura™ multi-lumen balloon is an expandable surface element, and defines the three-dimensional apparatus volume that fills the resection cavity.  This claim element is thus <u>literally</u> infringed.<br><br><u>SUPPORT:</u><br><br>"The SenoRad applicator consists of a multi-lumen catheter connected to an inflatable spherical balloon that can be attached to commercially available High Dose Rate remote afterloader equipment for passage of the radiation source delivery wire.  Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen.  The balloon is inflated to a 4 or 5 cm spherical shape by a controlled volume injection of physiological saline to approximately 32 or 55 ml, respectively."  **Ref. No. 1** at Device description.<br><br>"The Contura™ MLB Applicator consists of a multi-lumen catheter attached to an inflatable spherical balloon (figure 1)."  **Ref. No. 2 at 2232.**<br><br>"The applicator is not intended for use in cavities that are too small, too large and/or of shapes unable to conform to an approximately spherical, 4 to 5 cm diameter SenoRx balloon."  **Ref. No. 2 at 2232.**<br><br>"8. Using the syringes provided, inflate the Applicator balloon with the contrast media solution to the desired fill volume.<br><br>        Desired balloon diameter  Approximate balloon fill volume<br>        4 cm                  33 ml<br>        5 cm                  58 ml<br><br>**Ref. No. 2** at 2232.<br><br>An illustration of the Contura™ applicator shows the three-dimensional apparatus volume defined by the expandable polyurethane balloon to be inflated in the resection cavity. **Ref. No. 3**. |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | "It's a balloon-based device. The balloon is implanted into the breast and it replaces the tissue that was removed by the surgeon.  And the goal of the treatment is to treat the rind of the tissue surrounding the balloon.  This animation provided to us by the makers of the device shows how it works.  After the balloon is inserted into the breast, it is inflated and filled with a saline solution." **Ref. 4**.<br><br>See generally **Ref. No. 4** (showing expansion of balloon with subsequent increase in the three-dimensional apparatus volume).<br><br>"SenoRx has developed Contura™, a multi-lumen radiation balloon applicator for accelerated partial breast irradiation. The radiation balloon uses vacuum to remove excess fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens." **Ref. No. 6**<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| **a radiation source replaceably disposable within the expandable outer surface, the radiation source comprising a plurality of solid radiation sources arranged to provide predetermined asymmetric isodose curves within the target tissue, the plurality of radiation sources being provided on at least two elongate members extending into the apparatus volume, at least one of the elongate members being shaped to provide asymmetric placement of a radiation source with respect to a longitudinal axis through the apparatus volume.** | <u>CONTENTION</u>:<br><br>The radiation source wires are inserted into the treatment lumens within the Contura balloon during treatment and removed after the desired fractional dose has been delivered, thereby satisfying the requirement of a radiation source that is "replaceably disposable within the expandable outer surface."  The multiple treatment lumens of the Contura allow multiple solid radiation sources (e.g., single radionuclide sources on multiple separate source wires) to be arrayed simultaneously within two or more separate treatment lumens so as to irradiate a select area of tissue with a dose that has predetermined asymmetric isodose curves.  Alternatively, the multiple treatment lumens of the Contura allow one or more solid radiation sources to be arrayed at different points in time within one or more separate treatment lumens to provide an isodose profile having a shape substantially similar to the shape of the balloon within the targeted tissue.  The offset treatment lumens are curved to provide asymmetric placement of the radiation source with respect to the central treatment lumen which traces the longitudinal axis through the treatment volume.  This claim element is thus <u>literally</u> infringed.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.

SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**S**UPPORT**:**

"The radiation balloon uses vacuum to remove excess air and fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens."  **Ref. No. 17** at SRX-HOL00006639.

"Each lumen can accommodate 8 dwell positions." **Ref. No. 17** at SRX-HOL00006642.

"8 dwell positions are available within each lumen.  5 lumens x 8 dwell positions=40 possible dwell positions for each patient!"  **Ref. No. 16** at SRX-HOL00006600

*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.

*See also* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
|  | SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| **8. The apparatus of claim 1, wherein the expandable outer surface is sufficiently rigid to deform the target tissue into the shape of the expandable outer surface, causing the predetermined asymmetric isodose curves to penetrate into the target tissue to a prescribed depth.** | CONTENTION:<br><br>The SenoRad Multi-Lumen Balloon Source Applicator ("Contura™") is an interstitial brachytherapy apparatus designed to deliver localized radiation to the margins of the cavity remaining after surgical resection of breast cancer. The Contura™ is inserted into a cavity remaining after the excision of a breast tumor. Once the balloon is in the cavity, the balloon is inflated with a contrast media or saline (injected through the inflation port). The Contura balloon is sufficiently rigid to conform the cavity to the shape of the balloon. Parameters of the balloon size and location are adjusted to conform to the surgical margin of the tissue to the shape of the outer volume of the balloon. Once the resection cavity has been conformed to the shape of the expandable outer surface, insertion of radiation source wires into select treatment lumens for prescribed lengths of time controls the dose of radiation targeting the tissue, so as to irradiate a select area of tissue with a dose that has predetermined asymmetric isodose curves., thereby preventing damage to healthy tissue proximate to the surface of the balloon. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7***;* **Ref. No. 8; Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No.** |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
|---|---|
| | **42** at SRX-HOL00002016-2019, 2030.. |
| | SenoRx also induces and contributes to direct infringement by others of claim 8 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22; Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| | SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use. |
| | <u>S<small>UPPORT</small>:</u> |
| | *See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| | *See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429. |
| | *See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at |

| Asserted Claim | Contura™ Multi-Lumen Balloon Source Applicator[1] |
| --- | --- |
| | SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |

**Appendix D**

**APPENDIX D**
**Materials Relied Upon and Cited Within the Infringement Charts**

| Ref. No. | Document Description |
|---|---|
| 1 | SenoRx's 510(k) Summary for SenoRad Multi-Lumen Balloon Source Applicator for Brachytherapy [SRX-HOL0000 6605-6606] |
| 2 | Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy- Instructions for Use [SRX-HOL00002232-2233] |
| 3 | Contura brochure, posted at *http://www.senorx.com/images/SNRX_7000_conturads_7.jpg* [SRX-HOL00003402] |
| 4 | Contura™ Balloon Applicator Insertion Procedure and Radiation Procedure Animation, posted at *http://www.myfoxphoenix.com/myfox/pages/Home/Detail;jsessionid=18E5571CEC66E18169DF1494828ED0A5?contentId=5126377&version=1&locale=EN-US&layoutCode=VSTY&pageId=1.1.1&sflg=1* |
| 5 | SenoRx press release, January 17, 2008, posted at *http://www.senorx.com/siteadmin/files/SenoRxLaunchesContura.pdf* |
| 6 | SenoRx webpage discussing Contura™, posted at *http://www.senorx.com/teatment.asp* [HOLOGIC0048885-48887] |
| 7 | Gearhart Email re conference call with Contura Targets.xls attachment [SRX-HOL00006882-6898] |
| 8 | Sales spreadsheet [SRX-HOL00003362-3379] |
| 9 | Contura Multi-Lumen Balloon: Product Overview and Dosimetry [SRX-HOL00006487-6497] |
| 10 | Canaccord Adams Flash Update 19 February 2008 [SRX-HOL00002354-2358] |
| 11 | Canaccord Adams Flash Update 20 February 2008 [SRX-HOL00002360-2370] |
| 12 | Press Release: "SenoRx Reports Revenue Growth of 43.2 Percent in Q4 2007 Compared with Q4 2006" (Ex-99.1 to SenoRx 8-K, filed February 19, 2008), posted at *http://www.sec.gov/Archives/edgar/data/1097136/000119312508033236/dex991.htm* |
| 13 | SenoRx 10-K for fiscal year ending December 31, 2007, posted at *http://www.sec.gov/Archives/edgar/data/1097136/000119312508062802/d10k.htm* [HOLOGIC0048793-48884] |
| 14 | CitiGroup Global Markets February 19, 2008 Company Focus: SenoRx, Inc. [SRX-HOL00002371-2379] |
| 15 | 2008 Contura Market Plan, dated December 20th, 2007 [SRX-HOL00007170-7187] |
| 16 | SenoRx document "How to set up an account for Contura [SRX-HOL00006591-6611] |
| 17 | SenoRx sales training manual [SRX-HOL00006616-6686] |

| 18 | SenoRx sales invoices, returned goods authorizations, shipping requests, sales orders, price list, ordering information, and related materials [SRX-HOL00000523-1503] |
| 19 | Contura MLB Source Applicator For Brachytherapy-Special 510(K) [SRX-HOL00005564-5565] |
| 20 | Risk Analysis Report: Contura MLB Brachytherapy Applicator [SRX-HOL00004119-4128] |
| 21 | Technical Drawings- [SRX-HOL00004861-4863, 4877-4878, 4933-4934] |
| 22 | Exhibit G to Plaintiffs' Amended Complaint [HOLOGIC0048776-48792] |
| 23 | MammoSite Instructions For Use [SRX-HOL00005396-5429] |
| 24 | April 27, 2007 Claim Construction Order for *Xoft* litigation (Case NO. C-05-05312 RMW) |
| 25 | SenoRx Fourth Quarter/FY 2007 Conference call [SRX-HOL00003380-3397] |
| 26 | Multi-Site Prospective, Non-Randomized Study Utilizing The Contura™ Multi-Lumen Balloon (MLB) Breast Brachytherapy Applicator To Deliver Accelerated Partial Breast Irradiation: Analysis of Dosimetric Success, Local Tumor Control, Cosmetic Outcome, Acute and Chronic Toxicity, and Clinical Scenarios For Optimal Use [SRX-HOL00003312-3361] |
| 27 | Design History File Checklist [SRX-HOL00004092-4093] |
| 28 | Dosimetric Comparative Analysis of MammoSite and SenoRx catheters [SRX-HOL00004140-4195] |
| 29 | Comparison between MammoSite and SenoRx when using the offset Catheters [SRX-HOL00004197-4215] |
| 30 | Radiation Balloon Dosimetry Measurement [SRX-HOL00004237-4455] |
| 31 | U.S. Patent No. 6,923,754 (Lubbock) [HOLOGIC0048742-48753] |
| 32 | U.S. Patent No. 6,955,641 (Lubbock)  [HOLOGIC0048754-48775] |
| 33 | Tests for Compliance of the SenoRx balloon catheter device with the Varian Varisource and GammaMed afterloaders [SRX-HOL4457-4460] |
| 34 | Contura Multi-Lumen Balloon: Expanding your Treatment Possibilities [SRX-HOL00006733-6786] |
| 35 | SenoRx Radiation Balloon Product Specification [SRX-HOL00004601-4603] |
| 36 | Communication Dorin Todor to Paul Lubbock [SRX-HOL00004231-4235] |
| 37 | Contura Multi-Lumen Balloon-Expanding Your Treatment Possibilities [SRX-HOL00004776-4778] |
| 38 | Contura 4-5 Cm Inflation Volume vs. Balloon Diameter {XRS-HOL00003738-3746] |
| 39 | SenoRx Inc. Board of Directors' Meeting June 14, 2007 [SRX-HOL00001504-1664] |

| 40 | SenoRx Inc. Board of Directors' Meeting September 26, 2007 [SRX-HOL00001665-1774] |
| 41 | SenoRx Inc. Board of Directors' Meeting December 2, 2007 [SRX-HOL00001775-1954] |
| 42 | SenoRx Inc. Board of Directors' Meeting February 27, 2008 [SRX-HOL00001955-2048] |

# Exhibit 5

1  Henry C. Su (SBN 211202; suh@howrey.com)
   Katharine L. Altemus (SBN 227080; altemusk@howrey.com)
2  HOWREY LLP
   1950 University Avenue, 4th Floor
3  East Palo Alto, California  94303
   Telephone:  (650) 798-3500
4  Facsimile:  (650) 798-3600

5  Robert Ruyak
   Matthew Wolf (Admitted *Pro Hac Vice*)
6  Marc Cohn (Admitted *Pro Hac Vice*)
   HOWREY LLP
7  1299 Pennsylvania Avenue, NW
   Washington, DC 20004
8  Telephone:  (202) 783-0800
   Facsimile:  (202) 383-6610

9
   Attorneys for Plaintiffs
10 HOLOGIC, INC., CYTYC CORPORATION and HOLOGIC L.P.

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14 HOLOGIC, INC., CYTYC CORPORATION,        Case No. C08 00133 RMW (RS)
   and HOLOGIC L.P.,
15                                          **PLAINTIFFS' PRELIMINARY CLAIM
                 Plaintiffs,                CONSTRUCTION, AND IDENTIFICATION
16                                          OF STRUCTURE CORRESPONDING TO §
        vs.                                 112(6) ELEMENTS FOR U.S. PATENT NOS.
17                                          5,913,813, 6,413,204, AND 6,482,142, AND
   SENORX, INC.,                            PRELIMINARY IDENTIFICATION OF
18                                          EVIDENCE PURSUANT TO PATENT
                 Defendant.                 LOCAL RULE 4-2**
19

20
   AND RELATED COUNTERCLAIMS.
21

22

23

24

25

26

27

28
   Plaintiffs' Prelim. Claim Construction
   Case No.  C08 00133 RMW (RS)

1    Pursuant to the parties' Proposed Stipulated Scheduling Order and Patent Local Rule 4-2(a) and

2 (b), Plaintiffs' Hologic, Inc, Cytyc Corporation, and Hologic L.P. (collectively, "Hologic") hereby

3 provide their Preliminary Claim Construction, Identification of Structure

4    Corresponding to § 112(6) Elements, and Preliminary Identification of Extrinsic and Intrinsic

5 Evidence for certain terms, phrases and clauses in the asserted claims of U.S. Patent Nos. 5,913,813

6 (the "'813 patent"), 6,413,204 (the "'204 patent"), and 6,482,142 (the "'142 patent"), attached hereto

7 at Exhibits A, B, and C, respectively.

8    The claim constructions proposed in Exhibits A, B, and C are preliminary in nature, and

9 Hologic reserves the right to modify, amend, alter, and/or supplement these proposed claim

10 constructions.  Hologic further reserves the right to modify and/or supplement the intrinsic and

11 extrinsic evidence cited in support of its proposed claim constructions including, without limitation,

12 the identification of supporting expert testimony.  Hologic will provide a final statement of whether it

13 intends to present expert testimony and a summary of such testimony in accordance with Patent Local

14 Rule 4-3 and the schedule set forth in the parties' agreed Scheduling Order.

15    Hologic believes that any additional claim terms, phrases and clauses that SenoRx, Inc.

16 ("SenoRx") identified as requiring construction should be accorded their plain and ordinary meaning

17 and do not require construction by the Court.  Hologic reserves the right, however, to offer its own

18 proposed constructions of any such additional claim terms, phrases and clauses upon review of and in

19 response to SenoRx's proposed claim constructions, and as part of the parties' meet and confer process

20 under Patent Local Rule 4-2(c).

21    Nothing in the proposed constructions in Exhibits A, B, and C is intended as an admission that

22 any claim term, phrase or clause has a particular meaning in the asserted claims of the '813, '204,

23 and/or '142 patents.  Hologic expressly reserves the right to amend its contentions with respect to the

24 \\

25

26

27

28

Plaintiffs' Prelim. Claim Construction        - 1 -
Case No.  C08 00133 RMW (RS)

1  meaning of any claim term or phrase as the parties meet and confer pursuant to Patent Local Rule 4-2(c)

2  or as discovery proceeds.

3  Dated:  May 12, 2008                          HOWREY LLP

4

5                                        By:  _Kai____ au_____

6                                             Katharine L. Altemus

7

8                                        HOWREY LLP
                                         Attorneys for Plaintiffs
9                                        Hologic, Inc., Cytyc Corporation,
                                          and Hologic L.P.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Prelim. Claim Construction                -2-
Case No.  C08 00133 RMW (RS)

**PROOF OF SERVICE**

I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 1950 University Avenue, 4th Floor, East Palo Alto, California 94303.

On May 12, 2008, I served on the interested parties in said action the within:

**PLAINTIFFS' PRELIMINARY CLAIM CONSTRUCTION, AND IDENTIFICATION OF STRUCTURE CORRESPONDING TO § 112(6) ELEMENTS FOR U.S. PATENT NOS. 5,913,813, 6,413,204, AND 6,482,142, AND PRELIMINARY IDENTIFICATION OF EVIDENCE PURSUANT TO PATENT LOCAL RULE 4-2**

by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at East Palo Alto, California.

F.T. Alexandra Mahaney; amahaney@wsgr.com
Natalie J. Morgan; nmorgan@wsgr.com
Wilson Sonsini Goodrich & Rosati
12235 El Camino Real, Suite 200
San Diego, California 92130

Bruce R. Genderson; bgenderson@wc.com
Aaron P. Maurer; amaurer@wc.com
Rachael Shanahan Rodman; rrodman@wc.com
Adam D. Harber; aharber@wc.com
Williams & Connolly LLP
725 – 12th Street, N.W.
Washington, D.C. 20005

[X]  (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[X]  (EMAIL/ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the submission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on May 12, 2008, at East Palo Alto, California.

_____
Sonya Schwab
(Type or print name)

_____
(Signature)

**Exhibit A**

**EXHIBIT A**
**U.S. Patent No. 5,913,813**

| '813 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "inner spatial volume" (claims 1, 2, 12) | *a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide* | Abstract<br><br>Col. 1:50 – col. 2:3<br><br>Col. 2:33-38, 44-63<br><br>Col. 3:9-16, 42-48<br><br>Col. 3:64 – col. 4:12<br><br>Col. 4:16-20, 21-31, 32-52<br><br>Figs. 1, 3-5<br><br>Notice of allowability (12-18-98) at 2<br><br>September 8, 1998 Amendment at 3-7<br><br>4-27-07 Claim Construction Order at 3-5, 28 (Case No. C-05-05312 RMW), and all evidence of record relating to the claim construction proceeding in that case<br><br>4-25-08 Order Denying Plaintiffs' Motion For Preliminary Injunction at 6-8 |

| '813 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "outer, closed, inflatable, chamber" (claim 1) | *outer, closed, inflatable chamber* | Abstract<br><br>Col. 1:26 - 46<br><br>Col. 2:37-41<br><br>Col. 4:21-31, 40-45<br><br>Figs. 1, 3-5<br><br>Notice of allowability (12-18-98) at 2<br><br>September 8, 1998 Amendment at 3-7<br><br>4-27-07 Claim Construction Order at 6, 28 (Case No. C-05-05312 RMW) ), and all evidence of record relating to the claim construction proceeding in that case |
| "predetermined constant spacing between said inner spatial volume and the radiation transparent wall" (claim 1) | *spacing predetermined by one skilled in the art between the wall or edge of the inner spatial volume and the radiation transparent wall of the outer, closed, inflatable chamber, when inflated, which is constant in all directions if the outer chamber is spherical, or constant along a radial plane if the outer chamber is not spherical* | Abstract<br><br>Col. 1:26 – 46<br><br>Col 3:10-13<br><br>Col 4:13-20<br><br>Col. 4:21-31<br><br>Notice of allowability (12-18-98) at 2<br><br>September 8, 1998 Amendment at 3-7<br><br>4-27-07 Claim Construction Order at 6-7, 28 (Case No. C-05-05312 RMW), and all evidence of record relating to the claim construction proceeding in that case |

| '813 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "means…for rendering uniform the radial absorbed dose profile of the emissions from the one of the inner spatial volume and outer chamber containing the radionuclides" (claim 1) | *function: making the absorbed dose of radiation more uniform to prevent over-treatment of body tissue at or close to the outer wall of the instrument*<br><br>*structure: a radiation absorbing or attenuating material, e.g., air, x-ray contrast fluid, contrast media used in angiography, water, a gas, or barium sulfate or their equivalents* | "Uniform"—"Always the same, as in character or degree, unvarying" (The American Heritage College Dictionary (3rd Ed. 1997), "AHD"))<br><br>Abstract<br><br>Col. 1:26-46<br><br>Col. 1:50 – col. 2:3<br><br>Col. 2:44-63<br><br>Col. 3:14-38<br><br>Col. 3:49 – col. 4:12<br><br>Col. 4:21-31<br><br>Col. 4:56-61<br><br>Figs. 1, 3-5<br><br>Notice of allowability (12-18-98) at 2<br><br>September 8, 1998 Amendment at 3-7<br><br>4-27-07 Claim Construction Order at 8-10, 28 (Case No. C-05-05312 RMW) ), and all evidence of record relating to the claim construction proceeding in that case |
| "inner, closed chamber" (claim 2) | No construction necessary | |
| "plurality of radioactive solid particles" (claim 12) | No construction necessary | |
| "predetermined locations" (claim 12) | No construction necessary | |
| "plurality of radioactive solid particles placed at pre-determined locations" (claim 12) | No construction necessary | |

**Exhibit B**

**EXHIBIT B**
**U.S. Patent No. 6,413,204**

| ' 204 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "inner spatial volume" (claims 1, 2, 3) | *a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide sphere.* | Abstract<br><br>Col. 2:7-33<br><br>Col. 2:36-68<br><br>Col. 3:19-45<br><br>Col. 3:57-65<br><br>Col. 3:66 – col. 4:5<br><br>Col. 4:4-14, 44-67<br><br>Col. 5:1-12<br><br>Col. 5:13-41<br><br>Col. 8:7-12<br><br>FIGS. 1, 3-7<br><br>June 20, 2000 Office Action at 3-5<br><br>December 20, 2000 Amendment at 8-19<br><br>4-27-07 Claim Construction Order at 3-5, 28 (Case No. C-05-05312 RMW) ), and all evidence of record relating to the claim construction proceeding in that case<br><br>4-25-08 Order Denying Plaintiffs' Motion For Preliminary Injunction at 6-8 |

| '204 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "outer spatial volume" (claims 1, 2, 17) | *a region of space defined by an expandable surface element and surrounding an inner spatial volume* | Abstract<br><br>Col. 2:7-33<br><br>Col. 2:36-68<br><br>Col. 3:19-45<br><br>Col. 3: 61 – col. 4:8<br><br>Col. 2:61-67<br><br>Col. 4:4-10<br><br>Col. 5:13-65<br><br>Col. 8:7-12<br><br>FIGS. 1, 3-7<br><br>June 20, 2000 Office Action at 3-5<br><br>December 20, 2000 Amendment at 8-19<br><br>4-27-07 Claim Construction Order at 17 (Case No. C-05-05312 RMW) ), and all evidence of record relating to the claim construction proceeding in that case |
| "three-dimensional isodose profile that is substantially similar in shape to the expandable surface element" (claim 1) | No construction necessary | |

2

| ' 204 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "providing a controlled dose at the outer spatial volume expandable surface to reduce or prevent necrosis in healthy tissue proximate to the expandable surface" (claim 2) | *controlling the ratio of the dose at the expandable surface of the outer spatial volume to the prescribed dose at the depth of interest in the target tissue so that the dose at the expandable surface is not so high that it lethally damages cells in healthy tissue in contact with the expandable surface* | "Control" –"to hold in restraint, to check" (The American Heritage College Dictionary (3rd Ed. 1997), "AHD")) <br><br> Abstract <br><br> Col. 1:14 – col. 2:33 <br><br> Col. 2: 36-68 <br><br> Col. 2:46-51 <br><br> Col. 2: 63-67 <br><br> Col. 3: 1-16 <br><br> Col. 3:24-26 <br><br> Col. 3: 30-45 <br><br> Col. 5:13 – col. 7:5 <br><br> Col. 7:6-28 <br><br> Col. 8:7-12 <br><br> FIGS. 1, 3-7 <br><br> December 20, 2000 Amendment at 8-19 <br><br> 4-27-07 Claim Construction Order at 23, 29 (Case No. C-05-05312 RMW) ), and all evidence of record relating to the claim construction proceeding in that case |

| ' 204 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "predetermined spacing…between said inner spatial volume and the expandable surface element" (claim 3) | *the distance between the inner spatial volume and the expandable surface element is determined in advance* | Abstract<br><br>Col. 1:14 – col. 2:33<br><br>Col. 2:36-68<br><br>Col. 2:46-51<br><br>Col. 2:63-67<br><br>Col. 3:1-16<br><br>Col. 3:24-26<br><br>Col. 3:30-45<br><br>Col. 3:57 – col. 4:3<br><br>Col. 4:44-67<br><br>Col. 5:1-12<br><br>Col. 5:13 – col. 6:28<br><br>Col. 6:61 – col. 7:5<br><br>Col. 7:23-32<br><br>Col. 7:58-64<br><br>col. 8:7-12<br><br>Figs. 1, 3-7<br><br>December 20, 2000 Amendment at 8-19<br><br>4-27-07 Claim Construction Order at 24-25, 29 (Case No. C-05-05312 RMW) ), and all evidence of record relating to the claim construction proceeding in that case |
| "plurality of solid radiation sources" (claim 17) | No construction necessary | |

| ' 204 CLAIM TERM AT ISSUE | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| "isodose profile having a shape substantially similar to the shape of the outer spatial volume" (claim 17) | No construction necessary | |

**Exhibit C**

**EXHIBIT C**
**U.S. Patent No. 6,482,142**

| '142 CLAIM TERM AT ISSUE[1] | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| [three-dimensional] apparatus volume [configured to fill an interstitial void] (claims 1, 6) | A three-dimensional geometric solid composed of an expandable outer surface | Abstract |
| | | Col. 2:20-53 |
| | | Col. 2:60-64 |
| | | Col. 3:20-36 |
| | | Col. 3:55-62, 66-67 |
| | | Col. 4: 1-2 |
| | | Col. 4:27-42 |
| | | Col. 5:36-65 |
| | | Col. 6:11-29 |
| | | Col. 8:1-32 |
| | | Col. 8:52-59 |
| | | FIGS 1, 3, 4 |
| | | February 27, 2002 Amendment at 6-10 |
| | | 4-25-08 Order Denying Plaintiffs' Motion For Preliminary Injunction at 13-16 |

---

[1] Hologic believes that construction of the term(s) identified by SenoRx require(s) construction of the entire phrase in which the term appears.  Thus, the preliminary construction proposed by Hologic construes the phrase identified by SenoRx in the context of the additional terms highlighted within brackets.

| '142 CLAIM TERM AT ISSUE[1] | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| located so as to be spaced apart from the apparatus volume (claim 1) | *located so as to be not on or touching the apparatus volume* | Abstract |
| | | Col. 2:20-53 |
| | | Col. 3:20-25, 55-62, 66-67 |
| | | Col. 4: 1-2 |
| | | Col. 4: 27-30, 35-57 |
| | | Col. 5:36-65 |
| | | Col. 6:11-29 |
| | | Col. 7:1-15 |
| | | Col. 7: 49-55 |
| | | Col. 8:1-32 |
| | | Col. 8:52-59 |
| | | FIGS 1, 3, 4 |
| | | February 27, 2002 Amendment at 6-10 |
| | | 4-25-08 Order Denying Plaintiffs' Motion For Preliminary Injunction at 13-16 |

| '142 CLAIM TERM AT ISSUE[1] | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| asymmetrically located and arranged within the expandable surface (claim 1) | *Located and arranged so as not to be on the longitudinal axis of the expandable surface* | Abstract |
| | | Col. 2:20-53 |
| | | Col. 3:7-19 |
| | | Col. 3:55-62, 66-67 |
| | | Col. 4: 1-2 |
| | | Col. 5:12-37 |
| | | Col. 6:11-29 |
| | | Col. 6:24-67 |
| | | col. 7:1-15 |
| | | Col. 8:1-32 |
| | | Col. 8:52-59 |
| | | FIGS 1, 3, 4 |
| | | February 27, 2002 Amendment at 6-10 |

| '142 CLAIM TERM AT ISSUE[1] | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| predetermined asymmetric isodose curves (claims 1, 6, 8) | *Predetermined isodose curves that are not symmetric with respect to the longitudinal axis of the apparatus volume* | Abstract<br><br>Col. 2:20-53<br><br>Col. 2:60 – col. 3:1<br><br>Col. 3:7-19<br><br>Col. 5:12-37<br><br>Col. 6:11-29<br><br>Col. 6:24-67<br><br>Col. 7:28-48<br><br>Col. 7:62 – col. 8:3<br><br>Col. 8:1-32<br><br>Col. 8:52-59<br><br>February 27, 2002 Amendment at 6-10 |
| plurality of solid radiation sources (claim 6) | No construction necessary | |
| being provided on at least two elongate members extending into the apparatus volume (claim 6) | No construction necessary | |

| '142 CLAIM TERM AT ISSUE[1] | PRELIMINARY CONSTRUCTION and IDENTIFICATION OF CORRESPONDING STRUCTURE | PRELIMINARY IDENTIFICATION OF INTRINSIC AND EXTRINSIC EVIDENCE |
|---|---|---|
| *[At least one of the elongate members]* being shaped to provide asymmetric placement of the radiation source with respect to a longitudinal axis *[through the apparatus volume]* (claim 6) | *At least one elongate member is shaped so as to place the radiation source not on the longitudinal axis through the apparatus volume* | Abstract<br><br>Col. 2:20-53<br><br>Col. 3:7-19<br><br>Col. 3:55-62, 66-67<br><br>Col. 4: 1-2<br><br>Col. 5:11-35<br><br>Col. 6:11-29<br><br>Col. 6: 30-67<br><br>Col. 8:1-32<br><br>Col. 8:52-59<br><br>FIGS 1, 3, 4<br><br>February 27, 2002 Amendment at 6-10 |

1   F.T. Alexandra Mahaney, State Bar No. 125984
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
    12235 El Camino Real, Suite 200
3   San Diego, CA 92130
    Telephone: (858) 350-2300
4   Facsimile: (858) 350-2399
    Email: amahaney@wsgr.com
5
    Bruce R. Genderson (admitted *pro hac vice*)
6   Aaron P. Maurer (admitted *pro hac vice*)
    Rachel Shanahan Rodman (admitted *pro hac vice*)
7   Adam D. Harber (admitted *pro hac vice*)
    WILLIAMS & CONNOLLY LLP
8   725 Twelfth St. NW
    Washington, DC 20005
9   Telephone: (202) 434-5000
    Facsimile: (202) 434-5029
10
11  Attorneys for Defendant and Counterclaimant
    SENORX, INC.
12
13                  IN THE UNITED STATES DISTRICT COURT
14                  NORTHERN DISTRICT OF CALIFORNIA
15                          SAN JOSE DIVISION
16  HOLOGIC, INC., CYTYC CORPORATION and   )
    HOLOGIC L.P.,                          )
17                                         )   Case No. 08-CV-0133 RMW
            Plaintiffs,                    )
18                                         )   **DECLARATION OF WILLIAM F.**
        v.                                 )   **GEARHART IN SUPPORT OF**
19                                         )   **DEFENDANT SENORX, INC.'S**
    SENORX, INC.,                          )   **MOTION FOR PARTIAL**
20                                         )   **SUMMARY JUDGMENT OF NON-**
            Defendant.                     )   **INFRINGEMENT**
21                                         )
                                           )
22  _____)
    SENORX, INC.,                          )
23                                         )
            Counterclaimant,               )   Date: June 25, 2008
24                                         )   Time: 2:00 p.m.
        v.                                 )   Courtroom: 6, 4th Floor
25                                         )   Judge: Hon. Ronald M. Whyte
    HOLOGIC, INC., CYTYC CORPORATION and   )
26  HOLOGIC L.P.,                          )
                                           )
27  _____)
            Counterdefendants.            )
28

I, William F. Gearhart, declare that:

**BACKGROUND**

1.      The facts set forth below in this declaration are based on my personal knowledge, and if called as a witness, I could and would testify competently to those facts.

2.      Since December 1999, I have been employed by SenoRx, Inc. as the Vice President for Sales and Marketing.  In that role, I am responsible for the marketing and sales of SenoRx's entire product line.  I supervise approximately 65 employees, which includes a sales force working throughout the country to promote SenoRx's products.

3.      Prior to my position at SenoRx, I held management positions at a number of medical device companies, including Vice President, Sales and Marketing at Micro Therapeutics, a manufacturer of devices for the treatment of neuro and peripheral vascular diseases; Vice President of Sales and Marketing at Interventional Technologies, a manufacturer of devices for use in interventional cardiology; and Vice President of Sales and Marketing at Pfizer, a pharmaceutical company.

4.      I received my undergraduate degree from the University of Pennsylvania, where I earned a B.S. in Business.  I also received a M.B.A. from the University of Michigan and a J.D. from William Mitchell College of law.

**THE CONTURA**

5.      The Contura™ Multi-Lumen Balloon ("Contura") is SenoRx's flagship therapeutic device.  It is the company's first and only product for the treatment of breast cancer.

6.      The Contura is pictured in Exhibit 1 hereto.  The Contura is a balloon catheter device.  Referring to Exhibit 1, the balloon is labeled "A."  The balloon, which is spherical when inflated, is attached to the end of a catheter body, labeled "B."  There are a number of lumens that run through the catheter body from one end of the Contura (the proximal end, "C") through to the other end (the distal end, "D").  Five of these lumens are designed to have a radiation source inserted into them; one is positioned in the center of the catheter body, and the other four are offset from the center lumen, and spaced at 90 degree increments (so that one is located above, one below, and one to either side of the central lumen).  Another lumen connects to a

vacuum port at the far end of the device, assisting physicians in conforming the walls of the lumpectomy cavity to the balloon by removing air and liquids from the cavity. A final lumen connects to the polyurethane balloon, and allows the balloon to be inflated and deflated.

7.    To date, doctors have implanted over 500 Conturas in patients. Part of my responsibilities is to communicate with radiation physicists and radiation oncologists about their use of the Contura device. The SenoRx sales force reports to me, and I also receive information from our sales team concerning how the Contura is used in the market. Based on discussions with radiation oncologists, radiation physicists and our sales team, I am familiar with how the Contura generally is used to treat patients.

8.    In the vast majority of cases, the dosing profile for the Contura involves the use of multiple lumens, and I understand that there have been only a small number of instances in which only the central lumen was used. Also, in the vast majority of cases, multiple dwell positions are used in those lumens. After the initial testing of the device in 2007, I am not aware of a single instance in which only the central dwell position of the central lumen has been used.

9.    In addition, in the vast majority of cases, the shape of the isodose profile designed by the radiation physicist differs from the shape of the inflated balloon, which is spherical. This is because most physicians desire a radiation dose profile that minimizes radiation exposure to the skin, ribs or other sensitive areas.

10.    Depicted below is an exemplary treatment plan using the Contura that is part of SenoRx's marketing materials. It depicts the use of multiple dwell positions in multiple lumens. Each rectangular box represents a possible dwell position; the green boxes depict the positions where the radionuclide would dwell during this exemplary treatment plan, and the gray boxes are positions that are not used.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 20, 2008

_William F. Gearhart_

William F. Gearhart

# Exhibit 1



Picture of the Contura MLB™ (with labels)

CERTIFICATE OF SERVICE

U.S. District Court, Northern District of California,

*Hologic, Inc. et al. v. SenoRx, Inc.*

Case No. C-08-0133 RMW (RS)

I, Kirsten Blue, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

On May 21, 2008, I served a copy(ies) of the following document(s):

**DECLARATION OF WILLIAM F. GEARHART IN SUPPORT OF DEFENDANT SENORX, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT**

on the parties to this action by the following means:

| | |
|---|---|
| Henry C. Su (suh@howrey.com)<br>Katharine L. Altemus (altemusk@howrey.com)<br>HOWREY LLP<br>1950 University Avenue, 4th Floor<br>East Palo Alto, CA 94303<br>Telephone: (650) 798-3500<br>Facsimile: (650) 798-3600 | Attorneys for Plaintiffs<br>HOLOGIC, INC. CYTYC<br>CORPORATION and<br>HOLOGIC LP |
| Matthew Wolf (wolfm@howrey.com)<br>Marc Cohn (cohnm@howrey.com)<br>HOWREY LLP<br>1229 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Telephone: (202) 783-0800<br>Facsimile: (202) 383-6610 | Attorneys for Plaintiffs<br>HOLOGIC, INC. CYTYC<br>CORPORATION and<br>HOLOGIC LP |

☒ **(BY MAIL)** I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☒ **(BY ELECTRONIC MAIL)** I caused such document(s) to be sent via electronic mail (email) to the above listed names and email addresses.

☒ **(BY CM/ECF)** I caused such document(s) to be sent via electronic mail through the Case Management/Electronic Case File system with the U.S. District Court for the Northern District of California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct, and that this declaration was executed on May 21, 2008.

_____

Kirsten Blue

1  F.T. Alexandra Mahaney, State Bar No. 125984
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   12235 El Camino Real, Suite 200
3  San Diego, CA  92130
   Telephone:  (858) 350-2300
4  Facsimile:   (858) 350-2399
   Email:  amahaney@wsgr.com
5
   Bruce R. Genderson (*admitted pro hac vice*)
6  Aaron P. Maurer (*admitted pro hac vice*)
   Rachel Shanahan Rodman (*admitted pro hac vice*)
7  Adam D. Harber (*admitted pro hac vice*)
   WILLIAMS & CONNOLLY LLP
8  725 Twelfth St. NW
   Washington, DC 20005
9  Telephone:  (202) 434-5000
   Facsimile:  (202) 434-5029
10
11 Attorneys for Defendant and Counterclaimant
   SENORX, INC.
12
                 UNITED STATES DISTRICT COURT
13
              NORTHERN DISTRICT OF CALIFORNIA
14
                     SAN JOSE DIVISION
15

16 HOLOGIC, INC., CYTYC CORP., and      )   CASE NO.:  08-CV-0133 RMW
   HOLOGIC L.P.,                        )
17                                      )   **[PROPOSED] ORDER GRANTING**
               Plaintiffs,              )   **DEFENDANT SENORX, INC.'S**
18                                      )   **MOTION FOR PARTIAL**
                                        )   **SUMMARY JUDGMENT OF NON-**
19       v.                             )   **INFRINGEMENT ('813 PATENT,**
                                        )   **CLAIMS 11 & 12; '204 PATENT,**
20 SENORX, INC.,                        )   **CLAIMS 4 & 17; AND '142 PATENT**
                                        )   **CLAIM 6)**
21             Defendant.               )
                                        )
22                                      )
   ─────────────────────────────────── )
23 SENORX, INC.,                        )
                                        )
24             Counterclaimant,         )
                                        )
25       v.                             )
                                        )
26 HOLOGIC, INC., CYTYC CORP., and      )
   HOLOGIC L.P.,                        )
27                                      )
               Counterdefendants.       )
28 ─────────────────────────────────── )

1    The Court having considered Defendant SenoRx, Inc.'s Motion for Partial Summary

2   Judgment of Non-Infringement, the Memorandum in Support thereof, and the attached exhibits,

3   and any Opposition thereto, any reply, and for good cause shown;

4    IT IS HEREBY ORDERED that SenoRx's Motion for Partial Summary Judgment of

5   Non-Infringement is GRANTED; and

6    FURTHER ORDERED that Claims 11 and 12 of U.S. Patent No. 5,913,813, claims 4 and

7   17 of U.S. Patent No. 6,413,204, and claim 6 of U.S. Patent No. 6,482,142 are not infringed.

8

9    SO ORDERED.

10

11   Dated: _____, 2008         By: _____

12                                                  Hon. Ronald M. Whyte
                                                    United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,

2

*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. C-08-0133 RMW (RS)

3

I, Kirsten Blue, declare:

4

    I am and was at the time of the service mentioned in this declaration, employed in the
County of San Diego, California. I am over the age of 18 years and not a party to the within

5

action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

6

    On May 21, 2008, I served a copy(ies) of the following document(s):

7

**[PROPOSED] ORDER GRANTING DEFENDANT SENORX, INC.'S MOTION
FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT ('813**

8

**PATENT, CLAIMS 11 & 12; '204 PATENT, CLAIMS 4 & 17; AND '142 PATENT
CLAIM 6)**

9

on the parties to this action by the following means:

10

11

Henry C. Su (suh@howrey.com)          Attorneys for Plaintiffs
Katharine L. Altemus (altemusk@howrey.com)   HOLOGIC, INC. CYTYC
HOWREY LLP                            CORPORATION and

12

1950 University Avenue, 4th Floor     HOLOGIC LP
East Palo Alto, CA 94303

13

Telephone: (650) 798-3500
Facsimile: (650) 798-3600

14

15

Matthew Wolf (wolfm@howrey.com)       Attorneys for Plaintiffs
Marc Cohn (cohnm@howrey.com)          HOLOGIC, INC. CYTYC
HOWREY LLP                            CORPORATION and

16

1229 Pennsylvania Avenue, NW          HOLOGIC LP
Washington, DC 20004

17

Telephone: (202) 783-0800
Facsimile: (202) 383-6610

18

19

☒  (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the
ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real,

20

Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and
processing of correspondence for mailing with the United States Postal Service, said

21

practice being that, in the ordinary course of business, correspondence with postage fully
prepaid is deposited with the United States Postal Service the same day as it is placed for

22

collection.

23

☒  (BY ELECTRONIC MAIL) I caused such document(s) to be sent via electronic mail
(email) to the above listed names and email addresses.

24

☒  (BY CM/ECF) I caused such document(s) to be sent via electronic mail through the Case
Management/Electronic Case File system with the U.S. District Court for the Northern

25

District of California.

26

    I declare under penalty of perjury under the laws of the United States that the above is true

27

and correct, and that this declaration was executed on May 21, 2008.

28

Kirsten Blue

---

CERTIFICATE OF SERVICE                                      CASE NO. C-08-0133 RMW