1  Henry C. Su (SBN 211202; suh@howrey.com)
   Katharine L. Altemus (SBN 227080; altemusk@howrey.com)
2  HOWREY LLP
   1950 University Avenue, 4th Floor
3  East Palo Alto, California  94303
   Telephone:  (650) 798-3500
4  Facsimile:  (650) 798-3600

5  Robert Ruyak
   Matthew Wolf (Admitted *Pro Hac Vice*)
6  Marc Cohn (Admitted *Pro Hac Vice*)
   HOWREY LLP
7  1299 Pennsylvania Avenue, NW
   Washington, DC 20004
8  Telephone:  (202) 783-0800
   Facsimile:  (202) 383-6610

9
   Attorneys for Plaintiffs
10 HOLOGIC, INC., CYTYC CORPORATION and HOLOGIC L.P.

11                UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                      SAN JOSE DIVISION

14 HOLOGIC, INC., CYTYC CORPORATION,          Case No. C08 00133 RMW (RS)
   and HOLOGIC L.P.,
15                                            **PLAINTIFFS' OPPOSITION TO**
              Plaintiffs,                     **DEFENDANT SENORX, INC.'S MOTION**
16                                            **FOR PARTIAL SUMMARY JUDGMENT**
         vs.                                  **OF NON-INFRINGEMENT ('813 PATENT,**
17                                            **CLAIMS 11 & 12; '204 PATENT, CLAIMS 4**
   SENORX, INC.,                              **& 17; AND '142 PATENT, CLAIM 6 )**
18
              Defendant.                      Date:   June 25, 2008
19                                            Time:   2:00 p.m.
                                              Ctrm:   6, 4th Floor
20 AND RELATED COUNTERCLAIMS.                 Judge:  Hon. Ronald M. Whyte

21

22

23

24

25                        **PUBLIC VERSION**

26

27

28

1

**TABLE OF CONTENTS**

2

Page(s)

3

PRELIMINARY STATEMENT ................................................................................................. 1

4

ARGUMENT ........................................................................................................................... 4

5

I.    LEGAL STANDARD FOR SUMMARY JUDGMENT................................................. 4

6

II.   SENORX'S ACCUSED DEVICE MEETS THE "PREDETERMINED

7     CONSTANT SPACING" LIMITATION OF THE '813 PATENT
      (CLAIMS 11 & 12) ................................................................................................... 5

8
      A.   The Contura Directly Infringes the Asserted Claims of the '813
9          Patent ............................................................................................................. 6

10         1.    The Contura Meets the "Predetermined Constant Spacing"
                 Limitation Because It Can Emit Radiation from a Central
11               Dwell Point ........................................................................................ 6

12         2.    Not Only Is the Contura Capable of Performing
                 Brachytherapy From a Central Dwell Position – SenoRx
13               and Others Have Used It In That Way.................................................. 8

14         3.    In Addition to Using a Central Dwell Point During a Multi-
                 Dwell Point Procedure, Users Can and Have Used the
15               Contura To Deliver Radiation From a Single, Central
                 Position .............................................................................................. 9

16
           4.    Whether SenoRx's I-192 Seeds Are "Cylindrical" Rather
17               Than Spherical Is Irrelevant ............................................................. 11

18    B.   SenoRx Induces Others to Infringe the Asserted Claims of the '813
19         Patent ........................................................................................................... 13

      C.   SenoRx Is Liable for Contributory Infringement of the '813 Patent ........... 13

20
III.  SENORX'S ACCUSED PRODUCT MEETS THE "PREDETERMINED
21    SPACING" LIMITATION OF THE '204 PATENT (CLAIM 4) .......................... 14

22    A.   SenoRx Has Not Moved for Summary Judgment Under Hologic's
           Construction.................................................................................................. 15

23
      B.   SenoRx Meets the "Predetermined Spacing . . ." Limitation Even
24         Under Its Own Construction........................................................................ 15

25 IV.  THE CONTURA MEETS THE "PLURALITY OF RADIOACTIVE
      SOLID PARTICLES" ELEMENT OF CLAIM 12 OF THE '813
26    PATENT, AND THE "PLURALITY OF SOLID RADIATION
      SOURCES" ELEMENT OF CLAIM 17 OF THE '204 PATENT ........................ 16

27
      A.   SenoRx Literally Infringes Under Hologic's Claim Construction ............... 16

28

B.   Under SenoRx's Claim Construction, SenoRx Infringes Under the
Doctrine of Equivalents ................................................................................ 18

1.   Legal Standard for Doctrine of Equivalents .................................... 18

2.   SenoRx Meets the "Plurality of Radioactive Solid
Particles" and "Plurality of Solid Radiation Sources"
Elements Under the Doctrine of Equivalents.................................... 19

V.   IN ANY EVENT, SENORX'S MOTION MUST BE DENIED ............................................ 21

VI.   HOLOGIC REQUESTS THE RIGHT TO SUPPLEMENT ITS
OPPOSITION WITH RELEVANT EVIDENCE .................................................................. 22

VII.   CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

Page(s)

## **<u>CASES</u>**

*AdvanceMe Inc. v. RapidPay, LLC,*
 509 F. Supp. 2d 593 (E.D. Tex 2007)..................................................................... 17

*Anderson v. Liberty Lobby, Inc.,*
 477 U.S. 242 (1986) ............................................................................................... 4

*Arizona* v. *Maricopa County Medical Soc.,*
 457 U.S. 332 (1982) ............................................................................................... 4

*Bell Comm's Research, Inc. v. Vitalink Comm's Corp.,*
 55 F.3d 615 (Fed. Cir. 1995).............................................................................. 7, 9

*Caterpillar, Inc. v. Deere & Co.,*
 224 F.3d 1374 (Fed. Cir. 2000)........................................................................... 18

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
 469 F.3d 1005 (Fed. Cir. 2006)........................................................................... 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
 535 U.S. 722 (2002) ............................................................................................. 18

*Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,*
 45 F.3d 1550 (Fed. Cir. 1995)............................................................................... 4

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
 909 F.2d 1464 (Fed. Cir. 1990)............................................................................. 6

*Hewlett-Packard Co. v. Mustek Systems, Inc.,*
 340 F.3d 1314 (Fed. Cir. 2003)............................................................................. 9

*Hilgraeve Corp. v. Symantec Corp.,*
 265 F.3d 1336 (Fed. Cir. 2001)............................................................................. 9

*In re Michlin,*
 256 F.2d 317 (C.C.P.A. 1958)............................................................................... 6

*Intel Corp. v. U.S. Int'l Trade Commission,*
 946 F.2d 821 (Fed. Cir. 1991)......................................................................... 9, 10

*NTP, Inc. v. Research in Motion, Ltd.,*
 418 F.3d 1282 (Fed. Cir. 2005)............................................................................. 6

*Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.,*
 476 F.3d 1321 (Fed. Cir. 2007)........................................................................... 21

*Paper Converting Machine Co. v. Magna-Graphics Corp.*
 745 F.2d 11 (Fed. Cir. 1984)................................................................................. 9

*Phillips v. AWH Corp.,*

415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 16

*University of California v. Hansen*
    54 USPQ 2d 1473 at *25-26 (1999, E.D. CA) ..................................................... 13

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,*
    520 U.S. 17 (1997) ........................................................................................... 18

*Wood-Paper Patent,*
    (1874) 90 U.S. 566, 23 Wall 566 L. Ed. 31 ........................................................ 8

**STATUTES**

35 U.S.C. § 271 .......................................................................................... passim

Fed. R. Civ. P. 56(c) .......................................................................................... 4, 21

N.D. Cal. Pat. L.R. 3-6(a)(1) (Jan. 1, 2001 rev.) .................................................. 18

1  Plaintiffs Hologic, Inc., Cytyc Corp., and Hologic L.P. (collectively, "Hologic") hereby oppose

2  SenoRx, Inc.'s ("SenoRx") Motion for Summary Judgment of Non-Infringement of claims 11 and 12

3  of U.S. Patent No. 5,913,813 (the "'813 patent") and claims 4 and 17 of U.S. Patent No. 6,413,204 (the

4  "'204 Patent").[1]

5  **PRELIMINARY STATEMENT**

6  In its Motion for Summary Judgment of Non-Infringement (Dkt. No. 131), SenoRx asks this

7  Court to declare as a matter of law that its accused Contura Multi-Lumen Balloon Applicator does not

8  meet specific claim elements of the '813 and '204 patents.[2]  On all counts, SenoRx is wrong.  Far from

9  showing non-infringement, even the scant evidence produced to date establishes that SenoRx's

10  Contura meets each element of the disputed claims.  SenoRx does nothing more than argue that the

11  Contura can be used in non-infringing ways, and that SenoRx and others have used it in ways that do

12  not infringe.  Under fundamental principles of patent law, that is irrelevant to infringement of

13  apparatus claims.

14  Hologic's patents-in-suit[3] all relate to life-saving, radionuclide-based devices for treating

15  proliferative tissue diseases, such as cancer, following the surgical removal of a tumor (known as a

16  "resection") – for example, in a woman's breast.  The specific treatment technique is called "interstitial

17  brachytherapy," an alternative to whole breast irradiation, in which a balloon catheter is inserted into a

18  cavity created by the resection of diseased tissue to enable doctors to irradiate the remaining cancer

19  cells along the cavity margins at close range.  Emitting radio-therapeutic rays from close range allows

20  precise targeting of the diseased tissue while minimizing the necrosis of healthy tissue.  In the 1990s,

21  engineers from a start-up company called Proxima Therapeutics, Inc. (Hologic's predecessor)

22  _____

23  [1] ████████████████████████████████████████████████████ REDACTED

24  ███████████████ Hologic has agreed to withdraw its assertion of claim 6 of the '142 patent.  Therefore, it is not discussed herein.

25  [2] The claim elements at issue are "predetermined constant spacing" (as used in the '813 patent);

26  "predetermined spacing" (as used in the '204 patent); "plurality of radioactive solid particles" (the '813 patent); and "plurality of solid radiation sources" (the '204 patent).

27  [3] All three patents are related.  The '813 patent is the parent.  The '204 and '142 patents are both continuations-in-part of the '813 patent.

28

1    researched and developed improved devices and methods for performing brachytherapy.  In the end,

2    Proxima revolutionized interstitial breast brachytherapy with its development of a novel balloon

3    catheter system, later commercialized as MammoSite, for delivering a radiation source directly to the

4    target breast tissue.  The patents-in-suit are the fruits of those collective efforts, describing and

5    claiming many different device configurations, embodiments, and techniques for performing these

6    procedures.  REDACTED

7    ███████████████████████████████████████████    *See* Dkt. No. 8 at 3-6 (Hologic's

8    Motion for Preliminary Injunction).

9         The claimed inventions are broad.  Proxima's inventors conceived of and claimed, for example,

10   an apparatus that comprises an "inner spatial volume" located inside an outer, expandable surface (*e.g.*,

11   a balloon) in which the spacing between the inner and outer volumes remains generally constant during

12   treatment to produce a substantially uniform radiation dose profile or shape.  *See, generally*, the

13   asserted '813 and '204 patent claims.  The inventors also envisioned procedures in which, depending

14   on the shape of the surgical cavity and the target tissue, it would be advantageous to produce an

15   asymmetric radiation dose profile.  Their efforts in the latter regard culminated in the '142 patent –

16   which claims an apparatus capable of producing asymmetrically-shaped dose profiles.  The end result

17   of Proxima/Hologic's R&D is a family of patents covering a wide variety of devices for performing

18   interstitial brachytherapy.  They describe, for example, emitting rays from a centrally-located position

19   within the balloon, using an asymmetrical position, using a single emission location, and emitting rays

20   from multiple locations, among others.

21        By any objective analysis, and largely by SenoRx's own admissions, the Contura is a

22   combination of many of the above-described inventions.  Conceptually, the gist of SenoRx's argument

23   is that although Hologic owns patents covering devices that do A, B, C, and D, the Contura does not

24   infringe because, when it performs A, it does not simultaneously perform B, C, or D.  SenoRx also

25   asserts that the Contura does not infringe because, when the Contura does B, it does something else

26   that is not patented.  These arguments have no merit.  The fact that the Contura does not infringe all of

27

28

1   the asserted claims all of the time or at the same time does not mean that it does not infringe any of

2   them.  To the contrary, as designed and intended for use, *it infringes all of the asserted claims*.

3       SenoRx's non-infringement arguments regarding the "predetermined spacing" elements are

4   flawed on multiple grounds.  *First*, SenoRx applies a method claim analysis to apparatus claims – *i.e.*,

5   SenoRx ignores the Contura's structure and focuses on one specific way in which it can be used.

6   However, except in a means plus function context, infringement of an apparatus claim depends on

7   structural limitations, not upon statements of function.  *Second*, SenoRx insists that Contura users

8   typically employ more than one "dwell point" during a procedure, and that some users employ the

9   outer, asymmetrically-positioned lumens.  Hologic does not dispute that.  The point, however, is that if

10  even one of the dwell positions is located in the center of the central treatment lumen (which is not

11  only possible, but is typically the case), the device exhibits a "constant spacing" between the "inner

12  spatial volume" and the Contura's balloon wall – and SenoRx infringes.[4]  SenoRx even concedes that

13  at each dwell location (including at the balloon center), the radionuclide *stops* to deliver radiation.

14  Thus, even under its own flawed claim construction, SenoRx infringes.  In short, the Contura can be

15  (and is) used with a radionuclide at a central location within the balloon, thereby meeting the "constant

16  spacing" limitation.  For purposes of infringement, whether the user *also* employs other lumens or

17  dwell points does not matter.

18      SenoRx's further non-infringement argument with respect to the terms "plurality of radioactive

19  solid particles" ('813 patent) and "plurality of solid radiation sources" ('204 patent) likewise has no

20  merit.  SenoRx wrongly couches the dispute as a disagreement over the meaning of the word

21  "plurality."  That is not the issue.  The focus of the "plurality" claim terms is on emitting

22  radiotherapeutic rays from *multiple locations* so as to achieve a "desired composite profile" – as

23  distinguished from embodiments that emit radiation from a single location.  Under the plain meaning

24  of these terms as used by the patentee, the Contura literally infringes because it can (and does) provide

25  _____

26  [4]   While not at issue in this Motion, Hologic agrees that in some instances, SenoRx and others may
    use *only* the Contura's outer, asymmetrically-placed lumens.  But the device is still capable of being
27  used, and is typically used, with a radionuclide in the central lumen.  It therefore infringes all the
    asserted claims.

28

1    for the positioning of the radiation source in multiple locations to achieve a desired resultant profile.

2    In any event, even under SenoRx's claim construction, as set forth below, the Contura meets these

3    claim elements under the doctrine of equivalents.[5]

4         Viewing the evidence in a light most favorable to Hologic, and resolving all inferences in favor

5    of Hologic, SenoRx has not and cannot meet its burden of establishing as a matter of law that the

6    Contura device does not meet the disputed claim elements.  The Motion must be denied.

7                                    **ARGUMENT**

8    **I.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

9         A court may grant a motion for summary judgment only if the moving party shows that there is

10   "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

11   of law." Fed. R. Civ. P. 56(c).  A genuine issue exists if the evidence is such that a reasonable jury

12   could find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  To

13   defeat SenoRx's Motion, Hologic is not required to present evidence resolving all material factual

14   issues in its favor; "rather, all that is required is that sufficient evidence supporting the claimed factual

15   dispute be shown." *Id.* at 249; *Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.*, 45 F.3d

16   1550, 1560-61 (Fed. Cir. 1995).  At the summary judgment stage, the nonmoving party's version of

17   any disputed issue of fact is presumed correct.  *Arizona* v. *Maricopa County Medical Soc.,* 457 U.S.

18   332, 339 (1982).  Thus, the evidence of the nonmovant, Hologic, is to be accepted, and all justifiable

19   inferences are to be drawn in Hologic's favor.  *Anderson,* 477 U.S. at 255.

20

21

22

23

─────────────────────

24   [5]  REDACTED

25   █████████████████████████████████████

26   █████████████████████████████████████

27

28

1    **II.    SENORX'S ACCUSED DEVICE MEETS THE "PREDETERMINED CONSTANT**
2    **SPACING" LIMITATION OF THE '813 PATENT (CLAIMS 11 & 12)[6]**

3    In the Xoft case[7], the Court construed the term "predetermined constant spacing" in the '813

4    patent.  Su Decl., Ex. B at 6-7 (Claim Construction Order in Xoft litigation).  Hologic agrees with the

5    Court's construction.  SenoRx argues that the Court is wrong and seeks to narrow the claim by adding

6    extra limitations, emphasized below:

| Term | Hologic's Construction<br>(the Court's prior construction) | SenoRx's Construction |
|------|-----------------------------------------------------------|----------------------|
| "predetermined constant spacing . . . between said inner spatial volume and the radiation transparent wall" | Spacing predetermined by one skilled in the art between the wall or edge of the inner spatial volume and the radiation transparent wall of the outer closed, inflatable chamber, when inflated, which is constant in all directions if the outer chamber is spherical or constant along a radial plane if the outer chamber is not spherical. | *Fixed* spacing, predetermined by one skilled in the art *before administering radiation*, between the wall or edge of the inner spatial volume and the wall of the expandable surface element, when inflated, *which for each point on the wall or edge of the inner spatial volume, the distance to the closest point on the expandable surface element is the same (i.e., the inner spatial volume and expandable surface element are concentric and the same shape).* |

17    In its Motion, SenoRx asks the Court to declare as a matter of law that SenoRx does not

18    infringe the "predetermined constant spacing" limitation of the '813 patent – suggesting that no

19    reasonable jury could conclude otherwise.  In fact, the opposite is true.  Based on SenoRx's own

20    documents and admissions, under *either* party's proposed claim construction, the Contura meets the

21    "predetermined constant spacing" limitation in multiple ways.  Because direct, contributory, and

22    induced infringement is manifest, SenoRx's Motion must be denied.

---

[6]   Claims 11 and 12 of the '813 patent both depend from claim 1, which contains the "predetermined constant spacing" language.

[7]   Two of the three patents-in-suit (the '813 and '204 patents) were asserted in a prior action in this Court entitled *Xoft, Inc. v. Cytyc Corp. et. al.*, Case No. C-05-05312 RMW ["Xoft litigation"]).  Each of the terms disputed in this Motion was already litigated, briefed, and construed by the Court in that case.  Su Decl., Ex. B (Claim Construction Order in Xoft litigation).

A.    **The Contura Directly Infringes the Asserted Claims of the '813 Patent**

1.    **The Contura Meets the "Predetermined Constant Spacing" Limitation Because It Can Emit Radiation from a Central Dwell Point**

SenoRx's contention that the Contura does not meet the "predetermined constant spacing" limitation of the '813 patent is based on the false premise that the asserted claims are "method" rather than "apparatus" claims. SenoRx appears to admit that where multiple dwell points are used during radiotherapy, the radionuclide stops for a period of time at each location – and that where the central lumen is used, one of those locations may be in the center of the balloon. Nonetheless, SenoRx contends it does not infringe because the radionuclide *might also* emit radiation from other dwell points if other dwell points are used. In other words, a user can employ a method of use by which the spacing between the radionuclide and the balloon wall changes, *i.e.*, because the radionuclide is stepped through different dwell points rather than emitting radiation from a single point. But that argument is fundamentally flawed and ignores important distinctions between apparatus and method claims.

Infringement of an apparatus claim is determined based on the capabilities of an accused device's structure, not its actual method(s) of use. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990) ("Apparatus claims cover what a device *is*, not what a device *does*."); *In re Michlin*, 256 F.2d 317, 320 (C.C.P.A. 1958) ("It is well settled that patentability of apparatus claims must depend upon structural limitations and not upon statements of function."); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005) (distinguishing between method claims and apparatus claims for the purpose of determining infringement under section 271(a)).

Here, it is undisputed that the Contura contains five treatment lumens, one of which is centrally located along the balloon's longitudinal axis. Dkt. No. 131 at 12-14 (Motion); *see* figure below. In one method of use, the radiation source may be stepped-through multiple dwell points, *stopping* for a



predetermined period of time at each location to emit radiation. Dkt. No. 131 at 14-15 (Motion).

Users can decide which lumen(s) to use, which dwell position(s) to employ within the lumen(s), and the duration of each dwell time. Su Decl., Ex. C at SRX-HOL00002232 (Contura's "Instructions for Use" – stating that users determine the appropriate source lumens, dwell positions and dwell times). Indeed, SenoRx markets the Contura as a device capable of operating in the same way as Hologic's MammoSite from a central dwell position. Su Decl., Ex. D at SRX-HOL00006665

For this reason, SenoRx suggests that physicians use the Contura

Su Decl., Ex. E at SRX-HOL000006684, 86 (SenoRx Sales Training Manual and FAQs).

Whatever the Contura's typical *use* may be – and in fact, the evidence suggests that employing a central dwell point *is* a typical use – the evidence demonstrates that SenoRx manufactures a device that provides for the placement of a radionuclide at the balloon's center point to perform brachytherapy. From that location, the spacing between the inner spatial volume and the Contura balloon wall is "constant in all directions" (Hologic's construction of "constant spacing"). Because the user can stop the radionuclide in that central location for however long (s)he chooses, the Contura exhibits a "fixed" spacing such that, for each point on the radionuclide, the distance to the nearest point on the balloon wall is "the same" (SenoRx's construction of "constant spacing"). Thus, SenoRx infringes under either party's construction. The fact that the Contura may not infringe if used to

1  irradiate tissue from *other* locations (*i.e.*, that SenoRx infringes the "predetermined constant spacing"

2  claims only *part of the time*) is irrelevant.  *Bell Comm's Research, Inc. v. Vitalink Comm's Corp.*, 55

3  F.3d 615, 622-3 (Fed. Cir. 1995) (an accused product that sometimes, but not always, embodies a

4  claim nonetheless infringes).

5          **2.      Not Only Is the Contura Capable of Performing Brachytherapy**
                      **From a Central Dwell Position – SenoRx and Others Have Used It In**
6                     **That Way**

7          In addition to manufacturing a device meeting the "predetermined constant spacing" claim

8  term, SenoRx and others *have used* the Contura to emit radiation from a central dwell position within

9  the balloon wall.  Therefore, SenoRx has infringed by both (a) making an apparatus meeting the

10  elements of claim 1 – including the "constant spacing" limitation, and (b) using the device to irradiate

11  tissue from a central dwell position.  35 U.S.C. § 271(a) (". . . whoever without authority makes, *uses*

12  . . . any patented invention . . . infringes the patent.").



25          As stated, from a dwell point at or near the center of the Contura's central treatment lumen, the

26  Contura exhibits a constant spacing in all directions between the inner spatial volume and the balloon

27  wall (Hologic's construction).  From that dwell position, it also exhibits a "fixed" spacing such that,

28

1  for each point on the radionuclide, the distance to the nearest point on the balloon is substantially the

2  same in all directions (SenoRx's construction).  Thus, not only *can* the Contura be used in a manner

3  that meets the "constant spacing" limitation, SenoRx, its paid consultants, and others have undeniably

4  used it in this manner.  Therefore, the Contura meets the "constant spacing" limitation of the '813

5  patent.  35 U.S.C. § 271(a); *Wood-Paper Patent* (1874) 90 U.S. 566, 23 Wall 566, 23 L. Ed. 31 (a

6  single instance of unauthorized use constitutes infringement).

### 3.    In Addition to Using a Central Dwell Point During a Multi-Dwell Point Procedure, Users Can and Have Used the Contura To Deliver Radiation From a Single, Central Position

9      The fact that medical professionals decide which lumens, dwell positions, and dwell times to

10  employ depending on the desired radiation dose profile, means that a user can opt for a single, fixed

11  dwell position at the center of the Contura balloon.  Using such a treatment plan, the Contura clearly

12  meets the "predetermined constant spacing" limitation of claim 1 of the '813 patent.

13      It is well-established that imperfect practice of an invention does not avoid infringement.

14  *Hewlett-Packard Co. v. Mustek Systems, Inc.*, 340 F.3d 1314, 1326 (Fed. Cir. 2003) (citing *Bell*

15  *Comm's Research, Inc. v. Vitalink Comm's Corp.*, 55 F.3d 615, 622-3); *Hilgraeve Corp. v. Symantec*

16  *Corp.*, 265 F.3d 1336, 1343 (Fed. Cir. 2001) (an accused device may be found to infringe if it is

17  reasonably capable of satisfying the claim limitations, even though it may also be capable of non-

18  infringing modes of operation); *Intel Corp. v. U.S. Int'l Trade Commission*, 946 F.2d 821, 832 (Fed.

19  Cir. 1991) (regardless the intended use, an accused device infringes if capable of being used in

20  infringing manner); *Paper Converting Machine Co. v. Magna-Graphics Corp.* 745 F.2d 11, 20 (Fed.

21  Cir. 1984) ("that the machine was not operated in its optimum mode is inconsequential; imperfect

22  practice of an invention does not avoid infringement"); 35 U.S.C. § 271(a) (prohibiting any and all

23  uses of a patent invention).

24      In *Intel*, the patentee alleged infringement of a claim disclosing an integrated circuit of read-

25  only memory with a programmable selection means for selecting an alternative addressing mode.  946

26  F.2d at 831.  The International Trade Commission ruled that defendant infringed the asserted claim

27  because the accused device was capable of being used in a manner that embodied each claim

28

1  limitation, even though the device was not intended for such use. *Id*. at 831-32. On appeal, defendant

2  challenged the finding of infringement on the grounds that defendant never contemplated or intended

3  for the accused device to be sold or operated in an infringing manner. *Id*. In affirming the judgment,

4  the Federal Circuit stated:

> [Defendant] also contends that the Commission's finding of infringement . . . is incorrect because, although [defendant's devices] are *capable* of performing page mode addressing, the [devices] were never sold to operate in page mode. No customer was ever told how to convert the chip to page mode operation – or even that such conversion was possible. [Defendant] argues that an alleged infringer must intend its parts to be used in an infringing fashion . . . . ***There is no intent element to direct infringement . . . . [T]he accused device, to be infringing, need only be capable of operating in the page mode. Contrary to [defendant's] argument, actual page mode operation in the accused device is not required***. (*Id.* [emphasis added].)

11  Here, as in *Intel*, there can be no genuine dispute that Contura users can select a treatment

12  program calling for the emission of radiation from a single location directly or nearly directly in the

13  center of the balloon. Indeed, SenoRx's own marketing materials expressly contemplate such use. As

14  the figure below depicts, REDACTED



REDACTED

REDACTED

1    <span style="background:black;color:white">REDACTED</span> For this additional reason, SenoRx's device meets the "constant spacing" limitation of the

2    '813 patent because, regardless of its intended or typical use,[8] users can use it to perform radiotherapy

3    from a single, stationary location, including a point directly or nearly directly at the balloon's center.

4    From that location, the Contura exhibits a constant spacing between the inner spatial volume and the

5    balloon wall in all directions (Hologic's construction). Further, from each point on the radionuclide to

6    the nearest point on the balloon wall – the distance is the same (SenoRx's construction). Therefore,

7    SenoRx infringes under either party's construction.

8        **4.    Whether SenoRx's I-192 Seeds Are "Cylindrical" Rather Than**
         **Spherical Is Irrelevant**
9

10       Recognizing that both it and other users can use (and have used) the device to perform

11   radiotherapy from a centrally-located position within its central treatment lumen (whether solely from

12   that location or in conjunction with other dwell points), SenoRx argues that the Contura nonetheless

13   cannot meet the "constant spacing" element because the Ir-192 radionuclides used with the Contura are

14   *cylindrical* rather than spherical in shape. Dkt. No. 131 at 15 (Motion). According to this argument, if

15   the Court adopts SenoRx's construction of "inner spatial volume" (which requires a radionuclide

16   *sphere*), SenoRx cannot infringe the "constant spacing" limitation because the distance from each

17   point on the radionuclide to the nearest point on the Contura's spherical balloon wall will not be "the

18   same." *Id.* at 14. This argument has no merit. Even if the Court were to adopt SenoRx's constructions

19   of *both* (1) the term "predetermined constant spacing . . ." and (2) the term "inner spatial volume" –

20   SenoRx would still infringe.

21       *First*, in distinguishing between cylindrical and spherical radionuclides, SenoRx attempts to

22   impose a degree of exactitude that both the '813 and '204 patents expressly state is not necessary.

23   Both patents refer to an apparatus exhibiting a "substantially" or "generally" constant spacing between

24   the inner spatial volume and the outer wall. '813 Patent, col. 1:55-57 ("the distance from the spatial

25   volume and the wall is maintained *substantially* constant over their entire surfaces."); col. 3:10-13

26   _____

27   [8] Indeed, as shown above, SenoRx's own marketing documents indicate that such infringing use *is*, in
     fact, intended and recommended.

28

1  (spacing should be "*generally* constant"); col. 4:13-16 ("In either the concentric spherical embodiment

2  of FIG. 1 or the non-spherical configuration of FIG. 3, the spacing between the inner and outer

3  chambers needs to be held *somewhat* constant to avoid "hot spots.");  '204 Patent, col. 5:25-26 (spacing

4  should be "*generally* constant").  By definition, the words "substantially," "generally" and

5  "somewhat" do not require exactitude.  In the same way that the '813 patent term "uniform" does not

6  mean *exactly* uniform, the '813 patent term "constant" does not mean *exactly* constant.  Thus, under

7  Hologic's construction of "predetermined constant spacing," using cylindrical radionuclides still

8  infringes because, from a central location within the central lumen, the distance from each point on the

9  surface of the radionuclide to the balloon wall is substantially constant in all directions.  Likewise,

10  under SenoRx's construction, the distance from each point on the radionuclide surface to the balloon

11  wall is substantially the same in all directions.

12      Further, from the perspective of one of ordinary skill in the art, the distance from each point on

13  the outer edge of a cylindrical radionuclide to the balloon wall *is* effectively the same in all directions.

14  Dkt. No. 145, ¶¶ 5, 12 (Verhey declaration).  The radioactive sources contemplated in the '813 patent,

15  whether spherical or cylindrical, are very small compared to the typical 40-60 mm diameter of a

16  surgical cavity.  *Id*; Su Decl., Ex. N (5/20/08 Stubbs Depo. Tr. at 60:19-61:07) (standard brachytherapy

17  radionuclides can be as small as 1 millimeter in width and 3 millimeters in length); *see also* Ex. J at

18  SRX-HOL00006598-9 REDACTED ████████████████████  No matter the shape, the

19  radionuclides that the Contura uses are effectively point sources relative to the diameter of the inflated

20  balloon.  Dkt. No. 145, ¶ 12 (Verhey declaration).  Indeed, brachytherapy balloons and the

21  lumpectomy margins into which they are inserted may be generally spherical in shape, but are never

22  perfect spheres.  *Id*. at ¶ 5.  Therefore, the distances from different points on a radionuclide to the outer

23  balloon will never be exactly the same.  *Id*.  From a dosimetric standpoint, however, one skilled in the

24  art would consider the minute differences in distance from each point on the outer edge of a cylinder-

25  shaped radionuclide to the balloon wall to be trivial and insignificant – *i.e.*, the distances for all intents

26  and purposes are the same.  *Id.*

27

28

Accordingly, regardless the outcome of claim construction, SenoRx's accused device meets the "predetermined constant spacing" limitation of claim 1 of the '813 patent.

**B.    SenoRx Induces Others to Infringe the Asserted Claims of the '813 Patent**

In addition to directly infringing, SenoRx induces others to infringe.  35 U.S.C. § 271(b). SenoRx cannot dispute that it makes, markets, and actively encourages breast surgeons, radiation oncologists, radiation physicists and others to use the Contura for brachytherapy in accordance with the Instructions for Use, which teach several infringing uses.  Su Decl., Ex. C at SRX-HOL2232-2233 (Contura Instructions for Use:  "the SenoRx Multi-Lumen Balloon is intended to provide brachytherapy when the physician chooses to deliver intracavitary radiation to the surgical margins following lumpectomy for breast cancer," and indicating the user's ability to determine "the appropriate source lumens, source dwell positions and dwell times . . ."); Ex. O at SRX-HOL6605-6606 REDACTED – intended for physicians to use to provide brachytherapy); Ex. P at SRX-HOL00005564-65 (Contura intended for brachytherapy – and explaining how to use it); Ex. E at SRX-HOL000006684, 86 REDACTED see also Ex. Q (SenoRx's CTO Paul Lubock's November 6, 2002 patent application discussing Hologic's MammoSite and the related patents – demonstrating that SenoRx had knowledge of the '813 and '204 patents at least as early as November 2002); Ex. R (July 22, 2004 Information Disclosure Statement citing all three patents-in-suit to the PTO as potential prior art – further demonstrating SenoRx's knowledge of the patents at the time of inducement).

**C.    SenoRx Is Liable for Contributory Infringement of the '813 Patent**

Much of the same evidence demonstrates that SenoRx is also liable for contributory infringement.  35 U.S.C. § 271(c) ("whoever offers to sell or sells . . . a component of a patented machine . . . or apparatus . . . constituting a material part of the invention . . . shall be liable as a contributory infringer.")  The Contura has been approved by the FDA for marketing and sale as a

1   brachytherapy device; it is specially designed for the purpose of being combined by users with a

2   radiation source to create the patented invention.  Su Decl., Ex. O ▐REDACTED▌  Customers do

3   not buy the Contura unless they intend to use it as a device for the delivery of radiation.  SenoRx

4   contemplates the use of commercially available remote afterloaders with the Contura device for

5   placement of the radionuclides.  Su Decl., Ex. C at SRX-HOL00002232 (Contura Instructions for Use:

6   "Lumens are provided for attachment to commercially available HDR remote afterloader equipment

7   for passage of the radiation source delivery wire").

8       The substantial non-infringing use exception to § 271(c) does not apply.  That exception

9   applies to staple articles of commerce – which the Contura is not.  *University of California v. Hansen*

10  54 USPQ 2d 1473 at *25-26 (1999, E.D. CA)  (occasional aberrant use of product that is clearly

11  designed to be used in particular matter [*sic*] does not make defendant's device staple article or

12  commodity of commerce suitable for substantial non-infringing use) (finding defendants liable for

13  infringement under § 271(a), (b), and (c)).  In any event, minus the radiation, the Contura has no

14  substantial non-infringing uses because its only utility is as a radiation therapy device in accordance

15  with the invention.

16      Based on the foregoing, far from militating *against* infringement, a reasonable jury could and

17  would conclude that SenoRx infringes the asserted claims, both directly and indirectly.

18  **III.    SENORX'S ACCUSED PRODUCT MEETS THE "PREDETERMINED SPACING"
            LIMITATION OF THE '204 PATENT (CLAIM 4)[9]**
19

20      Unlike the '813 patent, which requires a "predetermined ***constant*** spacing," the '204 patent

21  requires only a "***predetermined spacing*** . . . ."  col. 8:40.  SenoRx contends these two terms mean the

22  same thing.  They do not.  The Court previously construed both terms and found that they convey

23  different meanings.  Su Decl., Ex. B at 6-7, 24-25.  The Court's prior construction and the parties'

24  proposed constructions are set forth below:

25

26  _____

27  [9] Claim 4 of the '204 patent depends from claim 3, which contains the "predetermined spacing"
    language.

28

Plaintiffs' Opposition To Defendant's Motion For         -14-
Partial Summary Judgment Of Non-Infringement
Case No. C08 00133 RMW (RS)

| Term | Hologic's Construction (the Court's prior construction) | SenoRx's Construction |
|------|--------------------------------------------------------|------------------------|
| "predetermined spacing …between said inner spatial volume and the expandable surface element" (claim 3) | the distance between the inner spatial volume and the expandable surface element is determined in advance | Fixed spacing, predetermined by one skilled in the art before administering radiation, between the wall or edge of the inner spatial volume and the wall of the expandable surface element, when inflated, which for each point on the wall or edge of the inner spatial volume, the distance to the closest point on the expandable surface element is the same (i.e., the inner spatial volume and expandable surface element are concentric and the same shape). |

**A.    SenoRx Has Not Moved for Summary Judgment Under Hologic's Construction.**

If the Court adopts Hologic's construction of the term "predetermined spacing . . ." (*i.e.*, if the Court adopts its own prior construction), SenoRx's Motion with respect to claim 4 of the '204 patent is moot.  SenoRx has not moved for summary judgment under Hologic's construction.

**B.    SenoRx Meets the "Predetermined Spacing . . ." Limitation Even Under Its Own Construction**

Because SenoRx believes the terms "predetermined ***constant*** spacing . . ." ('813 patent) and "***predetermined spacing*** . . ." ('204 patent) mean the exact same thing, the same infringement analysis discussed above (regarding direct *and* indirect infringement) applies to both.  Under SenoRx's proposed construction, the Contura meets the "predetermined spacing" limitation of the '204 patent because (1) SenoRx manufacturers the Contura (Section II(A)(1), above); (2) SenoRx and others have used the Contura with a central dwell position in its central treatment lumen (Section II(A)(2), above); and (3) SenoRx and others can and have performed radiotherapy with the Contura using a single, central location in the central treatment lumen (Section II(A)(3), above).  Therefore, under SenoRx's proposed construction, the "predetermined spacing" limitation of the '204 patent is met. *See also* sections II(B) and II(C), above (discussing SenoRx's indirect infringement of the asserted claims).

\\

**IV.    THE CONTURA MEETS THE "PLURALITY OF RADIOACTIVE SOLID PARTICLES" ELEMENT OF CLAIM 12 OF THE '813 PATENT, AND THE "PLURALITY OF SOLID RADIATION SOURCES" ELEMENT OF CLAIM 17 OF THE '204 PATENT**

**A.    SenoRx Literally Infringes Under Hologic's Claim Construction**

SenoRx's Contura device literally meets the "plurality of radioactive solid particles / solid radiation sources" claim elements of the '813 and '204 patents because a solid radionuclide on a source wire can be (and is) inserted sequentially into multiple predetermined locations within one or more of the Contura's treatment lumens to provide a "desired composite radiation profile" within the targeted tissue. *See* Dkt. No. 131-6, Ex. A at 15 (Hologic's Infringement Contentions).

SenoRx's misguided argument that use of the word "plurality" requires the presence of "two or more" separate and distinct radionuclides in the device "at the same time" (and its mischaracterization of Hologic's position as being that "plurality" means "one") is a classic example of attempting to construe a claim term in isolation – divorced from both the claim language in which it appears and the remainder of the specification. *See* Dkt. No. 144 at 22-25 (Hologic's Reply Claim Construction Brief); Dkt. No. 131 at 8 (SenoRx's Motion, arguing that even under SenoRx's construction of these terms, ". . .[t]he act of moving a single radionuclide to multiple locations does not transform the single object into two or more objects . . .)  The argument has no merit.[10]

SenoRx's non-infringement argument violates a fundamental principle of claim construction reaffirmed by the Federal Circuit in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), that one cannot import aspects of preferred embodiments into the claims by requiring that discrete radiation sources be present and used simultaneously. *Id.* at 1323; *see* Dkt. No. 144 at 23 (Hologic's Reply Claim Construction Brief).  Read together with the surrounding claim language and in light of the specification, the objective of these claims (claim 12 of the '813 and claim 17 of the '204) is to

---

[10] SenoRx takes issue with the Court's previous ruling regarding the meaning of this claim language. The Court previously considered the phrase "plurality of radioactive solid particles placed at predetermined locations . . . to provide a desired composite radiation profile" ('813 patent, claim 12) and decided that it means what it says – *i.e.*, no construction is necessary. Su Decl., Ex. B at 11-12. Hologic agrees.

1    differentiate embodiments in which (1) diseased tissue is irradiated from a *single* location from (2) an

2    embodiment in which radiation is emitted from *multiple locations* (hence the use of the term

3    "plurality") in order to achieve a "composite radiation profile" ('813 patent, claim 12) and a "desired

4    resultant profile" ('204 patent, col. 5:12). SenoRx's contention that the Contura cannot meet these

5    claim elements because Figure 5 of the '813 patent and Figure 4 of the '204 patent show multiple solid

6    radionuclides present at the same time violates the Federal Circuit's clear mandate in *Phillips*. 415

7    F.3d 1303. If SenoRx's reasoning were sound, any patent defendant could simply scour the

8    specification for a disclosed embodiment that differs from the accused product – and proceed to argue

9    non-infringement as a matter of law.

10        The admissions and diagrams in SenoRx's own Motion illustrate that the Contura meets the

11   "plurality . . ." claim elements. SenoRx states that "the undisputed evidence is that in every case of

12   patient treatment since the commercial launch of the Contura in January 2008, the [radiation] dose was

13   delivered with multiple dwell positions." Dkt. No. 131 at 15 (Motion) (*see* Figure 4, illustrating how

14   the Ir-192 radionuclides used with the Contura can be moved sequentially to multiple locations within

15   the balloon – such that radiotherapeutic rays may be emitted from numerous positions to achieve a

16   desired composite radiation profile). Thus, under the plain meaning of claim 12 of the '813 patent and

17   claim 17 of the '204 patent, by SenoRx's own admission, the Contura reads on the claim language

18   directly – thereby literally infringing the claims.

19        SenoRx inserts a secondary argument (Dkt. No. 131 at 8) that it does not manufacture the

20   iridium-192 radionuclides used with the Contura and therefore does not meet the disputed claim terms.

21   This argument is spurious – the very purpose of the Contura is to "deliver therapeutic radiation to

22   target tissue." Dkt. No. 131 at 3 (SenoRx's Motion). SenoRx only manufactures, markets and sells the

23   Contura so that it can be used with radionuclides to perform brachytherapy; it has no purpose or

24   usefulness without them. In any event, under 35 U.S.C. § 271(a), SenoRx infringes if it "makes, uses,

25   offers to sell, or sells . . ." an infringing device in the United States. Even under SenoRx's argument

26   that it does not "make" radionuclides – it still infringes because both it ▮REDACTED▮ have used the

27   Contura with Ir-192 radionuclides. Su Decl., Ex. J at SRX-HOL00006598 ▮REDACTED▮

28

1    REDACTED                                                          Ex. E at SRX-

2    HOL00006684 REDACTED

3    *AdvanceMe Inc. v. RapidPay, LLC*, 509 F. Supp. 2d 593, 605 (E.D. Tex 2007) ("Liability for direct

4    infringement cannot be avoided by interposing an agent or independent contractor between the

5    defendant and the infringing acts.")  Thus, SenoRx has both "made" and "used" the patented invention.

6    35 U.S.C. § 271(a).  Viewing the evidence of SenoRx's testing and use of the device in a light most

7    favorable to Hologic, and resolving all inferences in its favor, SenoRx infringes.

8         Further, and for the same reasons it indirectly infringes the asserted claims of the '813 and '204

9    patents containing the "predetermined constant spacing" and "predetermined spacing" limitations,

10   SenoRx indirectly infringes the asserted claims containing the "plurality" limitations.  35 U.S.C. §

11   271(b) and (c).  *See* sections II(B) and II(C), above.

12        **B.    Under SenoRx's Claim Construction, SenoRx Infringes Under the Doctrine of
              Equivalents[11]**

13

14        **1.    Legal Standard for Doctrine of Equivalents**

15        A product that does not literally infringe may nonetheless be found to infringe if there is

16   "equivalence" between the elements of the accused product and the claimed elements of the patented

17   invention.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997).  The doctrine

18   applies where the differences between the patented invention and the accused device are insubstantial.

19   *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 726 (2002).  One way to make

20   this determination is to consider whether the accused device performs substantially the same function

21   in substantially the same way to obtain substantially the same result.  *See Depuy Spine, Inc. v.*

22   *Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1019-1020 (Fed. Cir. 2006) (reversing judgment of

23

24

25   _____
     [11]  Hologic has reserved its right to amend its preliminary infringement contentions to the

26   extent that any element of any asserted claim is determined not to be literally present after a final
     ruling on claim construction.  Dkt. No. 131-6, Ex. A at 1, fn 2 (Hologic's Preliminary Infringement

27   Contentions); *see* N.D. Cal. Pat. L.R. 3-6(a)(1) (Jan. 1, 2001 rev.) (granting right to amend without
     leave the information under Patent Local Rule 3-1(d) based on the Court's claim construction) (the

28   March 1, 2008 Patent Local Rules do not apply to this case).

1  non-infringement and finding that triable issue of fact existed as to whether accused device infringes

2  under the doctrine of equivalents).

3       Equivalence is not the prisoner of formula and is not an absolute to be considered in a vacuum.

4  *Warner-Jenkinson*, 520 U.S. at 24.  It does not require complete identity for every purpose and in

5  every respect.  *Id*.  Even things that are, for most purposes, different, may sometimes be equivalents.

6  *Id*; *Caterpillar, Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000) (as with literal

7  infringement, whether an accused device infringes under the doctrine of equivalents is a question of

8  fact).

9       **2.    SenoRx Meets the "Plurality of Radioactive Solid Particles" and
         "Plurality of Solid Radiation Sources" Elements Under the Doctrine**
10       **of Equivalents**

11

12      If the Court were to adopt SenoRx's construction of the terms "plurality of radioactive solid

13  particles" ('813 patent) and "plurality of solid radiation sources"('204 patent), summary judgment

14  would still be improper because under SenoRx's constructions, the Contura meets these elements

15  under the doctrine of equivalents.

16      **Function**.  The function of having "a plurality of radioactive solid particles placed at

17  predetermined locations within the inner spatial volume to provide a desired composite radiation

18  profile" is to provide a therapeutic dose of radiation to treat proliferative tissue disease.  ('813 patent,

19  claim 12; '204 patent, col. 5:10-12).  The '813 and '204 patents state: "This invention relates generally

20  to [an] apparatus for use in treating proliferative tissue disorders, and more particularly to an apparatus

21  for the treatment of such disorders in the body by the application of radioactive material and/or

22  radiation emissions."  Dkt. No. 135-2 ('813 patent, col. 1:7-11); Dkt. No. 135-3 ('204 patent, col. 14-

23  17 [same, using slightly different language].)  Further, the purpose of an embodiment emitting

24  radiation from more than one location is to achieve a "desired composite radiation profile."  *See* '813

25  patent, claim 12, Figure 5; '204 patent, col. 5:1-12 (radiation emitted from multiple locations "to

26  generate a desired resultant profile"); Fig. 4.

27

28

1    The function of the Contura is the same -- to deliver radiation to target tissue to treat

2  proliferative tissue disease.  Su Decl., Ex. C at SRX-HOL00002232 (Instructions for Use:  "Contura …

3  is intended to provide brachytherapy . . . to deliver intracavitary radiation to the surgical margins

4  following lumpectomy for breast cancer").  Where a treatment plan calls for multiple dwell points, the

5  Contura serves to generate a desired resultant profile.  *See* Dkt. No. 131 at 14-15 (SenoRx's Motion

6  describing Contura radionuclide moving to different locations within the balloon); Su Decl., Ex. S at

7  SRX-HOL00005403 (Contura MLB Brachytherapy Applicator Clinical Data Report - REDACTED

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████ Su Decl., Ex. J at SRX-HOL00006598-6601 (Contura

10  REDACTED ███████████████████████████████████████████████

11  ████████████████████████

12    **Way**.  The claimed apparatus and the Contura serve to generate a desired composite radiation

13  profile in substantially (if not exactly) the same way.  As set forth in the written descriptions and as

14  illustrated by the drawings ('813 patent, Fig. 5; '204 patent, Fig. 4), one way to generate a desired

15  resultant profile is to mount multiple particles **44** on the distal ends of a plurality of wires **46** that are

16  routed through the catheter body **12** . . . reaching the lumen.  '204 patent, col. 5:1-12.  As SenoRx

17  concedes, depending on the chosen treatment plan, the Contura may step an iridium-192 radionuclide

18  through multiple locations within one or more treatment lumens – the cumulative result constituting

19  the desired composite radiation profile.  *See* Dkt. No. 131 at 12-15 (including Figs. 2-4) (describing

20  how the Contura may employ multiple dwell points); Su Decl., Ex. E at SRX-HOL00006685 REDACTED

21  ████████████████████████████████████████████████████████

22  ████████████

23    As Dr. Verhey has explained, the Contura achieves a composite profile in the same way – or at

24  a minimum, in substantially the same way.  Dkt. No. 145 at ¶¶ 27-31 (Verhey declaration supporting

25  Hologic's Reply Claim Construction Brief).  One of ordinary skill in the art would understand that one

26  can achieve a "desired composite radiation profile" by using a single particle or source and moving it

27  to multiple locations, or using multiple particles or sources in predetermined locations.  *Id.* at ¶ 28.

28

1  From a dosimetric standpoint, *there is no distinction* between moving one radionuclide to multiple

2  locations versus the embodiment depicted in Figure 5 of the '813 patent and Figure 4 of the '204

3  patent. *Id.*

4      **Result**.  Finally, both the claimed inventions and the Contura actually result in a composite

5  radiation profile that serves to kill proliferative tissue cells such as cancer cells without causing an

6  undue risk of tissue necrosis.  '813 patent, col. 1:42-46 (the instrument "may be used to deliver

7  radiation from a radioactive source to target tissue within the human body of a desired intensity . . .

8  without overexposure of body tissues disposed between the radiation source and the target"); '204

9  patent, col. 2:28-33 (same); Su Decl., Ex. T at SRX-HOL00001536-7 (Contura Product Overview and

10  Dosimetry - REDACTED

11  

12      In light of the evidence produced to date, a reasonable jury would find (or certainly could find)

13  that the Contura performs substantially the same function as the inventions set forth in claim 12 of the

14  '813 patent and claim 17 of the '204 patent, in substantially the same way, to achieve substantially the

15  same result.

16  **V.   IN ANY EVENT, SENORX'S MOTION MUST BE DENIED**

17      Even if the Court were to disagree with each of Hologic's infringement arguments set forth

18  above and conclude that SenoRx's accused device does not meet the disputed claim terms, SenoRx's

19  Motion would still lack merit.  Infringement, whether literal or under the doctrine of equivalence, is a

20  question of fact.  *Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1326 (Fed.

21  Cir. 2007).  All justifiable inferences must be drawn in Hologic's favor.  *Id.*  The evidence produced by

22  SenoRx to date indicates, if it does not conclusively show, that the Contura meets the "predetermined

23  spacing" and "plurality . . ." elements of the patents-in-suit.  Therefore, SenoRx's Motion must be

24  denied.  While the jury ultimately may reject Hologic's arguments at trial, the infringement decision

25  should not be taken from them.  *Id.*

**VI.    HOLOGIC REQUESTS THE RIGHT TO SUPPLEMENT ITS OPPOSITION WITH RELEVANT EVIDENCE**

While Hologic believes the evidence presented definitively precludes summary judgment in favor of SenoRx, Hologic requests the right to supplement its Opposition with evidence discovered prior to the June 25, 2008 hearing. *See* Fed. R. Civ. P. 56(c) (permitting an opposing party to serve opposing affidavits before the hearing day).

**VII.    CONCLUSION**

For the foregoing reasons, SenoRx's Contura meets the "predetermined constant spacing. . .," "predetermined spacing . . .," "plurality of radioactive solid particles . . .," and "plurality of solid radiation sources" limitations of the '813 and '204 patents. At the very least, the evidence precludes entry of summary judgment for SenoRx. Hologic respectfully requests that SenoRx's Motion be denied.

Dated: June 4, 2008                                    HOWREY LLP


By:    _____/s/_____
       Henry C. Su


HOWREY LLP
Attorneys for Plaintiffs
Hologic, Inc., Cytyc Corporation,
 and Hologic LP

**PROOF OF SERVICE**

I am employed in the County of San Mateo, State of California. I am over the age of 18 and not a party to the within action. My business address is 1950 University Avenue, 4th Floor, East Palo Alto, California 94303.

On June 4, 2008, I served on the interested parties in said action the within:

**PLAINTIFFS' OPPOSITION TO DEFENDANT SENORX, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT ('813 PATENT, CLAIMS 11 & 12; '204 PATENT, CLAIMS 4 & 17; AND '142 PATENT, CLAIM 6) (PUBLIC VERSION with exhibits and CONFIDENTIAL VERSION with SEALED EXHIBITS A, D THROUGH P, S, AND T); DECLARATION OF HENRY C. SU IN SUPPORT OF OPPOSITION TO SENORX, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT ('813 PATENT, CLAIMS 11 & 12; '204 PATENT, CLAIMS 4 & 17; AND '142 PATENT, CLAIM 6); MANUAL FILING NOTICE; CIVIL LOCAL RULE 79-5(B) AND (C) ADMINISTRATIVE MOTION TO FILE UNDER SEAL EXHIBITS A, D THROUGH P, S, AND T TO THE DECLARATION OF HENRY C. SU IN SUPPORT OF OPPOSITION TO SENORX, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NON-INFRINGEMENT ('813 PATENT, CLAIMS 11 & 12; '204 PATENT, CLAIMS 4 & 17; AND '142 PATENT, CLAIM 6); and [PROPOSED] ORDER GRANTING PLAINTIFFS' ADMINISTRATIVE MOTION TO FILE UNDER SEAL**

by placing a true copy thereof in a sealed envelope(s) addressed as stated below and causing such envelope(s) to be deposited in the U.S. Mail at East Palo Alto, California.

| | |
|---|---|
| F.T. Alexandra Mahaney (amahaney@wsgr.com) | Bruce R. Genderson (bgenderson@wc.com) |
| Natalie J. Morgan (nmorgan@wsgr.com) | Aaron P. Maurer (amaurer@wc.com) |
| Wilson Sonsini Goodrich & Rosati | Rachael Shanahan Rodman (rrodman@wc.com) |
| 12235 El Camino Real, Suite 200 | Adam D. Harber (aharber@wc.com) |
| San Diego, California 92130 | Williams & Connolly LLP |
| | 725 – 12th Street, N.W. |
| | Washington, D.C. 20005 |

[X]   (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

[X]   (EMAIL/ELECTRONIC TRANSMISSION) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the submission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

Executed on June 4, 2008, at East Palo Alto, California.

| | |
|---|---|
| Sonya Schwab | _Sonya Schwab_ |
| (Type or print name) | (Signature) |

Plaintiffs' Opposition To Defendant's Motion For
Partial Summary Judgment Of Non-Infringement
Case No. C08 00133 RMW (RS)

-23-