F.T. Alexandra Mahaney, State Bar No. 125984
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real, Suite 200
San Diego, CA  92130
Telephone: (858) 350-2300
Facsimile: (858) 350-2399
Email:  amahaney@wsgr.com

Bruce R. Genderson (admitted *pro hac vice*)
Aaron P. Maurer (admitted *pro hac vice*)
Rachel Shanahan Rodman (admitted *pro hac vice*)
Adam D. Harber (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth St. NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Defendant
SENORX, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| HOLOGIC, INC., CYTYC CORP. and HOLOGIC L.P., | Case No. 08-CV-0133 RMW |
| Plaintiffs, | **DEFENDANT SENORX, INC.'S OBJECTIONS TO AND MOTION TO STRIKE IMPROPER DOCTRINE OF EQUIVALENTS ARGUMENT** |
| v. | |
| SENORX, INC., | Date:  June 25, 2008 |
| Defendant. | Time:  2:00 p.m. |
| | Courtroom:  6, 4th Floor |
| | Judge:  Hon. Ronald M. Whyte |

1    Pursuant to Patent Local Rules 3-1, 3-6, and 3-7, Defendant SenoRx, Inc. ("SenoRx")

2    hereby objects to and moves to strike the portions of Plaintiffs' Opposition to Defendant

3    SenoRx, Inc.'s Motion for Partial Summary Judgment of Non-Infringement which assert,

4    without proper notice and without leave of Court, that SenoRx infringes the elements in claim 12

5    of the '813 patent and claim 17 of the '204 patent under the doctrine of equivalents.  In their

6    Preliminary Infringement Contentions, Plaintiffs asserted only literal infringement of these

7    claims.  Allowing them to add an assertion of infringement by equivalents at this late stage of

8    this expedited litigation would prejudice SenoRx and impede the timely resolution of this matter.

9    This District's Local Rules are clear.  If a party wishes to assert infringement under the

10    doctrine of equivalents, it must specify which elements are allegedly infringed under that

11    doctrine and where each element is found in the accused device.  Plaintiffs did not do that for the

12    claim elements at issue.  By contrast, Plaintiffs did specifically assert infringement under the

13    doctrine of equivalents for other claim elements.

14    After receiving Plaintiffs' Infringement Contentions, SenoRx deposed all six inventors of

15    the patents-in-suit, filed summary judgment motions, submitted expert reports, and served its

16    final written discovery allowed under the schedule, all without notice that it was defending

17    against a doctrine of equivalents allegation for the claim elements at issue.

18    This case is on an extremely expedited schedule at the insistence of Plaintiffs.  The claim

19    construction and summary judgment hearing will take place on June 25.  Discovery closes that

20    same date.  And the trial is scheduled to begin less than three weeks later, on July 14.  To allow

21    Plaintiffs at this late date to assert new theories of infringement would unfairly prejudice

22    SenoRx's ability to defend itself and adequately prepare for trial of this matter.  Accordingly,

23    this Court should strike the portions of Plaintiffs' Opposition asserting the doctrine of

24    equivalents for the elements in claim 12 of the '813 patent and claim 17 of the '204 patent.

25    **BACKGROUND**

26    The relevant timeline underlying this motion is clear and undisputed.  On May 6,

27    Plaintiffs served their Preliminary Infringement Contentions on SenoRx.  Those contentions

28

1    asserted that the elements in claim 12 of the '813 patent and claim 17 of the '204 patent were

2    "<u>literally</u> infringed." Ex. 1 (Preliminary Infringement Contentions), at Appx. A, p. 15; Appx. B,

3    p. 17 (emphasis in original). These claims require "a plurality of radioactive solid particles"

4    (claim 12) and "a plurality of solid radiation sources" (claim 17). Plaintiffs did not assert

5    infringement of these elements under the doctrine of equivalents, although they expressly

6    asserted infringement by equivalents for other claim elements. *See, e.g., id.* at Appx. A, p. 4.

7         On May 21, SenoRx moved for summary judgment of non-infringement on claims 12 and

8    17, asserting that the Contura does not contain either a "a plurality of radioactive solid particles"

9    or "a plurality of solid radiation sources." *See* Dkt. No. 131. After receiving SenoRx's motion

10   establishing that the Contura does not infringe those claims, Plaintiffs sent a letter on May 28

11   stating generally that "to the extent that any of the elements of any of the asserted claims is

12   determined not to be literally present in SenoRx's Contura MLB, Hologic will be asserting

13   infringement under the doctrine of equivalents." Ex. 2 (May 28 Letter). The letter did not

14   identify for which claims Plaintiffs were asserting the doctrine of equivalents or provide any of

15   the information required to state an infringement contention under Patent L.R. 3-1. That same

16   week, SenoRx responded that it was too late for Plaintiffs to add unspecified infringement

17   contentions for unidentified claim terms. *See* Ex. 3 (May 30 Letter). Plaintiffs did not seek

18   leave of Court to amend their Infringement Contentions.

19        On June 4, after SenoRx had deposed all six inventors of the patents-in-suit, filed expert

20   reports, and served its final written discovery requests, Plaintiffs filed their Opposition to

21   SenoRx's Motion for Summary Judgment of Non-Infringement. In that Opposition, Plaintiffs

22   articulate for the first time their allegation that the Contura infringes the elements in claims 12

23   and 17 under the doctrine of equivalents. To date, Plaintiffs have not sought leave to amend

24   their Preliminary Infringement Contentions.

## ARGUMENT

26        The Local Rules of this District require that a party claiming patent infringement state

27   and define the basis for its claims early in litigation. "The rules are designed to require parties to

28

1  crystallize their theories of the case early in litigation and to adhere to those theories once they

2  have been disclosed."  *Bd. of Tr. of the Leland Stanford Junior Univ. v. Roche Molecular Sys.,*

3  *Inc.*, No. C05-04158, 2008 WL 624771, *2 (N.D. Cal. Mar. 4, 2008) (quoting *Integrated Circuit*

4  *Sys., Inc. v. Realtek*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004)).  They advance this purpose

5  "by making it difficult subsequently to revise claim charts through eleventh hour 'discovery' of

6  facts.  Unlike the liberal policy for amending pleadings, the philosophy behind claim charts is

7  decidedly conservative, and designed to prevent the 'shifting sands' approach to claim

8  construction [and] ensure that litigants put all their cards on the table up front."  *Id.*; *see also*

9  *Berger v. Rossignol Ski Co., Inc.*, No. C05-02523, 2003 WL 1095914, *3 (N.D. Cal. Apr. 25,

10  2006) (hereinafter "*Berger I*") ("Although federal courts are generally lenient in allowing parties

11  to amend pleadings, such is not the case with amending preliminary infringement contentions.").

12  Preventing the "shifting sands" approach is particularly important in a case like this one, where

13  SenoRx has had only minimal time to prepare its defense under the schedule insisted on by

14  Plaintiffs.  As explained below, Plaintiffs' attempt to change their theory of infringement for the

15  elements at issue is improper and directly contrary to both the spirit and letter of the Local Rules.

16  **I.    PLAINTIFFS' PRELIMINARY INFRINGEMENT CONTENTIONS DO NOT**
17  **ASSERT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS FOR**
    **THE ELEMENTS IN CLAIM 12 OF THE '813 PATENT AND CLAIM 17 OF THE**
18  **'204 PATENT**

19  To assert infringement under the doctrine of equivalents, a party must in its Preliminary

20  Infringement Contentions "identify 'where each element of each asserted claim is found within

21  each Accused Instrumentality' and [ ] indicate 'whether each element of each asserted claim' is

22  present under the doctrine of equivalents."  *MEMC Electronic Materials v. Mitsubishi Materials*

23  *Silicon Corp.*, No. C01-4925, 2004 WL 5363616, *5 (N.D. Cal. Mar. 2, 2004) (quoting Patent

24  L.R. 3-1(c) & (d)).  As noted above, for the two claim terms at issue, Plaintiffs did not make such

25  contentions.  Rather, they alleged only that both claim elements are "literally infringed."  Ex. 1

26  (Preliminary Infringement Contentions), at Appx. A, p. 15; Appx. B, p. 17 (emphasis in

27  original).

28

1    While Plaintiffs did include in their Infringement Contentions a boilerplate footnote

2    purportedly reserving the right to assert the doctrine of equivalents in the future for any of the

3    asserted claim elements, this is plainly insufficient to put SenoRx on notice of the claim or to

4    preserve Plaintiffs' recently announced new contentions.  In a footnote on the first page of their

5    claim charts, Plaintiffs state that "[t]o the extent that further discovery shows any element of an

6    asserted claim is not present literally, Hologic will rely at least on the identified evidence to

7    show that the element is present under the doctrine of equivalents."[1]  Ex. 1 (Preliminary

8    Infringement Contentions), at Appx. A, p. 1 n.2; Appx. B, p. 1 n.2.

9    In *MEMC*, this Court rejected the notion that such a statement preserves a litigant's right

10   to assert the doctrine of equivalents, noting that the plaintiff's indication in its preliminary

11   infringement contentions that it "expressly reserves the right to augment and supplement its

12   position on whether there is infringement under the doctrine of equivalents of any element of the

13   asserted claims after discovery from defendants" was not sufficient to assert infringement on this

14   theory.  2004 WL 5363616, at *4.  As the court held, such statements do not "identify 'where

15   each element of each asserted claim is found within each Accused Instrumentality' and [ ]

16   indicate 'whether each element of each asserted claim' is present under the doctrine of

17   equivalents," as the Local Rules require.  *Id.* at *5.  Moreover, any assertion by Plaintiffs that

18   they "'qualified' their contentions by stating that they were subject to revision is immaterial; a

19   party cannot unilaterally amend the Patent Local Rules."  *Berger I*, 2006 WL 1095914, at *4.

20

21

22

---

23   [1] In contrast to how Plaintiffs handled the claim elements at issue in this motion, they were
24   explicit in identifying where other claim elements were alleged to be infringed under the doctrine
     of equivalents.  For instance, with respect to claim 1(b) of the '813 patent, Plaintiffs provided an
25   entire paragraph of explanation for their allegation that the five treatment lumens of the Contura
     and the area between and surrounding these lumens constitutes an inner spatial volume under the
26   doctrine of equivalents.  The conclusion of the paragraph is: "This claim element is thus
     infringed under the <u>doctrine of equivalents</u>."  Ex. 1 (Preliminary Infringement Contentions), at
27   Appx. A, p. 4 (emphasis in original).

28

1    Accordingly, Plaintiffs' Preliminary Infringement Contentions do not assert infringement

2   of the elements in claim 12 of the '813 patent and claim 17 of the '204 patent under the doctrine

3   of equivalents.

4   **II.    PLAINTIFFS HAVE NO BASIS TO AMEND THEIR PRELIMINARY
            INFRINGEMENT CONTENTIONS**

5
            Under this District's Local Rules, a "party's 'Preliminary Infringement Contentions' . . .
6
    shall be deemed to be that party's final contentions" unless "a party claiming patent infringement
7
    believes in good faith that (1) the Court's Claim Construction Ruling or (2) the documents
8
    produced pursuant to Patent L.R. 3-4 [ ] require[ ], not later than 30 days after service by the
9
    Court of its Claim Construction Ruling, that [the] party [ ] serve 'Final Infringement
10
    Contentions' without leave of court." Patent L.R. 3-6. "If the amendment does not fall into this
11
    exception, then amendments of preliminary or final infringement contentions 'may be made only
12
    by order of the Court, which shall be entered only upon a showing of good cause.'" *Stanford*
13
    *Univ.*, 2008 WL 624771, at *2 (quoting Patent L.R. 3-7).
14
            None of these exceptions apply here. And given the pace of this case, allowing Plaintiffs
15
    to change their infringement contentions at this late stage would unfairly prejudice SenoRx.
16
            **A.    Plaintiffs Have No "Good Faith" Basis For Amending Their Infringement
17                  Contentions Under Patent L.R. 3-6(a).**

18          As explained above, a party may only modify its preliminary infringement contentions

19   without leave of court if it "believes in good faith that (1) the Court's Claim Construction Ruling

20   or (2) the documents produced pursuant to Patent L.R. 3-4 so requires," and it "serve[s] 'Final

21   Infringement Contentions' with respect to the information required by Patent L.R. 3-1(c) and

22   (d)." Patent L.R. 3-6(a).[2]

23

24   _____

25      [2] SenoRx notes that the timing and operation of Patent L.R. 3-6(a) is clearly directed to cases
     proceeding under a normal schedule. In such cases, there would be little prejudice to a defendant
26   if a plaintiff amended its preliminary infringement contentions for the reasons stated in Rule 3-
     6(a) within 30 days of the court's claim construction order. Plainly, given the expedited
27   schedule here, this is far from the typical case contemplated in the Patent Local Rules.

28

1    As an initial matter, Plaintiffs have not served amended infringement contentions, either

2    when they filed their Opposition to SenoRx's Summary Judgment Motion, which asserted for the

3    first time that the elements in claim 12 of the '813 patent and claim 17 of the '204 patent were

4    infringed under the doctrine of equivalents, or since.

5    This is for good reason. Plaintiffs cannot file amended infringement contentions under

6    Patent L.R. 3-6(a) because they have no good faith basis to do so based on either of the two

7    justifications provided in that rule. The Court has not issued its claim construction ruling, and

8    the documents produced pursuant to Patent L.R. 3-4 do not provide any information about how

9    the Contura is used that Plaintiffs did not know beforehand. *See Berger v. Rossignol Ski Co.,*

10   *Inc.*, No. C05-2523 CRB, 2006 WL 2038324, *2 (N.D. Cal. July 17, 2006) (stressing that when

11   "[n]either of th[e] exceptions [specifically noted in Patent L.R. 3-6(a)] applies to the

12   circumstances alleged by plaintiffs . . . a party must show good cause for amendment").

13   Plaintiffs knew when they filed their preliminary contentions that the Contura was used with a

14   single radionuclide at multiple locations. *See* Ex. 1 (Preliminary Infringement Contentions), at

15   Appx. A, p. 15; Appx. B, p. 17. Nevertheless, they made the express and volitional decision to

16   assert only literal infringement for these claims. Nothing has happened, or can happen, that

17   would provide a basis to relieve Plaintiffs from the consequences of that decision.

18   **B.    Plaintiffs Do Not Have "Good Cause" To Amend Their Infringement**
     **Contentions Under Patent L.R. 3-7.**

19

20   Given that Plaintiffs have no good faith basis to amend their infringement contentions

21   under Patent L.R. 3-6(a), they must obtain leave to amend under Patent L.R. 3-7 by showing

22   "good cause." They have not even sought the required leave, nor could they as the standard of

23   good cause is not met. A determination of "good cause" turns on "whether plaintiff was diligent

24   in amending its contentions" and the "prejudice to the non-moving party" as a result of the

25   amendment. *Stanford Univ.*, 2008 WL 624771, at *2.

26

27

28

1

**1.    Plaintiffs Did Not Act Diligently To Amend Their Preliminary Infringement Contentions.**

2     As explained above, Plaintiffs have learned no new information about the Contura since

3   serving their Preliminary Infringement Contentions that would justify their decision to wait until

4   all of their inventors had been deposed, summary judgment motions had been filed, expert

5   reports had been submitted, and the deadline for serving written discovery requests had passed

6   before asserting the doctrine of equivalents.  It is not the case that Plaintiffs "had *no* reason to

7   believe that [they] had *any* basis on which to assert the doctrine of equivalents" before June 4.

8   *See MEMC*, 2004 WL 5363616, at *5 (emphasis in original).

9     To the contrary, Plaintiffs were well aware when they served their contentions that the

10   Contura was not used with multiple radionuclides at the same time.  One of their bases for

11   asserting irreparable harm during the Preliminary Injunction phase of this case was that the

12   Contura was directly targeted at the MammoSite's market because the two devices used the same

13   afterloaders.  *See* Pls.' Reply Br. in Support of Motion for Preliminary Injunction (Dkt. No. 74),

14   at 13.  These afterloaders are only capable of delivering one radionuclide at a time.  In addition,

15   Plaintiffs' Preliminary Infringement Contentions recognize the use of a single radionuclide when

16   discussing literal infringement.  This is not a case where amended infringement contentions are

17   justified by facts that have actually changed during the course of litigation and a plaintiff acts

18   promptly upon learning them.  *See, e.g., ZiLOG v. Quicklogic Corp.*, No. C03-03725 JW, 2006

19   WL 563057 (N.D. Cal. Mar. 6, 2006) (granting leave to amend where the USPTO invalidated

20   certain claims of the patents-in-suit after plaintiff filed preliminary infringement contentions);

21   *Stanford Univ.*, 2008 WL 624771, at *3 (finding that the late assertion of infringement against an

22   additional product was not improper because "upon discovering that TaqMan products were

23   approved for sale in the United States, [plaintiff] immediately served amended contentions").

24   Nothing has changed here other than the legal theory Plaintiffs wish to assert.

25

**2.    SenoRx Would Be Prejudiced If Plaintiffs Were Allowed To Amend Their Infringement Contentions.**

26

27     Even if Plaintiffs had been diligent in seeking to amend their infringement contentions to

28   assert infringement under the doctrine of equivalents, SenoRx would be unfairly prejudiced if

1    Plaintiffs were allowed to add new theories at this late date.  *See Berger I*, 2006 WL 1095914, at

2    *4 (finding prejudice because "[b]ased on [the preliminary] contentions, defendant incurred

3    substantial costs in creating its preliminary invalidity contentions and [incurred] the costs

4    associated with preparing their motion for summary judgment").  Since receiving Plaintiffs'

5    contentions, SenoRx has deposed all six inventors of the patents-in-suit, filed summary judgment

6    motions, submitted expert reports, and served its final written discovery requests.  The schedule

7    of this case would not allow SenoRx the time necessary to take discovery and adequately defend

8    itself against Plaintiffs' newly asserted claims.  SenoRx would need to re-depose Plaintiffs'

9    inventors and serve additional written discovery only weeks before trial, to say nothing of

10   additional expert discovery.[3]  *See MEMC*, 2004 WL 5363616, at *5 ("Granting [plaintiff] leave

11   to amend its infringement contentions would require reopening discovery so that [the defendant]

12   could develop its evidence to prepare its defenses to [the additional infringement] theory.  This

13   prejudice . . . supplies an additional reason for denying the motion [to amend]."). *MEMC*, 2004

14   WL 5363616, at *5.

15          Accordingly, even absent the other factors which militate against allowing Plaintiffs to

16   amend their infringement contentions, such an amendment would unfairly prejudice SenoRx at

17   this stage of the case.

18

19

20   _____

21          [3] That Plaintiffs discussed the use of a single radionuclide at multiple locations in their
     assertion of literal infringement does not reduce the effect of, or prejudice from, their failure to

22   assert the doctrine of equivalents.  The two are distinct legal issues that require a different
     defense.  The issues raised by the assertion that a claim requiring a plurality of radioactive

23   sources is not *literally* infringed by a single source are very different from the factual issues
     relevant to whether a single source performs the same function in the same way with the same

24   result as a device that contains multiple sources present at the same time.  SenoRx had no notion
     it had to explore these issues, which would require fact and expert discovery regarding

25   differences between use of the Contura and a device that contains many high energy
     radionuclides inserted at the same time, such as, for instance, whether constructing and using the

26   latter device were practical, whether there are radiation risks or engineering problems with such
     devices, and how radiation attenuation would affect dose delivery.  Some of these issues would

27   require an additional expert who has not been retained at this point.

28

1

**CONCLUSION**

2          Because Plaintiffs have not asserted infringement under the doctrine of equivalents for

3   the claim elements in claims 12 of the '813 patent and 17 of the '204 patent, and have no basis to

4   assert new theories of infringement at this late date, SenoRx objections to and respectfully

5   requests that the Court strike argument regarding that theory from their Opposition to SenoRx's

6   Motion for Partial Summary Judgment of Non-Infringement (pages 18-21).

7

8   Dated: June 11, 2008

9                                              Respectfully submitted,

10

11                                             By:    s/F.T. Alexandra Mahaney

12                                             F.T. Alexandra Mahaney, State Bar No. 125984
                                               WILSON SONSINI GOODRICH & ROSATI
13                                             Professional Corporation
                                               12235 El Camino Real, Suite 200
14                                             San Diego, CA  92130
                                               Telephone: (858) 350-2300
15                                             Facsimile: (858) 350-2399
                                               Email:  amahaney@wsgr.com
16
                                               Bruce R. Genderson (admitted *pro hac vice*)
17                                             Aaron P. Maurer (admitted *pro hac vice*)
                                               Rachel Shanahan Rodman (admitted *pro hac vice*)
18                                             Adam D. Harber (admitted *pro hac vice*)
                                               WILLIAMS & CONNOLLY LLP
19                                             725 Twelfth St. NW
                                               Washington, DC 20005
20                                             Telephone: (202) 434-5000
                                               Facsimile: (202) 434-5029
21
22                                             Attorneys for Defendant and Counterclaimant
                                               SENORX, INC.
23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,
*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. C-08-0133 RMW (RS)

2

3

4    I, Janice Wright, declare:

5         I am and was at the time of the service mentioned in this declaration, employed in the
County of San Diego, California.  I am over the age of 18 years and not a party to the within
6    action.  My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

7         On June 11, 2008, I served a copy(ies) of the following document(s):

8    **DEFENDANT SENORX, INC.'S OBJECTIONS AND MOTION TO STRIKE
IMPROPER DOCTRINE OF EQUIVALENTS ARGUMENT**

9

10   on the parties to this action by the following means:

11        Henry C. Su (suh@howrey.com)              Attorneys for Plaintiffs
         Katharine L. Altemus (altemusk@howrey.com)  HOLOGIC, INC. CYTYC
12       HOWREY LLP                                 CORPORATION and
         1950 University Avenue, 4th Floor          HOLOGIC LP
13       East Palo Alto, CA  94303
         Telephone:  (650) 798-3500
14       Facsimile:  (650) 798-3600

15        Matthew Wolf (wolfm@howrey.com)            Attorneys for Plaintiffs
         Marc Cohn (cohnm@howrey.com)               HOLOGIC, INC. CYTYC
16       HOWREY LLP                                 CORPORATION and
         1229 Pennsylvania Avenue, NW               HOLOGIC LP
17       Washington, DC  20004
         Telephone:  (202) 783-0800
18       Facsimile:  (202) 383-6610

19   ☒  (BY MAIL)  I placed the sealed envelope(s) for collection and mailing by following the
20      ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real,
        Ste. 200, San Diego, CA.  I am readily familiar with WSGR's practice for collecting and
21      processing of correspondence for mailing with the United States Postal Service, said
        practice being that, in the ordinary course of business, correspondence with postage fully
22      prepaid is deposited with the United States Postal Service the same day as it is placed for
        collection.

23   ☒  (BY ELECTRONIC MAIL)  I caused such document(s) to be sent via electronic mail
24      (email) to the above listed names and email addresses.

     ☐  (BY PERSONAL SERVICE)  I caused to be delivered by hand to the addressee(s) noted
25      above.  I delivered to an authorized courier or driver to be delivered on the same date.  A
        proof of service signed by the authorized courier will be filed with the court upon
26      request.

27   ☐  (BY OVERNIGHT DELIVERY)  I placed the sealed envelope(s) or package(s), to the
        addressee(s) noted above, designated by the express service carrier for collection and
28      overnight delivery by following the ordinary business practices of Wilson Sonsini
        Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA.  I am readily
        familiar with WSGR's practice for collecting and processing of correspondence for

-1-

3380986_1.DOC

CERTIFICATE OF SERVICE                                        CASE NO. C-08-0133 RMW

1    overnight delivery, said practice being that, in the ordinary course of business,
     correspondence for overnight delivery is deposited with delivery fees paid or provided for
2    at the carrier's express service offices for next-day delivery the same day as the
     correspondence is placed for collection.

3    ☐    (BY FACSIMILE)  I caused to be transmitted by facsimile machine (number of sending
          facsimile machine is (858) 350-2399 at the time stated on the attached transmission
4         report(s) by sending the documents(s) to (see above).  The facsimile transmission(s)
          was/were reported as complete and without error.
5

6    ☒    (BY CM/ECF)  I caused such document(s) to be sent via electronic mail through the Case
          Management/Electronic Case File system with the U.S. District Court for the Northern
          District of California.
7

8         I declare under penalty of perjury under the laws of the United States that the above is true
     and correct, and that this declaration was executed on June 11, 2008.
9

10                                          _____
                                            Janice Wright
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3380986_1.DOC

CERTIFICATE OF SERVICE                                          CASE NO. C-08-0133 RMW

F.T. Alexandra Mahaney, State Bar No. 125984
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real, Suite 200
San Diego, CA  92130
Telephone:  (858) 350-2300
Facsimile:  (858) 350-2399
Email:  amahaney@wsgr.com

Bruce R. Genderson (*admitted pro hac vice*)
Aaron P. Maurer (*admitted pro hac vice*)
Rachel Shanahan Rodman (*admitted pro hac vice*)
Adam D. Harber (*admitted pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth St. NW
Washington, DC 20005
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029

Attorneys for Defendant
SENORX, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| HOLOGIC, INC., CYTYC CORP. and HOLOGIC L.P., <br><br> Plaintiffs, <br><br> v. <br><br> SENORX, INC., <br><br> Defendant. | Case No. 08-CV-0133 RMW <br><br> **DECLARATION OF ADAM D. HARBER IN SUPPORT OF DEFENDANT SENORX, INC.'S OBJECTIONS TO AND MOTION TO STRIKE IMPROPER DOCTRINE OF EQUIVALENTS ARGUMENT** <br><br> Date:  June 25, 2008 <br> Time:  2:00 p.m. <br> Courtroom:  6, 4th Floor <br> Judge:  Hon. Ronald M. Whyte |

DECLARATION OF ADAM D. HARBER IN SUPPORT
OF DEFENDANT SENORX, INC.'S OBJECTIONS TO
AND MOTION TO STRIKE IMPROPER DOCTRINE OF
EQUIVALENTS ARGUMENT

CASE NO. C08-0133 RMW (RS)

1    I, Adam D. Harber, declare that I am an associate at the law firm of Williams & Connolly

2    LLP, admitted pro hac vice to practice before this Court in the above-captioned matter.  I serve

3    as outside counsel for Defendant SenoRx, Inc.  The following declaration is based on my

4    personal knowledge, and if called upon to testify, I could and would competently testify as to the

5    matters set forth herein.

6        1.    Attached hereto as Exhibit 1 is a true and correct copy of selected pages of

7    Plaintiffs' Disclosure of Asserted Claims and Preliminary Infringement Contentions under Patent

8    Local Rule 3-1, dated May 6, 2008.

9        2.    Attached hereto as Exhibit 2 is a true and correct copy of a letter dated May 28,

10   2008 from Marc Cohn to Aaron Maurer.

11       3.    Attached hereto as Exhibit 3 is a true and correct copy of a letter dated May 30,

12   2008 from Aaron Maurer to Marc Cohn.

13

14   I declare under penalty of perjury that the foregoing is true and correct.

15

16   Dated:  June 11, 2008              By: _____

17                                           Adam D. Harber

18

19

20

21

22

23

24

25

26

27

28

1

CERTIFICATE OF SERVICE

U.S. District Court, Northern District of California,

*Hologic, Inc. et al. v. SenoRx, Inc.*

Case No. C-08-0133 RMW (RS)

2

3

4    I, Janice Wright, declare:

5    I am and was at the time of the service mentioned in this declaration, employed in the

County of San Diego, California. I am over the age of 18 years and not a party to the within

6    action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

7    On June 11, 2008, I served a copy(ies) of the following document(s):

8    **DECLARATION OF ADAM D. HARBER IN SUPPORT OF DEFENDANT**

**SENORX, INC.'S OBJECTIONS AND MOTION TO STRIKE IMPROPER**

9    **DOCTRINE OF EQUIVALENTS ARGUMENT**

10

11   on the parties to this action by the following means:

| | |
|---|---|
| Henry C. Su (suh@howrey.com) | Attorneys for Plaintiffs |
| Katharine L. Altemus (altemusk@howrey.com) | HOLOGIC, INC. CYTYC |
| HOWREY LLP | CORPORATION and |
| 1950 University Avenue, 4th Floor | HOLOGIC LP |
| East Palo Alto, CA 94303 | |
| Telephone: (650) 798-3500 | |
| Facsimile: (650) 798-3600 | |
| | |
| Matthew Wolf (wolfm@howrey.com) | Attorneys for Plaintiffs |
| Marc Cohn (cohnm@howrey.com) | HOLOGIC, INC. CYTYC |
| HOWREY LLP | CORPORATION and |
| 1229 Pennsylvania Avenue, NW | HOLOGIC LP |
| Washington, DC 20004 | |
| Telephone: (202) 783-0800 | |
| Facsimile: (202) 383-6610 | |

☒ (BY MAIL) I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☒ (BY ELECTRONIC MAIL) I caused such document(s) to be sent via electronic mail (email) to the above listed names and email addresses.

☐ (BY PERSONAL SERVICE) I caused to be delivered by hand to the addressee(s) noted above. I delivered to an authorized courier or driver to be delivered on the same date. A proof of service signed by the authorized courier will be filed with the court upon request.

☐ (BY OVERNIGHT DELIVERY) I placed the sealed envelope(s) or package(s), to the addressee(s) noted above, designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily

-1-

3381051_1.DOC

1    familiar with WSGR's practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business,
2    correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery the same day as the
3    correspondence is placed for collection.

4    ☐   (BY FACSIMILE)  I caused to be transmitted by facsimile machine (number of sending facsimile machine is (858) 350-2399 at the time stated on the attached transmission
5    report(s) by sending the documents(s) to (see above).  The facsimile transmission(s) was/were reported as complete and without error.

6    ☒   (BY CM/ECF)  I caused such document(s) to be sent via electronic mail through the Case Management/Electronic Case File system with the U.S. District Court for the Northern
7    District of California.

8        I declare under penalty of perjury under the laws of the United States that the above is true
9    and correct, and that this declaration was executed on June 11, 2008.

10
11                                                          _____
                                                            Janice Wright
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

3381051_1.DOC

CERTIFICATE OF SERVICE                                    CASE NO. C-08-0133 RMW

# Exhibit 1

1  Henry C. Su (SBN 211202; suh@howrey.com)
   Katharine L. Altemus (SBN 227080; altemusk@howrey.com)
2  HOWREY LLP
   1950 University Avenue, 4th Floor
3  East Palo Alto, California  94303
   Telephone:  (650) 798-3500
4  Facsimile:  (650) 798-3600

5  Robert Ruyak
   Matthew Wolf (Admitted *Pro Hac Vice*)
6  Marc Cohn (Admitted *Pro Hac Vice*)
   HOWREY LLP
7  1299 Pennsylvania Avenue, NW
   Washington, DC 20004
8  Telephone:  (202) 783-0800
   Facsimile:  (202) 383-6610

9
   Attorneys for Plaintiffs
10 HOLOGIC, INC., CYTYC CORPORATION and HOLOGIC L.P.

11              UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14 HOLOGIC, INC., CYTYC CORPORATION,        Case No. C08 00133 RMW (RS)
   and HOLOGIC L.P.,
15                                          **PLAINTIFFS' DISCLOSURE OF ASSERTED
                    Plaintiffs,             CLAIMS AND PRELIMINARY
16                                          INFRINGEMENT CONTENTIONS UNDER
            vs.                             PATENT LOCAL RULE 3-1**
17
   SENORX, INC.,
18
                    Defendant.
19

20 AND RELATED COUNTERCLAIMS.

21

22

23

24

25

26

27

28

Plaintiffs' Disclosure of Asserted Claims and
Preliminary Infringement Contentions
Case No.  C08 00133 RMW (RS)

# Appendix A

**APPENDIX A**
**INFRINGED CLAIMS OF U.S. Patent No. 5,913,813**

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| *1. Apparatus for delivering radioactive emissions to a body location with a uniform radiation profile, comprising:* | <u>CONTENTION:</u><br><br>The Contura™ Multi-Lumen Balloon Source Applicator ("Contura™") (formerly marketed under the product name SenoRad) is an interstitial brachytherapy apparatus designed to deliver intracavity radiation to the margins of the cavity remaining after surgical resection of breast cancer.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 22; Ref. No. 26; Ref. No. 34** at SRX- |

---

[1] Asserted Claims 11 and 12 depend from unasserted Claims 1, 2, and 8 (for which, therefore, the elements are matched to features of the accused instrumentality).

[2] The "Support" cited herein is exemplary, and although sufficient to support a claim of infringement, is not the complete factual record on which Hologic intends to rely to prove infringement at trial.  To the extent that further discovery shows any element of an asserted claim is not present literally, Hologic will rely at least on the identified evidence to show that the element is present under the doctrine of equivalents.

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction. |
| (b) an inner spatial volume disposed proximate the distal end of the catheter body member; | <u>CONTENTION:</u><br><br>Each of the five treatment lumens inside the Contura™ balloon comprises a region of space surrounded by an outer spatial volume and enclosed by a polymeric film wall and therefore embodies an inner spatial volume proximate to the distal end of the Contura™ catheter.  **Ref. No. 24** at 28.  Alternatively, the radionuclide itself comprises a region of space surrounded by an outer spatial volume and defined by the outside surface of a solid radionuclide sphere and therefore embodies an inner spatial volume. *Id*.  This claim element is thus <u>literally</u> infringed.<br><br>Alternatively, the five treatment lumens and the area within the balloon between and surrounding those lumens are insubstantially different from a region of space surrounded by an outer spatial volume and either enclosed by a polymeric film wall or defined by the outside surface of a solid radionuclide sphere.  They function in substantially the same way (controlled positioning of a radiation source within the outer spatial volume) to provide substantially the same result (delivery of a prescribed radiation dose to target tissue).  This claim element is thus infringed under the <u>doctrine of equivalents</u>.<br><br>**<u>SUPPORT:</u>**<br><br>**Ref. No. 24** at 28.<br><br> "Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen." **Ref. No. 1** at Device description.<br><br> "Five radiation source wire lumens are provided; one central lumen located along the long axis of the applicator and four curved lumens symmetrically offset from the central lumen." **Ref. No. 2** at page 2.<br><br>An illustration of the Contura™ applicator shows the five treatment lumens within **Ref. No. 3.** |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| **12. The apparatus as in claim 1 wherein the material containing a radionuclide comprises a plurality of radioactive solid particles placed at predetermined locations within the inner spatial volume to provide a desired composite radiation profile.** | <u>CONTENTION:</u><br><br>During treatment using the Contura, the radiation source wire lumens to which the radionuclide(s) is/are attached are inserted into predetermined locations (dwell positions) within the treatment lumens at the distal end of the device. The multiple treatment lumens of the Contura™ allow multiple solid radiation sources (e.g., single radionuclide sources on multiple separate source wires) to be arrayed simultaneously within separate lumens to provide a desired composite radiation profile within the targeted tissue. Alternatively, a single solid radionuclide on a source wire can be inserted sequentially into one or more predetermined locations within multiple treatment lumens to provide a desired composite radiation profile within the targeted tissue. This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 12 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients. *See* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
|  | SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 22**; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use.<br><br>**SUPPORT:**<br><br> "The radiation balloon uses vacuum to remove excess air and fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens."  **Ref. No. 17** at SRX-HOL00006639.<br><br>"Each lumen can accommodate 8 dwell positions."  **Ref. No. 17** at SRX-HOL00006642.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30**; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, |

| Asserted Claim[1] | Contura™ Multi-Lumen Balloon Source Applicator [2] |
|---|---|
| | 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>*See also* **Ref. No. 21**. |

# Appendix B

APPENDIX B
INFRINGED CLAIMS OF U.S. Patent No. 6,413,204

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| *1. An interstitial brachytherapy apparatus for delivering radioactive emissions to an internal body location comprising:* | CONTENTION:<br><br>The Contura Multi-Lumen Balloon Source Applicator ("Contura™") is an interstitial brachytherapy apparatus designed to deliver intracavity radiation to the margins of the cavity remaining after surgical resection of breast cancer.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30***;* **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35**; **Ref. No. 36**; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38**; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 1 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at |

---

[1] Each asserted claim is entitled to a priority date of July 24, 1997.

[2] Asserted Claims 4 and 17 depend from unasserted claims 1, 2, and 3 (for which, therefore, the elements are matched to features of the accused instrumentality).

[3] The "Support" cited herein is exemplary, and although sufficient to support a claim of infringement, is not the complete factual record on which Hologic intends to rely to prove infringement at trial.  To the extent that further discovery shows any element of an asserted claim is not present literally, Hologic will rely on at least the identified evidence to show that the element is present under the doctrine of equivalents.

| Asserted Claim[1,2] | Contura™Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | HOL00005564.<br><br>"The radiation balloon uses vacuum to remove excess air and fluid and to adhere closely to often irregularly shaped lumpectomy cavities in order to deliver precise radiation dosing through multiple seed lumens."  **Ref. No.17** at SRX-HOL00006639.<br><br>"Use ultrasound to confirm good tissue to balloon conformance and document skin spacing."  **Ref. No. 17** at SRX-HOL00006650.<br><br>"Contour anatomy and target."  **Ref. No. 17** at SRX-HOL00006654.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17; Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22; Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26; Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27; Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |
| **17. The apparatus of claim 1, wherein the radiation source is a plurality of solid radiation sources arranged to provide an isodose profile having a shape substantially similar to the shape of the outer spatial volume.** | <u>CONTENTION:</u><br><br>The multiple treatment lumens of the Contura allow multiple solid radiation sources to be arrayed simultaneously within two or more separate treatment lumens to provide an isodose profile having a shape substantially similar to the shape of the balloon within the targeted tissue.  Alternatively, the multiple treatment lumens of the Contura allow one or more solid radiation sources to be arrayed at different points in time within one or more separate treatment lumens to provide an isodose profile having a shape |

| Asserted Claim[1,2] | Contura™Multi-Lumen Balloon Source Applicator[3] |
|---|---|
|  | substantially similar to the shape of the balloon within the targeted tissue.  Appropriate pre-treatment dosimetry planning (with multiple dwell locations, multiple dwell times and/or use of multiple lumens) allows the isodose profile to be contoured to be substantially similar to the shape to the outer spatial volume defined by circumference of the expandable balloon.  This claim element is thus <u>literally</u> infringed.<br><br>SenoRx Inc. ("SenoRx") makes, uses, offers for sale, and sells an interstitial brachytherapy applicator marketed under the product name Contura™ Multi-Lumen Balloon Source Applicator for Brachytherapy.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 17***;* **Ref. No. 23** at SRX-HOL00005396, 5404; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 27***;* **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30***;* **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 35***;* **Ref. No. 36***;* **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38***;* **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx also induces and contributes to direct infringement by others of claim 17 by making, using, marketing, offering for sale, selling, supplying, and distributing the Contura™ to physicians and health care facilities for use in treating breast cancer patients.  *See* **Ref. No. 7***;* **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17***;* **Ref. No. 22***;* **Ref. No. 26***;* **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 28** at SRX-HOL00004163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 37** at SRX-HOL00004778; **Ref. No. 39** at SRX-HOL00001540; **Ref. No. 41** at SRX-HOL00001792-1794; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 42** at SRX-HOL00002016-2019, 2030.<br><br>SenoRx has made, used, marketed, offered for sale, sold, supplied, and distributed the Contura knowing that it is especially made or especially adapted for infringing use. **Ref. No. 23** at SRX-HOL5408-5429; **Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55.   The Contura is not a staple article or commodity of commerce suitable for substantial non-infringing use. |

| Asserted Claim[1,2] | Contura™ Multi-Lumen Balloon Source Applicator[3] |
|---|---|
| | **SUPPORT:**<br><br>**Ref. No. 9** at SRX-HOL00006494; **Ref. No. 17** at 6655-6656; **Ref. No. 22** at 10, 16.<br><br>*See also* evidence attached to Plaintiffs' Motion For Preliminary Injunction, Plaintiffs' Reply Brief In Support of Motion For Preliminary Injunction, and evidence cited in Judge Whyte's Order Denying Plaintiffs' Motion For Preliminary Injunction.<br><br>*See also* **Ref. No. 7**; **Ref. No. 8**; **Ref. No. 10** at SRX-HOL00002354; **Ref. No. 11** at SRX-HOL00002360-2362; **Ref. No. 12** at 1, 2; **Ref. No. 13** at 39; **Ref. No. 14** at SRX-HOL00002371, 2373; **Ref. No. 15** at SRX-HOL00007179-7186; **Ref. No. 16** at SRX-HOL00006591-6601; **Ref. No. 17**; **Ref. No. 23** at SRX-HOL00005396, 5404, 5408-5429; **Ref. No. 22**; **Ref. No. 25** at SRX-HOL00003386; **Ref. No. 26**; **Ref. No. 34** at SRX-HOL00006734, 6780-3784; **Ref. No. 27**; **Ref. No. 28** at SRX-HOL00004140-4149, 4163-4195; **Ref. No. 29** at SRX-HOL00004197-4215; **Ref. No. 30; Ref. No. 31** at HOLOGIC0048742; **Ref. No. 32** at HOLOGIC0048754-55; **Ref. No. 33** at SRX-HOL00004457-4459; **Ref. No. 34** at SRX-HOL00006734, 6740, 6743-6745, 6760-6773, 6780-3784; **Ref. No. 35; Ref. No. 36; Ref. No. 37** at SRX-HOL00004778; **Ref. No. 38; Ref. No. 39** at SRX-HOL00001540; **Ref. No. 40** at SRX-HOL00001675-1688, 1692-1702; **Ref. No. 41** at SRX-HOL00001784-1788, 1792-1794; **Ref. No. 42** at SRX-HOL00002016-2019, 2030. |

# Exhibit 2

# HOWREY LLP

1299 Pennsylvania Avenue, NW
Washington, DC 20004-2402
T 202.783.0800
F 202.383.6610
www.howrey.com

Marc A. Cohn
cohnm@howrey.com

Direct Dial 202.383.6858
TK#6142.File 01990.0009.000000

May 28, 2008

**VIA EMAIL**

Mr. Aaron Maurer, Esq.
Williams & Connolly LLP
725 Twelfth Street N.W.
Washington, DC 20005-5901

      Re:    *Hologic et al. v. SenoRx, Inc.,*
                 C.A. No. C08-00133 RMW

Dear Mr. Maurer:

      Please note that, per footnote 2 to Hologic's preliminary infringement contentions, to the extent that any of the elements of any of the asserted claims is determined not to be literally present in SenoRx's Contura MLB, Hologic will be asserting infringement under the doctrine of equivalents. Hologic's proof will consist of demonstrating that (should any element not be present literally) element(s) are present in the Contura MLB that perform the same function, in the same, way, to achieve the same result as the claimed element and/or that the element(s) present in the Contura MLB are otherwise insubstantially different.

      Sincerely,

*FOR:*

Marc A. Cohn

# Exhibit 3

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

AARON P. MAURER
(202) 434-5282
amaurer@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 30, 2008

*VIA ELECTRONIC MAIL*

Marc Cohn, Esq.
Howrey LLP
1299 Pennsylvania Ave., NW
Washington, DC  20004

        Re:    **Hologic, et al. v. SenoRx, Inc. (No. C08-00133 RMW)**

Dear Marc,

        I write regarding your letter of May 28, 2008.  In your letter, Plaintiffs purport to reserve the right to assert infringement under the doctrine of equivalents for any element found not to literally infringe.  Plaintiffs do not identify in the letter any particular element of any claim that allegedly is infringed under the doctrine of equivalents.  And Plaintiffs do not identify how equivalency would result, other than a blanket statement that "Hologic's proof will consist of demonstrating that (should any element not be present literally) element(s) are present in the Contura MLB that perform the same function, in the same, way, to achieve the same result as the claimed element and/or that the element(s) present in the Contura MLB are otherwise insubstantially different."

        SenoRx will object to Plaintiffs asserting infringement under the doctrine of equivalents as to any element of a claim for which equivalency was not identified as a theory of infringement according to Local Rule 3-1.  Your letter is an untimely and insufficient attempt to amend Plaintiffs' infringement contentions.  In those contentions, you specified particular claim elements you contended were present under the doctrine of equivalents and described the basis for your contention as to those elements.  We have now taken the depositions of four of Plaintiffs' inventors, with two others scheduled today and tomorrow.  Summary judgment motions of non-infringement already are on file.  And expert reports are due on Wednesday.

        The blanket statement in your letter does not identify which elements allegedly are infringed under the doctrine of equivalents, much less where each element of each asserted claim is found within the Contura.  Accordingly, it is insufficient under the Local Rules, and puts SenoRx at a severe disadvantage in trying to respond or offer a defense to these belated claims.

WILLIAMS & CONNOLLY LLP
    Marc Cohn, Esq.
    May 30, 2008
    Page 2

Sincerely,

Aaron P. Maurer