F.T. Alexandra Mahaney, State Bar No. 125984
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
12235 El Camino Real, Suite 200
San Diego, CA 92130
Telephone: (858) 350-2300
Facsimile: (858) 350-2399
Email: amahaney@wsgr.com

Bruce R. Genderson (admitted *pro hac vice*)
Aaron P. Maurer (admitted *pro hac vice*)
F. Greg Bowman (admitted *pro hac vice*)
Rachel Shanahan Rodman (admitted *pro hac vice*)
Adam D. Harber (admitted *pro hac vice*)
WILLIAMS & CONNOLLY LLP
725 Twelfth St. NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

Attorneys for Defendant
SENORX, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOGIC, INC., CYTYC CORP., and HOLOGIC L.P., <br><br> Plaintiffs, <br><br> v. <br><br> SENORX, INC., <br><br> Defendant. | CASE NO.: C08-0133 RMW <br><br> **MOTION FOR ADMINISTRATIVE RELIEF FOR PERMISSION TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFS PURSUANT TO CIVIL LOCAL RULES 7-11 AND 7-12** |

1    Plaintiffs Hologic, Inc., Cytyc Corporation, and Hologic L.P. and Defendant SenoRx, Inc.

2  hereby jointly move, pursuant to Civil Local Rule 7-11, for permission to file supplemental claim

3  construction briefs.  In support of this motion, the parties submit a stipulation pursuant to Civil

4  Local Rule 7-12.

5    The claim construction hearing in this case is scheduled to be held on June 25, 2008.  The

6  parties submitted opening claim construction briefs on May 21, 2008 and responsive claim

7  construction briefs May 30, 2008.  Subsequent to submitting these briefs, the parties determined

8  there was a dispute as to the meaning of additional claim terms in the patents-in-suit that were

9  not raised in the parties' original claim construction briefs.  Accordingly, the parties request that

10  the Court consider and issue a ruling on the parties' supplemental claim constructions of the

11  disputed terms.  Plaintiffs' supplemental claim construction brief, with exhibits, is attached as

12  Exhibit A to this Motion.  Defendant's supplemental claim construction brief, with exhibits, is

13  attached as Exhibit B to this Motion.

14

15  Dated:  June 20, 2008                    HOWREY LLP

16                                           By: _____/s/Marc Cohn_____

17                                               Marc Cohn
                                                 HOWREY LLP
18                                               1299 Pennsylvania Avenue, N.W.
                                                 Washington, D.C.  20004
19
                                             Attorneys for Plaintiffs Hologic, Inc.,
20                                           Cytyc Corporation, and Hologic L.P.

21

22
                                             WILLIAMS & CONNOLLY LLP
23
                                             By: _____/s/Aaron P. Maurer_____
24
                                                 Bruce R. Genderson
25                                               Aaron P. Maurer
                                                 Rachel Shanahan Rodman
26                                               Adam D. Harber
                                                 WILLIAMS & CONNOLLY LLP
27                                               725 12th Street, N.W.
                                                 Washington, D.C.  20005
28

MOTION FOR ADMINISTRATIVE RELIEF                      CASE NO. C08-0133 RMW
FOR PERMISSION TO FILE
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEFS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  ____/s/F.T. Alexandra Mahaney_____
       F.T. Alexandra Mahaney
       amahaney@wsgr.com

Attorneys for Defendant
SENORX, INC.

1

**Filer's Attestation**

2        I, F.T. Alexandra Mahaney, am the ECF User whose identification and password are being

3 used to file this Motion for Administrative Relief for Permission to File Supplemental Claim

4 Construction Briefs.  Pursuant to General Order No. 45, ¶ X(B), I attest under penalty of perjury

5 that concurrence in the filing of the document has been obtained from the other signatures above.

6

7                                           By:  ___/s/F.T. Alexandra Mahaney_____
                                                   F.T. Alexandra Mahaney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE
U.S. District Court, Northern District of California,
*Hologic, Inc. et al. v. SenoRx, Inc.*
Case No. C-08-0133 RMW (RS)

I, Kirsten Blue, declare:

I am and was at the time of the service mentioned in this declaration, employed in the County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 12235 El Camino Real, Ste. 200, San Diego, CA, 92130.

On June 20, 2008, I served a copy(ies) of the following document(s):

**MOTION FOR ADMINISTRATIVE RELIEF FOR PERMISSION TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFS PURSUANT TO CIVIL LOCAL RULES 7-11 AND 7-12**

**EXHIBIT A TO MOTION FOR ADMINISTRATIVE RELIEF TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFS: PLAINTIFFS' SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF; DECLARATION OF MARC COHN**

**EXHIBIT B TO MOTION FOR ADMINISTRATIVE RELIEF FOR PERMISSION TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFS: DEFENDANT SENORX, INC'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF [REDACTED VERSION]; DECLARATION OF ADAM HARBER**

**STIPULATION IN SUPPORT OF MOTION FOR ADMINISTRATIVE RELIEF FOR PERMISSION TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFS PURSUANT TO CIVIL LOCAL RULES 7-11 AND 7-12**

**[PROPOSED] ORDER GRANTING MOTION FOR ADMINISTRATIVE RELIEF FOR PERMISSION TO FILE SUPPLEMENTAL CLAIM CONSTRUCTION BRIEFS PURSUANT TO CIVIL LOCAL RULES 7-11 AND 7-12**

on the parties to this action by the following means:

| | |
|---|---|
| Henry C. Su (suh@howrey.com) | Attorneys for Plaintiffs |
| Katharine L. Altemus (altemusk@howrey.com) | HOLOGIC, INC. CYTYC |
| HOWREY LLP | CORPORATION and |
| 1950 University Avenue, 4th Floor | HOLOGIC LP |
| East Palo Alto, CA 94303 | |
| Telephone: (650) 798-3500 | |
| Facsimile: (650) 798-3600 | |
| | |
| Matthew Wolf (wolfm@howrey.com) | Attorneys for Plaintiffs |
| Marc Cohn (cohnm@howrey.com) | HOLOGIC, INC. CYTYC |
| HOWREY LLP | CORPORATION and |
| 1229 Pennsylvania Avenue, NW | HOLOGIC LP |
| Washington, DC 20004 | |
| Telephone: (202) 783-0800 | |
| Facsimile: (202) 383-6610 | |

3380511_1.DOC

CERTIFICATE OF SERVICE                                    CASE NO. C-08-0133 RMW

☒ **(BY MAIL)** I placed the sealed envelope(s) for collection and mailing by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for mailing with the United States Postal Service, said practice being that, in the ordinary course of business, correspondence with postage fully prepaid is deposited with the United States Postal Service the same day as it is placed for collection.

☒ **(BY ELECTRONIC MAIL)** I caused such document(s) to be sent via electronic mail (email) to the above listed names and email addresses.

☐ **(BY PERSONAL SERVICE)** I caused to be delivered by hand to the addressee(s) noted above. I delivered to an authorized courier or driver to be delivered on the same date. A proof of service signed by the authorized courier will be filed with the court upon request.

☐ **(BY OVERNIGHT DELIVERY)** I placed the sealed envelope(s) or package(s), to the addressee(s) noted above, designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Wilson Sonsini Goodrich & Rosati, 12235 El Camino Real, Ste. 200, San Diego, CA. I am readily familiar with WSGR's practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery the same day as the correspondence is placed for collection.

☐ **(BY FACSIMILE)** I caused to be transmitted by facsimile machine (number of sending facsimile machine is (858) 350-2399 at the time stated on the attached transmission report(s) by sending the documents(s) to (see above). The facsimile transmission(s) was/were reported as complete and without error.

☒ **(BY CM/ECF)** I caused such document(s) to be sent via electronic mail through the Case Management/Electronic Case File system with the U.S. District Court for the Northern District of California.

I declare under penalty of perjury under the laws of the United States that the above is true and correct, and that this declaration was executed on June 20, 2008.

_____
Kirsten Blue

3380511_1.DOC

CERTIFICATE OF SERVICE                                              CASE NO. C-08-0133 RMW

# EXHIBIT A

1  Henry C. Su (SBN 211202; suh@howrey.com)
   Katharine L. Altemus (SBN 227080; altemusk@howrey.com)
2  Marilee C. Wang (SBN 232432; wangm@howrey.com)
   HOWREY LLP
3  1950 University Avenue, 4th Floor
   East Palo Alto, California 94303
4  Telephone: (650) 798-3500
   Facsimile: (650) 798-3600
5
   Robert Ruyak
6  Matthew Wolf (Admitted *Pro Hac Vice*)
   Marc Cohn (Admitted *Pro Hac Vice*)
7  HOWREY LLP
   1299 Pennsylvania Avenue, NW
8  Washington, DC 20004
   Telephone: (202) 783-0800
9  Facsimile: (202) 383-6610

10 Attorneys for Plaintiffs
   HOLOGIC, INC., CYTYC CORPORATION and HOLOGIC L.P.

11                    UNITED STATES DISTRICT COURT

12                 NORTHERN DISTRICT OF CALIFORNIA

13                         SAN JOSE DIVISION

14
   HOLOGIC, INC., CYTYC CORPORATION,          Case No. C08 00133 RMW (RS)
15 and HOLOGIC L.P.,
                                              **PLAINTIFFS' SUPPLEMENTAL CLAIM**
16              Plaintiffs,                    **CONSTRUCTION BRIEF**

17         vs.                                 Markman Hearing
                                              Date: June 25, 2008
18 SENORX, INC.,                              Time: 2:00 p.m.
                                              Room: Courtroom 6, 4th Floor
19              Defendant.                     Judge: Hon. Ronald M. Whyte

20
   AND RELATED COUNTERCLAIMS.
21

22

23

24

25

26

27

28

1      Plaintiffs Hologic, Inc., Cytyc Corporation, and Hologic L.P. ("Hologic") respectfully submit

2   this Supplemental Claim Construction Brief addressing additional terms that Defendant SenoRx, Inc.

3   ("SenoRx") believes require further construction by the Court.  The terms appears in U.S. Patent Nos.

4   5,913,813 (the "'813 patent"), 6,413,204 (the "'204 patent"), and 6,482,142 (the "'142 patent")

5   (collectively, "the patents-in-suit").  By way of Stipulation and an Administrative Motion, the parties

6   have agreed to brief this dispute, and seek leave to do so, with the intent that the Court may entertain

7   oral argument at the scheduled June 25, 2008 claim construction hearing.

8                                          **INTRODUCTION**

9      SenoRx attempts to inject new questions of claim construction regarding terms that it has

10  already briefed, or previously agreed require no construction.  Its purported justification – that

11  Hologic's expert, Dr. Verhey, provides new constructions in his expert report – is false.  Dr. Verhey

12  applied the same constructions that Hologic proposed in its initial claim construction brief.  SenoRx is

13  belatedly disputing Hologic's proposed constructions and asserting new arguments.  None of these

14  terms requires further construction.

15      Nevertheless, recognizing that claim construction is a legal issue for the Court to decide, the

16  parties have agreed to submit this dispute to the Court for resolution in the context of the June 25, 2008

17  claim construction hearing.  The claim terms at issue in this Supplement are:  (A) "radial absorbed

18  dose profile" ('813 patent, claim 1); (B) "uniform radiation profile" ('813 patent, claim 1); (C) "the

19  expandable outer surface element is . . . adapted to contact / conform the tissue" ('204 patent, claim 4);

20  (D) "the expandable outer surface is sufficiently rigid to deform the target tissue ('142 patent, claim 8);

21  and (E) "predetermined asymmetric isodose curves . . . " ('142 patent, claims 1 & 8).

22      Hologic asserts that these terms should be construed in accordance with their plain meaning.

23  Indeed, the parties have already briefed most of these terms.  Some have already been construed by the

24  Court in the *Xoft* litigation[1].  The same constructions should apply here.  Hologic requests that the

25  Court decline SenoRx's invitation to engage in further, unnecessary claim construction.

———————————————

27  [1] As discussed previously, many of the claim terms at issue in this case have already been construed by
    this Court in a prior infringement action involving two of the three patents asserted here. *Xoft, Inc. v.*

28                                                                    (Continued...)

Plaintiffs' Supplemental Claim Construction Brief          -1-
Case No. C08 00133 RMW (RS)

1  **I.    ARGUMENT**

2      **A.    "radial absorbed dose profile" ('813 patent, claim 1(e)) (no further construction is**
           **necessary)**

3

4      The term "radial absorbed dose profile" appears in element (e) of claim 1 of the '813 patent.  In

5  the *Xoft* litigation, the meaning of this claim language was fully briefed, argued, and considered by the

6  Court.  Dkt. No. 135-6 at 8-10.  The parties have already fully briefed the meaning of this element in

7  this case as well.  *See* Dkt. No. 130 at 14-17 (SenoRx's Opening Claim Construction Brief); Dkt. No.

8  132 at 11-12 (Orton Decl. supporting SenoRx's Opening Brief); Dkt. No. 134 at 9-10 (Hologic's

9  Opening Claim Construction Brief); Dkt. No. 141 (SenoRx's Reply Brief); Dkt. No. 144 (Hologic's

10 Reply Brief).  Neither party argued that the term "radial absorbed dose profile" is ambiguous or

11 requires further construction.  Because Dr. Verhey's report is fully consistent with Hologic's

12 preliminary infringement contentions served over a month ago, there is no basis for SenoRx to now

13 assert that it needs to construe this language differently than it did before.

14     SenoRx's proposed new construction adds ambiguity to the language chosen by the patentee.

15 SenoRx attempts to change the scope of the claim such that the word "'uniform' does not require that

16 the tissue and the balloon conform to each other or relate to the shape of the isodose curve . . . ."  As a

17 threshold matter, defining the disputed term of claim element 1(e) by setting forth specific examples of

18 what it purportedly does ***not*** require does not help elucidate its meaning.  Furthermore, SenoRx is

19 wrong.  As the prosecution history explains, the term "uniform" ***does*** encompass the requirement that

20 the tissue and the outer balloon conform to each other.  *See* Cohn Decl., Ex. 1 at 39 (Verhey Expert

21 Report) ("[I]t is critical to the claimed invention that the tissue and the balloon conform to each other –

22 this is the primary way to achieve a 'uniform' dose.") (citing prosecution history).  This is implicit in

23 the Court's previous construction.  That construction should apply here as well.  SenoRx's proposed

24 additional language is confusing and inaccurate – and should be rejected.

25  ──────────────

26 (...Continued)

27 *Cytyc Corp. et. al.*, Case No. C-05-05312 RMW (the "*Xoft* litigation") (involving both the '813 and
    '204 patents).

28 Plaintiffs' Supplemental Claim Construction Brief         -2-
    Case No. C08 00133 RMW (RS)

**B.    "uniform radiation profile" ('813 patent, preamble) (no further construction is necessary)**

SenoRx contends that the preamble of claim 1 is not limiting, but this is incorrect.  The patentee amended the preamble of claim 1 during prosecution to distinguish the claimed invention as an apparatus for delivering radioactive emissions with a "***uniform***" radiation profile from the prior art. Dkt. No. 135-10 at 1-7 (Sept. 1, 1998 Amend. to claim 1 preamble).  Contrasting the invention with the prior art, the patentee explained that "Applicants' invention is specifically designed to provide a uniform radial absorbed dose profile of the emissions from the particular chamber containing the radioactive material . . ."  *Brassica Protection Products LLC v. Sunrise Farms*, 301 F.3d 1343, 1347 (Fed. Cir. 2002) (reliance on the preamble during prosecution to distinguish the claimed invention from the prior art may indicate that the preamble is a claim limitation because the preamble is used to define the claimed invention); *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808-09 (Fed. Cir. 2002) (same).  Were that not the case, there would have been no reason for the amendment, which replaced the word "controlled" with the word "uniform" in the preamble of claim 1.

It does not follow, however, as SenoRx contends, that the phrase "uniform radiation profile" is ambiguous or requires further construction.  The preamble and claim element 1(e), discussed above, were amended at the same time and for the same reasons.  They should be construed consistently. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001).  Because the Court has already considered and construed claim element 1(e), the same construction should apply to "uniform radiation profile" in the preamble.  Nothing in Dr. Verhey's report or elsewhere justifies altering the Court's prior construction.

**C.    "the expandable outer surface element is . . . adapted to contact / conform the tissue" ('204 patent, claim 4) (no further construction is necessary)**

Claim 4 of the '204 patent describes an apparatus with an expandable surface element adapted to contact tissue surrounding a cavity and to conform the tissue to the shape of the expandable surface element – *i.e.*, the expandable surface element exerts force against the tissue to change its shape, thereby enabling a more uniform or homogeneous distribution of radiation.  SenoRx's contention that

1   claim 4 describes a structure that ***theoretically could*** contact and conform the surrounding tissue, ***but***
2   ***which does not actually do so***, ignores the express teachings of the specification and the very purpose
3   of the claimed invention.

4           The specification repeatedly states that the objective of contacting and conforming the target
5   tissue is to enable a more uniform distribution of radiation. Col. 2:7-33; 7:6-28. A structure adapted to
6   conform the tissue achieves this precise objective. SenoRx's proposed construction would render
7   claim 4 meaningless. An apparatus that does not exert pressure and conform the target tissue will not
8   achieve the goal of providing more uniformity. SenoRx's proposed language would result in a claim
9   that adds nothing to the inventions already set forth in claims 1-3.

10          SenoRx again attempts to construe claim language in a vacuum – disregarding the context and
11  the teachings of the specification. *MedRad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir.
12  2005) (words in patent must be interpreted in light of the claims and the written description). The '204
13  patent's specification explains the objective of keeping the radiation within a narrow absorbed dose
14  range to prevent over-exposure of tissue at or near the expandable surface, while still delivering the
15  minimum prescribed dose to tissue some distance away from the expandable surface. Col. 2:21-34.
16  Shaping the target tissue is important to achieving this objective. Col. 5:55-62 (". . . then expanded to
17  cause the tissue surrounding the surgically resected region to take the appropriate shape . . . allowing
18  the expandable surface of the outer spatial volume to urge tissue on the surface of the resected region
19  into the appropriate shape to promote an even dose distribution around the outer spatial volume in the
20  target tissue."); *see also* Col. 6:17-19 (same); Col. 6:57-7:5 (same). Claim 4 is specifically directed to
21  a device that is designed to contact and conform the target tissue to achieve a more uniform dose
22  distribution. SenoRx's proposed construction is wrong and must be rejected.

23      **D.      "the expandable outer surface is sufficiently rigid to deform the target tissue ('142
24               patent, claim 8) (no further construction is necessary)**

25          This claim term presents the same issue discussed in Section C, above. For the same reasons,
26  SenoRx's proposed construction should be rejected. *See* '142 patent, Col. 5:47-50 (the objective is "to
27  keep the maximum radiation dose delivered . . . as low as possible while still delivering the desired

28  Plaintiffs' Supplemental Claim Construction Brief          -4-
    Case No. C08 00133 RMW (RS)

1  therapeutic dose to the desired range of tissue."); col. 4:42-55 (in some embodiments, the surface of

2  the outer volume can be . . . expanded to cause the tissue surrounding the surgically resected region to

3  take the appropriate shape . . . . in [some] applications, the outer spatial volume will be slightly larger

4  than the resected volume, allowing the expandable surface of the outer spatial volume to urge tissue on

5  the surface of the resected region into the appropriate shape to promote an even dose distribution

6  around the outer spatial volume in the target tissue." *See also* Col. 6:19-23 (same).

7      SenoRx also ignores the remaining language of claim 8, which makes clear that the claimed

8  structure is not merely capable of deforming the target tissue – rather, it actually deforms the tissue.

9  Claim 8 states:

> The apparatus of claim 1, wherein the expandable outer surface is sufficiently rigid to deform the target tissue into the shape of the expandable outer surface, ***causing the predetermined asymmetric isodose curves to penetrate into the target tissue to a prescribed depth***.

13  An apparatus that that does not actually deform the target tissue would not "caus[e] the predetermined

14  asymmetric isodose curves to penetrate into the target tissue to a prescribed depth.  Cohn Decl., Ex. 1

15  at 79-80) (Verhey Expert Report).  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (claim language must

16  be construed in the context of the particular claim in which the disputed term appears).  Indeed,

17  SenoRx's own expert, Dr. Orton, in the context of his invalidity opinions, which Hologic disputes,

18  agreed that the structure of the claimed invention must actually deform tissue:

> A person of ordinary skill in the art would understand that, the outer balloon of the Ashpole device . . . is sufficiently rigid when inflated to deform brain tissue into the shape of the expandable outer surface, ***which would cause the predetermined asymmetric isodose curves to penetrate into the target tissue to the prescribed depth. By filling the postsurgical cavity and deforming the target tissue into the shape of the balloon, the Ashpole device makes it possible to deliver the prescription dose to the prescribed depth of 0.5 c.m.***"  Cohn Decl., Ex. 2 at 36-37 (Orton Expert Report).

24  While Hologic disputes that Ashpole in fact discloses this teaching, it agrees with Dr. Orton that any

25  prior art device, in order to anticipate claim 8, must include a structure that actually deforms tissue

26  (which Ashpole does not do).  SenoRx's proposed construction should be rejected.

27

28

**E.   "predetermined asymmetric isodose curves . . . " ('142 patent, claims 1 & 8) (no further construction is necessary)**

The parties have each submitted claim construction briefs on the meaning of "predetermined asymmetric isodose curves . . . ." SenoRx now seeks to further construe this claim term contrary to its plain meaning, without any justification in the intrinsic evidence.

As used in the related '204 patent, the Court already found that "predetermined" means "determined in advance." Dkt. No. 135-6 at 25 (Claim Construction Order in the *Xoft* litigation). It does not mean determined "prior to treatment" (as SenoRx suggests) or for that matter, prior to any other specified event. Such a construction would improperly limit an apparatus claim to a particular method of treatment – something that is intended to be left up to the discretion of the ordinarily skilled user.

Further, SenoRx seeks to define "predetermined asymmetric isodose curves" (again, contrary to the plain meaning) to mean any isodose curves that happen to result from treatment planning, regardless of whether the user intended to produce asymmetric curves. For example, under SenoRx's rationale, where a user intends to produce symmetric isodose curves, but *asymmetric* curves inadvertently result, the curves would nonetheless qualify as "predetermined asymmetric isodose curves" because the user intended to produce *something* – even though her intention was to produce something else. This strained construction directly conflicts with the '142 specification, which explains the circumstances in which users *intentionally* position the radiation source(s) to cause an asymmetric isodose profile. Col. 2:39-43 ("It is also desirable . . . to provide these advantages while *tailoring* the radiation dosage to avoid fully dosing sensitive tissue or to reduce the amount of radiation that escapes the patient's body."); Col. 2:42-54 ("There is still a need for an instrument . . . with the ability to *shape* the radiation dose to protect sensitive tissue or to protect against radiation exposure outside of the patient's body which may affect healthcare providers or others who might come close to the patient.").

Whether the phrase "predetermined asymmetric isodose profile" is construed in isolation or more correctly, in light of the written description, it is nonsensical to define it in a way that includes a

1   situation where a user intends to produce a ***different*** result but fails to do so for whatever reason.

2   SenoRx's motivation in pushing this contrived construction (in an attempt to incorporate alleged prior

3   art) conflicts with the claim term's plain meaning – and should be rejected.  The phrase

4   "predetermined asymmetric isodose profile" requires no additional construction.

5   **II.      CONCLUSION**

6        Hologic respectfully requests that the Court reject SenoRx's newly proposed constructions.

7   None of the claim terms discussed herein require further construction by the Court.

8   Dated:  June 20, 2008           HOWREY LLP

9

10                       By:

11                           Marc A. Cohn

12

13           HOWREY LLP

14           Attorneys for Plaintiffs
Hologic, Inc., Cytyc Corporation,
 and Hologic L.P.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Henry C. Su (SBN 211202; suh@howrey.com)
   Katharine L. Altemus (SBN 227080; altemusk@howrey.com)
2  Marilee C. Wang (SBN 232432; wangm@howrey.com)
   HOWREY LLP
3  1950 University Avenue, 4th Floor
   East Palo Alto, California  94303
4  Telephone:  (650) 798-3500
   Facsimile:  (650) 798-3600
5
   Robert Ruyak
6  Matthew Wolf (Admitted *Pro Hac Vice*)
   Marc Cohn (Admitted *Pro Hac Vice*)
7  HOWREY LLP
   1299 Pennsylvania Avenue, NW
8  Washington, DC 20004
   Telephone:  (202) 783-0800
9  Facsimile:  (202) 383-6610

10 Attorneys for Plaintiffs
   HOLOGIC, INC., CYTYC CORPORATION and HOLOGIC L.P.

11                    UNITED STATES DISTRICT COURT

12                   NORTHERN DISTRICT OF CALIFORNIA

13                          SAN JOSE DIVISION

14
   HOLOGIC, INC., CYTYC CORPORATION,          Case No. C08 00133 RMW (RS)
15 and HOLOGIC L.P.,
                                              **DECLARATION OF MARC A. COHN
16            Plaintiffs,                      IN SUPPORT OF PLAINTIFFS'
                                              SUPPLEMENTAL CLAIM
17       vs.                                   CONSTRUCTION BRIEF**

18 SENORX, INC.,                              Markman Hearing
                                              Date:    June 25, 2008
19            Defendant.                       Time:    2:00 p.m.
                                              Room:   Courtroom 6, 4th Floor
20                                            Judge:   Hon. Ronald M. Whyte

21 AND RELATED COUNTERCLAIMS.

22

23

24

25

26

27

28

1    I, Marc A. Cohn, declare that I am an attorney with the law firm of Howrey LLP and admitted

2  to appear before this Court *pro hac vice*. I serve as one of the outside counsel for Plaintiffs Hologic,

3  Inc., Cytyc Corporation and Hologic L.P. ("Hologic"). The following declaration is based on my

4  personal knowledge. If called to testify, I could and would competently testify as to the matters set

5  forth below.

6    1.    Attached hereto as Exhibit 1 is a true and correct copy of excerpts from the June 4, 2008

7  Expert Report of Lynn J. Verhey, Ph.D.

8    2.    Attached hereto as Exhibit 2 is a true and correct copy of excerpts from the June 4, 2008

9  Expert Report of Colin G. Orton, Ph.D.

10    I declare under penalty of perjury that the foregoing is true and correct.

11  Executed on June 20, 2008 at East Palo Alto, California

12

13

14                                   _____
                                            Marc A. Cohn

15

16                        HOWREY LLP
                          Attorneys for Plaintiffs
17                        Hologic, Inc., Cytyc Corporation,
                            and Hologic L.P.

18

19

20

21

22

23

24

25

26

27

28
    Cohn Decl ISO Supplemental Claim Construction Brief    - 1 -
    Case No.  C08 00133 RMW (RS)

**Exhibit 1**

**CONFIDENTIAL**
**CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOGIC, INC., CYTYC CORPORATION, and HOLOGIC L.P., | Case No. C08 00133 RMW (RS) |
| Plaintiffs, | |
| vs. | |
| SENORX, INC., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | |

**EXPERT REPORT OF LYNN J. VERHEY, Ph.D.**

CONFIDENTIAL
CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER

Ashpole therefore teaches "over-treatment of body tissue at or close to the outer wall of the instrument," which the claimed device must prevent according to the Court's prior construction of "render uniform."  For this reason, Ashpole does not teach the device in claim 11 and, therefore, does not anticipate claim 11, expressly or inherently.  Moreover, I must note that Ashpole expressly describes that the tolerance of brain tissue to radiation is 55-60 Gy – the provision of 70 Gy or more is therefore "over treatment" of tissue as defined by Ashpole.

In addition, Ashpole does not disclose that the balloon is expanded to conform the shape of the cavity to the outer surface of the balloon, or that the balloon comes into contact with the tumor bed at all points, or that the distance from the tumor bed to the radiation source can be adjusted through expansion of the balloon.  Indeed, it is critical to the claimed invention that the tissue and the balloon conform to each other – this is the primary way to achieve a "uniform" dose.  During prosecution, when the terms "uniform" and "render uniform" were added to the claims to overcome prior art, the applicant stated that, in order to have dose "uniformity," there must be constant distance between the radiation source and the tissue being treated:

> Applicants invention is specifically designed to provide a uniform radial absorbed dose profile of the emissions from the particular chamber containing the radionuclide material so that occurrences of "hot spots" and/or "cold spots" are substantially eliminated.  Hot spots can result in necrosis of healthy tissue, a condition to be avoided, while cold spots may mean that cancerous cells are not irradiated and killed.  ***In one embodiment, uniformity of the radial absorbed profile is achieved by providing a spherical outer chamber which when inflated to contact the cavity margins resulting from surgical removal of the tumor, a desired constant spacing will be maintained between the radiation source and the adjacent tissue structures.***

(Amendment dated 9-1-98 at 6 (emphasis added).)  One cannot have a "constant spacing . . . maintained between the radiation source and the adjacent tissue structures" unless the tissue contacts the balloon at all points.  If the tissue did not so contact the balloon, then

- 39 -

CONFIDENTIAL
CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER

### 6.5.2.1.1.  Ashpole

Ashpole does not anticipate claim 8 of the '142 patent.  I disagree with SenoRx's contention that Ashpole anticipates claim 8.  In my opinion, Ashpole does not disclose the following claim elements:

> (A)  an expandable outer surface defining a three-dimensional apparatus volume configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated

> (B)  the radiation source further being asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume.

> (C)  wherein the expandable outer surface is sufficiently rigid to deform the target tissue into the shape of the expandable outer surface, causing the predetermined asymmetric isodose curves to penetrate into the target tissue to a prescribed depth

**(A)**  See my analysis under 6.5.1.1.1(A).

Thus, there is no express or inherent disclosure of this claim element in Ashpole and Ashpole, therefore, does not anticipate claim 8 of the '142 patent.

**(B)**  See my analysis under 6.5.1.1.1(B).

Accordingly, Ashpole does not disclose this claim element, expressly or inherently and it therefore cannot anticipate claim 8.

**(C)**  Ashpole does not describe "wherein the expandable outer surface is sufficiently rigid to deform the target tissue into the shape of the expandable outer surface, causing the predetermined asymmetric isodose curves to penetrate into the target tissue to a prescribed depth."  SenoRx has cited only pages 334-36 and Figure 3 of Ashpole in contending that Ashpole describes this claim element.  There are no specific citations to any language in these passages nor is any language quoted by SenoRx in its contentions.  I see nothing in the cited passages that shows the element above.

The claim language provides that the expandable outer surface must "deform the target tissue into the shape of the expandable surface."  This means more than that the

CONFIDENTIAL
CONTAINS INFORMATION SUBJECT TO PROTECTIVE ORDER

outer surface of the device must touch (or very nearly touch) the entire surface of the target tissue – it means that the balloon must apply force to the target tissue to deform it to the balloon's shape.  Ashpole does not teach that the outer surface of the balloon even touches all points of the tissue (to define an inner boundary of the target tissue) much less that it presses against the tissue to deform it to the balloon's shape.  Ashpole only mentions "filling" the cavity with the balloon, which one skilled in the art would understand to mean that the balloon is inflated until it contacts surrounding brain tissue – it is not an express teaching that the tissue conforms to the balloon (or even that the balloon conforms to the tissue).

There is also no inherent description of the balloon conforming tissue to the balloon because the balloon is capable of filling the cavity without conforming the tissue to its shape.

Moreover, while SenoRx contends that figure 3 shows the tissue conformed to the balloon, this is not necessarily the case.  The lateral radiographic image is merely a two-dimensional slice of a three-dimensional cavity.  It is quite possible – indeed, likely – that there is some space between the cavity and the balloon in the parts of the cavity that lie outside the figure, *i.e.*, in front of or behind it.

Thus, there is no express or inherent disclosure of this claim element in Ashpole and Ashpole, therefore, does not anticipate claim 8 of the '142 patent.

### 6.5.2.1.2.  Williams '774

Williams '774 does not anticipate claim 8 of the '142 patent.  I disagree with SenoRx's contention that Williams '774 anticipates claim 8.  In my opinion, Williams '774 does not disclose the following claim elements:

(A)  the radiation source further being asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume.

- 80 -

**Exhibit 2**

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

HOLOGIC, INC., CYTYC CORPORATION and )
HOLOGIC L.P., )
)                    Case No. 08-CV-0133 RMW
            Plaintiffs, )
)
        v. )
)                    **EXPERT REPORT OF COLIN G.**
SENORX, INC., )                    **ORTON, Ph.D.**
)
            Defendant. )
_____)
SENORX, INC., )
)
            Counterclaimant, )
)
        v. )
)
HOLOGIC, INC., CYTYC CORP., and )
HOLOGIC L.P., )
)
            Counterdefendants. )
_____)

| '142 Patent, Claim 1 | Ashpole Disclosure |
|---|---|
| a radiation source disposed completely within the expandable outer surface and located so as to be spaced apart from the apparatus volume, | If Plaintiffs' interpretation is adopted, the radiation bead(s) described in Ashpole is disposed within the expandable outer surface and spaced apart from the outer surface because it is inside the catheter body. pp. 333-34; Figs. 1 & 3. |
| The radiation source further being asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume. | The authors make clear that if matching the shape of the cavity does not produce a satisfactory dose curve for an individual tumor bed, "[a] certain measure of dosimetrical versatility is possible in that the positions of the active beads can be changed to produce an isodose distribution specific to the geometry of the individual tumour beds." *See* p. 336. The person of ordinary skill would understand from Ashpole that one circumstance in which this was desirable is discussed at page 334 where only "as much [of the] tumour was removed as deemed safe." Such a person would understand that when the remaining tumor tissue was located, for example, near the distal end of the device, the radiation source should be arranged and predetermined to deliver more radiation nearer the remaining "tumour beds" at the distal end of the device (i.e., locating the radiation sources off center in the balloon). |

| '142 Patent, Claim 8 | Ashpole Disclosure |
|---|---|
| The apparatus of claim 1, wherein the expandable outer surface is sufficiently rigid to deform the target tissue into the shape of the expandable outer surface, causing the predetermined asymmetric isodose curves to penetrate into the target tissue to a prescribed depth. | *See* '204 Patent, claim 4.<br><br>A person of ordinary skill in the art would understand that, the outer balloon of the Ashpole device, which was made with a Portex, Blue Line endotracheal tube, i.d. 8.0 with a Profile cuff, *see* p. 334, is sufficiently rigid when inflated to deform brain tissue into the shape of the expandable outer surface, which would cause the predetermined asymmetric isodose curves to penetrate into the target tissue to the prescribed depth. By filling the postsurgical |

| '142 Patent, Claim 8 | Ashpole Disclosure |
|---|---|
| | cavity and deforming the target tissue into the shape of the balloon, the Ashpole device makes it possible to deliver the prescription dose to the prescribed depth of 0.5 cm. *See* p. 335 & Fig. 3. |

109.     In addition to my opinion that Ashpole, both alone and in combination with the general knowledge of a person of ordinary skill in the art, anticipates the asserted claims of the patents-in-suit, it is my opinion that Ashpole combined with Friedman 1958 renders the asserted claims of the '813 and '204 patents obvious.  A person skilled in the art, starting with Ashpole, would be motivated to combine these references because such a person interested in interstitial use would start with Ashpole, and Friedman 1958 teaches a very similar device that would be of interest to someone attempting to make an Ashpole-like balloon brachytherapy device with a single radioactive source.  For example, Johannesen utilized a single-source Ashpole device during the 1990s after reviewing the Ashpole disclosure.  For the reasons discussed in paragraphs 87 to 116 regarding Ashpole and in paragraphs 122 to 136 regarding Friedman 1958, including the tables, these references render the claimed inventions of the '813 and '204 patents obvious.

110.     For the same reasons, a person of ordinary skill would be motivated to combine Ashpole with Johannesen.  Indeed, I understand that Johannesen's use and public description of the apparatus and method described in his article was motivated by the Ashpole article and method.  For the reasons discussed in paragraphs 87 to 116 regarding Ashpole and paragraphs 154 to 164 regarding Johannesen, including the tables, these references render the claimed inventions of the '813 and '204 patents obvious.

111.     In addition, Ashpole combined with either Low-Beer 1950 or Low-Beer 1954 renders the asserted claims of the '813 and '204 patents obvious.  A person skilled in the art, starting with Ashpole, would be motivated to combine these references because such a person interested in interstitial use would start with Ashpole, and both Low-Beer 1950 and Low-Beer 1954 teach a very similar device that would be of interest to someone attempting to make an

# EXHIBIT B

1   F.T. Alexandra Mahaney, State Bar No. 125984
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
    12235 El Camino Real, Suite 200
3   San Diego, CA  92130
    Telephone:  (858) 350-2300
4   Facsimile:   (858) 350-2399
    Email:  amahaney@wsgr.com
5
    Bruce R. Genderson (*admitted pro hac vice*)
6   Aaron P. Maurer (*admitted pro hac vice*)
    Rachel Shanahan Rodman (*admitted pro hac vice*)
7   Adam D. Harber (*admitted pro hac vice*)
8   WILLIAMS & CONNOLLY LLP
    725 Twelfth St. NW
9   Washington, DC 20005
    Telephone:  (202) 434-5000
10  Facsimile:  (202) 434-5029
11
    Attorneys for Defendant
12  SENORX, INC.

13              IN THE UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                       SAN JOSE DIVISION

16  HOLOGIC, INC., CYTYC CORP., and          )  CASE NO.:  08-CV-0133 RMW
    HOLOGIC L.P.,                            )
17                                           )  **DEFENDANT SENORX, INC.'S**
              Plaintiffs,                    )  **SUPPLEMENTAL CLAIM**
18                                           )  **CONSTRUCTION BRIEF**
         v.                                  )
19                                           )  **REDACTED VERSION**
    SENORX, INC.,                            )
20                                           )  Date:  June 25, 2008
              Defendant.                     )  Time:  2:00 p.m.
21                                           )  Courtroom:  6, 4th Floor
                                             )  Judge:  Hon. Ronald M. Whyte
22  _____ )

23

24

25

26

27

28

1

2

## TABLE OF CONTENTS

3

PRELIMINARY STATEMENT ....................................................................................................1

CONSTRUCTION OF THE DISPUTED TERMS ......................................................................2

    A.     Uniform Radial Absorbed Dose Profile ('813 Patent Claim 1). ...........................2

    B.     "Adapted To Conform" and "Sufficiently Rigid To Deform" ('204 patent, Claim 4; '142 patent, Claim 8) ................................................................................6

    C.     "Predetermined Asymmetric Isodose Curves" ('142 Patent Claims 1, 8). .............9

CONCLUSION ...........................................................................................................................10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**FEDERAL CASES**

3

*Bicon, Inc. v. Straumann Co.,*
4
    441 F.3d 945 (Fed. Cir. 2006) ................................................................. 5

5

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.,*
    289 F.3d 801 (Fed. Cir. 2002) ................................................................. 5
6

7

*Degeorge v. Bernier,*
    768 F.2d 1318 (Fed. Cir. 1985) ............................................................... 5

8

*IMS Tech., Inc. v. Haas Automation, Inc.,*
9
    206 F.3d 1422 (Fed. Cir. 2000) ............................................................... 5

10

*In re Venezia,*
    530 F.2d 956 ........................................................................................... 8
11

12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.,*
    521 F.3d 1351 (Fed. Cir. 2008) ............................................................... 1

13

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*
14
    182 F.3d 1298 (Fed. Cir. 1999) ............................................................... 5

15

*South Corp. v. United States,*
    690 F.2d 1368 (Fed. Cir. 1982) (en banc) ............................................... 8
16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SENORX, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF

ii

CASE NO. 08-CV-0133 RMW

**PRELIMINARY STATEMENT**

In their *Markman* briefs, Plaintiffs made plain they intend to argue claim construction to the jury in support of their infringement case against SenoRx.  With the submission of Dr. Lynn Verhey's expert report, Plaintiffs again make plain their intent to argue claim construction to the jury – this time to avoid invalidity of the patents-in-suit over the prior art.  Dr. Verhey's expert report, submitted on June 4, 2008, disclosed that Dr. Verhey plans to present at trial new claim construction arguments to distinguish the prior art and rebut SenoRx's invalidity case.  These new claim constructions were neither disclosed by Plaintiffs, briefed by the parties, nor presented to the Court as required by the Patent Local Rules.  And substantively, they are wrong.  Dr. Verhey's proffered opinions regarding the meaning of the claims are inconsistent with the claim language and unsupported by the teachings of the patents-in-suit.

Not surprisingly, Plaintiffs seek to avoid a ruling on the meaning of the terms at issue, arguing, just as in their *Markman* briefs, that the claim terms should be given their "plain meaning," or that they require no further construction beyond what Plaintiffs first proposed in their *Markman* briefs.  The Court should not accept Plaintiffs' invitation to decline to construe these terms, as the parties dispute their meaning.  As SenoRx previously noted, the law provides that "[w]hen the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  Accordingly, the Court should construe the claim terms at issue consistent with SenoRx's proposed constructions, thereby preventing Plaintiffs' expert from presenting to the jury invalidity positions based on erroneous constructions.  *See id.*[1]

---

[1] Alternatively, SenoRx requests that the Court treat this supplemental *Markman* brief as a motion *in limine* to exclude Dr. Verhey's testimony on the new claim construction arguments identified herein.

DEFENDANT SENORX, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF

1

CASE NO. 08-CV-0133 RMW

1      **CONSTRUCTION OF THE DISPUTED TERMS**

2      **A.      Uniform Radial Absorbed Dose Profile ('813 Patent Claim 1).**

| Claim Term | SenoRx's Proposed Construction |
|---|---|
| uniform radial absorbed dose profile<br><br>('813 patent, claim 1(e)) | The "radial absorbed dose profile" means the absorbed dose as a function of distance in a radial direction from the outer surface of the radiation transparent wall. "Uniform" does not require that the tissue and the balloon conform to each other or relate to the shape of the isodose curve; instead, it refers to the slope of the dose profile as discussed in SenoRx's previous briefing. |
| uniform radiation profile<br><br>('813 patent, preamble) | [If the preamble is a claim limitation] The "radiation profile" means the absorbed dose as a function of distance in a radial direction from the outer surface of the radiation transparent wall. "Uniform" does not require that the tissue and the balloon conform to each other or relate to the shape of the isodose curve; instead, it refers to the slope of the dose profile as discussed in SenoRx's previous briefing. |

Prior to the submission of Dr. Verhey's expert report on June 4, 2008, the parties agreed that "uniform radial absorbed dose profile" and "uniform radiation profile" in claim 1 of the '813 patent referred to the strength of the dose in the tissue at various distances from the radiation source. Dr. Verhey's report now asserts that these terms address a different subject: whether the surface of the outer balloon contacts the tissue at all points so that there is conformance between the tissue and the balloon. Plaintiffs' newly-minted construction is simply wrong.

As SenoRx explained in its *Markman* brief, the '813 patent teaches that "radial absorbed dose profile" refers to the radiation dose absorbed in the tissue measured as a function of distance in a radial (*i.e.*, outward) direction from the outer balloon. *See* SenoRx Opening Brief ("Op. Br.") at 9-10. Put another way, a "radial absorbed dose profile" plots the strength of the radiation dose within the target tissue as the radiation progresses outward from the radiation source and into the tissue. *See generally* Ex. 1 ('813 patent), col. 3:13-37; fig. 5.[2] The '813 patent represents the dose profile in Figure 4, which depicts a line plotting the radiation dose

---

[2] Exs. 1-14 are exhibits to the Declaration of Adam D. Harber in Support of SenoRx's Opening Claim Construction Brief, Exs. 15-17 are exhibits to the Declaration of Adam D. Harber in Support of SenoRx's Responsive Claim Construction Brief, and Exs. 18-21 are exhibits to the Declaration of Adam D. Harber in Support of SenoRx's Supplemental Claim Construction Brief.

1   absorbed in the tissue on the *y* axis, and the distance from the outer balloon to the target depth in

2   the tissue on the *x* axis.  *See id.*  Rendering the "absorbed dose profile" more "uniform" means to

3   reduce the slope of this line, which indicates there is less variation in the strength of the radiation

4   dose at various distances outward from the surface of the balloon to the edge of the target depth

5   in the tissue.

6       This is exactly how the Court described the dose profile in its construction of claim

7   element 1(e) in the *Xoft* case.  *See* Ex. 4 (*Xoft* Cl. Constr. Order) at 8-9 (reproducing Figure 4 of

8   the '813 patent and discussing reducing the slope of the dose profile).  And, it is exactly how

9   Plaintiffs described the claim element in their *Markman* briefs.  Plaintiffs argued the

10  "uniformity" of a radiation profile is measured over a "distance from the center of the cavity

11  along a direction of interest" and is characterized by the "flatter" line 42 shown in Figure 4 of the

12  '813 patent.  *See* Pls' Cl. Constr. Br. at 9 (emphasis added).  Plaintiffs even reproduced Figure 4

13  of the '813 patent in their brief and argued that the "written description explains the objective of

14  *flattening line 40* to achieve an absorbed dose profile depicted by line 42," thus making the point

15  that a "uniform" radiation profile was achieved over the span of distance from radiation source,

16  as represented by the "flatter" slope of line 42.  *See* Pls' Cl. Constr. Br. at 9 (citing '813 patent,

17  col. 4:14-38) (emphasis added).

18

19

20

21

22

23

24  _____

25      [3]  By contrast, claim 4 of the '204 patent requires that the "expandable surface element is
    adapted to contact tissue surrounding a resected cavity and adapted to conform the tissue to the

26  desired shape of the expandable surface element."  Ex. 2 ('204 patent), claim 4.  While this
    element does not require actual conformance, *see* discussion *infra* Section B, Dr. Verhey is

27  attempting to import this element from an interstitial device into a claim that is not limited to
    interstitial cavities.

28

9      For the reasons discussed *supra*, Dr. Verhey's construction of "uniform" in claim element

10  1(e) of the '813 patent should be rejected.  Plaintiffs' new position is flatly inconsistent with the

11  Court's and their own prior construction, and it is contradicted by the teachings of the '813

12  patent.  There is simply no basis anywhere in the patent for a conformance requirement.  The

13  patent requires only that the inner and outer volumes are "filled" with radioactive material or

14  radiation attenuating material.  It says nothing about filling the balloon to match the size of the

15  cavity, let alone filling it to "conform" the cavity.

16      In addition, Plaintiffs' attempt to read a conformance limitation into claim element 1(e)

17  does not square with Dr. Verhey's own testimony on the subject.  As far back as November 2006

18  in the *Xoft* case, Dr. Verhey stated that the "radial dose profile is defined as the absorbed dose to

19  tissue as a function of distance from the center of the cavity along a particular direction of

20  interest."  *See* Ex. H to Altemus Decl. (Verhey Decl. (Nov. 9, 2006) Appx. C at 6:21-28), *cited in*

21  Pls' Cl. Constr. Br. at 9.  He reiterated the same position in his declaration in support of

22  Plaintiffs' Reply Claim Construction Brief in this case.  *See* Verhey Decl. (May 30, 2008) at 3

23  (discussing a "more or less uniform" dose profile and explaining that "dose <u>fall-off</u> will be

24  primarily a function of distance").

DEFENDANT SENORX, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF

CASE NO. 08-CV-0133 RMW

1
2
3
4
5
6
7
8       Equally unpersuasive is Plaintiffs' attempt to read a balloon-tissue conformance

9  limitation into the "uniform" language of the preamble.  Language in a claim preamble generally

10 does not serve to limit claims.  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir.

11 2006); *Degeorge v. Bernier*, 768 F.2d 1318, 1322 n.3 (Fed. Cir. 1985).  In particular, a preamble

12 "is not limiting 'where a patentee defines a structurally complete invention in the claim body and

13 uses the preamble only to state a purpose or intended use for the invention.'" *Catalina Mktg. Int'l

14 v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (*quoting Rowe v. Dror*, 112 F.3d

15 473, 478 (Fed. Cir. 1997)).  "If the preamble adds no limitations to those in the body of the

16 claim, the preamble is not itself a claim limitation and is irrelevant to proper construction of the

17 claim." *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435 (Fed. Cir. 2000); *see

18 also Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).  As the

19 preamble here adds no structure to the claim, it is "not limiting." *Catalina*, 289 F.3d at 808.

20      In any event, there is no basis to distinguish the meaning of "uniform" in the preamble

21 from the means-plus-function limitation (e) in the body of the claim.  The invention after the

22 preamble is structurally complete, and the "uniform" language in the preamble simply states a

23 "purpose or intended use" for the invention as defined in the claim body.  The prosecution

24 history supports this reading.  During prosecution, the applicants changed the word "controlled"

25 to  "uniform" in the preamble of claim 1 at the same time they amended the means-plus-function

26 claim limitation (e) to change "<u>controlling</u> the radial absorbed dose profile" to "<u>rendering

27 uniform</u> the radial absorbed dose profile." Ex. 5 (Sep. 1, 1998 Am., '813 Prosecution History) at

28 1-2.  Thus, it is clear the preamble merely refers to the claim limitation in (e), and does not state

DEFENDANT SENORX, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF                                                    CASE NO. 08-CV-0133 RMW

1   a new claim limitation,

2

3

4

5        Finally, Plaintiffs' infringement position is further proof that Dr. Verhey's newly-

6   proposed "conformance" requirement is driven by the need to avoid invalidity, and not by any

7   actual limitation of claim 1 of the '813 patent.  Plaintiffs first staked out a position on the

8   requirements of claim element 1(e) in their preliminary infringement contentions.  They made no

9   mention that the Contura balloon "conformed" the tissue as Dr. Verhey now requires.  *See* Ex. 11

10  (Pls' Infr. Cont.) at Appx. A, 1-3, 7-9.  Plaintiffs also failed to cite any claim limitation based on

11  "uniform" in the preamble.  *See* Ex. 11 (Pls' Infr. Cont.) at Appx. A, 1-3; Ex. 13 (Pls' Prel. Cl.

12  Constr.) at Ex. A, 3.  If, as Dr. Verhey asserts, the preamble and claim element 1(e) require

13  "conformance," then Plaintiffs would have asserted the Contura meets that limitation in order to

14  make their infringement case.  Their failure to do so speaks for itself.

15       **B.    "Adapted To Conform" and "Sufficiently Rigid To Deform" ('204 patent,
            Claim 4; '142 patent, Claim 8)**
16

17
| Claim Term | SenoRx's Proposed Construction |
| --- | --- |
| the expandable outer surface element is . . . adapted to contact / adapted to conform<br><br>('204 patent, claim 4) | the expandable outer surface element is capable of contacting the tissue and capable of conforming the tissue.  This does not require that the expandable outer surface actually contacts or conforms the tissue. |
| the expandable outer surface is sufficiently rigid to deform the target tissue<br><br>('142 patent, claim 8) | the expandable outer surface element is sufficiently rigid so as to be capable of deforming tissue.  This does not require that the expandable outer surface actually deforms the target tissue. |

24       Plaintiffs did not identify claim 4 of the '204 patent or claim 8 of the '142 patent as

25  claims requiring construction in their preliminary claim construction disclosure, Joint Claim

26  Construction Statement, or *Markman* briefs.  Ex. 13 (Pls' Prel. Cl. Constr.) at Exs. B, C.

27

28

DEFENDANT SENORX, INC.'S
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF

6

CASE NO. 08-CV-0133 RMW

1

2

3

4

5

6

7  Plaintiffs' proposed constructions of these claim terms

8  should be rejected as inconsistent with their plain and ordinary meaning, as well as with the

9  intrinsic evidence.

10      The "adapted to" claim language in claim 4 resulted from a rejection by the PTO of the

11  exact claim construction Plaintiffs now assert is correct.  In the prosecution of the '204 patent,

12  the application was rejected for claiming that "the expandable surface element contacts . . . and

13  conforms the tissue."  Ex. 20 (June 20, 2000 Office Action, '204 Prosecution History) at 2.  The

14  examiner explained that this claim language impermissibly recited "a positive connection to the

15  body."  *Id.*  The examiner suggested the claim instead be amended to read "adapted to," to

16  eliminate this problem.  *Id.*  As a result, the applicants so amended claim 4, changing the claim

17  language from "the expandable surface element contacts tissue . . . and conforms the tissue" to

18  "the expandable surface element is adapted to contact tissue . . . and adapted to conform the

19  tissue."  Ex. 8 (Dec. 20, 2000 Am., '204 Prosecution History) at 2, 9 (emphases added).  By

20  amending the claim language, the applicants made clear the claim does not require the

21  expandable surface element actually to contact and conform the tissue.  Rather, the expandable

22  surface element must be "adapted to" – capable of – contacting and conforming the tissue.  This

23  is entirely consistent with the plain meaning of the claim language.  "Adapted to"  means capable

24  of.  *See, e.g.*, *In re Venezia*, 530 F.2d 956, 959 (CCPA 1976)[4] (holding that a sleeve "adapted to

25  be fitted over the insulated jacket of one of the cables" meant that each sleeve was so structured

26  _____

27      [4] Decisions of the CCPA are binding on the Federal Circuit.  *South Corp. v. United States*, 690 F.2d 1368, 1370-71 (Fed. Cir. 1982) (en banc).

28

1  or dimensioned that it <u>could be</u> fitted over the insulated jacket of a cable); 1 *The Oxford English*

2  *Dictionary* 130 (Clarendon Press) (2d ed. 2001) (defining "adapted" as "suitable") (attached

3  hereto as Ex. 21).

4      The same is true for the "sufficiently rigid" language of claim 8 of the '142 patent.  Claim

5  8 does not require that the expandable outer surface actually deform the target tissue.  Rather, the

6  language of claim 8 requires that the "expandable outer surface is <u>sufficiently rigid to deform</u> the

7  target tissue."  Ex. 3 ('142 patent), claim 8.  The claim language requires that the apparatus have

8  the property of being sufficiently rigid to deform.  Put another way, the apparatus must be

9  sufficiently rigid so as to be capable of or suitable for deforming tissue.  The plain claim

10  language does not require that the expandable outer surface actually deforms the tissue.



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          When the

2 very same expert who put forth the construction disagrees with it, it is clear Plaintiffs' new

3 limitations are entirely without support.

4          **C.    "Predetermined Asymmetric Isodose Curves" ('142 Patent Claims 1, 8).**

5

| Claim Term | SenoRx's Proposed Construction |
|---|---|
| the radiation source … asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume<br><br>('142 patent, claim 1)<br><br>predetermined asymmetric isodose curves<br><br>('142 patent, claim 8) | SenoRx already has proposed a construction of "predetermined asymmetric isodose curves."<br><br>"Predetermined" requires that the asymmetric isodose curves that will be created by the radiation source are determined prior to treatment. It does not require the ability to change the location and arrangement of radiation sources to provide any specific asymmetric isodose curves, but rather determining prior to treatment the isodose curves resulting from the actual asymmetric arrangement and location of the radiation source. |

14          SenoRx asserted in its *Markman* briefs that "predetermined asymmetric isodose curves"

15 in claims 1 and 8 and the '142 patent should be construed to mean "isodose curves determined

16 before radiation is administered which are not substantially the same shape as the apparatus

17 volume and/or not concentric with the apparatus volume."  *See* Op. Br. at 23-24; Resp. Br. at 23-

18 24.  Dr. Verhey's expert report seeks to add new limitations to claims 1 and 8 of the '142 patent

19 based on the term "predetermined" in an effort to argue against the invalidity of the claims over

20 the prior art.  The new limitations Dr. Verhey sets forth in his expert report are unsupported by

21 the '142 patent and should be rejected.

22          Claims 1 and 8 of the '142 patent require that the radiation sources are asymmetrically

23 arranged within the balloon so that they provide asymmetric isodose curves, and that the

24 asymmetric isodose curves are "predetermined" – calculated – before treatment based on the

25 relative position of the source(s) and the balloon.[5]  In their *Markman* briefs, Plaintiffs seemed to

26

27          [5] As discussed in SenoRx's *Markman* briefs and Motion for Partial Summary Judgment, the

28 claim also requires that the source(s) be spaced apart from the apparatus volume, which is

(continued...)

1  agree.  Plaintiffs proposed no separate construction of "predetermined asymmetric isodose

2  curves," and described the requirement consistent with SenoRx's proposed construction.  *See*

3  Pls' Resp. Cl. Constr. Br. at 21-22 ("As a direct consequence of this asymmetric location and

4  arrangement of the radiation source, 'predetermined asymmetric isodose profiles' are created.").

5

6

7

8

9

10

11

12

13       This construction is incorrect.  The plain meaning of "predetermined" simply requires

14  that the person administering radiation <u>calculate</u> prior to treatment the asymmetric isodose curves

15  the device would generate.  Indeed, "determine" means to ascertain what the curves will be.

16  "Predetermined" is simply ascertaining what the curves will be before using the device.  There is

17  nothing in this concept that <u>requires</u> that the device have additional structure to give the user the

18  flexibility to create any desired isodose curve.  Rather, all the claim requires is that the radiation

19  source is located asymmetrically so that it will provide asymmetric isodose curves which are

20  determined before radiation is administered.

21                              **CONCLUSION**

22       For the foregoing reasons, the Court should adopt SenoRx's proposed constructions of

23  the disputed terms of the '813, '204, and '142 patents.

24

25

26       _____

27  (...continued from previous page)
    impossible.  *See* Op. Br. at 23; Resp. Br. at 21-23; Motion for Partial Summary Judgment of
    Invalidity.

28

DEFENDANT SENORX, INC.'S                        10                    CASE NO. 08-CV-0133 RMW
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF

1    Dated:  June 20, 2008                Respectfully submitted,

2

3                                      By:    /s/ F.T. Alexandra Mahaney

4                                      F.T. Alexandra Mahaney, State Bar No. 125984
5                                      WILSON SONSINI GOODRICH & ROSATI
                                      Professional Corporation
6                                      12235 El Camino Real, Suite 200
                                      San Diego, CA  92130
7                                      Telephone: (858) 350-2300
                                      Facsimile: (858) 350-2399
8                                      Email:  amahaney@wsgr.com

9                                      Bruce R. Genderson (admitted *pro hac vice*)
                                      Aaron P. Maurer (admitted *pro hac vice*)
10                                    Rachel Shanahan Rodman (admitted *pro hac vice*)
                                      Adam D. Harber (admitted *pro hac vice*)
11                                      WILLIAMS & CONNOLLY LLP
                                      725 Twelfth St. NW
12                                      Washington, DC 20005
                                      Telephone: (202) 434-5000
13                                      Facsimile: (202) 434-5029

14                                      Attorneys for Defendant
15                                      SENORX, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT SENORX, INC.'S                                  CASE NO. 08-CV-0133 RMW
SUPPLEMENTAL CLAIM CONSTRUCTION
BRIEF

1   F.T. Alexandra Mahaney, State Bar No. 125984
    WILSON SONSINI GOODRICH & ROSATI
2   Professional Corporation
    12235 El Camino Real, Suite 200
3   San Diego, CA 92130
    Telephone: (858) 350-2300
4   Facsimile: (858) 350-2399
    Email: amahaney@wsgr.com
5
    Bruce R. Genderson (*admitted pro hac vice*)
6   Aaron P. Maurer (*admitted pro hac vice*)
    Rachel Shanahan Rodman (*admitted pro hac vice*)
7   Adam D. Harber (*admitted pro hac vice*)
    WILLIAMS & CONNOLLY LLP
8   725 Twelfth St. NW
    Washington, DC 20005
9   Telephone: (202) 434-5000
    Facsimile: (202) 434-5029
10
11  Attorneys for Defendant
    SENORX, INC.
12
13              IN THE UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15                      SAN JOSE DIVISION

16  HOLOGIC, INC., CYTYC CORP., and          )   CASE NO.: 08-CV-0133 RMW
    HOLOGIC L.P.,                            )
17                                           )   **DECLARATION OF ADAM D.**
                    Plaintiffs,              )   **HARBER IN SUPPORT OF**
18                                           )   **DEFENDANT SENORX, INC.'S**
                                             )   **SUPPLEMENTAL CLAIM**
19           v.                              )   **CONSTRUCTION BRIEF**
                                             )
20  SENORX, INC.,                            )   Date: June 25, 2008
                                             )   Time: 2:00 p.m.
21                  Defendant.               )   Courtroom: 6, 4th Floor
                                             )   Judge: Hon. Ronald M. Whyte
22  _____ )
23
24
25
26
27
28

1    I, Adam D. Harber, declare that I am an associate at the law firm of Williams & Connolly

2    LLP, admitted pro hac vice to practice before this Court in the above-captioned matter.  I serve

3    as outside counsel for Defendant SenoRx, Inc.  The following declaration is based on my

4    personal knowledge, and if called upon to testify, I could and would competently testify as to the

5    matters set forth herein.

6         1.    Attached hereto as Exhibit 18[1] is a true and correct copy of excerpts of the Expert

7    Report of Lynn J. Verhey, Ph.D. (dated June 4, 2008).

8         2.    Attached hereto as Exhibit 19 is a true and correct copy of excerpts of the

9    transcript of the Deposition of Lynn J. Verhey (dated June 18, 2008).

10         3.    Attached hereto as Exhibit 20 is a true and correct copy of excerpts of the June

11    20, 2000 Office Action from the Patent Prosecution History for U.S. Patent No. 6,413,204.

12         4.    Attached hereto as Exhibit 21 is a true and correct copy of excerpts of 1 *The*

13    *Oxford English Dictionary* 130 (Clarendon Press) (2d ed. 2001).

14

15    I declare under penalty of perjury that the foregoing is true and correct.

16

17    Dated:  June 20, 2008         By: _____

18                              Adam D. Harber

19

20

21

22

23

24

25

26    [1] The numbers assigned to exhibits attached to this Declaration run consecutively from the
exhibit numbers of those attached to the Declaration of Adam D. Harber in Support of Defendant

27    SenoRx, Inc.'s Opening Claim Construction Brief and the Declaration of Adam D. Harber in
Support of Defendant SenoRx, Inc.'s Responsive Claim Construction Brief.

28

# Exhibit 20



**UNITED STATE  DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/293,524 | 04/15/99 | WINKLER | R | 1013604US |

|  |
|---|
| **EXAMINER** |
| LACYK, J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3736 | 5 |

DATE MAILED:
06/20/08

```
                        QM32/0620
  THOMAS J ENGELLENER
  NUTTER MCCLENNEN & FISH
  ONE INTERNATIONAL PLACE
  BOSTON MA 02110-2699
```

**Please find below and/or attached an Office communication concerning this application or proceeding.**

Commissioner of Patents and Trademarks

SRX-HOL00000323

| **Office Action Summary** | Application No. 09/293,524 | Applicant(s) WINKLER et al |
| | Examiner LAcyK | Group Art Unit 3736 |

*—The MAILING DATE of this communication appears on the cover sheet beneath the correspondence address—*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE _3_ MONTH(S) FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, such period shall, by default, expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).

**Status**

☐ Responsive to communication(s) filed on _____

☐ This action is FINAL.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

**Disposition of Claims**

☑ Claim(s) _1-34_ is/are pending in the application.

    Of the above claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☑ Claim(s) _1-34_ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claim(s) _____ are subject to restriction or election requirement.

**Application Papers**

☑ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119 (a)-(d)**

☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number)_____

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received:_____

**Attachment(s)**

☑ Information Disclosure Statement(s), PTO-1449, Paper No(s). _3-4_    ☐ Interview Summary, PTO-413

☑ Notice of Reference(s) Cited, PTO-892    ☐ Notice of Informal Patent Application, PTO-152

☑ Notice of Draftsperson's Patent Drawing Review, PTO-948    ☐ Other_____

Office Action Summary

U. S. Patent and Trademark Office
PTO-326 (Rev. 9-97)    Part of Paper No. _5_

SRX-HOL00000324

Application/Control Number: 09/293,524                                      Page 2

Art Unit: 3736

1.     Claims 2,4,5,14,22-29 are rejected under 35 U.S.C. 112, second paragraph, as being

indefinite for failing to particularly point out and distinctly claim the subject matter which

applicant regards as the invention.

       In claim 2, line 3, the use of "may include" is indefinite in that it is unclear whether the

limitations that follow are included or not.  Similarly in claim 26.  In claims 4 and 28, the use of

"adapted to" language should be used to avoid claiming a positive connection to the body.

Claims 5 and 29 are indefinite in that there is no claimed structure to support the functional

language recited in the claim.  There are no structural limitations claimed to support how the

apparatus "creates absorbed isodose profiles".  In claim 14, "the burst strength" lacks positive

antecedent basis.  Claims 22-29 should be recited in an active state, i.e placing the radioactive

source, removing the radioactive source, resecting the proliferating tissue, etc.

2.     The nonstatutory double patenting rejection is based on a judicially created doctrine
grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or
improper timewise extension of the "right to exclude" granted by a patent and to prevent possible
harassment by multiple assignees.  See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed.
Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686
F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619
(CCPA 1970);and, *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).
       A timely filed terminal disclaimer in compliance with 37 CFR 1.321© may be used to
overcome an actual or provisional rejection based on a nonstatutory double patenting ground
provided the conflicting application or patent is shown to be commonly owned with this
application.  See 37 CFR 1.130(b).
       Effective January 1, 1994, a registered attorney or agent of record may sign a terminal
disclaimer.  A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

Application/Control Number: 09/293,524                                    Page 3

Art Unit: 3736

3.      Claims 1-14, 18-34 are rejected under the judicially created doctrine of double patenting

over claims 1-13 of U. S. Patent No. 5,913,813 since the claims, if allowed, would improperly

extend the "right to exclude" already granted in the patent.

        The subject matter claimed in the instant application is fully disclosed in the patent and is

covered by the patent since the patent and the application are claiming common subject matter, as

follows: a radioactive therapy device having a catheter with an inner spatial volume disposed on

the distal end of the catheter with an outer spatial volume having an expandable surface element

disposed on the distal end of the catheter in a surrounding relation to the inner spatial volume and

having a radiation source disposed in the inner spatial volume.

        Furthermore, there is no apparent reason why applicant was prevented from presenting

claims corresponding to those of the instant application during prosecution of the application

which matured into a patent. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968).

See also MPEP § 804.

4.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

        A person shall be entitled to a patent unless --

        (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or
        on sale in this country, more than one year prior to the date of application for patent in the United States.

        (e) the invention was described in a patent granted on an application for patent by another filed in the United
        States before the invention thereof by the applicant for patent, or on an international application by another who
        has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371© of this title before the invention
        thereof by the applicant for patent.

5.      Claim 1 is rejected under 35 U.S.C. 102(b) as being clearly anticipated by Ishiwara et al.

SRX-HOL00000326

Application/Control Number: 09/293,524                                    Page 4

Art Unit: 3736

   Ishiwara et al discloses the claimed device, as shown in the embodiment of Figure 5.

6.    Claim 1 is rejected under 35 U.S.C. 102(e) as being clearly anticipated by Bradshaw et al

or Weinberger.

   See the embodiment of Figure 17 of Weinberger.

7.    Claims 1 and 21-24 are rejected under 35 U.S.C. 102(b) as being clearly anticipated  by

Williams '582.

8.    The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness

rejections set forth in this Office action:

   (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in
   section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are
   such that the subject matter as a whole would have been obvious at the time the invention was made to a person
   having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the
   manner in which the invention was made.

9.    Claim 25 is rejected under 35 U.S.C. 103(a) as being unpatentable over Williams '582.

   Although Williams does not specifically disclose using the device to treat the breast, a

modification of Williams to do so would have been obvious to one of ordinary skill in the art at

the time the invention was made in that one skilled in the art would readily know that the device

could be used in any part of the body to treat tissue surrounding a cavity left by surgical removal

of a tumor.

10.    Claims 15-18 are rejected under 35 U.S.C. 103(a) as being unpatentable over Weinberger

or Bradshaw et al in view of Clerc et al.

   . Bradshaw et al and Weinberger disclose the claimed device except for the use of an

expandable cage instead of a balloon. Clerc et al discloses a self-expanding "cage" (12) that is

Application/Control Number: 09/293,524                                           Page 5

Art Unit: 3736

used to help deliver radioactive therapy. Clerc et al discloses the support having a shape memory

such that it is self opening. Further to use any known shape memory material such as nitinol

would have been obvious since nitinol is well known and conventionally used with radioactive

therapy devices. Therefore a modification of Bradshaw et al or Weinberger such that a "cage" or

support is used instead of a balloon would have been obvious.

11.     Any inquiry concerning this communication or earlier communications from the examiner

should be directed to John P. Lacyk whose telephone number is (703) 308-2995.

JOHN P. LACYK
PRIMARY EXAMINER

J.P. Lacyk

June 16, 2000

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART, AND DISCARD CARBON

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | SERIAL NO. 09/293524 | GROUP ART UNIT 3736 | ATTACHMENT TO PAPER NUMBER 5 |
|---|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | | APPLICANT(S) winkler et al | | |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 5 9 2 4 9 7 3 | 7/20/99 | WEINBERGER | 600 | 3 | 9/26/96 |
| B | | 5 9 1 3 8 1 3 | 6/22/99 | WILLIAMS et al | 600 | 3 | |
| C | | 6 0 5 9 8 1 2 | 5/9/2000 | CLERC et al | 600 | 3 | 3/6/98 |
| D | | | | | | | |
| E | | | | | | | |
| F | | | | | | | |
| G | | | | | | | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | |
| S | |
| T | |
| U | |

| EXAMINER | | DATE | |
|---|---|---|---|
| | | | |

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

SRX-HOL00000329

Form PTO 948 (Rev. 8-98)    U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office    Application No. 929 3529

## NOTICE OF DRAFTSPERSON'S
## PATENT DRAWING REVIEW

The drawing(s) filed (insert date) 4 15 99 are

A. ☐ approved by the Draftsperson under 37 CFR 1.84 or 1.152.

B. ☐ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 for the reasons indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawing must be submitted according to the instructions on the back of this notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   ____ Color drawings are not acceptable until petition is granted.
   Fig(s) ____
   ____ Pencil and non black ink not permitted. Fig(s) ____
2. PHOTOGRAPHS. 37 CFR 1.84 (b)
   ____ 1 full-tone set is required. Fig(s) ____
   ____ Photographs not properly mounted (must use bristol board or photographic double-weight paper). Fig(s) ____
   ____ Poor quality (half-tone). Fig(s) ____
3. TYPE OF PAPER. 37 CFR 1.84(e)
   ____ Paper not flexible, strong, white, and durable.
   Fig(s) ____
   ____ Erasures, alterations, overwritings, interlineations, folds, copy machine marks not accepted. Fig(s) ____
   ____ Mylar, velum paper is not acceptable (too thin).
   Fig(s) ____
4. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
   ____ 21.0 cm by 29.7 cm (DIN size A4)
   ____ 21.6 cm by 27.9 cm (8 1/2 x 11 inches)
   ____ All drawing sheets not the same size.
   ____ Drawing sheets not an acceptable size. Fig(s) ____
5. MARGINS. 37 CFR 1.84(g): Acceptable margins:

   Top 2.5 cm Left 2.5cm Right 1.5 cm Bottom 1.0 cm
   SIZE: A4 Size
   Top 2.5 cm Left 2.5 cm Right 1.5 cm Bottom 1.0 cm
   SIZE: 8 1/2 x 11
   Margins not acceptable. Fig(s) ____
   ____ Top (T) ____ Left (L)
   ____ Right (R) ____ Bottom (B)
6. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   Partial views. 37 CFR 1.84(h)(2)
   ____ Brackets needed to show figure as one entity.
   Fig(s) ____
   ____ Views not labeled separately or properly.
   Fig(s) ____
   ____ Enlarged view not labeled separately or properly.
   Fig(s) ____
7. SECTIONAL VIEWS. 37 CFR 1.84 (h)(3)
   ____ Hatching not indicated for sectional portions of an object.
   Fig(s) ____
   ____ Sectional designation should be noted with Arabic or Roman numbers. Fig(s) ____

8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   ____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s) ____
9. SCALE. 37 CFR 1.84(k)
   ____ Scale not large enough to show mechanism without crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig(s) ____
10. CHARACTER OF LINES, NUMBERS, & LETTERS.
    37 CFR 1.84(l)
    ____ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (poor line quality).
11. SHADING. 37 CFR 1.84(m)
    ____ Solid black areas pale. Fig(s) ____
    ____ Solid black shading not permitted. Fig(s) ____
    ____ Shade lines, pale, rough and blurred. Fig(s) ____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.
    37 CFR 1.84(p)
    ____ Numbers and reference characters not plain and legible.
    Fig(s) ____
    ____ Figure legends are poor. Fig(s) ____
    ____ Numbers and reference characters not oriented in the same direction as the view. 37 CFR 1.84(p)(1)
    Fig(s) ____
    ____ English alphabet not used. 37 CFR 1.84(p)(2)
    Figs ____
    ____ Numbers, letters and reference characters must be at least .32 cm (1/8 inch) in height. 37 CFR 1.84(p)(3)
    Fig(s) ____
13. LEAD LINES. 37 CFR 1.84(q)
    ____ Lead lines cross each other. Fig(s) ____
    ____ Lead lines missing. Fig(s) ____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
    ____ Sheets not numbered consecutively, and in Arabic numerals beginning with number 1. Sheet(s) ____
15. NUMBERING OF VIEWS. 37 CFR 1.84(u)
    ____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s) ____
16. CORRECTIONS. 37 CFR 1.84(w)
    ____ Corrections not made from prior PTO-948 dated ____
17. DESIGN DRAWINGS. 37 CFR 1.152
    ____ Surface shading shown not appropriate. Fig(s) ____
    ____ Solid black shading not used for color contrast.
    Fig(s) ____

COMMENTS

REVIEWER ____ DATE 5 17 99 TELEPHONE NO. ____

ATTACHMENT TO PAPER NO. 5

SRX-HOL00000330

# Exhibit 21

# THE OXFORD ENGLISH DICTIONARY

## SECOND EDITION

*Prepared by*

J. A. SIMPSON *and* E. S. C. WEINER

## VOLUME I

A–Bazouki

CLARENDON PRESS · OXFORD

# OXFORD

UNIVERSITY PRESS

Great Clarendon Street, Oxford OX2 6DP

Oxford University Press is a department of the University of Oxford.
It furthers the University's objective of excellence in research, scholarship,
and education by publishing worldwide in

Oxford  New York

Athens  Auckland  Bangkok  Bogotá  Buenos Aires  Calcutta
Cape Town  Chennai  Dar es Salaam  Delhi  Florence  Hong Kong  Istanbul
Karachi  Kuala Lumpur  Madrid  Melbourne  Mexico City  Mumbai
Nairobi  Paris  São Paulo  Shanghai  Singapore  Taipei  Tokyo  Toronto  Warsaw
with associated companies in  Berlin  Ibadan

Oxford is a registered trade mark of Oxford University Press
in the UK and in certain other countries

© Oxford University Press 1989

First published 1989
Reprinted 1991 (with corrections), 1998, 2000, 2001

All rights reserved. No part of this publication may be reproduced,
stored in a retrieval system, or transmitted, in any form or by any means,
without the prior permission in writing of Oxford University Press,
or as expressly permitted by law, or under terms agreed with the appropriate
reprographics rights organization. Enquiries concerning reproduction
outside the scope of the above should be sent to the Rights Department,
Oxford University Press, at the address above

You must not circulate this book in any other binding or cover
and you must impose this same condition on any acquirer

British Library Cataloguing in Publication Data

Oxford English dictionary.—2nd ed.
1. English language—Dictionaries
I. Simpson, J. A. (John Andrew), 1953–
II. Weiner, Edmund S. C., 1950–
423
ISBN 0-19-861186-2 (set)

Library of Congress Cataloging in Publication Data

The Oxford English dictionary.—2nd ed.
prepared by J. A. Simpson and E. S. C. Weiner
Bibliography: p.
ISBN 0-19-861186-2 (set)

1. English language—Dictionaries.   I. Simpson, J. A.
II. Weiner, E. S. C.   III. Oxford University Press.
PE1625.O87    1989
423—dc19    88-5330

Data capture by ICC, Fort Washington, Pa.
Text-processing by Oxford University Press
Typesetting by Pinder Graphics Origination, Scarborough, N. Yorks.
Manufactured in the United States of America by
Quebecor World Book Services, Taunton, Mass.

...importance than appearance. **1937** E. J. LABARRE *Dict.* 3/1 *Adansonia*, inner bark of *Adansonia digitata* ... used to a limited extent for wrapping papers.

**...ertile**, *a. Obs.*⁻⁰ [ad. L. *adapertilis* that may be opened, f. *ad* intensive + *aperīre* to open. -ILE.] 'Easy to be opened.' Bailey, vol.

**...d** (ǽdɒpid), *sb.* and *a. Palæont.* [f. mod.L. **...is** rabbit, of unkn. origin (adopted as a **...** name by G. Cuvier 1822, in *Ossemens* **...** (ed. 2) III. 265) + -ID¹.] **A.** *sb.* A **...** of the extinct family Adapidae of **...**-like primates, known from Eocene fossils **...** pe, North America, and Asia. **B.** *adj.* Of, **...** ing to, or designating this animal.

**...** A. S. ROMER *Vertebr. Palaeont.* xxiii. 416 The adapids **...** usly proper ancestors for the typical lemurs. **1945** **...** 3] xxix. 559 To cite this list is to cite .. a number of **...** Paleocene and Eocene mammals .. adapid **...**. **1973** [see PLESIADAPOID *sb.* and *a.*]. **1977** *Univ. Michigan Contrib. Mus. Paleont.* XXIV. 246 The North American adapid subfamily Notharctinae evolved independently.

**adapt** (ə'dæpt), *v.* [a. Fr. *adapte-r*, ad. L. *adaptā-re*, f. *ad* to + *aptā-re* to fit; f. *apt-us* fit; see APT.]

**1.** To fit (a person or thing) to another, *to* or *for* a purpose), to suit, or make suitable.

**1611** FLORIO, *Addattare*, to fit, to adapt, to appropriate [not in ed. 1598]. *a* **1616** B. JONSON *Discov.* Wks. 1616 II. 128 He is adapted to it by nature. **1656** HEALEY *Epictetus' Man.* xliii. 65 Adapt the discourses of thy friends unto thine owne as neere as thou canst. **1763** MILLER *Gard. Dict.*, A seminary is a seed-plot, which is adapted or set apart for the sowing of seeds. **1756** BURKE *Subl. & B.* Wks. I. 182 The senses strongly affected in some one manner, cannot quickly change their tenour, or adapt themselves to other things. **1847** YEOWELL *Anc. Brit. Ch.* i. 5 To have adapted poetry to the preservation of their historical memorials. **1855** BAIN *Senses & Int.* II. ii. §3 (1864) 209 The structure of the outer ear is adapted to collect and concentrate the vibrations.

**2. a.** To alter or modify so as to fit for a new use.

**1774** BRYANT *Mythol.* I. 117 It is called *Anchia*..it signified either *fons spelunca*, or *spelunca fontis*, according as it was adapted. **1858** HAWTHORNE *Fr. & It. Jrnls.* II. 199 A kind of farm-house, adapted, I suppose, out of the old ruin.

**b.** To construct or produce by adaptation *from*.

**1805** J. WILD (title) Dramas Adapted (from the Original French) to the English Stage. **1849** *Athenæum* 3 Nov. 1113/3 A three-act drama adapted from the French comedy. **1852** C. READE (title) The Lost Husband. A drama .. written and adapted from the French. **1911** (title) The Concise Oxford Dictionary of Current English adapted by H. W. Fowler and F. G. Fowler .. from The Oxford Dictionary.

**3.** *intr.* To undergo modification so as to fit for a new use, etc. Const. *to.* Also *absol.*

**1956** M. BRYN *Intent to Kill* vi. 67 In our country, the rich have no sense of responsibility. I wonder how they will adapt to the future. **1962** *Listener* 3 May 764/1 Birds certainly adapt to the urban community, and particularly well to the suburban community. *Ibid.* 19 July 84/1 There is an absolute lack of imagination, or failure to adapt, a refusal to face the need for change.

†**a'dapt**, *ppl. a. Obs.* [f. ADAPT *v.* on analogy of ppl. adjs. like *content, distract, erect*, which were in form identical with verbs, though really adaptations of L. pples. in -*tus*; but there was no L. *adaptus*. The adj. APT may also have helped in the production of *ad-apt*.] Fitted, suited; fit.

**1704** SWIFT *T. of a Tub* ix. Wks. 1760 I. 100 This definition of happiness .. will be acknowledged wonderfully adapt. *a* **1733** NORTH *Lives of Norths* II. 369 Nothing could have fallen out more exquisitely adapt to Mr. North's desires.

**adaptability** (ədæptə'bılıtı). [f. ADAPTABLE *a.*; see -BILITY.] The quality of being adaptable; capacity of being adapted or of adapting oneself; potential fitness. Const. *to, for.*

**1661** R. LOVELL *Anim. & Min.* 315 The manner of using, adaptability of the matter, and nature of the patient. **1796** W. TAYLOR in *Monthly Rev.* XIX. 513 Adaptability to define and discriminate contiguous shades of idea. **1845** TODD & BOWMAN *Phys. Anat.* I. 149 One of the most wonderful circumstances in the construction of the hand, is its adaptability to an infinite number of offices. **1873** FARRAR *Fam'l. of Sp.* ii. 69 General adaptability for every purpose. **1875** STUBBS *Const. Hist.* II. xv. 293 The adaptability of his people to the execution of his design.

**adaptable** (ə'dæptəb(ə)l), *a.* [f. ADAPT *v.* + -ABLE, as if ad. L. *\*adaptābilis*.] Capable of being adapted; applicable; pliable.

**1800** W. TAYLOR in *Monthly Mag.* X. 517 The words employed .. is no less adaptable to the other Gothic dialects than to the German. **1857** TOULM. SMITH *Parish* I. Principles, which are adaptable to all the changing conditions of human progress. **1865** TRAFFORD *Geo. Geith* II. vi. 58 Before marriage men are not so adaptable as women.

**adaptableness** (ə'dæptəb(ə)lnıs). [f. prec. + -NESS.] = ADAPTABILITY.

†**a'daptate**, *v. Obs. rare.* [f. L. *adaptāt-* ppl. stem of *adaptā-re*; see ADAPT, and -ATE.] A byform of ADAPT.

**1659** *Instr. Oratory* 16 Those [words] derived from the Latine .. being .. more adaptated for many discourses. **1678** CUDWORTH *Intell. Syst.* I. v. 690 It is your work now to Adaptate the Mortal to the Immortal.

**adaptation** (ædæp'teıʃən). [a. Fr. *adaptation*, ad. late L. *adaptātiōn-em*, n. of action f. *adaptā-re*; see ADAPT. Not in Cotgr. 1632; see ADAPTING *vbl. sb.*]

**1.** The action or process of adapting, fitting, or suiting one thing to another.

**1610** HEALEY *St. Aug., City of God* 743 They .. made fit by ingenious adaptation of the one to the other. **1648** SIR T. BROWNE *Pseud. Ep.* III. xi. 130 A commixtion of both in the whole rather than an adaptation of the one unto the other. **1782** PRIESTLEY *Inst. & Rev. Relig.* I. 20 There are .. many adaptations of one thing to another. **1881** LUBBOCK in *Nature* No. 618, 411 Electricity in the year 1831 may be considered to have just been ripe for its adaptation to practical purposes.

**2. a.** The process of modifying a thing so as to suit new conditions: as, the modification of a piece of music to suit a different instrument or different purpose; the alteration of a dramatic composition to suit a different audience; the alteration of form which a word of one language often undergoes to make it fit the etymological or phonetic system of another, as when the L. *adaptātiōnem* is taken in Fr. and E. as *adaptation*.

**1790** PALEY *Hor. Paul.* i. 3 His adaptation will be the result of counsel, scheme, and industry. **1846** KINGSLEY *Lett.* (1878) I. 140 Man has unrivalled powers of self-adaptation. **1878** C. PARRY in *Grove Dict. Music* I. 89 Arrangement, or adaptation, is the musical counterpart of literary translation.

**b.** spec. in *Opt.* The adjustment of the eye to variations in the intensity or colour of light. Also = ACCOMMODATION 1 b.

**1881** in *Syd. Soc. Lex.* **1920** *Jrnl. Gen. Phys.* II. 499 The phenomenon of retinal adaptation is one of the most familiar facts of sensory physiology. *Ibid.* 516 During the dark adaptation of the human eye, its visual threshold decreases to a small fraction of its original value in the light. **1950** L. C. THOMSON in *Brit. Jrnl. Ophthalmology* Mar. 145 The sensory receptor cells in the retina .. play a part in visual adaptation. **1960** R. A. WEALE *Eye & its Function* vii. 110 Chromatic adaptation experiments, in which the eye is exposed continuously to a coloured background of moderate luminance.

**3.** The condition or state of being adapted; adaptedness, suitableness.

**1677** HALE *Prim. Orig. Man.* I. i. 2 This adaptation and congruity of these Faculties to their several proper Objects. **1751** JOHNSON *Rambler* No. 160 ¶ 2 The benefit of this adaptation of men to things is not always perceived. **1896** J. GILBERT *Atonement* viii. (1852) 230 He perceives its adaptation to melt his mind. **1867** J. MARTINEAU *Chr. Life* (ed. 4) 291 The adaptation of immortality to our true wants.

**4.** A special instance of adapting; and hence, *concr.* an adapted form or copy, a reproduction of anything modified to suit new uses.

**1859** DARWIN *Orig. Spec.* iii. (1873) 48 We see beautiful adaptations everywhere and in every part of the organic world. **1860** *Sat. Rev.* No. 250, 181/2 A French play is adapted by A .. B either appropriates A's adaptation or makes another. *Mod.* The word *pibroch* is our adaptation of the Gaelic *piobaireachd*, that is to say 'piper-ship.'

**5.** *Biol.* Organic modification by which an organism or species becomes adapted to its environment.

**1859** DARWIN in *Jrnl. Linn. Soc.* Zool. III. 50 The most vigorous and healthy males, implying perfect adaptation, must generally gain the victory in their contests [for the females]. **1875** *Encycl. Brit.* I. 145/2 Adaptation .. is usually restricted .. to imply such modifications as arise during the life of an individual, when an external change directly operates and completes adaptation for the individual itself. **1871** OSBORN in *Science* 15 Oct., Ontogenetic adaptation .. enables animals and plants to survive very critical changes in their environment. **1904** H. E. CRAMPTON in *Biometrika* III. 114 A rigid .. organization, incapable of structural alterations as the result of 'functional adaptation'. **1923** J. S. HUXLEY *Ess. of Biologist* i. 15 If the degree of adaptation has not increased during evolution, then it is clear that progress does not consist in increase of adaptation.

**adaptational** (ædæp'teıʃənəl), *a.* [f. prec. + -AL¹.] Of or pertaining to adaptation.

**1879** LUBBOCK *Scient. Lect.* ii. 42 The modifications which insect larvæ undergo may be divided into two kinds —developmental .. and adaptational or adaptive; those which tend to suit them to their own mode of life.

**adaptative** (ə'dæptətıv), *a.* [f. L. *adaptāt-* ppl. stem of *adaptā-re* to ADAPT + -IVE.] Characterized by, or given to, adapting things to a purpose, or conceal to circumstances; = ADAPTIVE.

**1887** TOMES *Amer. in Japan* vi. 247 The Japanese are .. a very imitative, adaptative, and compliant people. **1870** PROCTOR *Other Worlds* iii. 81 Adaptative power .. by which the various creatures we are acquainted with are enabled to live in comfort under all degrees of light. **1875** STUBBS *Const. Hist.* II. xv. 207 The great merit of his statesmanship.

**adaptativeness** (ə'dæptətıvnıs). [f. prec. + -NESS.] Ability to suit things to a purpose, or oneself to circumstances; = ADAPTIVENESS.

**1881** *Harper's Mag.* Apr. 645 He possessed plenty of that Yankee adaptativeness.

**adapted** (ə'dæptıd), *ppl. a.* [f. ADAPT *v.* + -ED.]

**1.** Fitted; fit, suitable. Const. *to, for.*

**1610** HEALEY *St. Aug., City of God* 844 As spirits doe in characters and signes ad-apted to their natures. **1754** CHATHAM *Lett. to Nephew* V. 37 A proper behaviour, adapted to the respective relations we stand in. **1803** W. TAYLOR in *Ann. Rev.* I. 35 Conferring on Mr. Collins an adapted and distinguished appointment. **1875** DARWIN *Insectiv. Plants* i. 3 Drosera was excellently adapted for .. catching insects.

**2.** Modified so as to suit new conditions.

**1815** SOUTHEY *Poet's Pilgr.* iv. 52 Wks. X. 103 A race, who with the European mind, The adapted mould of Africa combined. *Mod.* Adapted comedies are being played at several theatres. *Syntax* is the adapted form in which the Greek ἀσυνδε is used in English.

**adaptedness** (ə'dæptıdnıs). [f. prec. + -NESS.] The quality or state of being adapted or suited; suitableness, special fitness.

**1698** [R. FERGUSSON] *View of Eccles.* 18 Their adaptedness for their employ. **1800** W. TAYLOR in Robberds' *Memoir* I. 327 The adaptedness of one rhythm or form of stanza for one purpose, and of another for a different purpose, is wholly, or nearly so, the result of association. **1875** WHITNEY *Life of Lang.* xiv. 293 When the time for the use came, the perception of its adaptedness .. necessarily followed.

**adapter, -or** (ə'dæptə(r)). [f. ADAPT *v.* + -ER¹.]

**1.** One who adapts. **a.** One who fits or suits one thing to another. **b.** One who modifies or alters a composition to suit it to new purposes.

**1801** CHALMERS *Lett. in Life* (1851) I. 48 Such adaptation speaks of a divine and intelligent adapter. **1858** DE QUINCEY *Wks.* VI. 374 These imaginary adapters of Homer, according to the German pretence, modernised his whole diction. **1865** *Sat. Rev.* 12 Aug. 210/1 The original author is of opinion that the adapter has not mended but marred his work. **1877** R. H. HUTTON *Ess.* (ed. 2) I. 43 Intelligence in the conscious and voluntary adapter of means to ends.

**2.** A connecting part: in *Chem.* a tube to connect two pieces of apparatus; in *Optics*, a ring fitted with screw threads to unite two lengths of a telescope; a 'sliding fitting' in an optical instrument.

**1808** SIR H. DAVY in *Phil. Trans.* Vol. XCIX. 454 The adaptors must have contained 8 of a similar gas. **1867** J. HOGG *Microsc.* i. iii. 170 A flat piece of glass placed at an angle of 45° across the tube, interposed like an adapter between the objective and the microscope-body. **1875** URE *Dict. Arts* I. 7 An adapter tube is then fitted to the lateral cylinder. This adapter enters into another tube at the same degree of inclination. **1876** CHAMBERS *Astron.* 623 A more simple form of solar eye-piece is that which consists of an adapter in which a diaphragm plate is fitted as shown.

**3.** *Electr. Engin.* (See quots.)

**1907** T. O'C. SLOANE *Stand. Electr. Dict.* (ed. 12) 11 *Adapter*, a screw coupling to engage with a different sized screw on each end; one of the uses is to connect incandescent lamps to gas-fixtures. **1913** E. E. Becker & Co. *Illustr. Catal. Sci. App.* 539 (caption) Plug adapter, for tapping current off any ordinary bayonet-catch lamp-holder. **1943** *Gloss. Terms Electr. Engin.* (B.S.I.) 123 *Socket-outlet adaptor*, an accessory for insertion into a socket-outlet and containing metal contacts to which may be fitted one or more plugs for the purpose of connecting to the supply portable lighting fittings or other current-using appliances.

**adapting** (ə'dæptıŋ), *vbl. sb.* [f. ADAPT *v.* + -ING.¹] The action of fitting, suiting, or rendering suitable. (Now mostly gerundial.)

**1632** COTGR., *Adaptation* [Fr.], An adapting, fitting, or suiting of one thing to another. **1656** COWLEY *Davideis* I. (1684) 31 An adapting of all these to the Constitution, Disposition, and Inclinations of the Patient. **1714** SWIFT *State of Aff.* Wks. 1755 II. i. 205, I do not know a greater mark of an able minister, than that of regulating the several faculties of men. *Mod.* This clever adapting of means to ends. He is skilled in adapting French plays.

**adapting** (ə'dæptıŋ), *ppl. a.* [f. ADAPT *v.* + -ING.¹] Rendering suitable, modifying.

**1836** J. GILBERT *Atonement* iv. (1852) 91 The adapting intelligence which limited their energy to the discharge of that office.

**adaption** (ə'dæpʃən). [f. ADAPT *v.* as if formed on a L. ppl. stem; cf. *adopt-ion.* See -ION¹.] = ADAPTATION; the action of adapting.

**1704** SWIFT *T. of a Tub* (1768) I. 127 For great turns are not always given by strong hands, but by lucky adaption. **1790** BLAGDEN *Spirit. Liq.* in *Phil. Trans.* LXXX. 344 The adaption of the duties to different degrees of strength. **1860** DICKENS *Lett.* (ed. 2) II. 124 There it is, needing no change or adaption.

**adaptitude** (ə'dæptıtjuːd). [A mixture of ADAPT and APTITUDE.] Adaptedness; aptitude specially produced.

**1842** MRS. BROWNING *Grk. Chr. Poets* 129 A hedge-thorn catches sheep's wool by position and approximation rather than adaptitude. **1832** BROWNING *Ess. on Shelley* (1881) 16 A profound sensibility and adaptitude for act.

**adaptive** (ə'dæptıv), *a.* [irreg. f. ADAPT *v.* + -IVE, as if on ppl. stem; cf. *adopt-ive*; see -IVE.] Characterized by, or given to, adaptation.

1  F.T. Alexandra Mahaney, State Bar No. 125984
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   12235 El Camino Real, Suite 200
3  San Diego, CA 92130
   Telephone: (858) 350-2300
4  Facsimile: (858) 350-2399
   Email: amahaney@wsgr.com
5
   Bruce R. Genderson (admitted *pro hac vice*)
6  Aaron P. Maurer (admitted *pro hac vice*)
   F. Greg Bowman (admitted *pro hac vice*)
7  Rachel Shanahan Rodman (admitted *pro hac vice*)
   Adam D. Harber (admitted *pro hac vice*)
8  WILLIAMS & CONNOLLY LLP
9  725 Twelfth St. NW
   Washington, DC 20005
10 Telephone: (202) 434-5000
   Facsimile: (202) 434-5029
11
12 Attorneys for Defendant
   SENORX, INC.

13              IN THE UNITED STATES DISTRICT COURT

14                 NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16

17 HOLOGIC, INC., CYTYC CORP., and          )   CASE NO.: C08 0133 RMW
   HOLOGIC L.P.,                             )
18                                           )   **STIPULATION IN SUPPORT OF**
              Plaintiffs,                    )   **MOTION FOR ADMINISTRATIVE**
19                                           )   **RELIEF FOR PERMISSION TO**
        v.                                   )   **FILE SUPPLEMENTAL CLAIM**
20                                           )   **CONSTRUCTION BRIEFS**
   SENORX, INC.,                             )   **PURSUANT TO CIVIL LOCAL**
21                                           )   **RULES 7-11 AND 7-12**
              Defendant.                     )
22                                           )
                                             )
23 _____ )

24

25

26

27

28

STIPULATION IN SUPPORT OF MOTION                           CASE NO. C08-0133 RMW
FOR ADMINISTRATIVE RELIEF FOR
PERMISSION TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFS

1        Plaintiffs Hologic, Inc., Cytyc Corporation, and Hologic L.P. and Defendant SenoRx, Inc.

2    hereby submit this stipulation in support of the parties' Motion for Administrative Relief for

3    Permission to File Supplemental Claim Construction Briefs.

4        The claim construction hearing in this case is scheduled to be held on June 25, 2008.  The

5    parties submitted opening claim construction briefs on May 21, 2008 and responsive claim

6    construction briefs May 30, 2008.  Subsequent to submitting these briefs, the parties determined

7    there was a dispute as to the meaning of additional claim terms in the patents-in-suit that were not

8    raised in the parties' original claim construction briefs.  Accordingly, the parties request that the

9    Court consider and issue a ruling on the parties' supplemental claim constructions of the disputed

10   terms.  Plaintiffs' supplemental claim construction brief, with exhibits, is attached as Exhibit A to

11   the Motion for Administrative Relief.  Defendant's supplemental claim construction brief, with

12   exhibits, is attached as Exhibit B to the Motion for Administrative Relief.

13

14   Dated:  June 20, 2008                          HOWREY LLP

15                                                 By: _____/s/Marc Cohn_____
16                                                       Marc Cohn
                                                         HOWREY LLP
17                                                       1299 Pennsylvania Avenue, N.W.
                                                         Washington, D.C.  20004
18
19                                                 Attorneys for Plaintiffs Hologic, Inc.,
                                                   Cytyc Corporation, and Hologic L.P.
20

21
22                                                 WILLIAMS & CONNOLLY LLP

23                                                 By: _____/s/Aaron P. Mauer_____
                                                         Bruce R. Genderson
24                                                       Aaron P. Maurer
                                                         Rachel Shanahan Rodman
25                                                       Adam D. Harber
                                                         WILLIAMS & CONNOLLY LLP
26                                                       725 12th Street, N.W.
                                                         Washington, D.C.  20005
27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _____/s/F.T. Alexandra Mahaney_____
        F.T. Alexandra Mahaney
        amahaney@wsgr.com

Attorneys for Defendant
SENORX, INC.

STIPULATION IN SUPPORT OF MOTION
FOR ADMINISTRATIVE RELIEF FOR
PERMISSION TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFS

CASE NO. C08-0133 RMW

1

## **Filer's Attestation**

2     I, F.T. Alexandra Mahaney, am the ECF User whose identification and password are being

3  used to file this Stipulation in Support of Motion for Administrative Relief for Permission to File

4  Supplemental Claim Construction Briefs.  Pursuant to General Order No. 45, ¶ X(B), I attest under

5  penalty of perjury that concurrence in the filing of the document has been obtained from the other

6  signatures above.

7

8                                        By:    /s/F.T. Alexandra Mahaney
                                                F.T. Alexandra Mahaney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION IN SUPPORT OF MOTION                          CASE NO. C08-0133 RMW
FOR ADMINISTRATIVE RELIEF FOR
PERMISSION TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFS

1  F.T. Alexandra Mahaney, State Bar No. 125984
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   12235 El Camino Real, Suite 200
3  San Diego, CA  92130
   Telephone:  (858) 350-2300
4  Facsimile:   (858) 350-2399
   Email:  amahaney@wsgr.com
5
   Bruce R. Genderson (admitted *pro hac vice*)
6  Aaron P. Maurer (admitted *pro hac vice*)
   F. Greg Bowman (admitted *pro hac vice*)
7  Rachel Shanahan Rodman (admitted *pro hac vice*)
   Adam D. Harber (admitted *pro hac vice*)
8  WILLIAMS & CONNOLLY LLP
9  725 Twelfth St. NW
   Washington, DC 20005
10 Telephone:  (202) 434-5000
   Facsimile:  (202) 434-5029
11
12 Attorneys for Defendant
   SENORX, INC.

13             IN THE UNITED STATES DISTRICT COURT

14                NORTHERN DISTRICT OF CALIFORNIA

15                        SAN JOSE DIVISION

16

17 HOLOGIC, INC., CYTYC CORP., and          )   CASE NO.:  C08 0133 RMW
   HOLOGIC L.P.,                            )
18                                          )   **[PROPOSED] ORDER GRANTING**
                Plaintiffs,                 )   **MOTION FOR ADMINISTRATIVE**
19                                          )   **RELIEF FOR PERMISSION TO**
         v.                                 )   **FILE SUPPLEMENTAL CLAIM**
20                                          )   **CONSTRUCTION BRIEFS**
   SENORX, INC.,                            )   **PURSUANT TO CIVIL LOCAL**
21                                          )   **RULES 7-11 AND 7-12**
                Defendant.                  )
22                                          )
                                            )
23 ─────────────────────────────────────── )

24

25

26

27

28

[PROPOSED] ORDER GRANING MOTION                      CASE NO. C08-0133 RMW
FOR ADMINISTRATIVE RELIEF FOR
PERMISSION TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFS

1    PURSUANT TO STIPULATION, IT IS SO ORDERED.  The Court hereby grants the

2 parties' Motion for Administrative Relief for Permission to File Supplemental Claim

3 Construction Briefs.  The supplemental claim construction briefs attached as Exhibit A and

4 Exhibit B to the parties' Motion are hereby deemed filed.

5

6 DATED:  June ___, 2008     _____

7             The Honorable Ronald M. Whyte
              United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANING MOTION       CASE NO. C08-0133 RMW
FOR ADMINISTRATIVE RELIEF FOR
PERMISSION TO FILE SUPPLEMENTAL
CLAIM CONSTRUCTION BRIEFS