**E-FILED on** 02/18/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| HOLOGIC, INC.; CYTYC CORPORATION; and HOLOGIC LP,<br><br>            Plaintiffs,<br><br>     v.<br><br>SENORX, INC.,<br><br>            Defendant. | No. C-08-00133 RMW<br><br>ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF '142 PATENT (CLAIMS 1 AND 8)<br><br>**[Docket No. 133]** |

Defendant SenoRx, Inc. ("SenoRx") moves for summary judgment that United States Patent 6,482,142 ("'142 patent") is invalid. For the reasons stated below, the court denies defendant's motion.

**I. BACKGROUND**

The background of this case is set forth in previous orders. *See*, *e.g.*, *Hologic, Inc. v. SenoRx, Inc.*, 2008 WL 1860035, *1 (N.D.Cal. 2008). Briefly, the parties both develop cancer-treatment devices used to irradiate remaining cancerous cells after a tumor has been removed. Although three patents are at issue in this case, the instant motion deals with only one, the '142

United States District Court
For the Northern District of California

1  patent. Defendants seek summary judgment that the '142 patent is invalid because it is not enabled
2  and inoperable.
3      Independent Claim 1 and dependent Claim 8 of the '142 patent are at issue. The present
4  motion turns on the use of the term "apparatus volume" in Claim 1 and incorporated in Claim 8.
5  Claim 1 reads:

> 1. An interstitial brachytherapy apparatus for treating target tissue surrounding a surgical extraction comprising:
>
> an expandable outer surface defining a three-dimensional *apparatus volume* configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated;
>
> a radiation source disposed completely within the expandable outer surface and located so as to be spaced apart from the *apparatus volume*, the radiation source further being asymmetrically located and arranged within the expandable surface to provide predetermined asymmetric isodose curves with respect to the apparatus volume.

'142 Patent 8:61-9:6 (emphasis added).

## II. ANALYSIS

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998).

SenoRx's invalidity argument for the '142 patent is based upon the problem encountered when attempting to construe the claims at issue. Claim construction is a question for the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388 (1996). Although Hologic is correct that validity issues often involve questions of fact, here, where SenoRx's argument is that the '142 patent is not enabled because a particular claim limitation cannot sensibly be construed, the motion presents only a question of law.

To satisfy the utility requirement of 15 U.S.C. § 101, the subject matter of a claim must be operable. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951 (Fed. Cir. 1983). Furthermore, to be enabling, the specification of a patent must teach those skilled in the art how to make and use the

full scope of the claimed invention without "undue experimentation." *In re Wright*, 999 F.2d 1557, 1561 (Fed.Cir. 1993). Operability and enablement are related: "[i]f a patent claim fails to meet the utility requirement because it is not useful or operative, then it also fails to meet the how-to-use aspect of the enablement requirement." *Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1358 (Fed. Cir. 1999).

SenoRx argues that the plain meaning of the term "apparatus volume" as used in Claim 1 is a three dimensional region of space bounded by an expandable outer surface. Hologic asserts in its papers that the phrase "three dimensional geometric apparatus volume configured to fill an interstitial void" defines "a three-dimensional geometric solid composed of an expandable outer surface." Pltf.'s Opening Claim Construction Brief at 22. Hologic's definition is hard to understand but Hologic explained that the language describes something analogous to the rubber of a basketball or the fiberglass that defines the hull of a boat. Rptr.'s Tr. at 95. When pressed for a definition of "apparatus volume" at oral argument on the motion, Hologic came up with a "physical structure enclosing the outer spatial volume." *Id.* at 101.

The court's initial reaction was that the inventors made an obvious mistake in the drafting of Claim 1. A reading of the first limitation of the Claim 1 isolated from the specification and prosecution history suggests that "apparatus volume" describes a volume configured to fill the space resulting from the removal of a cancerous tumor. The volume is defined by the expandable outer surface, *e.g.* a balloon. However, using that construction of "apparatus volume" in the second limitation renders the claim nonsensical. The claim would then require the radiation source to be within the volume bounded by the expandable outer surface and also be "spaced apart" from that volume. That is impossible, and as Hologic points out, would exclude the disclosed embodiments, violating the canon of claim construction requiring that claims be construed, whenever possible, not to exclude specified embodiments. *See, e.g.*, *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002). But if "expandable outer surface" is substituted for "apparatus volume" in the second limitation, that limitation is clear and covers the embodiments described in the specification. Despite these apparently different senses of the phrase in the two limitations,

Hologic contends that the use of "apparatus volume" was not a mistake, although it does admit that the claim is "a little bit difficult to parse through." Rptr.'s Tr. at 94.

If the claim is read in isolation from the other intrinsic evidence, Hologic's construction, though it makes the second limitation sensible, does not appear to work in the first. The first limitation states that the apparatus volume "fill[s]" the interstitial void. A "physical structure" like that of the rubber of a basketball or the fiberglass hull of a boat may surround a volume or constitute the outer surface of a volume but it seems odd to say it "fill[s]" the void.

A court may not rewrite the claims of a patent even to protect the patent from invalidity. *Chef Am. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004); *Process Control Corp.*, 190 F.3d 1350 at 1357. That rule applies even to circumstances where a court, or one skilled in the art, might be able to discern the intent of the patentee. In *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336 (Fed. Cir. 2002) the court reversed the district court's finding of validity of certain claims:

> Allen argues that one of skill in the art would understand that the term "perpendicular" in the claim should be read to mean "parallel." Allen stretches the law too far. It is not our function to rewrite claims to preserve their validity. *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345, 51 USPQ2d 1377, 1379 (Fed.Cir.1999). We are simply tasked with determining whether the claims "particularly point[ ] out and distinctly claim[ ]" what the inventor regards as his invention. 35 U.S.C. § 112, paragraph 2; *see also In re Zletz*, 893 F.2d 319, 322, 13 USPQ 2d 1320, 1322 (Fed.Cir.1989) (holding that claims failing this test during prosecution must be rejected under § 112, paragraph 2). Moreover, it is of no moment that the contradiction is obvious: semantic indefiniteness of claims "is not rendered unobjectionable merely because it could have been corrected."

*Id.* at 1349; *see Chef Am.*, 358 F.3d at 1372 (holding that courts may not redraft claims, whether to make them operable or to sustain validity, even if that results in the claim being nonsensical).

The court is also not permitted to construe terms differently in the same claim. *See Rexnord Corp. v. Laitrum Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001); *see also Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F. 3d 1367, 1375 (Fed. Cir. 2008).

The court, of course, should not necessarily interpret a claim by giving to it the "ordinary and customary meaning" that someone skilled in the art would give it in the abstract. Under *Phillips v. AWH,* the initial question is what is the "ordinary and customary meaning" in the context of the entire patent, including the specification and prosecution history. 415 F.3d 1303, 1313-14 (Fed. Cir.

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF '142 PATENT (CLAIMS 1 AND 8)—No. C-08-00133 RMW
4

2005). In addition, *Phillips* recognizes that the applicant may give the term a special definition that is not the "ordinary and customary meaning." *Id*. at 1316. Both the specification and prosecution history should be considered. *Id*. at 1316-17. "Even when guidance is not provided in explicit definitional format, the specification may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents." *Id*. at 1321 (quoting *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295,1300 (Fed.Cir. 2004).

Hologic points to a part of the prosecution history where the applicant distinguishes prior art and states in correspondence to the PTO states:

> For example, the expandable outer surface of claims 1 and 9 defines a three-dimensional apparatus volume configured to fill an interstitial void created by the surgical extraction of diseased tissue and define an inner boundary of the target tissue being treated. . . . Furthermore, the radiation source is disposed completely within the expandable surface and is spaced apart from the apparatus volume. . . . That is, the radiation source is arranged within the device so that the asymmetric dosing appears at the apparatus volume, which is configured to correspond to the interstitial void created by surgical extraction of diseased tissue.

Resp. to PTO rcvd. March 11, 2002 p. 6. The limitations of Claim 1 parrot the language in the prosecution history. The inventors use "apparatus volume" to describe a balloon or balloon-like structure expanded to fill the cavity (i.e., "fill" is used to describe expanding to the limits of the cavity) resulting from the removal of diseased tissue and to define the inner boundary of the target tissue. The "apparatus volume" thus describes the expandable outer surface in its expanded or configured state. Since this definition fits how the term is used in the prosecution history, covers the disclosed embodiments and results in a consistent and sensible use in both limitations of Claim 1, the court concludes that one skilled in the art, despite the odd choice of language, would understand "apparatus volume" to mean the balloon in its configured state.

The cases cited by defendants do indeed command that a patentee is stuck with the plain meaning of its claim if the claim is susceptible to only one reasonable interpretation. *See Chef America*, 358 F.3d 1374; *Process Control Corp.*, 190 F.3d at 1357; *see also Allen Engineering Corp.*, 299 F.3d at 1349. In each of those cases, the drafters apparently erred and the language used was susceptible to only one reasonable interpretation: in *Chef America* it was the oven, not the dough, that should have been heated (358 F.3d at 1372); in *Allen Engineering* the word "perpendicular" was use when "parallel" was meant (299 F.3d at 1349); and in *Process Control*

*Corp.* the term "discharge rate" if used consistently within the claim was nonsensical (190 F.3d at 1357).  Here, although "apparatus volume" was an odd choice of language to describe what the inventor intended to describe, its use was consistent in the claim, in accordance with use in the prosecution history, and it results in coverage of the embodiments disclosed.  Although a first reading suggests that Claim 1 was written in error, a closer analysis reflects that it was not.

### III. ORDER

Accordingly, the court denies defendant's motion for summary adjudication that Claims 1 and 8 of the '142 patent as claimed are invalid as they are not operable or enabled as written.

DATED:     2/18/09

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF '142 PATENT (CLAIMS 1 AND 8)—No. C-08-00133 RMW

6

**United States District Court**
For the Northern District of California

1  **Notice of this document has been electronically sent to:**

2  **Counsel for Plaintiffs:**

3  Katharine Lyn Altemus    altemusk@howrey.com
Robert F. Ruyak    ruyakr@howrey.com
4  Henry C. Su    suh@howrey.com
Matthew M. Wolf    wolfm@howrey.com
5  Marilee Chan Wang    wangm@howrey.com

6  **Counsel for Defendant:**

7  Aaron P. Maurer    amaurer@wc.com
Adam D. Harber    aharber@wc.com
8  Bruce R. Genderson    bgenderson@wc.com
Kendra P Robins    krobins@wc.com
9  Frances T. Alexandra Mahaney    amahaney@wsgr.com
Natalie J. Morgan    nmorgan@wsgr.com

12  Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

14  **Dated:**     2/18/09                                JAS
                                                                          **Chambers of Judge Whyte**

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF '142 PATENT (CLAIMS 1 AND 8)—No. C-08-00133 RMW